1  **SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP
   MOE KESHAVARZI, SBN 223759
2     E-Mail: mkeshavarzi@sheppardmullin.com
   DAVID DWORSKY, SBN 272167
3     E-Mail: ddworsky@sheppardmullin.com
   333 South Hope Street, 43rd Floor
4  Los Angeles, California 90071
   Telephone: 213.620.1780
5  Facsimile: 213.620.1398

6  ERROL J. KING, JR. (*pro hac vice application pending*)
   **PHELPS DUNBAR LLP**
7  II City Plaza
   400 Convention Street, Suite 1100
8  Baton Rouge, Louisiana 70802
   Telephone: (225) 376-0207
9  Fax: (225) 381-9197
   Errol.King@phelps.com
10

11 *Attorneys for Defendant Viant, Inc.*

12

13                    **UNITED STATES DISTRICT COURT**

14                    **NORTHERN DISTRICT OF CALIFORNIA**

15 PACIFIC RECOVERY SOLUTIONS d/b/a          Case No. 4:20-cv-02249-YGR
   WESTWIND RECOVERY, MIRIAM
16 HAMIDEH PHD CLINICAL                      (Hon. Yvonne Gonzalez Rogers)
   PSYCHOLOGIST INC. d/b/a PCI
17 WESTLAKE CENTERS, BRIDGING THE            **VIANT, INC.'S NOTICE OF MOTION AND**
   GAPS, INC., SUMMIT ESTATE INC. d/b/a      **MOTION TO DISMISS PURSUANT TO FED.**
18 SUMMIT ESTATE OUTPATIENT, on behalf       **R. CIV. P. 9(b) AND 12(b)(6);**
   of themselves and all others similarly situated, **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES**
19           Plaintiffs,
                                             **[Fed. R. Civ. P. 9(b) and 12(b)(6)]**
20 vs.
                                             Complaint Filed: April 2, 2020
21                                           Trial Date:      None Set
   UNITED BEHAVIORAL HEALTH, a
22 California Corporation, and VIANT, INC., a  Hearing Date:   August 11, 2020
   Nevada Corporation,                        Hearing Time:   2:00 p.m.
23                                            Courtroom:       1
           Defendants.
24

25

26

27

28

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 11, 2020, at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Yvonne Gonzalez Rogers in Courtroom 1 on the 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612,, Defendant, Viant, Inc. ("Viant"), will and hereby does move this Court for an Order, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Class Action Complaint ("Complaint") filed by Pacific Recovery Solutions d/b/a Westwind Recovery, et al. ("Plaintiffs"), on the following grounds:

1.     All of Plaintiffs' state law causes of action against Viant are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

2.     All of Plaintiffs' causes of action against Viant fail to state claims against Viant upon which relief can be granted.

Pursuant to L.R. 7-2(b)(3), Viant requests that the Court dismiss the Complaint in its entirety with prejudice.  This Motion is based on this Notice of Motion, Motion, and the Memorandum of Points and Authorities attached, filed concurrently herewith, all pleadings on file with this Court, and on such oral argument as may be presented at the hearing on this matter.

DATED:  June 11, 2020

By:     _/s/ Moe Keshavarzi_
Moe Keshavarzi
David Dworsky
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, CA  90071
Telephone: (213) 620-1780
Fax:  (213) 620-1398

and

Errol J. King, Jr. (*pro hac vice application pending*)
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone:  (225) 376-0207
Fax:  (225) 381-9197
Attorneys for Defendant, Viant, Inc.

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ......................................1

    I.    Procedural History...................................................................2

    II.   Plaintiffs' Allegations ...............................................................2

ARGUMENT ...............................................................................4

    I.    Plaintiffs' State Law Claims Are Completely Preempted By ERISA, § 502. ......4

    II.   Plaintiffs' Claims Are Also Conflict Preempted By ERISA, § 514.........5

    III.  Plaintiffs' State Law And RICO Claims Are Insufficiently Pled. ............6

        A.    Plaintiffs Consistently Fail To Satisfy The Strictures Of Fed. R. Civ. P. 9(b) With Respect To The Pleading Of Their Fraud-Based Claims.............................................................6

        B.    Plaintiffs Fail To State A Claim For Statutory Unfair Competition. ............7

        C.    Plaintiffs Fail To State A Claim For Intentional Misrepresentation Or Fraudulent Inducement. ...................................................10

        D.    Plaintiffs Fail To State A Claim For Negligent Misrepresentation.............11

        E.    Plaintiffs Fail To State A Claim For Civil Conspiracy. ...............12

        F.    Plaintiffs Fail To State A Claim For Promissory Estoppel. .........13

        G.    Plaintiffs Fail To State A Civil RICO Claim. ......................14

        H.    Plaintiffs Fail To State A Civil Claim Under The Sherman Act.................18

CONCLUSION ............................................................................23

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*ABC Servs. Grp., Inc. v. United Healthcare Servs.*
2019 WL 4137624 (C.D. Cal. June 14, 2019)...........................................................8

*In re Aetna UCR Litigation*
2015 WL 3970168 (D. N.J. June 30, 2015) ............................................................19

*Anza v. Ideal Steal Supply Corp.*
547 U.S. 451 (2006) .................................................................................................17

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
7 Cal. 4th 503 (1994)................................................................................................12

*Ass'n of Wash. Publ. Hosp. Dists v. Philip Morris Inc.*
241 F.3d 696 (9th Cir. 2001)...............................................................................21, 22

*Bias v. Wells Fargo & Co.*
942 F. Supp. 2d 915 (N.D. Cal. 2013) ....................................................................16

*Brantley v. NBC Universal, Inc.*
675 F.3d 1192 (9th Cir. 2012)..................................................................................20

*Cansino v. Bank of Am.*
224 Cal. App. 4th 1462 (2014).................................................................................12

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*
68 Cal. App. 4th 445 (1998).....................................................................................10

*Cleghorn v. Blue Shield of Cal.*
408 F.3d 1222 (9th Cir. 2005)....................................................................................5

*In re Crazy Eddie Secs. Litig.*
714 F. Supp. 1285 (E.D.N.Y.1989)..........................................................................15

*Daugherty v. American Honda Motor Co., Inc.*
144 Cal. App. 4th 824 (2006).....................................................................................8

*Davilla v. Aetna Health*
542 U.S. 200 (2007)................................................................................................4, 5

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*
523 F.3d 1116 (9th Cir.2008)...................................................................................21

*Diaz v. Gates*
420 F.3d 897 (9 Cir. 2005) (en banc).......................................................................17

*Diediker v. Peelle Financial Corp.*
   60 Cal. App. 4th 288 (1997) ................................................................................12

*Disney Enter., Inc. v. Vidangel, Inc.*
   2017 WL 6883685 (C.D. Cal. Aug. 10, 2017) ......................................................20

*Dooley v. Crab Boat Owners Ass'n*
   2004 WL 902361 (N.D. Cal. Apr. 26, 2004) ........................................................14

*Eastman v. Quest Diagnostics Inc.*
   2016 WL 1640465 (N.D. Cal. April 26, 2016) .....................................................21

*Eclectic Props. E, LLC v. Marcus & Millichap Co.*
   751 F.3d 990 (9th Cir. 2014) ...............................................................................11

*Ellis v. J.P. Morgan Chase & Co.*
   2015 WL 78190 (N.D. Cal. January 6, 2015), *aff'd,* 752 Fed. App'x 380 (9th
   Cir. 2018) ............................................................................................................16

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*
   2013 U.S. Dist. LEXIS 190703 (C.D. Cal. Mar. 12, 2013) ....................................4

*FTC v. Advocate Health Care Network*
   841 F.3d 460 (7th Cir. 2016) ...............................................................................19

*Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*
   2013 U.S. Dist. LEXIS 53401 (C.D. Cal. Apr. 10, 2013) ...............................13, 14

*Gens v. Colonia Savings, F.A.*
   2013 WL 1120503 (N.D. Cal. March 18, 2013) ...................................................14

*Gilbert v. Bank of Am.*
   2014 WL 12644028 (N.D. Cal. Sept. 23, 2014) ...................................................17

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*
   352 F.3d 367 (9th Cir. 2003) ...............................................................................21

*Gomez v. Guthy–Renker, LLC*
   2015 WL 427004 (C.D. Cal. July 13, 2015) ........................................................17

*Gonzales v. Lloyds TSB Bank*
   532 F. Supp. 2d 1200 (C.D. Cal. June 7, 2006) ...................................................13

*Hansen v. Marin Gen. Hosp.*
   2018 WL 4638606 (N.D. Cal. Sept. 24, 2018) .....................................................18

*Heldt v. Guardian Life Ins. Co. of Am.*
   2017 U.S. Dist. LEXIS 36490 (S.D. Cal. Mar. 13, 2017) ......................................6

*Hopkins v. American Home Mortgage Servicing, Inc.*
   2014 WL 580769 (N.D. Cal. Feb. 13, 2014)................................................................16

*Jacobsen v. Katzer*
   2006 WL 3000473 (N.D. Cal. Oct. 20, 2006) ............................................................21

*Kendall v. Visa U.S.A., Inc.*
   518 F.3d 1042 (9th Cir. 2008)..................................................................................18

*Khoury v. Maly's of Cal., Inc.*
   14 Cal. App. 4th 612 (1993)........................................................................................8

*Kingray, Inc. v. NBA, Inc.*
   188 F. Supp. 2d 1177 (S.D. Cal. 2002) ....................................................................20

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*
   551 U.S. 877 (2007) .................................................................................................18

*Leonard v. Metlife Ins. Co.*
   2013 U.S. Dist. LEXIS 200342 (C.D. Cal. Feb. 25, 2013) .........................................5

*Linear Tech. Corp. v. Applied Materials, Inc.*
   152 Cal. App. 4th 115 (2007)......................................................................................8

*Mangindin v. Wash. Mut. Bank*
   637 F. Supp. 2d 700 (N.D. Cal. 2009) ......................................................................13

*Miscellaneous Service Workers, Drivers & Helpers v. Philco–Ford Corp.*
   661 F.2d 776 (9th Cir.1981) ......................................................................................15

*Misic v. Building Service Employees Health & Welfare Plan*
   789 F.2d 1374 (9th Cir. 1986) .....................................................................................4

*Morgan v. AT&T Wireless Servs., Inc.*
   177 Cal. App. 4th 1235 (2009)....................................................................................9

*Moss v. Infinity Ins. Co.*
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) ...................................................................7, 9

*In re Musical Instruments & Equip. Antitrust Litig.*
   798 F.3d 1186 (9th Cir. 2015)...................................................................................18

*Newcal Indus., Inc. v. Ikon Office Solution*
   513 F.3d 1038 (9th Cir. 2008)..............................................................................18, 19

*NorthBay Healthcare Group v. Kaiser Foundation Health Plan, Inc.*
   2018 WL 4096399 (N.D. Cal. August 28, 2018) .......................................................22

*Odom v. Microsoft Corp.*
   486 F.3d 541 (9th Cir. 2007) (en banc).....................................................................14

-iv-

*Orcilla v. Big Sur, Inc.*
  244 Cal. App. 4th 982 (2016)............................................................................10

*Paulsen v. CNF Inc.*
  559 F.3d 1061 (9th Cir. 2009)............................................................................5

*Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*
  2017 U.S. Dist. LEXIS 162863 (E.D. Cal. Sept. 29, 2017) ........................................8

*Ragland v. U.S. Bank Nat'l Assn.*
  209 Cal. App. 4th 182 (2012)............................................................................11

*Richardson v. Dallas R. Hall & Associates*
  1996 WL 308261 (N.D. Cal. May 23, 1996) ..................................................15, 16

*Saniefar v. Moore*
  2017 WL 5972747 (E.D. Cal. Dec. 1, 2017)............................................................16

*Smith v. Ayres*
  845 F.2d 1360 (5th Cir. 1988)............................................................................15

*Smith v. City and County of San Francisco*
  225 Cal. App. 3d 38 (1990)............................................................................13

*Solyndra Residual Trust by and through Neilson v. Suntech Power Holdings Co., Ltd.*
  62 F. Supp. 3d 1027 (N.D. Cal. 2014) ..................................................................19

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*
  171 F.3d 912 (3d Cir. 1999)............................................................................21

*Stitt v. Citibank, N.A.*
  2015 WL 75237 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 Fed. App'x 99 (9th Cir. 2018)...............................................................................................16, 17

*Sugarman v. Muddy Waters Capital LLC*
  2020 WL 633596 (N.D. Cal. Feb. 3, 2020)............................................................15

*Summit Estate, Inc. v. United Healthcare of Cal., Inc.*
  2017 U.S. Dist. LEXIS 167462, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017).........................9

*Synopsis, Inc. v. Ubiquiti Networks, Inc.*
  313 F.Supp.3d 1056 (N.D. Cal. 2018) ..................................................................14

*Tanaka v. Univ. of Southern Cal.*
  252 F.3d 1059 (9th Cir. 2001)............................................................................19

*Texaco Inc. v. Dagher*
  547 U.S. 1 (2006) ............................................................................20

-v-

*Twombly. Sidibe v. Sutter Health*
    4 F.Supp.3d 1160 (N.D. Cal. 2013) ...............................................................18, 20

*United States v. Garrido*
    713 F.3d 985 (9th Cir. 2013) ..................................................................................15

*United States v. Miller*
    953 F.3d 1095 (9th Cir. 2020) ................................................................................15

*United States v. Woody's Trucking, LLC*
    2018 WL 443454 (D. Mont. Jan. 16, 2018) ...........................................................15

*Urenia v. Pub. Storage*
    2014 WL 5781250 (C.D. Cal. Nov. 6, 2014) .........................................................15

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*
    2013 WL 12130034 ( C.D. Cal. July 19, 2013) .....................................................17

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*
    865 F.Supp.2d 1002 (C.D. Cal. 2012) ....................................................................19

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*
    903 F.Supp.2d 880 (C.D. Cal. 2012) ...........................................................14, 22, 23

*Wise v. Verizon Commc'ns Inc.*
    600 F.3d 1180 (9th Cir. 2010) ..................................................................................6

*Woodell v. Expedia Inc.*
    2019 WL 3287896 (W.D. Wash. July 22, 2019) ....................................................16

*Yaralian v. Fastovsky*
    2016 U.S. Dist. LEXIS 17161 (C.D. Cal. Feb. 10, 2016) .....................................4, 5

Statutes

15 U.S.C. § 1 .......................................................................................................18, 20

18 U.S.C. § 24 ...........................................................................................................14

18 U.S.C. § 1027 .......................................................................................................14

18 U.S.C. § 1341 .......................................................................................................14

18 U.S.C. § 1343 .......................................................................................................14

18 U.S.C. § 1961(1) ...................................................................................................14

18 U.S.C. § 1962(c) ...........................................................................................6, 14, 16

29 U.S.C. § 502(a) .......................................................................................................4

29 U.S.C. § 1109 ................................................................................................................4

29 U.S.C. § 1132(a) ...........................................................................................................4

Cal. Bus. & Prof. Code § 17200 *et seq.* ...................................................................4, 6, 7

<u>Other Authorities</u>

Fed. R. Civ. P. 9(b)......................................................................................................*Passim*

Fed. R. Civ. P. 12(b)(6) ..............................................................................................*Passim*

SMRH:4852-4229-8047.2
PD.28923060.1

VIANT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>[1]

Defendant Viant, Inc. ("Viant") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint filed by Plaintiffs, Pacific Recovery Solutions d/b/a Westwind Recovery; Miriam Hamideh PhD Clinical Psychologist Inc. d/b/a PCI Westlake Centers; Bridging the Gaps, Inc., and Summit Estate Outpatient, on behalf of themselves and similarly situated out-of-network behavioral health providers (collectively the "Plaintiffs"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (the "Motion"), as follows:

<u>**INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED**</u>

The crux of Plaintiffs' Complaint is their allegation that the Defendants, Viant and United Behavioral Health, Inc. ("United"), engaged in various ways violative of state and federal law to improperly price and pay Plaintiffs for Intensive Outpatient Program treatment ("IOP") that Plaintiffs allegedly provided to patients with "health insurance policies" for which United administered claims.  Plaintiffs allege that they were always entitled to be paid at Usual, Customary and Reasonable Rates ("UCR"), and that, because their full billed charges were generally 100% of UCR, any payment less than what they billed was an underpayment not authorized by the health plans.  They further allege that Viant was a participant with United in a scheme to systematically underpay Plaintiffs and forcing them to attempt to collect from patients through balance-billing, resulting in damages alleged to be in the millions of dollars.[2]

However, each of Plaintiffs' state law causes of action is subject to dismissal because each arises under and is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). In particular, while Plaintiffs fail to identify any of the specific "policies" at issue, at least some of the patients for whom Plaintiffs have submitted claims to United for treatment (and

---

[1] Unless indicated, emphasis is added and all internal quotation marks and citations are omitted.

[2] Plaintiffs fail to note that this so-called scheme, or "grift" as they like to call it, is a legitimate, well-recognized and accepted cost-containment mechanism by which healthcare expenses can be managed, to the benefit of health plans and their participants.  In fact, full-billed charges are arbitrarily established and inflated "sticker prices" that virtually no one ever pays.

which are presumably at issue in this case) are participants or beneficiaries in employee health benefit plans governed by ERISA—a fact which Plaintiffs have not disputed. Moreover, Plaintiffs' own allegations make clear that they are relying on these ERISA plans as the very basis for their state law causes of action, and that each cause of action will necessarily require an interpretation of the ERISA plan terms.

But even if Plaintiffs' state law causes of action were not subject to ERISA preemption, Plaintiffs' vague approach to pleading cannot survive this Motion to Dismiss because the Complaint fails to state any claim against Viant upon which relief can be granted. While Plaintiffs' Complaint contains more than 409 paragraphs of allegations (including their prayers for relief), none of those allegations sets forth any specific conduct by Viant that passes the requirements of Fed. R. Civ. P. 9(b), which applies to the state law claims, as well as to Plaintiffs' RICO claim. Moreover, Plaintiffs state law and RICO claims have other fatal flaws that render those claims subject to dismissal. Finally, Plaintiffs fail to plead sufficient facts to establish their claim under the Sherman Act, and as such, that claim must be dismissed along with Plaintiffs' other claims. Accordingly, and for the reasons set forth more fully below, this Motion should be granted, and Plaintiffs' Complaint should be dismissed in its entirety and with prejudice pursuant to Rules 9(b) and 12(b)(6). Viant also refers to and, by this reference, adopts the arguments raised by co-defendant United Behavioral Health, Inc., in its separate Motion to Dismiss, filed this date.

## BACKGROUND

### I.    Procedural History

Plaintiffs initiated this class action suit on April 2, 2020, in the San Francisco Division of this Court, against Viant and United, seeking reimbursement for IOP treatment allegedly provided to United's insureds under various tort and statutory theories. It was transferred to this Division by agreement of the parties on May 5, 2020. On June 2, 2020, the Court ruled that this matter was related to *LD, et al. v. United Behavioral Health, Inc. et al.*, Case No. 5:20-cv-02254-YGR.

### II.    Plaintiffs' Allegations

Plaintiffs allege that they treat patients suffering from mental health and/or substance abuse disorder. [Complaint, ¶ 2]. They further allege that they provided IOP services to such patients,

1  each of whom possessed active policies of insurance that United sold, underwrote and/or

2  administered.  [*Id.*]. Plaintiffs also allege that "prior to treatment, each of the Plaintiffs confirmed

3  with United that the patient had active coverage and benefits for out of network IOP treatment

4  services and the claims would be paid at a specified rate," and that "[f]or all of the claims at issue  .

5  . . , United represented that the claims would be paid at a percentage of the Usual, Customary, and

6  Reasonable rate ('UCR' rate)."  [*Id.* ¶ 3].  Plaintiffs allege that based on that representation, they

7  agreed to treat United's insureds and timely submitted accurate bills. [*Id.*]. Additionally, by their

8  own admission, Plaintiffs are "out-of-network" providers and thus do not have a contractual

9  relationship with either of the Defendants. [*Id.* ¶¶ 81, 88, 177].

10  Plaintiffs next proceed through a series of allegations attempting to explain the healthcare

11  industry and UCR.  [*Id.* ¶¶ 4–9].  They also describe the IOP services they provide to patients. [*Id.*

12  ¶¶ 10–12]. Plaintiffs then distort what Viant and United do, pursuant to the contractual relationship

13  between them, claiming that it constitutes illegal health claim re-pricing. [*Id.* ¶¶ 13–56]. Plaintiffs

14  also proceed through page after page of conclusory and repetitive allegations regarding what United

15  does, what Viant does, what Plaintiffs allegedly do to obtain payment, and why, in their view, United

16  and Viant engage in improper pricing.  In particular, Plaintiffs falsely represent how they are to be

17  reimbursed, and go on to paint all of this as part of an intentional scheme (the "grift") to harm out-

18  of-network providers like Plaintiffs, all for United's and Viant's monetary benefit.  [*Id.* ¶¶ 71–185].

19  Despite the foregoing, what Plaintiffs have failed to do is suggest a plausible theory

20  explaining why Viant's and United's above-board contractual arrangement to contain healthcare

21  costs is an intentional scheme to defraud Plaintiffs. Equally significantly, Plaintiffs have failed to

22  provide any specific facts regarding the who, what, when, where, or house of the alleged

23  misrepresentations and fraudulent statements that supposedly led to their injuries, an essential

24  element of their state law and RICO claims, and an absolute requirement of Fed. R. Civ. P. 9(b).

25  They also fail, to show how Viant's and United's legitimate business dealings, which resulted in the

26  payment of every claim submitted [*id.* ¶ 79], constitute "racketeering" pursuant to RICO, or a

27  restraint of trade, let alone a *per se* violation of the Sherman Act, when neither Plaintiffs, Viant, nor

28  United compete with each other.

# ARGUMENT[3]

## I.    Plaintiffs' State Law Claims Are Completely Preempted By ERISA, § 502.

Section 502(a) of ERISA, 29 U.S.C. § 1132(a), sets forth the exclusive civil enforcement remedies that may be available to Plaintiff as an assignee of ERISA beneficiaries. *See Misic v. Building Service Employees Health & Welfare Plan*, 789 F.2d 1374, 1378 (9th Cir. 1986). Those remedies include: (i) recovery of benefits or enforcement of benefit plan rights pursuant to § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);  (ii) "appropriate relief" for violations of ERISA § 409, 29 U.S.C. § 1109, pursuant to § 502(a)(2), 29 U.S.C. § 1132(a)(2); and (iii) "other appropriate equitable relief" to address violations of ERISA pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3).

A state law claim that falls within the scope of ERISA, § 502's enforcement remedy is "completely preempted." *Davila v. Aetna Health*, 542 U.S. 200, 210, 221 (2007 "State law legal duties are not independent of ERISA where interpretation of the terms of the benefit plan forms an essential part of the claim, and legal liability can exist only because of the administration of ERISA-regulated benefit plans." *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2013 U.S. Dist. LEXIS 190703, *25 (C.D. Cal. Mar. 12, 2013). In addition, "if a state law claim is identical to a right guaranteed by ERISA or merely duplicates rights and remedies available under ERISA, then it is not independent of ERISA." *Yaralian v. Fastovsky*, 2016 U.S. Dist. LEXIS 17161, *11–12 (C.D. Cal. Feb. 10, 2016).  Here, to the extent that Plaintiffs have valid assignments and standing to sue under ERISA, their claims are completely preempted.

Plaintiffs' first cause of action for violation California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (the "UCL"), is preempted because it is in effect a claim for denial of ERISA benefits. Indeed, Plaintiff's UCL claim is that Viant "improperly underprice[d] out-of-network IOP claims," made various misrepresentations to Plaintiffs regarding payment, "prevent[ed] timely and full payment of IOP claims," and "prevent[ed] Plaintiffs […] from appealing the underpayment," among other things. [*See* Complaint, ¶ 266]. As courts in this Circuit

---

[3] Viant refers to and incorporates the Legal Standards section from pages 5-6 in its concurrently-filed Motion in Case No. cv-02254-YGR.

have consistently recognized, injuries that derive solely from ERISA, such as a failure to pay benefits, cannot be used as the injury-in-fact or economic loss for a UCL claim because those are derivative claims subject to ERISA's exclusive remedies. *See Yaralian* at *19; *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1227 (9th Cir. 2005). *See also Leonard v. Metlife Ins. Co.*, 2013 U.S. Dist. LEXIS 200342, *16 (C.D. Cal. Feb. 25, 2013). For these reasons, Plaintiffs' UCL claim, as well as each cause of action asserted by Plaintiffs, satisfies the two-prong test set forth in *Davila* for complete preemption.

Plaintiffs' second, third, and fourth causes of action — all of which are allegedly based on both state and federal common law and include Viant — attempt to allege claims of intentional misrepresentation/fraudulent inducement, negligent misrepresentation, and civil conspiracy; however, each of these claims is premised upon and includes allegations that Plaintiffs suffered damages arising from the underpayment of claims. [*See* Complaint, ¶¶ 288, 295, 308]. As such, these claims are also preempted by ERISA.

Plaintiffs' sixth cause of action for promissory estoppel is preempted for the same reason: any obligation to pay arises from the terms of the ERISA plans at issue. In their sixth cause of action, Plaintiffs assert a promissory estoppel claim against United based on its alleged promises to pay UCR for IOP services, and against Viant based on its allegedly "clear promise that it had the authority to negotiate with Plaintiffs and that its 'offers' reflected the UCR for IOP services." [Complaint, ¶ 339]. Courts have held that ERISA completely preempts such promissory estoppel claims, which are nothing more than "claim[s] for accrued benefits under [an ERISA] Plan." *Yaralian*, 2016 U.S. Dist. LEXIS 17161 at *12. In light of the foregoing, all of Plaintiffs' state law causes of action are completely preempted by ERISA, § 502(a).

## II.   Plaintiffs' Claims Are Also Conflict Preempted By ERISA, § 514.

Section 514(a) of ERISA, the conflict preemption provision, states that ERISA shall supersede "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA, § 514, 29 U.S.C. §1144(a). A state law claim "relates to" an ERISA plan if it has either a "reference to" or "connection with" such a plan. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081–82 (9th Cir. 2009). "The Ninth Circuit has employed a "relationship test" in analyzing "connection

with" preemption, under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship, e.g., the relationship between plan and plan member, between plan and employer, or between employer and employee." *Heldt v. Guardian Life Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 36490, *24–25 (S.D. Cal. Mar. 13, 2017). Put simply, "where the existence of an ERISA plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted." *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010).

Plaintiffs' state law causes of action, no matter the underlying theory, relate to ERISA-governed employee benefit plans and are therefore conflict preempted by ERISA, § 514. Specifically, each of Plaintiffs' claims relate to the right to receive benefits under the terms of ERISA plans.  Those claims also directly affect the relationship between ERISA entities, as Plaintiffs are seeking to enforce rights and obligations under the ERISA plans and to obtain benefits pursuant to those plans by virtue of assignments from plan participants. Accordingly, to the extent that Plaintiffs' state law causes of are not completely preempted by ERISA § 502(a), they are conflict preempted by § 514 and must be dismissed pursuant to Rule 12(b)(6).

## III.    Plaintiffs' State Law And RICO Claims Are Insufficiently Pled.

### A.    Plaintiffs Consistently Fail To Satisfy The Strictures Of Fed. R. Civ. P. 9(b) With Respect To The Pleading Of Their Fraud-Based Claims.

It is indisputable that several of the causes of action that Plaintiffs assert against Viant allege fraudulent conduct:  Count I.b. – Violation of California Business & Professions Code §§ 17200 *et seq.*; Count II – Intentional Misrepresentation/Fraudulent Inducement; Count III. – Negligent Misrepresentation; Count IV – Civil Conspiracy; and Count VII – Violations of RICO, 18 U.S.C. §1962(c). In some, the reference to fraud is explicit, *e.g.*, Count I.b, Complaint, ¶ 266 (b)–(e), (j)-(o);  Count II, Complaint, ¶¶ 275–78, 282; Count IV, Complaint, ¶¶ 302; and Count VII, Complaint, ¶¶ 351, 353–59.  In others, the allegations incorporate by reference Plaintiffs' allegations in prior portions of the Complaint that describe the purported "scheme" or "grift" – allegations which charge United and Viant with fraud, *e.g.*, Complaint, ¶¶ 18 ("systematically concealed . . . through misrepresentations"); 25-26 ("systematic cover-up"); 31–32 ("no more than a con"); 40–41  ("never told"); 50–52 ("made false representations" and "fraudulently represented"); 91 ("United employs

1  Viant to deceive"); 97 ("United and Viant systematically concealed and continue to conceal"); 110

2  ("This representation, as Viant and United well know, is false"); 218 ("false representations"); 226

3  ("nationwide enterprise of graft deliberately hidden"); and 253 ("Plaintiffs have been told varied

4  and multiple lies by Viant").

5          When all of these allegations are examined, one thing is apparent: they are devoid of any

6  specific factual allegations that the meet the Rule 9(b) standard articulated by the Ninth Circuit. Not

7  one individual on either end of a communication in which an alleged fraudulent statement was made

8  has been identified. Not one date when such a communication was made has been provided.

9  Nowhere has the exact language used in such a communication been set out. Yet, that is precisely

10  what Rule 9(b) requires – "[i]n alleging fraud or mistake, a party must state *with particularity* the

11  circumstances constituting fraud or mistake." (emphasis added).[4] As a result, all of these claims are

12  subject to dismissal with prejudice.

13          **B.      Plaintiffs Fail To State A Claim For Statutory Unfair Competition.**

14          In Count I.b. of their Complaint, Plaintiffs assert that Viant violated the California Business

15  & Professions Code §§ 17200 *et seq.* ('UCL"). To assert a claim for violation of the UCL, a plaintiff

16  must allege facts to plausibly show that the defendant's business act or practice is "(1) unlawful

17  (i.e., is forbidden by law), (2) unfair (i.e., harm to victim outweighs any benefit) or (3) fraudulent

18  (i.e., is likely to deceive members of the public)." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191,

19  1198 (N.D. Cal. 2016). A plaintiff asserting fraudulent business practices under the third prong of

20  the UCL must also satisfy the "heightened pleading requirement" of Fed. R. Civ. P. 9(b). *Id.*

21          Plaintiffs' UCL claim should be dismissed because it fails to set forth with the required

22  specificity how Viant acted unlawfully, unfairly, or fraudulently, or otherwise participated in any

23  alleged misconduct that falls with the reach of the UCL. Absent from the Complaint are any

---

25  [4] Plaintiffs, citing *People ex rel. Lockyer v. Pac. Gaming Techs.,* 82 Cal. App. 4th 699, 701 (2000),

26  a wholly inapposite case, attempt to justify their broad-brush pleading of their fraud claims by

27  arguing that "if it looks like a duck, walks like a duck, and sounds like a duck, it is a duck." [*See*

28  Complaint, ¶ 281]. However, Rule 9(b) requires much more than that.

allegations identifying, with "reasonable particularity," the "facts supporting the statutory elements of the violation." *See Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993). Therefore, regardless of which prong Plaintiff is relying upon, its conclusory allegations are insufficient to state a UCL claim against Viant under any theory.

"Unlawful" is defined as "an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *ABC Servs. Grp., Inc. v. United Healthcare Servs.*, 2019 WL 4137624 (C.D. Cal. June 14, 2019), at *20. To adequately allege a UCL claim under the "unlawful" prong, a plaintiff must allege sufficient facts to establish an underlying violation of a law. *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006). While Plaintiffs' Complaint cites multiple statutory provisions that Viant allegedly violated, it fails to identify which of Viant's alleged acts or omissions violated which particular statutory provisions or to otherwise set forth facts demonstrating how Viant's conduct violated such provisions. Courts have previously found that allegations very similar to those asserted by Plaintiffs in the instant case "are not sufficient to support a claim that Defendants engaged in practices forbidden by law." *ABC Servs. Grp., Inc.*, 2019 U.S. Dist. LEXIS 168445 at *21. Without any facts to plausibly establish a statutory violation, Plaintiffs' UCL claim cannot survive under the "unlawful" prong.

As to the "unfair" prong, courts have noted that the term "unfair" is not clearly defined in the UCL, and that California courts have articulated three possible tests for determining if an alleged practice is "unfair." *Id.* at *21–22. But like the plaintiff-assignee in that case, Plaintiffs have alleged no facts that would allow this Court to perform any one of those tests. In fact, Plaintiffs do not even allege any specific unfair behavior. Thus, to the extent Plaintiffs rely on an "unfair" theory of liability, Plaintiffs' UCL claim should be dismissed, as it fails to explain how Defendants acted unfairly. *See Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*, 2017 U.S. Dist. LEXIS 162863, *9–10 (E.D. Cal. Sept. 29, 2017); *ABC Servs. Grp., Inc.*, 2019 WL 4137624 at *22–23. Further, any claim under the unfairness prong fails because Plaintiffs fail to allege that they were competitors, consumers, or otherwise treated unfairly as prohibited by the UCL. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (rejecting UCL claim where "the alleged victims are neither competitors nor powerless, unwary consumers"). Moreover,

1    to the extent Plaintiffs are proceeding under the "fraudulent" prong of the UCL, Viant has already

2    shown that Plaintiffs' Complaint provides none of the details required under Rule 9(b) to assert such

3    a claim. *See Moss*, 197 F. Supp. 3d at 1198.

4            Perhaps more importantly, Plaintiffs do not plead sufficient facts to demonstrate that they

5    even have standing to assert a UCL claim under any one of the three prongs. "In addition to pleading

6    facts sufficient to show that the defendant's acts constituted an unlawful, unfair, or fraudulent

7    business practice" under § 17200, a plaintiff asserting a UCL cause of action must "also plead facts

8    sufficient to establish he or she has standing to bring an action under the UCL as amended by

9    Proposition 64," which requires a showing that the plaintiff "has suffered injury in fact and has lost

10   money or property as a result of the unfair competition." *Morgan v. AT&T Wireless Servs., Inc.*, 177

11   Cal. App. 4th 1235, 1253, 1257 (2009). While Plaintiffs allege, pursuant to UCL § 17203, that they

12   are entitled to restitution based on "the UCR […] and the alleged underpayment they received for

13   IOP services provided,"[5] and that Viant should disgorge monies it received from United, this claim

14   does nothing more than simply restate the legal elements necessary to establish standing under the

15   UCL. [*See* Complaint, ¶¶ 269–70]. Plaintiffs' Complaint is bereft of any facts to support these

16   conclusory assertions or to otherwise establish Plaintiff's standing, and as such, its UCL claim fails.

17           Finally, because the UCL only provides for equitable relief, a plaintiff alleging a UCL cause

18   of action must establish "that there is no adequate remedy at law available." *See Summit Estate, Inc.*

19   *v. United Healthcare of Cal., Inc.*, 2017 U.S. Dist. LEXIS 167462, *34–36, 2017 WL 4517111

20   (N.D. Cal. Oct. 10, 2017). To satisfy this requirement, the complaint "must set forth facts to show

21   the [alleged] breach cannot be adequately compensated for in damages; failing this, it does not state

22   a cause of action." *Id.* at 35. Plaintiffs contend that their legal remedies are inadequate; however,

23   given the other causes of action that clearly allege causes of action that provide legal remedies, this

24   assertion is baseless.  Accordingly, Plaintiffs' UCL claim against Viant must be dismissed.

25

26   ───────────────

27   [5] Plaintiffs' allegation, as stated, would provide them with a double recovery; apparently, they

28   omitted the all-important "difference between" UCR and what they received.

**C.      Plaintiffs Fail To State A Claim For Intentional Misrepresentation Or Fraudulent Inducement.**

Under California law, "[f]raud is an intentional tort," and "it is the element of fraudulent intent, or intent to deceive, that distinguishes it from actionable negligent misrepresentation and from nonactionable innocent misrepresentation. It is the element of intent which makes fraud actionable, irrespective of any contractual or fiduciary duty one party might owe to the other." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal. App. 4th 445, 482 (1998). "Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages." *Orcilla v. Big Sur, Inc.,* 244 Cal. App. 4th 982, 1008 (2016). Indeed, even assuming that a claimant has relied on an "actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes. If the defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent inducement, causation cannot be alleged and a fraud cause of action cannot be sustained." *Id*.

In addition to the fatal infirmities in Count II of the Complaint previously pointed out in connection with Viant's discussion of the Plaintiffs' failure to satisfy the strictures of Rule 9(b), Plaintiffs' claim for intentional misrepresentation/fraudulent inducement proceeds from the premise that Viant and United, rather than attempting to control healthcare costs for the health benefit plans contracted with United, as well as their members, are engaged in a concerted effort to systematically underpay claims from Plaintiffs with the intent to "push[] more expensive, out-of-network providers out of business." [*See* Complaint, ¶ 283]. Plaintiffs further allege that "United and Viant knew they were deceiving the Plaintiffs," with the result that both would receive additional monies from the scheme, depriving Plaintiffs of funds to which they were allegedly entitled. [*Id.,* ¶ 282]. However, other than these conclusory allegations, Plaintiffs can point to nothing that suggests that Viant made any representation that it knew to be false with the necessary intent. Thus, under the very cases cited in Plaintiffs' Complaint, at least three of the five elements needed to establish claims of fraudulent inducement or intentional misrepresentation are missing. Further, under the *Iqbal/Twombly* plausibility standard, Plaintiffs' claims in Count II must fall because they fail to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556

U.S. at 663 (citing *Twombly*, 550 U.S. at 556); *Eclectic Props. E, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (deciding whether a complaint contains "sufficient 'factual enhancement' to cross 'the line'" between speculation and plausibility requires a "context specific" determination that the court must make by "drawing on its judicial experience and common sense").

More plausible, because it is consistent with the actual facts, are the legitimate concerns and efforts undertaken by United, employing Viant, to reign in the costs associated with providers such as Plaintiffs. As noted previously, Plaintiffs allege that they are entitled to be paid the full amount they bill for every claim submitted because they claim that they never charge anything but UCR. But in reality, this is never true; the whole concept of managed care is necessary to put a check on the charges that providers submit, allowing health benefit plans and their members to receive treatment at more reasonable costs. Indeed, the mechanism that Plaintiffs deride as "beyond 'useful business practices'" is not such at all. Viant's involvement in that process, both with respect to repricing and negotiation are not intended to, and in fact, do not defraud or intentionally misrepresent anything. Instead, they are intended to implement the goal of ensuring that claims submitted are properly priced, and where such action is warranted, negotiated to ensure that payment is appropriate once United so directs.[6] That Viant receives recompense for providing such services is not the result of fraud or intended to encourage fraud; it is simply part of a legitimate business arrangement. Plaintiffs' attempt to convert this arrangement into something nefarious through their conclusory allegations should not be allowed. Count II of the Complaint should be dismissed with prejudice pursuant to Rules 9(b) and 12(b)(6).

### D.    Plaintiffs Fail To State A Claim For Negligent Misrepresentation.

"The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th

---

[6] Thus, Plaintiffs received exactly the amounts to which they were entitled; no damages were sustained.

182, 196 (2012). "Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.  If defendant's belief is both honest and reasonable, the misrepresentation is innocent and there is no tort liability." *Diediker v. Peelle Financial Corp.*  60 Cal. App. 4th 288, 297 (1997). Moreover, "[t]he law is well established that actionable misrepresentations must pertain to past or existing material facts. Statements or predictions regarding future events are deemed to be mere opinions which are not actionable." *Cansino v. Bank of Am.*,  224 Cal. App. 4th 1462, 1469 (2014).

Count III of the Complaint appears to be a "tag-along" claim limited to seven paragraphs. It covers the same ground as Count II.  Plaintiffs simply assert that there were representations made; that they were not true based on the alleged intent of United and Viant not to live up to them; and that it was United's and Viant's intent that Plaintiffs would rely on the representations made. Again, nothing is alleged that comes close to the requirements of Rule 9(b). Moreover, Plaintiffs' assertions that United did not intend to pay UCR for IOP services, and that Viant did not intend to negotiate in an amount equivalent to the "actual" UCR rate (which Plaintiffs fail to identify), are unsupported, conclusory allegations belied by the reality – that United, with Viant's assistance when called upon, was seeking to control costs for the health benefit plans with which United contracted.  There is nothing alleged by Plaintiffs to suggest that it is not plausible that, for purposes of this Motion, that Viant did not reasonably believe that the statements made to Plaintiffs were true.  Also, the alleged statements point only to future actions, which are not actionable.  Under the circumstances, Count III of the Complaint is subject to dismissal with prejudice.

### E.    Plaintiffs Fail To State A Claim For Civil Conspiracy.

Plaintiffs' attempt to hold Viant liable based on the theory of civil conspiracy is equally without merit. Under California law, conspiracy is not an independent cause of action, but "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). The elements of a civil conspiracy claim include: "(1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a

conspiracy." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 708 (N.D. Cal. 2009). In addition, the conspiring defendants must "have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." *Gonzales v. Lloyds TSB Bank*, 532 F. Supp. 2d 1200, 1208 (C.D. Cal. June 7, 2006). Plaintiffs' claims of civil conspiracy are nothing more than cursory, boilerplate-type allegations cast in the form of factual assertions. As the other claims that allege tortious activity are unsustainable, Plaintiffs' claim for civil conspiracy lacks an essential element:  an underlying tort. Accordingly, Plaintiffs have failed to state a claim against Viant for civil conspiracy, and Count IV of their Complaint should be dismissed.

### F.   Plaintiffs Fail To State A Claim For Promissory Estoppel.

The elements for a claim of promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*, 2013 U.S. Dist. LEXIS 53401, *12 (C.D. Cal. Apr. 10, 2013). Plaintiffs' claim fails at the outset, because it does not allege any promise whatsoever on the part of either Viant, much less a "clear and unambiguous" promise. Moreover, while Plaintiffs attempt to characterize routine verification and/or preauthorization communications as "a promise to pay," courts have consistently rejected such arguments, holding that "representations about the terms of certain insurance policies […] do not amount to a clear and unambiguous promise by Defendants to pay for substance abuse treatment services" at the rate set forth in those policies.  *See Pac. Bay Recovery*, 12 Cal. App. 5th at 204, 215 n.6.

Finally, even if Plaintiffs had alleged that Viant made a clear and unambiguous promise, its claim would nevertheless fail because Plaintiffs have not pled any facts to establish justifiable reliance. A "party claiming estoppel must specifically plead all facts relied on to establish its elements," and "[o]ne essential element is detrimental reliance by the promisee." *Smith v. City and County of San Francisco,* 225 Cal. App. 3d 38, 48 (1990). Mere conclusory allegations by a plaintiff that it "reasonably and justifiably relied" on alleged promises by a defendant will not suffice. *Id.* Plaintiffs nakedly assert here that "there was a well-established course of conduct where Plaintiffs had been promised reimbursement at the UCR rate and had received payment at the UCR rate;

therefore, reliance was reasonable." [Complaint, ¶ 337]. But they do not set forth a single fact to support these assertions. *See Gateway Rehab*, 2013 U.S. Dist. LEXIS 53401 at *13–14. As a result, Plaintiffs fail to state a claim for promissory estoppel, and their sixth cause of action must be dismissed with prejudice.

### G.    Plaintiffs Fail To State A Civil RICO Claim.

Plaintiffs allege in Count VII that Defendants have engaged in conduct which violates 18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). For the reasons set forth below, Plaintiffs fail to allege sufficient facts to establish a § 1962(c) violation on the part of Viant.

"To plead a RICO pattern, at least two predicate acts of racketeering activity need to be alleged." *Synopsis, Inc. v. Ubiquiti Networks, Inc.*, 313 F.Supp.3d 1056, 1077 (N.D. Cal. 2018) (citation omitted).  Furthermore, "where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F.Supp.2d 880, 914 (C.D. Cal. 2012) (emphasis in original); *accord*, *Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, *5 (N.D. Cal. Apr. 26, 2004).  Plaintiffs have failed to allege facts showing that Viant committed two predicate acts.

As an initial matter, Plaintiffs appear to allege that Defendants have engaged in a pattern of racketeering activity through the commission of certain "Health Care Offenses," as defined by 18 U.S.C. § 24, and violations of a penal provision of ERISA, 18 U.S.C. § 1027. [*See* Complaint, ¶¶ 354–59]. However, these offenses are not included in the statutory list of predicate acts (criminal violations that can constitute "racketeering activity") found in 18 U.S.C. § 1961(1). Thus, these allegations fail as a matter of law to provide a factual basis for the "racketeering activity" element of Plaintiffs' RICO claim. *See Gens v. Colonia Savings, F.A.*, 2013 WL 1120503, *6 (N.D. Cal. March 18, 2013) (granting motion to dismiss without leave to amend; criminal trespasses/home invasions alleged as predicate acts not among offenses listed in 18 U.S.C. § 1961(1)).

Plaintiffs also attempt to allege mail fraud (18 U.S.C. § 1343) and wire fraud (18 U.S.C. § 1341) as the predicate acts to support their RICO claim. [*See* Complaint, ¶¶ 348, 371, 380].  Both

mail and wire fraud have four essential elements, which must be pleaded in conformity with Rule 9(b): "(1) a scheme to defraud, (2) the statements made and facts omitted as part of the scheme were material, (3) use of the wires, or United States mail, in furtherance of the scheme, and (4) a specific intent to deceive or defraud." *United States v. Woody's Trucking, LLC*, 2018 WL 443454, * (D. Mont. Jan. 16, 2018) (citing *United States v. Woods*, 335 F.3d 993, 997–99 (9th Cir. 2003)). *See also Sugarman v. Muddy Waters Capital LLC*, 2020 WL 633596, *4 (N.D. Cal. Feb. 3, 2020). As to the fourth element, the Ninth Circuit recently clarified that, to be guilty of mail or wire fraud, "a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat." *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020) (emphasis in original). Additionally, the mail and wire fraud statues both include an "interstate nexus" requirement; in the case of mail fraud, this element is satisfied by the use of the United States postal service. *See Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988). "A claim for wire fraud, however, requires that wire communication cross state lines." *Richardson v. Dallas R. Hall & Associates*, 1996 WL 308261, *2 (N.D. Cal. May 23, 1996). *See also United States v. Garrido*, 713 F.3d 985, 998 (9th Cir. 2013).

Here, Plaintiffs' conclusory allegations of mail and wire fraud fail at the outset because, as discussed above, Plaintiffs have failed to allege any fraud, by either Defendant, with the requisite particularity required under Rule 9(b). *See, e.g.*, *Urenia v. Pub. Storage*, 2014 WL 5781250, *6 (C.D. Cal. Nov. 6, 2014).[7] Plaintiffs' allegations of mail and wire fraud are also insufficient because Plaintiffs do not plead that any wire communications crossed state lines — a necessary to sustain a

---

[7] "In the context of civil RICO where the predicate acts are based on mail and wire fraud, the policies underlying Rule 9(b) are 'especially important in RICO cases because of the harm to a person's reputation that allegations of "racketeering" may do.' *In re Crazy Eddie Secs. Litig.,* 714 F. Supp. 1285, 1292–93 (E.D.N.Y.1989). The allegations of fraud must include the time, place, and specific content of the false representation. *See Miscellaneous Service Workers, Drivers & Helpers v. Philco–Ford Corp.,* 661 F.2d 776, 782 (9th Cir.1981).

claim of wire fraud. Plaintiffs in this case have alleged only that (1) some communications to further the alleged scheme were transmitted by wire, and that (2) "interstate wire facilities" were used. [*See* Complaint, ¶¶ 50, 266, 354, 359, 376, 381–82]. But there is no allegation describing any particular communication sent by "wire" (fax, phone, or otherwise) that crossed a state line, which is fatal to Plaintiffs' claim. *See Saniefar v. Moore*, 2017 WL 5972747, *10 (E.D. Cal. Dec. 1, 2017) (claim dismissed where no allegation of interstate communication); *Richardson*, 1996 WL 308261, *2. Also absent from Plaintiffs' Complaint are any factual allegations demonstrating a specific intent to deceive or defraud on the part of Viant. For these reasons, Plaintiffs fail to establish that Viant engaged in any "pattern of racketeering activity," and as such, their RICO claim fails.

Plaintiffs attempt to plead the existence of an "association-in-fact" enterprise, consisting of United and Viant. [*See* Complaint, ¶¶ 366–77]. To sustain a RICO claim where an "association-in-fact" enterprise is concerned, Plaintiffs must allege three separate elements: "(i) a common purpose of engaging in a course of conduct; (ii) evidence of an ongoing organization, formal or informal; and (iii) evidence that the various associates function as a continuing unit." *Hopkins v. American Home Mortgage Servicing, Inc.*, 2014 WL 580769, *4 (N.D. Cal. Feb. 13, 2014). The U.S. Supreme Court has also recognized "the basic principle" that § 1962(c) "imposes a distinctiveness requirement—that is, one must allege two distinct entities: a 'person' and an 'enterprise' that is not simply the same 'person' referred to by a different name." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 939 (N.D. Cal. 2013). In other words, liability under RICO "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Bias*, 942 F.Supp.2d at 939 (emphasis in original).

"Where the alleged association-in-fact is formed through routine contracts for services, the 'common purpose' element is unmet because the entities are pursuing their own individual economic interests, rather than a shared purpose." *Woodell v. Expedia Inc.*, 2019 WL 3287896, *8 (W.D. Wash. July 22, 2019); *see Stitt v. Citibank, N.A.*, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 Fed. App'x 99 (9th Cir. 2018); *see also Ellis v. J.P. Morgan Chase & Co.,* 2015 WL 78190, at *4 -*6 (N.D. Cal. January 6, 2015)*, aff'd,* 752 Fed. App'x 380, 382 (9th Cir. 2018). Here, Plaintiffs attribute all of Viant's actions to its performance of its service contract with United. [*See*

-16-

Complaint, ¶¶ 18, 33, 53, 76, 96, 116, 139, 144, 163, 231]. To the extent that there was a "fraudulent common purpose" to systematically underpay for out-of-network services, this purpose could not have been shared by Viant, which Plaintiffs allege (1) was not informed of the terms of any subscriber agreement, and (2) could only agree to reimbursements pursuant to strict pricing terms established by United. [Complaint, ¶¶ 38-39, 43-44, 47, 116].  There is simply no allegation which shows that Viant acted as a member of a racketeering "enterprise," rather than as a company conducting its own affairs.

"Despite the wide variety of approaches adopted by courts in interpreting the requirements of RICO, there has been a remarkable uniformity in their conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Gomez v. Guthy–Renker, LLC*, 2015 WL 427004, *11 (C.D. Cal. July 13, 2015) (listing cases). The Complaint fails to allege that Viant did anything more than carry out the terms of its service contract with United.  On this showing, Plaintiffs' enterprise allegations fail as a matter of law.  *Stitt*, 2015 WL 75237, at *5.

Finally, plaintiffs failed to allege two crucial elements to any RICO claim:  standing  and proximate cause.  "In order to state a RICO claim, Plaintiffs must allege they suffered injury to their 'business or property' as a proximate result of the alleged racketeering activity." *Gilbert v. Bank of Am.*, 2014 WL 12644028, *4 (N.D. Cal. Sept. 23, 2014).  "Without a harm to a specific business or property interest - a categorical inquiry typically determined by reference to state law - there is no injury to business or property within the meaning of RICO."  *Diaz v. Gates*, 420 F.3d 897, 900 (9 Cir. 2005) (en banc).  Plaintiffs have failed to allege any such injury, as they were paid appropriately.

"When a Court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steal Supply Corp.*, 547 U.S. 451, 461 (2006).  "If Plaintiffs are unable to show that anyone relied on Defendants' allegedly wrongful conduct, they cannot show that they were injured by reason of a RICO predicate offense." *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, *17 ( C.D. Cal. July 19, 2013) (dismissing civil RICO claim premised on mail fraud brought by health care

1  subscribers and providers alleging underpayment of UCR rates).  Again, Plaintiffs have failed to

2  allege that they suffered any cognizable harm.

3      For all of the preceding reasons, Plaintiffs' civil RICO claims must be dismissed.

4      **H.    Plaintiffs Fail To State A Civil Claim Under The Sherman Act.**

5      Plaintiffs seek to assert the civil remedy provided by Section 4 of the Clayton Act (15 U.S.C.

6  § 15) for a violation of Section 1 of the Sherman Act (15 U.S.C. § 1).  Plaintiffs allege the conclusion

7  (without any supporting facts) that Viant and United engaged in a "horizontal   price-fixing"

8  conspiracy and do so in order to invoke the well-established doctrine that such agreements are a *per

9  se* violation of the Sherman Act.  [Complaint, ¶¶ 400, 402]. However, Plaintiffs' allegations fail to

10  support any reasonable inference that there existed a conspiracy among competitors to fix the price

11  of a given product in a given market.  Their claim of a *per se* violation is thus without merit.

12  Moreover, their allegations also fail to establish a violation under a  "rule of reason" analysis.  *See*

13  *Leegin Creative Leather Products, Inc. v. PSKS, Inc.,* 551 U.S. 877, 885–89 (2007).

14      "To establish a section 1 violation under the Sherman Act, a plaintiff must demonstrate . . .

15  (1) an agreement, conspiracy, or combination among two or more persons or distinct business

16  entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually

17  causes injury to competition, beyond the impact on the claimant, within a field of commerce in

18  which the claimant is engaged (*i.e.*, 'antitrust injury')." *Hansen v. Marin Gen. Hosp.*, 2018 WL

19  4638606, *12 n.10 (N.D. Cal. Sept. 24, 2018) (*quoting McGlinchy v. Shell Chem. Co.*, 845 F.2d

20  802, 811 (9th Cir. 1988)). Following the Supreme Court's decision in *Twombly*, which also involved

21  a Section 1 claim, the Ninth Circuit clarified that a plaintiff asserting a Section 1 claim must not

22  plead ultimate facts, but "evidentiary facts" which, if true, prove each element of a Section 1 claim.

23  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) (emphasis supplied) (citations omitted).

24      Section 1 claims require the delineation of a relevant product and geographic market, and

25  typically address either horizontal (competitor) or vertical (supplier-retailer) agreements that

26  restrain trade or injure competition within the relevant marketplace. *See In re Musical Instruments

27  & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015); *Newcal Indus., Inc. v. Ikon Office

28  Solution*, 513 F.3d 1038, 1044–45 (9th Cir. 2008). However, Plaintiffs' allegations defining the

-18-

alleged antitrust conspiracy are confined to the barebones assertion that United and Viant entered into a "horizontal conspiracy" to "fix" the "price" paid *to* Plaintiffs "as UCR. [*See* Complaint, ¶¶ 394–400]. These allegations lack the detail necessary to state a cognizable antitrust claim.

"First and foremost, the relevant market must be a *product* market." *Newcal Indus.,* 513 F.3d at 1045 (emphasis in original). Payments made by United to Plaintiffs, at UCR or below rates, are not "products" which United, Viant, or anyone else produces for sale in a marketplace. *See FTC v. Advocate Health Care Network*, 841 F.3d 460, 467 (7th Cir. 2016). Here, there is no allegation that Plaintiffs purchased *any* "product" from either United or Viant.

Plaintiffs also err in describing the putative conspiracy to underpay UCR as a conspiracy to fix "prices." In antitrust parlance a price is something paid *for* a product; not a product itself. *See Solyndra Residual Trust by and through Neilson v. Suntech Power Holdings Co., Ltd.*, 62 F. Supp. 3d 1027, 1040–41 (N.D. Cal. 2014).  Because UCR rates are not the "price" of any "product," the "fixing" of UCR rates cannot be the basis of a "price-fixing" conspiracy. *In re Aetna UCR Litigation*, 2015 WL 3970168, *24 (D. N.J. June 30, 2015) (rejecting claim of a "price-fixing" conspiracy, because "while labeling such conduct as an agreement to fix *price*, plaintiffs actually fail to allege that the price of any product or service has been fixed or restrained." (emphasis in original)).

Equally significant, Plaintiffs fail to define a geographic market. "The geographic market extends to the area of effective competition where buyers can turn for alternative sources of supply." *Tanaka v. Univ. of Southern Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). This failure is problematic, given that one of the things Plaintiffs find fault with is United and Viant's purported failure to adjust UCR rates to the prices customary to an individual Plaintiff's geographic location. [*See* Complaint, ¶¶ 34–35].  Without knowing what geographic region is at issue, there is no way to determine who the other players in the relevant product market may be, the relevant market price (within that region) for such product, and the level of market power the defendants possess.[8]

---

[8] "In addition to identifying a relevant market, a plaintiff must allege that the defendant has 'market power' within that market—otherwise the defendant's restraint on trade would not have a substantial anticompetitive effect."  *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 865 F.Supp.2d

The absence of factual allegations about a relevant (product and geographic) market also dooms Plaintiffs' allegation that any agreement between United and Viant was a "horizontal" conspiracy. A "horizontal" conspiracy to fix prices (a *per se* violation of the Sherman Act) involves a conspiracy among *competitors* in the relevant marketplace; that is, it involves a conspiracy among persons (with market power) who sell the same relevant product in the same geographic area. *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006). Plaintiffs present no factual allegations which even suggest that United and Viant are competitors, in regard to *any* product, in *any* geographic market. To the contrary, the complaint alleges that Viant provides services to insurers (including United), but does not allege that Viant is itself a health insurer (like United). [*See* Complaint, ¶¶ 13, 92]. No horizontal conspiracy can be inferred from this Complaint. *See Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1199–200 (S.D. Cal. 2002).[9]

_____

1002, 1029 (C.D. Cal. 2012) (internal quotation marks in original). The sole reference in the Complaint to "market power" is the conclusory statement that "[b]ecause of the overwhelming market power that United and Viant maintain in the market, there is no way to avoid interaction with the conspiracy." [Complaint, ¶ 399]. Plaintiffs provide no relevant market allegations to support this conclusion facts. This fails to meet of the requirements of *Twombly*. *Sidibe v. Sutter Health*, 4 F.Supp.3d 1160, 1180 (N.D. Cal. 2013).

[9] The paucity of Plaintiffs' allegations makes it impossible to discern even a "vertical" conspiracy to fix prices. A "vertical" conspiracy occurs when firms operating at different levels of a given product's distribution chain take a concerted action that produces anticompetitive effects. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1998-99 (9th Cir. 2012). Again, however, it is necessary to first isolate a product and geographic market before the level of the relevant market at which a firm operates can be determined. Plaintiffs simply fail to plead sufficient factual detail to permit a reasonable inference that United and Viant were horizontally or vertically affiliated in any relevant market, and thus fail to adequately plead a Section 1 violation. *Disney Enter., Inc. v. Vidangel, Inc.*, 2017 WL 6883685 (C.D. Cal. Aug. 10, 2017).

Plaintiffs also fail to allege antitrust injury. Antitrust injury requires proof of "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003).[10] Plaintiffs cannot show that they suffered an antitrust injury, because they cannot show that they were either competitors or consumers of products offered by United/Viant in any relevant market, or otherwise participated in any relevant market. There is no allegation that Plaintiffs purchased anything from United and/or Viant or competed with them in any way. Without a showing that Plaintiffs' injuries were the result of transactions within a discrete marketplace, transactions in which Plaintiffs in some way participated, Plaintiffs cannot show that any injury they suffered was "of the type the antitrust laws were intended to prevent." *See Ass'n of Wash. Publ. Hosp. Dists v. Philip Morris Inc.*, 241 F.3d 696, 705 (9th Cir. 2001); *Jacobsen v. Katzer*, 2006 WL 3000473, *3 (N.D. Cal. Oct. 20, 2006).

Finally, Plaintiffs fail to allege antitrust standing under the § 4 of the Clayton Act, 15 U.S.C. § 15(a). "The Supreme Court has interpreted that section narrowly, thereby constraining the class of parties that have statutory standing to recover damages through antitrust suits." *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120 (9th Cir.2008) (citation omitted).[11]

To determine whether an injury is "too remote" to allow recovery under the antitrust laws, courts in the Ninth Circuit consider three factors: "(1) whether there are more direct victims of the

---

[10] "In addition, the injured party must be a participant in the same market as the alleged malefactor. In other words, the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Eastman v. Quest Diagnostics Inc.*, 2016 WL 1640465, *6 (N.D. Cal. April 26, 2016).

[11] As this suggests, the antitrust standing requirement addresses the same issues as the RICO standing requirement, and (like RICO standing) precludes suit by a plaintiff whose injury is too remote from the alleged antitrust violation. *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 921 (3d Cir. 1999).

1   alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general;

2   (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to

3   defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules

4   apportioning damages to obviate the risk of multiple recoveries." *Ass'n. of Wash. Publ. Hosp. Dists.*

5   *v. Philip Morris Inc.*, 241 F.3d at 701; *see also NorthBay Healthcare Group v. Kaiser Foundation*

6   *Health Plan, Inc.*, 2018 WL 4096399, *6 (N.D. Cal. August 28, 2018).

7          These principles were applied in a similar case involving claims of underpayment of UCR

8   rates, to the conclusion that medical providers lack antitrust standing to assert such claims:

> Applying this three-factor test, it is plain that the Provider and Association Plaintiffs
> cannot establish antitrust standing. First, there exist more direct victims in the form
> of the Subscribers. Without the under-reimbursements to the Subscribers, the
> Providers would not have encountered difficulty in collecting a usual, customary,
> and reasonable rate for services rendered to their Subscriber-patients. In other words,
> there is no "direct link" between the harm the Provider Plaintiffs suffered and
> Defendants' alleged misconduct, which is entirely derivate of the injury inflicted on
> the Subscribers. . . .    In sum, because the harm suffered by the Provider and
> Association Plaintiffs merely flows from the misfortunes visited upon the
> Subscribers by WellPoint and the Insurer Conspirators' acts, the proximate cause
> requirement is not met.
>
> * * * * *
>
> Second, ascertaining the Provider and Association Plaintiffs' damages attributable to
> WellPoint's wrongful conduct would entail considerable speculation regarding how
> the Subscribers would have behaved had WellPoint accurately disclosed its ONS
> reimbursement metrics, including whether a subscriber would have selected a
> different ONS provider or an in-network provider, or would have agreed to pay the
> balance had they been informed of the lower ONS reimbursement figures upfront.
> Finally, the potential for duplicative recovery weighs against standing given that the
> Subscriber Plaintiffs' causes of action for breach of contract and nonpayment of
> benefits under ERISA section 1132(a)(1)(B) seek recovery for the same under-
> reimbursements.

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F.Supp.2d 880, 902 (C.D.

Cal. 2012).   The same analysis applies here.   Neither United nor Viant has any contract *with*

*Plaintiffs* under which UCR payments are owed.   Complaint, ¶¶ 6, 17, 81, 177.   Rather, United's

payment obligations are determined by the terms of the subscribers' policies.   Thus, any

underpayment which Plaintiffs may receive is an injury entirely derivative of the more direct injury

(the putative breach of contractual or ERISA obligations) to the subscribers.   Moreover, the same

1    uncertainty that existed in *In re Wellpoint* regarding what subscribers would have done had they

2    been advised in advance of the specific UCR rates United would pay (seek a different provider,

3    agree to nonetheless pay the balance, *etc.*) exists here.  Finally, the subscribers in this case are not

4    only capable of asserting breach of contract and ERISA claims based upon this alleged

5    underpayment of UCR rates, but they have in fact have done so, in a separate lawsuit currently

6    pending in this Court.[12]  Plaintiffs lack antitrust standing.

7        For all of the preceding reasons, Plaintiffs' Sherman Act claim must be dismissed.

8                                    **<u>CONCLUSION</u>**

9        For the foregoing reasons, Defendant Viant, Inc. respectfully requests that this Court grant

10   its Motion and dismiss Plaintiffs' Complaint in its entirety.

11

12

13   DATED: June 11, 2020                    By:/s/ Moe Keshavarzi
                                                Moe Keshavarzi
14                                              David Dworsky
                                                Sheppard Mullin
15                                              333 South Hope Street, 43rd Floor
                                                Los Angeles, CA 90071
16                                              Telephone: (213) 620-1780
                                                Fax: (213) 620-1398
17
                                                and
18
                                                Errol J. King, Jr. (*pro hac vice application pending*)
19                                              Phelps Dunbar LLP
                                                II City Plaza
20                                              400 Convention Street, Suite 1100
                                                Baton Rouge, Louisiana 70802
21                                              Telephone: (225) 376-0207
                                                Fax: (225) 381-9197
22
                                                Attorneys for Defendant, Viant, Inc.
23

24

25

26   _____

27   [12] *LD, et al. v. United Behavioral Health, Inc.*, Civil Action No. 5:20-cv-02254-YGR in the United

28   States District Court for the Northern District of California.