HEATHER L. RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
LAUREN M. BLAS, SBN 296823
  lblas@gibsondunn.com
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

GEOFFREY SIGLER (*admitted pro hac vice*)
  gsigler@gibsondunn.com
JOSHUA LIPTON (*admitted pro hac vice*)
  jlipton@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.995.8500
Facsimile:  202.467.0539

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE INC. d/b/a SUMMIT ESTATE OUTPATIENT, on behalf of themselves and others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, and VIANT, INC., a Nevada Corporation,<br><br>          Defendants. | Case No.  4:20-cv-02249-YGR<br>Related Case No: 4:20-cv-02254-YGR<br><br>**DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:    Tuesday, August 11, 2020<br>Time:   2:00 p.m.<br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Crtrm:  Courtroom 1, Fourth Floor<br><br>Complaint Filed:  April 2, 2020 |

Gibson, Dunn & Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1

**NOTICE OF MOTION AND MOTION**

2

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on Tuesday, August 11, 2020 at 2:00 p.m., or as soon thereafter

4

as the matter can be heard, in Courtroom 1, Fourth Floor, of the United States District Court for the

5

Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant United

6

Behavioral Health ("UBH") moves the Court for an Order, pursuant to Federal Rule of Civil Procedure

7

12(b)(6), dismissing Plaintiffs' claims—for violation of California's Unfair Competition Law (Bus. &

8

Prof. Code § 17200), for intentional and negligent misrepresentation, civil conspiracy, breach of oral

9

and/or implied contract, and promissory estoppel, for violation of the Racketeer Influenced and Corrupt

10

Organizations Act (18 U.S.C. § 1962(c)), and for violation of Section 1 of the Sherman Act (15 U.S.C.

11

§ 1)—for failing to state a claim upon which relief may be granted.

12

UBH's motion is based upon this Notice of Motion and Motion and the Memorandum of Points

13

and Authorities set forth below, as well as the records, pleadings, and papers on file in this action,

14

including the Declaration of Han Nguyen and Request for Judicial Notice filed in the related case, *LD*

15

*v. United Behavioral Health*, Case No. 4:20-cv-02254 (N.D. Cal.), and upon such other matters as may

16

be presented before or at the time of the hearing on this Motion.

17

18

Dated: June 11, 2020

Respectfully submitted,

19

20

/s/ *Geoffrey Sigler*
Geoffrey Sigler

21

Attorney for Defendant

22

UNITED BEHAVIORAL HEALTH

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ...................................... 3

III.    BACKGROUND .................................................................................................... 4

IV.     STANDARD OF REVIEW ..................................................................................... 6

V.      ARGUMENTS ....................................................................................................... 6

        A.     Plaintiffs' Antitrust Claim Fails As A Matter Of Law (Count VIII). ......................... 6

        B.     Plaintiffs' RICO Claims Also Fail (Count VII). ................................................. 9

               1.     Plaintiffs Do Not Allege A RICO Enterprise. ................................................. 10

               2.     UBH Did Not Conduct The Affairs Of A RICO Enterprise. ......................... 11

               3.     Plaintiffs' Allegations Fail To Satisfy Rule 9(b). ........................................ 12

               4.     Plaintiffs Lack RICO Standing. ...................................................................... 17

        C.     Plaintiffs' State-Law Claims (Counts I–VI) Are Preempted By ERISA. ................. 18

        D.     Plaintiffs' State-Law Claims Should Be Dismissed For Additional Reasons. .......... 22

               1.     The Misrepresentation Claims Fail To Satisfy Rule 9(b) (Counts I–IV). ........ 22

               2.     The Economic Loss Rule Bars Counts I–IV. ................................................... 22

               3.     The Contract And Estoppel Claims Lack Sufficient Specificity (Counts V And VI). ...................................................................................................... 23

               4.     The UCL Claim Fails For Additional Reasons (Count I). .............................. 24

VI.     CONCLUSION ..................................................................................................... 25

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABC Servs. Grp., Inc. v. United Healthcare Servs.*,
    2019 WL 4137624 (C.D. Cal. June 14, 2019) ...........................................................23, 25

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) ...........................................................................................................21

*In re Aetna UCR Litig.*,
    2015 WL 3970168 (D.N.J. June 30, 2015) ...........................................................3, 8, 12

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) ..................................................................................6

*Apollo Grp., Inc. v. Avnet, Inc.*,
    58 F.3d 477 (9th Cir. 1995)................................................................................................22

*Armijo v. ILWU-PMA Welfare Plan*,
    2015 WL 13629562 (C.D. Cal. Aug. 21, 2015) ..................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................6

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) .............................................................................................................8

*Bank of Lake Tahoe v. Bank of Am.*,
    318 F.3d 914 (9th Cir. 2003)..............................................................................................25

*Banks v. ACS Educ.*,
    638 F. App'x 587 (9th Cir. 2016) ......................................................................................13

*Bast v. Prudential Ins. Co. of Am.*,
    150 F.3d 1003 (9th Cir. 1998)...........................................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................6

*Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp.*,
    187 F.3d 1045 (9th Cir. 1999)...........................................................................................21

*Bova v. City of Medford*,
    564 F.3d 1093 (9th Cir. 2009)...........................................................................................25

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012).............................................................................................8

Gibson, Dunn &
Crutcher LLP

ii

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) ...........................................................................................................17

*Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*,
   2020 WL 2027955 (C.D. Cal. Jan. 6, 2020) ...............................................................22, 23

*Broadcast Music, Inc. v. CBS*,
   441 U.S. 1 (1979) ................................................................................................................7

*Cal. Pac. Med. Ctr. v. Concentra Preferred Sys., Inc.*,
   2004 WL 2331876 (N.D. Cal. Oct. 15, 2004) .................................................................21

*Cal. Spine & Neurosurgery Institute v. JP Morgan Chase & Co.*,
   2019 WL 7050113 (N.D. Cal. Dec. 23, 2019) ................................................................20

*Cansino v. Bank of Am.*,
   224 Cal. App. 4th 1462 (2014)..........................................................................................14

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.*,
   2017 WL 6030260 (C.D. Cal. Nov. 27, 2017) ................................................................23

*Catholic Healthcare W. Bay Area v. Seafarers Health & Benefits Plan*,
   321 F. App'x. 563 (9th Cir. 2008) ...................................................................................21

*Cedric Kushner Promotions Ltd. v. King*,
   533 U.S. 158 (2001) ..........................................................................................................11

*Clapp v. City & Cty. of S.F.*,
   2019 WL 2410508 (N.D. Cal. June 7, 2019) ..................................................................22

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006)...........................................................................................24

*Dishman v. UNUM Life Ins. Co. of Am.*,
   269 F.3d 974 (9th Cir. 2001).............................................................................................22

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,
   2013 WL 12114069 (C.D. Cal. Mar. 12, 2013) ..............................................................12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)...............................................................................................6

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004)...........................................................................................13

*Egelhoff v. Egelhoff*,
   532 U.S. 141 (2001) ..........................................................................................................19

*Franco v. Conn. Gen. Life Ins. Co.*,
   2014 WL 2861428 (D.N.J. June 24, 2014) ........................................................................3

Gibson, Dunn &
Crutcher LLP

*Franco v. Conn. Gen. Life Ins. Co.*,
    818 F. Supp. 2d 792 (D.N.J. 2011) ..................................................................3, 8, 9

*Franco v. Conn. Gen. Life Ins. Co.*,
    289 F.R.D. 121 (D.N.J. 2013) ..................................................................................4

*Gardner v. Starkist Co.*,
    418 F. Supp. 3d 443 (N.D. Cal. 2019) ...................................................................10

*Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*,
    130 F.3d 1355 (9th Cir. 1997)................................................................................21

*Gilbert v. MoneyMutual, LLC*,
    2018 WL 8186605 (N.D. Cal. Oct. 30, 2018) ......................................................10

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    100 F. Supp. 2d 1086 (C.D. Cal. 1999)................................................................16

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994)..................................................................................13

*Gobeille v. Liberty Mut. Ins. Co.*,
    136 S. Ct. 936 (2016) ........................................................................................2, 19

*Gomez v. Guthy-Renker, LLC*,
    2015 WL 4270042 (C.D. Cal. July 13, 2015) ......................................................10

*Groves v. Kaiser Found. Health Plan Inc.*,
    2014 WL 12644296 (N.D. Cal. July 10, 2014) ....................................................20

*Groves v. Kaiser Found. Health Plan Inc.*,
    32 F. Supp. 1074 (N.D. Cal. 2014) ......................................................................20

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010)..................................................................................................17

*Herron v. Best Buy Co.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013).................................................................13

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018)..................................................................................7

*Holmes v. Sec. Investor Prot. Corp.*,
    503 U.S. 258 (1992) ..........................................................................................9, 17

*Howard v. America Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000)..................................................................................10

*In re Int'l Rectifier Corp. Sec. Litig.*,
    2008 WL 4555794 (C.D. Cal. May 23, 2008) ......................................................15

Gibson, Dunn &
Crutcher LLP

*Josef K. v. Cal. Physicians' Serv.*,
   2019 WL 2342245 (N.D. Cal. June 3, 2019) ...................................................21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)...........................................................................6

*Kingray, Inc. v. NBA, Inc.*,
   188 F. Supp. 2d 117700 (S.D. Cal. 2002) ..........................................................7

*Leegin Creative Leather Prods. Inc. v. PSKS Inc.*,
   551 U.S. 877 (2007)........................................................................................6, 7

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989)...............................................................................8

*Lewis v. Rodan & Fields, LLC*,
   2019 WL 978768 (N.D. Cal. Feb. 28, 2019)......................................................10

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007)...........................................................................25

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................6

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)............................................................................25

*United States ex rel. Modglin v. DJO Global Inc.*,
   114 F. Supp. 3d 993 (C.D. Cal. 2015)...............................................................14

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015).............................................................................7

*Nat'l Standard Fin., LLC v. Physicians Hosp. of Desert Cities, LLC*,
   2013 WL 12129953 (C.D. Cal. Nov. 18, 2013)..................................................14

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
   54 F.3d 1424 (9th Cir. 1995).............................................................................14

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ............................................................................10

*Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*,
   228 Cal. App. 4th 644 (2014)............................................................................24

*Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*,
   12 Cal. App. 5th 200 (2017)..............................................................................23

*Pain Mgmt. Specialists v. Blue Shield of Cal. Life & Health Ins. Co.*,
   2015 WL 546025 (C.D. Cal. Feb. 9, 2015)........................................................24

Gibson, Dunn &
Crutcher LLP

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998)............................................................................................5

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009)........................................................................................18

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987).....................................................................................................18, 19

*Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*,
    24 Cal. App. 5th 153 (2018).........................................................................................21

*Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*,
    2017 WL 4340272 (E.D. Cal. Sept. 29, 2017) .............................................................25

*Reed v. Dynamic Pet Prods.*,
    2015 WL 4742202 (S.D. Cal. July 30, 2015) ..............................................................25

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).......................................................................................................12

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
    532 F.3d 963 (9th Cir. 2008)...........................................................................................7

*River City Markets, Inc. v. Fleming Foods W., Inc.*,
    960 F.2d 1458 (9th Cir. 1992).......................................................................................11

*Segal Co. (Eastern States), Inc. v. Amazon.com*,
    280 F. Supp. 2d 1229 (W.D. Wash. 2003)...................................................................14

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985).........................................................................................17

*United States ex. rel. Serrano v. Oaks Diagnostics, Inc.*,
    568 F. Supp. 2d 1136 (C.D. Cal. 2008)........................................................................15

*Shaw v. Delta Airlines*,
    463 U.S. 85 (1983).........................................................................................................18

*Smith v. City & Cty. of San Francisco*,
    225 Cal. App. 3d 38 (1990)...........................................................................................24

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
    770 F.3d 1282 (9th Cir. 2014).......................................................................................22

*Stitt v. Citibank, N.A.*,
    2015 WL 75237 (N.D. Cal. Jan. 6, 2015) ...............................................................10, 11

*Stockton Mortgage, Inc. v. Tope*,
    233 Cal. App. 4th 437 (2014).......................................................................................23

Gibson, Dunn &
Crutcher LLP

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)..................................................................................13

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001)..............................................................................6, 7

*Texas v. United States*,
   523 U.S. 296 (1998) ..............................................................................................25

*Tingey v. Pixley–Richards W., Inc.*,
   953 F.2d 1124 (9th Cir. 1992)...............................................................................19

*TML Recovery, LLC v. Humana Inc.*,
   2019 WL 3208807 (C.D. Cal. Mar. 4, 2019) ........................................................24

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..........................................................................................24

*Townsend v. Chase Bank USA N.A.*,
   2009 WL 426393 (C.D. Cal. Feb. 15, 2009)..........................................................14

*Tucker v. Post Consumer Brands, LLC*,
   2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) .........................................................6

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
   660 F. Supp. 2d 1163 (C.D. Cal. 2009)..................................................................23

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) .................................................................17

*W.J. Schafer Assocs., Inc. v. Cordant, Inc.*,
   254 Va. 514, 493 S.E.2d 512 (1997)......................................................................24

*Wagh v. Metris Direct, Inc.*,
   348 F.3d 1102 (9th Cir. 2003)................................................................................10

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008)................................................................................12

*In re WellPoint Inc. Out-of-Network "UCR" Rates Litig.*,
   2014 WL 6888549 (C.D. Cal. Sept. 3, 2014)..........................................................19

*In re WellPoint, Inc., Out of Network "UCR" Rates Litig.*,
   2016 WL 6645789 (C.D. Cal. Jul. 9, 2016) ..............................................................3

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   2013 WL 12130034 (C.D. Cal. Jul. 19, 2013) ....................................................3, 17

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011)..............................................................3, 12

Gibson, Dunn &
Crutcher LLP

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012)....................................................................3, 9, 17

*Wise v. Verizon Commc'ns Inc.*,
   600 F.3d 1180 (9th Cir. 2010)........................................................................................18

*Yari v. Producers Guild of Am., Inc.*,
   161 Cal. App. 4th 172 (2008).........................................................................................23

*Ydm Mgmt. Co. v. Aetna Life Ins. Co.*,
   2016 WL 3751943 (C.D. Cal. July 13, 2016) ...............................................................24

**Statutes**

18 U.S.C. § 1962(c) ..........................................................................................................9, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs, four out-of-network substance abuse centers (*i.e.*, providers who do not have a network contract with the plan or claims administrator), contend that they were under-reimbursed because they were not paid "100%" of their "billed charges" for services they provided to several dozen patients who were covered by various health plans. Plaintiffs' allegations focus on Viant, a vendor used by United Behavioral Health ("UBH") to negotiate lower reimbursement rates with providers as part of UBH's goal to contain the costs incurred by health plan members for covered services. Dkt. 1, Complaint ("Compl.") ¶¶ 21, 23–56. Cost containment is, of course, one of the core services provided by a claims administrator (like UBH) to health plans, many of which are self-funded by employers and thus benefit directly from lower reimbursement rates for covered care.

Plaintiffs' claims turn on the scope of coverage under the relevant health plans. According to Plaintiffs, "[e]very plan at issue in this litigation was obligated to pay out-of-network IOP claims at the UCR [usual, customary, and reasonable] rate" for similar services in the geographic area—which Plaintiffs claim entitled them to receive "100%" of their "billed charges." These assertions mischaracterize the health plans, but—regardless of what the plans say or do not say—under well-established precedent, such claims must be brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), the comprehensive statutory scheme governing employer-sponsored health plans. This is what Plaintiffs' patients have done: in a related lawsuit pending before this Court, several of Plaintiffs' patients challenge the same supposed "underpayment" practices and seek the same damages under ERISA. *See L.D. v. United Behavioral Health* ("*L.D.*"), No. 4:20-cv-02254-YGR (N.D. Cal.). One of the Plaintiffs in this case also is pursuing a separate individual case, in this Court, that includes an ERISA claim challenging similar practices. *See* First Am. Compl. at 10–12, *Summit Estate, Inc. v. UnitedHealthcare Ins. Co.* (N.D. Cal. Oct. 18, 2019) (No. 4:19-cv-06724-YGR) ("*Summit Estate FAC*").

Here, though, Plaintiffs seek to avoid ERISA's exclusive statutory remedies by bringing their claims under the Sherman Act, RICO, and California state law. Plaintiffs' Complaint should be dismissed because their allegations do not support the causes of action they have brought. First,

Gibson, Dunn &
Crutcher LLP

1

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

Plaintiffs' claims under the Sherman Act fail, because setting reimbursement rates for out-of-network services is not "price-fixing."  Moreover, UBH (the plans' claims administrator) and Viant (a vendor who provides suggested pricing for out-of-network services) are not alleged to be horizontal competitors.  Accordingly, the antirust *per se* rule—the only basis for liability Plaintiffs assert—plainly does not apply.  Plaintiffs' Sherman Act claim can only be pursued under the rule of reason, and Plaintiffs do not even attempt to establish the elements of such a claim.  Plaintiffs also lack antitrust standing, because they do not allege any injury to competition.

Second, there is no basis for Plaintiffs' attempt to convert their reimbursement dispute into a RICO violation.  Plaintiffs attempt to manufacture a RICO enterprise between UBH and Viant, but they allege nothing more than a commercial contract through which Viant would engage in rate negotiations and UCR calculations.  That Viant's vendor services helped with "cost containment"—a core function of plan administration—does not make this a racketeering enterprise.  Compl. ¶ 21.  Additionally, the alleged RICO predicate acts of mail and wire fraud—based on vaguely described phone calls involving unidentified "agents" of "United" who mentioned UCR while verifying coverage—are completely lacking in detail and fail to satisfy Federal Rule of Civil Procedure 9(b).  Nor do Plaintiffs allege facts showing how they or anyone else relied on these phone calls to form an expectation that their services would be paid at "100%" of their "billed charges," thus failing to demonstrate RICO standing.

Third, Plaintiffs' state-law claims are preempted by ERISA.  ERISA Section 514(a) expressly preempts any state-law claims that have a "reference to" or "connection with" an ERISA plan.  *See Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016).  Plaintiffs' claims easily qualify.  Plaintiffs' Complaint expressly refers to and relies on the terms of ERISA plans setting reimbursement at UCR; Plaintiffs' claims directly bear on benefits calculations, claims processing, and other core functions of plan administration; and, if successful, Plaintiffs' state-law claims would interfere with ERISA's nationally uniform federal regulation of these plans.  If there were any doubt that Plaintiffs' claims have a direct connection to ERISA plans, this Court need look no further than the related case filed by Plaintiffs' patients, *L.D. v. United Behavioral Health*, which challenges all the same business practices directly under ERISA plan terms and statutory requirements.

Fourth, even if Plaintiffs' state-law claims were not preempted, they suffer from a litany of pleading flaws: the misrepresentation-based claims fail under Rule 9(b), the contract and estoppel claims lack any clear promise or agreement, the economic loss rule bars the misrepresentation claims, Plaintiffs fail to state a claim under any prong of California's Unfair Competition Law, and the Virginia-based Plaintiff (Bridging the Gaps) cannot seek relief under California law.

Lacking sufficient factual allegations to support these causes of action, Plaintiffs attempt to bolster their Complaint by referring to the "Ingenix" database—a completely separate database that was challenged in litigation years ago and is no longer in use.  Compl. ¶ 19 (alleging that "United is attempting to recreate the Ingenix grift").  But the Ingenix cases provide no support to Plaintiffs' thinly pled Complaint, and many of the rulings in those cases show that Plaintiffs' claims here are not viable and their Complaint should be dismissed with prejudice.[1]

## II.   STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

1.      Whether Plaintiffs' antitrust claims are subject to dismissal because they have (a) failed to allege a *per se* violation of the antitrust laws, or (b) failed to allege an adequate antitrust injury;

2.      Whether Plaintiffs' RICO claims are subject to dismissal because they have failed to (a) plead that Defendants formed a RICO enterprise, (b) plead that UBH "conducted" the affairs of the purported enterprise, (c) allege predicate acts of fraud with the specificity required by Rule 9(b), or (d) allege that any predicate act caused them injuries to business or property;

3.      Whether Plaintiffs' state-law claims are preempted by ERISA;

4.      Whether, even if not preempted, Plaintiffs' misrepresentation claims either (a) fail to satisfy Rule 9(b), or (b) are barred by the economic loss rule;

---

[1]  Most of the claims asserted in the Ingenix cases, including claims under the Sherman Act and RICO, were dismissed on the pleadings.  *See, e.g.*, *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.* ("*WellPoint I*"), 865 F. Supp. 2d 1002 (C.D. Cal. 2011); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.* ("*WellPoint II*"), 903 F. Supp. 2d 880 (C.D. Cal. 2012); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.* ("*WellPoint III*"), 2013 WL 12130034 (C.D. Cal. July 19, 2013); *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792 (D.N.J. 2011), *aff'd in part, rev'd in part*, 647 F. App'x 76 (3d Cir. 2016); *In re Aetna UCR Litig.*, 2015 WL 3970168, *24 (D.N.J. June 30, 2015).  And when the surviving claims under ERISA were subjected to evidentiary scrutiny, they collapsed as well.  *Franco v. Conn. Gen. Life Ins. Co.*, 2014 WL 2861428 (D.N.J. June 24, 2014); *In re WellPoint, Inc., Out of Network "UCR" Rates Litig.* ("*WellPoint V*"), 2016 WL 6645789 (C.D. Cal. July 9, 2016).

Gibson, Dunn & Crutcher LLP

3

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

5.    Whether, even if not preempted, Plaintiffs' contract and estoppel claims lack sufficient specificity to state a claim; and

6.    Whether, even if not preempted, Plaintiffs' equitable claims under the UCL fail because they fail to (a) allege facts satisfying any of the UCL's prongs, (b) plead a basis to seek injunctive or other equitable relief, and (c) allege any facts to support relief under the UCL for Plaintiff Bridging the Gaps, which they allege is based in Virginia, not California.

## III.    BACKGROUND[2]

As out-of-network providers, Plaintiffs do not have a network contract with UBH requiring payments at agreed-upon rates, so they generally seek reimbursement from their patients' health plans as "assignees" of their patients.  Compl. ¶ 133.  When receiving a claim by an out-of-network provider, a claims administrator generally makes a coverage determination and, if the service is covered, calculates a covered amount for the service based on plan terms.  Plan terms governing this covered amount vary widely from plan to plan (*e.g.*, "UCR," "Eligible Expense"), and virtually no plans promise to cover a provider's "billed charge," which can "far exceed" the covered amount.  *See Franco v. Conn. Gen. Life Ins. Co*., 289 F.R.D. 121, 138 (D.N.J. 2013).  Sometimes when there is a difference between the provider's billed charge and the covered amount, the provider may send the patient a "balance bill" for this amount.  Plaintiffs here allege they have agreements with their patients by which the patients agree to pay any balance bills.  Compl. ¶ 151.

Once the covered amount is calculated, the plan generally pays a particular percentage of that covered amount, also based on plan terms—*e.g*., 80% of the covered amount, with the member paying 20% coinsurance.  There may be other plan terms, such as deductibles or out-of-pocket maximums, that come into play as well.

For purposes of calculating who owes what for Plaintiffs' services, therefore, the health plan terms are controlling.  Plaintiffs allege that "[e]very plan at issue in this litigation was obligated to pay out-of-network IOP claims at the UCR rate."  Compl. ¶ 74; *see also id*. ¶ 75.  But in fact, at least two of the plans at issue—covering all five of the *L.D*. plaintiffs, who were treated by Summit Estate and

---

[2]  For purposes of this Motion only, UBH assumes the factual allegations in Plaintiffs' Complaint are true, except where contradicted by documents embraced by the pleadings.

Gibson, Dunn & Crutcher LLP

4

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

thus are at issue here as well—do not contain this purported universal obligation.  As discussed more fully in UBH's motion to dismiss in *L.D.*, these two summary plan descriptions state that "Eligible Expenses" for out-of-network services are determined based on "[n]egotiated rates" or "available data resources of competitive fees in that geographic area."  *L.D.* Dkt. 35-1, Declaration of Han Nguyen, Ex. 2 at 31–32, 39; Ex. 3 at 12.[3]  These two plans also make clear that there could be a difference between a provider's billed charge and the "Eligible Expense."  Ex. 2 at 40; Ex. 3 at 8 (stating "[t]he amount in excess of the Eligible Expense could be significant," and telling members they "may want to ask the non-Network provider about their billed charges before you receive care").  The third plan also does not contain the UCR terms Plaintiffs allege, and makes clear that coverage does not exist for 100% of billed charges. Ex. 1 at 36, 44, 335 (describing coverage of UCR for out-of-network services). Plaintiffs' misdirected claim that they should have been paid their "billed charges" directly implicates all of these plan terms.

Plaintiffs' allegations overlap substantially—and in some cases conflict directly—with the related case brought by Plaintiffs' patients in *L.D.*  In that case, the *L.D.* plaintiffs seek the same alleged damages as Plaintiffs do here: the difference between "100%" of Summit Estate's "billed charges" and what was paid based on "Viant's pricing."  In going after the same damages, Plaintiff Summit Estate and its patients make conflicting allegations on fundamental issues: Summit Estate here alleges it was injured because "[f]ew, if any, of the balance bills are ever paid by patients," and thus, Summit Estate "has *not been paid* the remaining 89% of the billed amounts owed to them" beyond the "11% of billed charges" it received based on "Viant's pricing."  Compl. ¶ 212 (emphasis added).  The patients in *L.D.*, by contrast, allege they were "*forced to enter into and make payments*" for Summit Estate's unreimbursed amounts (*L.D.* Compl. ¶ 218 (emphasis added)).  In other words, in related cases filed on the same day, by the same counsel, Summit Estate here alleges that it was not paid for its services, and its patients allege that they paid their balance bills.  Both allegations cannot be true:  either the bills were paid, or they were not.

---

[3]  This Court is permitted to consider the summary plan descriptions because they are referred to and relied on in the Complaint.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998).

Gibson, Dunn &
Crutcher LLP

1    Another difference involves the causes of action.  Whereas the *L.D.* plaintiffs assert claims

2    under ERISA and RICO, Plaintiffs here bring eight causes of action: (1) violation of the UCL (Bus. &

3    Prof. Code § 17200); (2) intentional misrepresentation / fraudulent inducement; (3) negligent

4    misrepresentation; (4) civil conspiracy; (5) breach of oral and/or implied contract; (6) promissory

5    estoppel; (7) RICO (18 U.S.C. § 1962(c)); and (8) Section 1 of the Sherman Act (15 U.S.C. § 1).

6    **IV.    STANDARD OF REVIEW**

7        Dismissal under Rule 12(b)(6) "is appropriate where the complaint lacks a cognizable legal

8    theory or sufficient facts to support a cognizable legal theory."  *Tucker v. Post Consumer Brands, LLC*,

9    2020 WL 1929368, at *2 (N.D. Cal. Apr. 21, 2020) (Gonzalez Rogers, J.) (internal quotation omitted).

10   Determining whether a complaint contains "sufficient 'factual enhancement' to cross 'the line'"

11   between speculation and plausibility (*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

12   990, 995 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007))) requires a

13   "context-specific" determination that a court must make by "draw[ing] on its judicial experience and

14   common sense" (*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Additionally, claims grounded in fraud

15   are subject to the heightened-pleading requirements of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d

16   1120, 1125 (9th Cir. 2009) (citation and quotation marks omitted).  To satisfy this standard, a plaintiff

17   must "allege 'the particular circumstances surrounding [the] representations' at issue" (*Ahern v. Apple

18   Inc.*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (citation omitted)), including what was omitted and

19   how it should have been revealed, as well as details concerning the representations that were made that

20   the plaintiff relied on (*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).

21   **V.    ARGUMENTS**

22       **A.    Plaintiffs' Antitrust Claim Fails As A Matter Of Law (Count VIII).**

23           **1.    Plaintiffs Have Not Alleged That The UBH-Viant Agreement Unreasonably Restrains Trade.**

24       Section 1 of the Sherman Act does not prohibit ordinary commercial contracts.  It only prohibits

25   agreements that *unreasonably* restrain trade.  *See, e.g.*, *Leegin Creative Leather Prods. Inc. v. PSKS

26   Inc.*, 551 U.S. 877, 885 (2007) ("[T]he Court has repeated time and again that § 1 outlaws only

27   unreasonable restraints.").  There are two tests for assessing whether an agreement unreasonably

28

Gibson, Dunn &
Crutcher LLP

6

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1   restrains trade: "either a *per se* rule of illegality or a rule of reason analysis."  *Tanaka v. Univ. of S.*

2   *Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001).

3          Plaintiffs do not even attempt to satisfy the rule of reason.  They do not identify any relevant

4   market, allege that the UBH-Viant relationship has harmed competition in any relevant market, or

5   allege that any anticompetitive effects outweigh any procompetitive benefits.  *See Tanaka*, 252 F.3d at

6   1062; *see also Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120–21 (9th Cir. 2018).

7          Instead, Plaintiffs proceed solely on a claim that the alleged UBH-Viant relationship is *per se*

8   unlawful.  Compl. ¶ 394.  But *per se* treatment is limited to specific categories of restraints "that would

9   always or almost always tend to restrict competition and decrease output."  *Leegin*, 551 U.S. at 886; *In*

10  *re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).  Specifically,

11  the *per se* rule applies to particular categories of agreements between *horizontal competitors*—that is,

12  "agreements made among competitors" at the same level of distribution.  *Musical Instruments*, 798

13  F.3d at 1191.  But Plaintiffs do not—and cannot—allege that UBH and Viant are horizontal

14  competitors.  Instead, they claim UBH engaged Viant, a "third-party 'repricer,'" to negotiate rates with

15  providers.  Compl. ¶¶ 13, 18.  This alleged arrangement is not *per se* unlawful.  *Musical Instruments*,

16  798 F.3d at 1191–92; *see also Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1199–1200 (S.D. Cal.

17  2002) (dismissing allegations of a horizontal price-fixing conspiracy between NBA and providers of

18  pay-per-view services, because "the NBA Defendants are not competitors with DirecTV and

19  iN Demand and therefore cannot engage in a horizontal conspiracy").

20         Even if Plaintiffs could allege that UBH and Viant are horizontal competitors (they cannot),

21  they still fail to allege any agreement falling within any *per se* categories.  Agreements that are *per se*

22  unlawful "always or almost always tend to restrict competition and decrease output."  *Musical*

23  *Instruments*, 798 F.3d at 1191 (quoting *Broadcast Music, Inc. v. CBS*, 441 U.S. 1, 19–20 (1979)).

24  Examples of these *per se* categories include "agreements among competitors to fix prices, divide

25  markets, and refuse to deal."  *Id.*  Plaintiffs try to affix the label "price fixing" to the alleged UBH-

26  Viant relationship (Compl. ¶ 395; see, e.g., *Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d

27  963, 976 (9th Cir. 2008)), but here, Plaintiffs do not allege any facts showing UBH and Viant "fixed"

28  the price of any product they sell—much less the price of any product they compete to sell.

Gibson, Dunn &
Crutcher LLP

7
DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

To the contrary, Plaintiffs allege that "United contracted with Viant to 'negotiate' reimbursement rates with providers." *See* Compl. ¶ 18. This is not price-fixing, and it would be bizarre indeed if a *per se* antitrust violation could be based on a third-party vendor contract to negotiate lower reimbursements for out-of-network healthcare services. The law does not support this result.

Plaintiffs hold out the "Ingenix" cases (regarding a separate UCR database that is no longer in use) as purportedly similar to this case. Compl. ¶ 19. But attempts to plead a Sherman Act violation were rejected in those cases. In *Franco v. Connecticut General Life Insurance Co.*, for example, the court rejected the plaintiffs' attempt to "distort conduct which allegedly resulted in the determination of artificially low [out-of-network] benefit payments into a 'price fixing agreement'" and held that the "Plaintiffs' price-fixing theory is patently inapplicable to the Complaints' factual allegations of misconduct." 818 F. Supp. 2d at 831–32. Allegations about supposed reductions in reimbursement rates to out-of-network providers "[did] not pertain to the pricing of anything." *Id.* at 832.

Similarly, the court in *In re Aetna UCR Litigation*, another Ingenix case, also rejected this theory, explaining that "while labeling such conduct as an agreement to fix *price*, plaintiffs actually fail to allege that the price of any product or service has been fixed or restrained. Instead, they allege that 'Aetna paid less than it was contractually obligated to pay for' out-of-network benefits." 2015 WL 3970168, at *24. As in these cases, "Plaintiffs' price-fixing theory is patently inapplicable" to the alleged conduct here and should be dismissed. *Franco*, 818 F. Supp. 2d at 831.

## 2. Plaintiffs Lack Antitrust Standing.

Plaintiffs' antitrust claims also fail because they have not alleged antitrust injury—another essential element of their Sherman Act claim. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012). To do that, Plaintiffs must plausibly allege that their injuries "stem[] from a competition-*reducing* aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990). Thus, "a claimant must, at a minimum, sketch the outline of [the injury to competition] with allegations of supporting factual detail." *Brantley*, 675 F.3d at 1198 (quoting *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) (brackets in original)).

Gibson, Dunn &
Crutcher LLP

8
DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

Nothing in the Complaint suggests that competition in any (unidentified) market was restrained, or that Plaintiffs' injuries resulted from any such decrease in competition. Plaintiffs do not allege that UBH and Viant compete with one another, and they do not allege that competition between UBH and any of its competitors has been reduced. Likewise, the Complaint contains no allegations suggesting that an increase in competition in any market would have resulted in higher reimbursements to any provider. Such a claim would defy common sense: it is natural and expected that UBH—like any plan administrator—will seek to reduce out-of-network healthcare costs for its health plan clients. Indeed, that is one of the ways UBH provides value to its health plan clients and *competes* for their business— by controlling medical costs. It is not a failing of competition for UBH to seek to reduce its clients' healthcare costs; rather, the drive to become more cost-efficient is a natural result of competition. Thus, not surprisingly, Plaintiffs do not allege that UBH's efforts to lower its costs are a consequence of the alleged agreement with Viant. To the contrary, Plaintiffs allege that UBH's "drive" toward cost-containment has been "in place since at least 2005" (Compl. ¶ 21), long before the supposed agreement between UBH and Viant was formed. This case is simply not about any reduction in competition.

Again, the Ingenix cases show why Plaintiffs' claims should be dismissed. In *WellPoint*, the court ruled that the plaintiffs lacked antitrust injury because the complaint failed to "plausibly explain how increased competition . . . would raise the level of [out-of-network] reimbursements." *WellPoint II*, 903 F. Supp. 2d at 905. In *Franco*, the court found that reducing payments to out-of-network providers is a natural part of an insurer's efforts to incentivize members to use lower-cost, in-network providers, which has the "logical consequence" of "promot[ing] competition" among providers. *Franco*, 818 F. Supp. 2d at 839. The same is true here.

## B. Plaintiffs' RICO Claims Also Fail (Count VII).

Similar to Plaintiffs' claim under the Sherman Act, their attempt to manufacture a RICO violation from a reimbursement dispute fails on multiple grounds: (1) they allege an ordinary commercial agreement to control medical costs, not a RICO enterprise with an illegal "common purpose"; (2) they fail to allege that Defendants conducted the affairs of any RICO enterprise, as opposed to their own affairs; (3) they fail to allege predicate acts of mail or wire fraud with particularity, as required under Rule 9(b); and (4) they fail to allege that any predicate act injured their business or

Gibson, Dunn &
Crutcher LLP

9

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

property, as required for RICO standing.  *See* 18 U.S.C. § 1962(c); *id.* § 664; *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992).[4]  And because Plaintiffs cannot plead a substantive claim under RICO, their RICO conspiracy claim fails as well.  *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  This case falls squarely within the Ninth Circuit's directive to "flush out frivolous RICO allegations at an early stage of the litigation" (*Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108–09 (9th Cir. 2003), *overruled on other grounds by Odom*, 486 F.3d at 551), and Plaintiffs' RICO claims should therefore be dismissed.

### 1.    Plaintiffs Do Not Allege A RICO Enterprise.

To plead an association-in-fact enterprise, Plaintiffs need to establish: "(1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that provide sufficient evidence the associates function as a continuing unit."  *Stitt*, 2015 WL 75237, at *3 (citing *Odom*, 486 F.3d at 553).  In evaluating these elements, it is well established that allegations concerning "routine commercial dealing," without more, do not establish that a "common purpose" exists under RICO.  *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (summarizing cases); *Lewis v. Rodan & Fields*, *LLC*, 2019 WL 978768, at *4 (N.D. Cal. Feb. 28, 2019) (dismissing claim where supposed enterprise was not "anything other than an ordinary business relationship").

Yet that is all Plaintiffs have offered here.  The purported "common purpose" of UBH and Viant is to "underpay[] for IOP services and increas[e] the profits [of] the Enterprise participants and their Co-Conspirators" (Compl. ¶ 370), but this is merely a hyperbolic description of an ordinary commercial contract that, for the reasons explained above, benefits UBH *and* its health plan clients and their members by helping to control medical costs.  Nor do Plaintiffs allege "that the enterprise members actually knew of the alleged fraudulent common purpose"—*i.e.*, that UBH and Viant knowingly formed an enterprise to fraudulently underpay claims at below UCR.  *Stitt*, 2015 WL 75237, at *5; *see also Gilbert v. MoneyMutual, LLC*, 2018 WL 8186605, at *13 (N.D. Cal. Oct. 30, 2018) (where

---

[4]  "To state a claim under RICO, plaintiffs must allege: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Stitt v. Citibank, N.A.*, 2015 WL 75237, at *3 (N.D. Cal. Jan. 6, 2015) (Gonzalez Rogers, J.), *aff'd*, 748 F. App'x 99 (9th Cir. 2018) (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc)).

Gibson, Dunn &
Crutcher LLP

1   fraudulent RICO scheme is alleged, plaintiffs "are required to show each of the [enterprise defendants]

2   knew" the scheme was "illegal").  That there are "monetary incentives for Viant to reduce the amount

3   United pays on out-of-network claims" is unremarkable too, given that the purpose of Viant's services

4   is to control medical costs.  Compl. ¶ 144.  The most one can infer from these allegations is that UBH

5   supposedly has a "service contract[]" with Viant to reduce medical costs (*id.*), which "does not render

6   plausible [P]laintiffs' claim that the members of the . . . Enterprise associated for [an] alleged, and

7   fraudulent, common purpose" (*Stitt*, 2015 WL 75237, at *5).

8                    **2.      UBH Did Not Conduct The Affairs Of A RICO Enterprise.**

9            Plaintiffs also fail to plead any facts suggesting UBH conducted the affairs of a RICO

10  enterprise, as opposed to acting in its own, legitimate economic interest (and in service of its customers)

11  by seeking to reduce medical costs.  Section 1962(c) liability "depends on showing that the defendants

12  conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Stitt*,

13  2015 WL 75237, at *3 (quoting *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 163 (2001)).

14  "Virtually every business contract can be called an 'association in fact,'" but "[t]o constitute a

15  proscribed RICO enterprise[,] the associates must participate, directly or indirectly 'in the conduct of

16  such enterprise's affairs through a pattern of racketeering activity.'"  *River City Markets, Inc. v.

17  Fleming Foods W., Inc.*, 960 F.2d 1458, 1462–63 (9th Cir. 1992) (quoting 18 U.S.C. § 1962(c)).

18          Plaintiffs attempt to recast Defendants' alleged relationship as a RICO enterprise, claiming they

19  implemented cost containment efforts through "fraudulent and deceptive acts."  Compl. ¶ 372.  But

20  Plaintiffs do not allege that UBH directed any "fraudulent" acts by Viant, or vice versa: each company

21  issued its own, separate communications consistent with their own, separate business operations.  *See*,

22  *e.g.*, *id*. ¶¶ 355–356 (allegations of verification-of-benefits calls and EOBs issued by UBH, without

23  any alleged involvement by Viant); ¶ 358 (allegations of "false" communications by Viant about its

24  "authority to negotiate" and "the source of [its] 'offered' payment amounts," without any alleged

25  involvement by UBH).  Indeed, Plaintiffs' Complaint is devoid of any allegations that UBH in

26  particular played any role in establishing, influencing, or otherwise directing Viant's proprietary

27  database that it used to price its claims (*see id*. ¶ 358), even though UBH is a distinct corporate entity

28  that plays a distinct, narrow role under the relevant health plans.

Gibson, Dunn &
Crutcher LLP

11
DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

Further, liability extends only to those who "have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This means "showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their own affairs." *Id.* at 185. "[D]irecting" requires more than "simply being involved" or "performing services for the enterprise." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). Relevant considerations include whether the defendant "occup[ies] a position in the 'chain of command'. . . through which the affairs of the enterprise are conducted," whether it "knowingly implement[ed] [the] decisions of upper management," and whether its "participation was 'vital' to the mission's success." *Id.* at 1249; *see also Reves*, 507 U.S. at 185 (holding RICO liability requires a "showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their own affairs").

Here, Plaintiffs do not allege facts showing UBH "directed" or "knowingly implemented" the decisions of "upper management" with respect to any fraudulent conduct or RICO enterprise. Plaintiffs allege that "[d]uring the Class Period, United participated in the conduct of the Enterprise in order to shift the costs of IOP treatment from United to Provider, the Class, and its insureds" (Compl. ¶ 375), but these cost-containment goals merely align with UBH's own legitimate interests and those of its customers. Likewise, any steps UBH allegedly took to facilitate Viant's services, such as by paying Viant for its services (*id.* ¶ 358), do not show that UBH did anything beyond "carrying out the functions it was contractually required to perform" (*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2013 WL 12114069, at *13 (C.D. Cal. Mar. 12, 2013); *see also WellPoint I*, 865 F. Supp. 2d at 1034–35 ("the existence of a business relationship between WellPoint, Ingenix, and the Insurance Defendants without more does not show that WellPoint conducted the enterprise"); *In re Aetna UCR Litig.*, 2015 WL 3970168, at *28 ("commercial interactions" between the defendants "insufficient to compel liability" under RICO)). "What is missing" (as in the Ingenix litigation on which Plaintiffs purport to rely) "is some—any—indication that [UBH] guided the alleged scheme to *defraud insureds*." *In re Aetna UCR Litig.*, 2015 WL 3970168, at *30.

### 3.   Plaintiffs' Allegations Fail To Satisfy Rule 9(b).

"Although RICO itself is not subject to [ ] Rule 9(b)'s heightened pleading standards, predicate acts alleging fraud must be pleaded with particularity." *WellPoint I*, 865 F. Supp. 2d at 1036; *see*

Gibson, Dunn &
Crutcher LLP

12

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).  To satisfy Rule 9(b), Plaintiffs'

Complaint must include "an account of the time, place, and specific content of the false representations

as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756,

764 (9th Cir. 2007).  They also must plead sufficient facts showing why any challenged statement was

false or misleading.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by

statute on other grounds).  Plaintiffs' RICO claims here sound in fraud, because they allege predicate

acts of mail and wire fraud.[5]  Plaintiffs thus must plead with particularity the who, what, when, where,

how, and why of this alleged mail and wire fraud.  But Plaintiffs fall short on all counts, and do not

plead any alleged predicate acts of mail and wire fraud with the particularity required by Rule 9(b).

     ***What?***  Plaintiffs do not identify any acts of mail or wire fraud with particularity.  Instead, they

allege, in summary fashion, that they "were lied to by United's agents" on "the initial VOB [verification

of benefits] and Provider calls."  Compl. ¶ 355.  What Plaintiffs apparently mean by this is that UBH

"routinely represented" on "pre-admission VOB calls" "that benefits were available at a UCR rate" and

"never stated that the claims would be subject to repricing by Viant."  *Id.* ¶ 165.  But Plaintiffs never

allege what was actually said on any of these calls—a critical omission given the weight that Plaintiffs

place on them in attempting to plead a RICO claim.  Plaintiffs do not allege, for example, whether the

acronym UCR was actually used on these calls, or whether there was any discussion of specific UCR

rates, methodologies, or payments for services—even though Plaintiffs acknowledge in their

Complaint that UCR can have many different meanings, definitions, and reimbursement rates.  *See,

e.g., id.* ¶¶ 5, 17, 74, 94.  Plaintiffs also fail to allege what was said in any "EOBs" or other written

communications on these topics, or anything else that supposedly was false or misleading.  *Id.* ¶ 356.[6]

---

[5]  Plaintiffs refer in their RICO count to three other federal statutes, 18 U.S.C. § 24, 18 U.S.C. § 1027, and 18 U.S.C. § 1345.  But these statutes are not included in RICO's exclusive list of predicate acts in 18 U.S.C. § 1961(1).  *See Banks v. ACS Educ.*, 638 F. App'x 587, 589 (9th Cir. 2016) (dismissing RICO claim because alleged violations of federal statutes were not within the enumerated predicate acts that may amount to a "pattern of racketeering activity").

[6]  To the extent Plaintiffs are alleging that nondisclosure constituted fraud, these claims fare no better.  "Mere nondisclosure [by UBH] does not constitute active concealment."  *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013).  Plaintiffs do not allege any facts giving rise to any duty to disclose running from UBH to Plaintiffs.

Gibson, Dunn &
Crutcher LLP

These question marks about what (if anything) was said about UCR are significant because Plaintiffs' claims appear to be rooted in a dispute about what UCR means and how reimbursement rates should be calculated for the services they provide.  Compl. ¶ 167.  But without specifying what was actually said in the challenged communications about UCR, Plaintiffs cannot establish that they were *defrauded* out of payment for their services—and thus, cannot state a claim for fraud.  *Nat'l Standard Fin., LLC v. Physicians Hosp. of Desert Cities, LLC*, 2013 WL 12129953, at *9 (C.D. Cal. Nov. 18, 2013) (dismissing misrepresentation claim under Rule 9(b) because the complaint "[did] not identify any specific statements made by the Manager defendants, except in the most general sense"); *Townsend v. Chase Bank USA N.A.*, 2009 WL 426393, at *5 (C.D. Cal. Feb. 15, 2009) (RICO claim insufficiently pled where plaintiffs "fail[ed] to mention any specific statements, charges, or penalties").

**Who?**  Plaintiffs are equally vague about who made the alleged misrepresentations, alleging only that they were "lied to by United's agents."  Compl. ¶ 355; *see also id*. ¶¶ 188, 195, 202, 209 (similarly vague allegations about communications by "United's representative").  This is plainly insufficient: "[w]here fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim."  *United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015); *Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) ("[T]he complaint's reference to certain 'representatives' of defendant is too vague to sufficiently identify the alleged perpetrators.").

These deficiencies are particularly significant because Plaintiffs must plead fraudulent intent—not just by "United" (or more precisely, UBH), but by the individuals involved in the communications at issue.  *See, e.g.*, *Nordstrom, Inc. v. Chubb & Son, Inc*., 54 F.3d 1424, 1435 (9th Cir. 1995) (holding that "there is no case law supporting an independent 'collective scienter' theory"); *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014) ("[n]or is the knowledge element of fraud satisfied by the complaint's conclusory statement that defendants 'knew that the . . . [r]epresentation[] [was] either false or at least highly speculative' because the allegation does not identify how" that knowledge was supposedly obtained).  "For scienter to be attributed to [a corporation], Plaintiffs must sufficiently plead that at least one of [the corporation's] officers had the requisite scienter at the time they made the

Gibson, Dunn &
Crutcher LLP

14

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

allegedly misleading statements." *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *21 (C.D. Cal. May 23, 2008). Plaintiffs' "collective scienter" allegations about what "United" supposedly said and intended—along with their failure to allege anything at all about the role of UBH, the actual defendant in this case—do not meet that standard. *See, e.g.*, Compl. ¶ 164 ("United intentionally led Plaintiffs and the Class to believe that benefits were determined based on a UCR rate."); ¶ 281 ("Given the pattern, practice, and scale of these misrepresentations, Viant's and United's practices cannot have been other than intentional."); ¶ 294 ("It was the intent of United and Viant that the Plaintiffs would rely on the representations made to them.").

Here, it strains credulity that the unnamed "agents" who handled verification-of-benefits calls— the purpose of which is merely to confirm a patient has coverage and to provide a basic summary of that coverage (deductibles, copay/coinsurance, etc.)—intended to defraud Plaintiffs about any of the matters in dispute. But if this is Plaintiffs' theory, they should at least be required to back it up with specific allegations about "who" said "what"—and any facts supporting that person's fraudulent intent.

***When/Where?*** Plaintiffs are also required to allege when and where any misrepresentations occurred. Plaintiffs do not identify ***even a single example*** of the communications that they contend were fraudulent. Although one can speculate that the communications occurred around the time Plaintiffs were performing the treatments alleged in the Complaint, this hardly narrows it down. Two Plaintiffs, PCI Westlake and Bridging the Gaps, allege they have been treating United plan members "[s]ince 2015" (Compl. ¶¶ 195, 202), including "more than 18 patients" whose reimbursements they claim are at issue in the Complaint (*id.* ¶ 188), but they identify no specific communications at any point during this five-year period. Summit Estate alleges it has been treating patients "[s]ince 2017" (*id.* ¶ 209), but similarly offers no details of when any particular communications occurred. And Westwind Recovery does not include any time frame at all for its services or any communications. *Id.* ¶ 188. Each Plaintiff alleges it treated numerous plan members over the course of multiple years, and that only a subset of those members and interactions involved the challenged practices. *See id.* ¶ 195 (9 patients); ¶ 202 (21 patients); ¶ 209 (13 patients). Plaintiffs' blanket assertions that there were misrepresentations "[f]or every patient relevant" over a three- to five-year period fail to satisfy Rule 9(b). *See, e.g.*, *id.* ¶¶ 210–211; *United States ex rel. Serrano v. Oaks Diagnostics, Inc.*, 568 F. Supp.

Gibson, Dunn &
Crutcher LLP

15
DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

2d 1136, 1143 (C.D. Cal. 2008) ("The general allegations that all claims submitted during an almost four year period were fraudulently submitted is insufficient particular[] to satisfy the 9(b) pleading standard."); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) ("[A]llegations such as '[d]uring the course of discussions in 1986 and 1987,' and 'in or about May through December 1987' do not make the grade under Rule 9(b).") (citation omitted).

*How/Why?*  Without more specificity about the alleged misrepresentations, Plaintiffs also fail to plead how and why they were misled.  Plaintiffs' claims of fraud rest almost entirely on allegations that they would be paid UCR for particular services, but Plaintiffs readily acknowledge in the Complaint that this term can have different meanings to different people.  *See, e.g.*, Compl. ¶¶ 5, 17, 74, 94.  Indeed, Plaintiffs contend—contrary to the definitions they cite elsewhere in the Complaint *and* the terms in the attached exhibits—that UCR should be equivalent to "100%" of their "billed charges." *Id.* ¶¶ 190, 197, 204, 211.  But Plaintiffs do not allege that anyone at "United" ever told them this, or that any of their phone calls delved into any specifics about rates, methodologies, or any other details of how they would be paid. *Id.* ¶¶ 190, 197, 204, 211.  Meanwhile, Plaintiffs have known "[f]or years" that they are not being paid at their billed charges (*id.* ¶ 18), because they allege their payments from UBH have "averaged" between 10% and 17% of those charges (*id.* ¶¶ 191, 198, 205, 212).[7]  Given these allegations, even *if* Plaintiffs were given assurances that they would be paid a percentage of "UCR," it remains unclear how and why Plaintiffs could have been *defrauded* by such high-level statements given that they plainly have—and have had for years—a different view of UCR than Defendants.  Plaintiffs' disagreement with the rates they are being paid does not mean they are defrauded every time they receive a communication describing plan coverage.  But again, if this is Plaintiffs' theory, they should at least plead it—and the who, what, and when/where of the alleged fraudulent statements—with particularity.  Because Plaintiffs' allegations are not "specific enough to give [UBH] notice of the particular misconduct which is alleged to constitute the fraud charged," they

---

[7]  Throughout the time period that Summit Estate supposedly was being defrauded (from 2017 to present), it was in active litigation with UBH over a dispute about how UCR should be calculated, making it entirely implausible that Summit Estate was defrauded by mere assurances of UCR.  *See Summit Estate* FAC at 2 (complaint filed in state court on May 1, 2017, seeking relief on alleged UCR underpayments dating back years).

Gibson, Dunn &
Crutcher LLP

1

fail as a matter of law. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also In re Van*

2

*Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1187 (N.D. Cal. 2004) (finding general

3

allegations of reliance on defendant's statements insufficient as a matter of law under Rule 9(b)).

4

### 4.     Plaintiffs Lack RICO Standing.

5

To establish RICO standing, a plaintiff needs to plead an injury to business or property and a

6

sufficient causal nexus between that injury and the alleged RICO predicate offenses—here, the alleged

7

mail and wire fraud. "To establish that an injury came about 'by reason of' a RICO violation, a plaintiff

8

must show that a predicate offense 'not only was a "but for" cause of his injury, but was the proximate

9

cause as well.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 2 (2010) (quoting *Holmes*, 503 U.S.

10

at 268). To satisfy this requirement, a plaintiff who alleges mail (or wire) fraud must "show[] that

11

*someone* relied on the defendant's misrepresentations" in order to establish RICO but-for causation.

12

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008); *see also WellPoint II*, 903 F. Supp.

13

2d at 914–16 (C.D. Cal. 2012) (dismissing RICO claims because plaintiffs failed to allege reliance on

14

alleged mail or wire fraud related to UCR payments); *WellPoint III*, 2013 WL 12130034, at *16 (same).

15

As described above, Plaintiffs make the conclusory allegation that they "relied on United's

16

representations of coverage in admitting patients" (Compl. ¶ 26; *see also id.* ¶¶ 31, 125), but the

17

Complaint is devoid of any allegations explaining with particularity *how* Plaintiffs relied on such

18

generic statements.

19

Finally, Plaintiffs also lack RICO standing because they fail to allege a specific injury to

20

business or property. Although Plaintiffs allege that "[f]ew, if any, of the balance bills are ever paid

21

by patients," and in particular Summit Estate "has not been paid the remaining 89% of the billed

22

amounts owed to them" beyond the "11% of billed charges" they received based on "Viant's pricing"

23

(Compl. ¶ 212), these allegations cannot be reconciled with the claims and allegations by Summit

24

Estate's patients in the related case, *L.D.* There, the plaintiffs seek the same damages as Summit Estate

25

seeks here, based on allegations that the patients were "forced to enter into and make payments" to

26

Summit Estate for the unreimbursed amounts. *L.D.* Compl. ¶ 218. Plaintiffs in *L.D.* also allege that

27

they generally "paid large sums of money that were properly United's responsibility." *Id.* ¶ 265. Given

28

Gibson, Dunn &
Crutcher LLP

17

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

these inconsistent allegations and the lack of specificity in Plaintiffs' Complaint, their RICO claims should be dismissed.

## C.  Plaintiffs' State-Law Claims (Counts I–VI) Are Preempted By ERISA.

Plaintiffs' state-law claims are preempted under Section 514(a) of ERISA, because they directly impact plan administration and require interpretation of ERISA plan terms governing how out-of-network reimbursements are calculated.

Under ERISA Section 514(a), any state-law claim that "relate[s] to"—*i.e.*, that "has a connection with or reference to"—an ERISA plan is preempted. *Shaw v. Delta Airlines*, 463 U.S. 85, 96–97 (1983). This clause is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987) (citations omitted). In applying this statutory test, the Ninth Circuit has ruled that "where the existence of an ERISA plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted." *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010). Additionally, even if a claim does not directly implicate an ERISA plan, "a state law claim is preempted when the claim bears on an ERISA-regulated relationship." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009) (citations omitted).

Plaintiffs' allegations show that their claims have a close connection to ERISA plans. Plaintiffs allege that UCR—the meaning of which is at the center of their dispute—is a term of art in health plans governed by ERISA. *See* Compl. ¶ 74 ("Every plan at issue in this litigation was obligated to pay out-of-network IOP claims at the UCR rate."); *id.* ¶ 75 ("Every plan at issue in this litigation requires the UCR rate to reflect the prevailing charge in a similar geographic area."). Likewise, when Plaintiffs communicated with "United's representative" on phone calls, it was to verify patients' benefits in these ERISA-governed plans, based on UBH's role as claims administrator for these plans. *Id.* ¶ 188. And when Plaintiffs allegedly received assurances on these calls that they would be paid a percentage of "UCR," it was in the context of "United" summarizing the patient's coverage under the relevant ERISA plan. *See id.*

On the face of the Complaint, therefore, "the existence of an ERISA plan is a critical factor in establishing liability." *Wise*, 600 F.3d at 1190. Moreover, as the excerpts from the summary plan

Gibson, Dunn &
Crutcher LLP

18

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1   descriptions attached to the Nguyen Declaration filed in the *L.D.* case show, there are actually ERISA

2   plan provisions addressing these issues—*e.g.*, the proper reimbursement rate for out-of-network

3   services, rates negotiated by UnitedHealthcare or its vendors, and member liability for balance bills.

4   *See* L.D. Dkt. 35-1, Nguyen Decl. Ex. 1 at 335; Ex. 2 at 31–32, 39–40; Ex. 3 at 8, 12–13.  That the

5   actual plan terms support, rather than prohibit, the challenged practices merely underscores the

6   importance of these ERISA plans to the case: Plaintiffs cannot succeed—and Defendants cannot

7   properly defend themselves—without interpreting the terms of these ERISA plans.  *See Egelhoff v.*

8   *Egelhoff*, 532 U.S. 141, 148 (2001) (state-law claims requiring interpretation of ERISA plans are

9   preempted); *see also In re WellPoint Inc. Out-of-Network "UCR" Rates Litig.* ("*WellPoint IV*"), 2014

10  WL 6888549, at *10 (C.D. Cal. Sept. 3, 2014) (ruling that it is not possible to "decide a common UCR

11  rate in a vacuum," because the "Court's analysis must begin with the text of the relevant ERISA plans").

12       Even if Plaintiffs' Complaint did not expressly rely on plan terms, their claims have a

13  "connection with" the plans because Plaintiffs challenge how ERISA claims were processed, how

14  benefits were calculated, and how benefits were communicated—all core functions of plan

15  administration governed by ERISA.  A state-law claim "based on alleged improper processing of a

16  claim for benefits undoubtedly meet[s] the criteria for pre-emption under § 514(a)."  *Pilot Life Ins. Co.*,

17  481 U.S. at 47–48; *Tingey v. Pixley–Richards W., Inc*., 953 F.2d 1124, 1131 (9th Cir. 1992) (state-law

18  case was preempted by ERISA because it all "spring[s] from the handling and disposition of

19  [plaintiff's] medical benefits insurance claim").  ERISA's civil enforcement provision, Section 502(a),

20  was intended to be "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries

21  asserting improper processing of a claim for benefits, and [therefore] varying state causes of action for

22  claims . . . would pose an obstacle to the purposes and objectives of Congress."  *Pilot Life Ins. Co*., 481

23  U.S. at 52.  Plaintiffs' claims plainly would pose such an obstacle; to take just one example, Plaintiffs

24  seek an injunction against Viant's rate negotiations and other relief designed to advance their quest for

25  "billed charges" under California's UCL—state-specific reliefs that conflict directly with ERISA's

26  "objective" to ensure uniform nationwide administration of ERISA plans.  *See Gobeille*, 136 S. Ct. at

27  943 ("ERISA pre-empts a state law that . . . interferes with nationally uniform plan administration."

28  (citation omitted)).

Gibson, Dunn &
Crutcher LLP

19

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1    Additionally, as this Court previously has recognized, state-law misrepresentation claims that

2    arise "in the course of daily plan administration"—like the verification-of-benefits calls alleged here—

3    are likewise preempted.  *See Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 1074, 1085 (N.D.

4    Cal. 2014) (Gonzalez Rogers, J.) (misrepresentation preempted where plaintiff alleged that

5    administrator had negligently calculated her lump-sum benefit and engaged in negligent

6    misrepresentation "for telling her the result of [the] incorrect calculation"); *see also Groves v. Kaiser*

7    *Found. Health Plan Inc.*, 2014 WL 12644296, at *2 (N.D. Cal. July 10, 2014) (Gonzalez Rogers, J.)

8    (subsequent decision denying leave to amend and dismissing claims with prejudice).  In particular,

9    alleged misrepresentations and claims of estoppel arising from coverage verifications are not actionable

10   under state law because they are so closely tied to coverage determinations.  *Armijo v. ILWU-PMA*

11   *Welfare Plan*, 2015 WL 13629562, at *23 (C.D. Cal. Aug. 21, 2015) (state-law claims based on

12   coverage preauthorizations followed by subsequent refusals to pay were preempted because the

13   "promise to pay" was "tethered closely to eligibility for services under the Plan and so is directly related

14   to the entitlement of benefits under the Plan, the exact remedy under § 1132(a)(1)(B)"); *Cal. Spine &*

15   *Neurosurgery Institute v. JP Morgan Chase & Co.*, 2019 WL 7050113, at *4 (N.D. Cal. Dec. 23, 2019)

16   (out-of-network provider's state-law claims preempted where plaintiff alleged that "it called defendant

17   United Health 'to verify the details of BM's insurance coverage and benefits,'" because "[a]bsent BM's

18   ERISA plan, plaintiff would have no reason to call defendant United Health 'to verify' BM's coverage

19   and, incidentally, defendant United Health would not have made any oral representation concerning

20   BM's coverage rights").

21   Here, Plaintiffs can hardly dispute their claims' close connection to ERISA, because in the

22   related case, *L.D.*, their patients are challenging the very same business practices and seeking many of

23   the same remedies under ERISA.  And as discussed above, Summit Estate has asserted claims in its

24   individual case challenging the same practices under ERISA Section 502(a)(1)(B).  These separate

25   lawsuits—and all of the ERISA statutory requirements and plan provisions invoked in these cases—

26   amply demonstrate the close connection between the practices at issue, the members' ERISA plans,

27   and ERISA's exclusive statutory scheme.  They also highlight the risk of inconsistent rulings that would

28   arise in the absence of preemption, because this Court is being asked to evaluate many of the same

issues and practices under ERISA in *L.D.* and the individual Summit Estate case, while evaluating the same issues and practices under state law (and potentially multiple state laws), here.  This is precisely what Section 514(a) of ERISA is designed to prevent.

That this case was brought by providers, rather than members, does not alter the ERISA preemption analysis.  *See, e.g.*, *Cal. Pac. Med. Ctr. v. Concentra Preferred Sys., Inc.*, 2004 WL 2331876, at \*5 (N.D. Cal. Oct. 15, 2004) (state-law claims brought by provider were expressly preempted because they "affect[ed] the relationships regulated under ERISA, namely between the plan and its participants"); *Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*, 24 Cal. App. 5th 153, 159 (2018) (ruling that "[s]tate law causes of action" brought by a provider "seeking to recover unpaid benefits under a welfare benefit plan regulated under [ERISA] are generally conflict preempted").  Plaintiffs allege no facts to distinguish their case from cases that courts have dismissed as preempted.[8]

Nor does Section 514(a) preemption turn on whether Plaintiffs have their own viable claim under ERISA Section 502(a).  The remedies available under Section 502(a) are exclusive, so ERISA often preempts state-law claims even if plaintiffs may end up with no remedy at all.  *See, e.g.*, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1010 (9th Cir. 1998).  Moreover, the relevant inquiry under Section 514(a)—which is distinct from and broader than complete preemption under Section 502(a)—"is not whether a remedy exists . . . but rather whether the claims 'relate to' an ERISA plan."  *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355, 1359 (9th Cir. 1997); *see also Josef K. v. Cal. Physicians' Serv.*, 2019 WL 2342245, at \*3 (N.D. Cal. June 3, 2019) (Gonzalez Rogers, J.) (tortious interference claim preempted under Section 514(a), even though it was not preempted under Section 502(a), because the claim was "intertwined with defendants' denial of benefits under plaintiffs' ERISA plan" and "but for the existence of

---

[8] Plaintiffs never allege any specific, independent agreement by Defendants to pay a specific amount for specific services, apart from any plan coverage, so this case is distinguishable from cases involving such allegations.  *See, e.g.*, *Catholic Healthcare W. Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x. 563, 564–65 (9th Cir. 2008) (state-law claims allowed where "no ERISA-governed relationship is implicated" because provider's claims were "based on contractual obligations arising directly between the provider and the ERISA plan" and "any claims [the provider] might have had under [defendant's] plan either have been resolved or waived"); *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1048 (9th Cir. 1999) (state-law claims arose from independent network contracts between the plaintiff and Blue Cross establishing the fee for a physician's services).

[plaintiffs'] ERISA plan, plaintiffs would not have suffered the harm alleged with respect to the[ir] interference with contract claim").

In fact, ERISA Section 502(a)(1)(B) affords a remedy for alleged underpayments "under the terms of" an ERISA plan—along with a framework to prevent conflicting determinations (or double recoveries) when both members and providers sue for the same alleged underpayments.  When this happens, the court is required to determine whether there is a valid assignment of benefits from the member to the provider.  If so, then the provider is the proper plaintiff; if not, then the member is the proper plaintiff.  *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014).  In Summit Estate's individual case, it asserts claims under ERISA Section 502(a)(1)(B) based on assignments received from patients.  Here, Plaintiffs also allege that they "are assignees of the member benefits" (Compl. ¶ 133)—but they nevertheless attempt to avoid ERISA by suing under state law.  The *L.D.* plaintiffs, for their part, bring their claims under ERISA without mentioning assignments.  Whatever the case, Plaintiffs cannot avoid preemption—or the impact of any assignments—by "dressing up an ERISA benefits claim in the garb of [] state law" claims.  *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 983 (9th Cir. 2001).

### D.    Plaintiffs' State-Law Claims Should Be Dismissed For Additional Reasons.

#### 1.    The Misrepresentation Claims Fail To Satisfy Rule 9(b) (Counts I–IV).

Even if Plaintiffs' state-law claims were not preempted, they should still be dismissed for failure to state a claim.  The misrepresentation claims (Counts I–IV) fail for the same reason as the RICO claim: they fail to satisfy Rule 9(b).[9]

#### 2.    The Economic Loss Rule Bars Counts I–IV.

Under the economic loss rule, "a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort.  Instead, the claimant is limited to recovery under the law of the contract."  *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995); *see also Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*, 2020 WL 2027955, at *5 (C.D. Cal. Jan.

---

[9] Count I, under the UCL, needs to satisfy Rule 9(b) for the "fraudulent" prong of this statute.  Counts II and III, for intentional and negligent misrepresentation, are subject to Rule 9(b).  Count IV, for conspiracy, fails because there is no stand-alone cause of action for civil conspiracy in California.  *Clapp v. City & Cty. of S.F.*, 2019 WL 2410508, at *8 (N.D. Cal. June 7, 2019).

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

6, 2020) (dismissal warranted where plaintiffs "[do not] attempt to distinguish any [concrete, quantifiable] harm above and beyond those economic damages").  Here, Plaintiffs' alleged harms are purely pecuniary: they allege underpayments.  Compl. ¶¶ 158–176.  And as explained above, these alleged harms are based on the terms of a contract—the terms of the relevant ERISA plans.  Plaintiffs "[do not] attempt to distinguish any [concrete, quantifiable] harm above and beyond those economic damages."  *Bristol SL Holdings*, 2020 WL 2027955, at *5.  Allegations that UBH "promised to reimburse [them] and failed to do it" are "not enough for tort damages."  *Id.*; *see also United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1184 (C.D. Cal. 2009) (dismissing claims against an insurer under the economic loss rule because the "allegedly tortious conduct and representations were all made pursuant to a purely contractual duty").

### 3. The Contract And Estoppel Claims Lack Sufficient Specificity (Counts V And VI).

Plaintiffs allege that they entered into a contract to be paid "at a rate agreed to between them, the UCR" (Compl. ¶ 316), but without more, these allegations do not show a meeting of the minds sufficient to form a contract—particularly given the different meanings of "UCR."[10]  In *Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*, 12 Cal. App. 5th 200 (2017), the Court of Appeal affirmed dismissal of similar contract claims based on allegations that an insurer agreed through preauthorization phone calls to pay the provider UCR for covered services, because these allegations were not specific enough to give rise to "any sort of agreement as to the rate [the insurer] would pay." *Id.* at 216.  Other courts have rejected similar claims as well.  *See, e.g.*, *ABC Servs. Grp., Inc. v. United Healthcare Servs.*, 2019 WL 4137624, at *6 (C.D. Cal. June 14, 2019) (allegations of preauthorized services insufficient, because plaintiff needs to allege "facts about the specific terms of its agreement or agreements with a defendant in order to make an implied contract claim").[11]

---

[10] "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008).  The elements for breach of oral contract are the same for breach of written contract.  *Stockton Mortgage, Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014).

[11] *See also Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2017 WL 6030260, at *4 (C.D. Cal. Nov. 27, 2017) (dismissing contract theories where provider's complaint did not describe "when Plaintiff obtained authorization, for what types of service or how many patients, or how much Defendants agreed

23

Gibson, Dunn & Crutcher LLP

For similar reasons, Plaintiffs' estoppel claim fails.  Under California law, a vague reference to UCR on a phone call does not constitute a clear and unambiguous promise, and Plaintiffs also do not adequately plead that they reasonably relied on these statements to their detriment.  *Smith v. City & Cty. of San Francisco*, 225 Cal. App. 3d 38, 48 (1990) (conclusory assertions of reliance are not sufficient); *Pain Mgmt. Specialists v. Blue Shield of Cal. Life & Health Ins. Co.*, 2015 WL 546025, at *2–3 (C.D. Cal. Feb. 9, 2015) (dismissing promissory estoppel claim where plan language indicated that "services provided by [OON] providers may not be fully reimbursed," because given that language, "[p]laintiffs cannot plausibly allege that they, as non-preferred, out-of-network providers, were promised full payment").  Additionally, any promissory estoppel claim by Bridging the Gaps fails for the additional reason that this Plaintiff is based in Virginia (Compl. ¶ 64), which does not recognize promissory estoppel.  *See W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 254 Va. 514, 521, 493 S.E.2d 512, 516 (1997) ("[W]e hold that promissory estoppel is not a cognizable cause of action in the Commonwealth, and we decline to create such a cause of action.").

### 4.  The UCL Claim Fails For Additional Reasons (Count I).

The basis for Plaintiffs' UCL claim is unclear from the Complaint, but to the extent it rests on the same theories as the other counts, as suggested by its various cross-references, it fails for the same reasons.  It also fails for additional reasons specific to each "prong" of the UCL, discussed below.

First, any claims under the fraudulent prong fail under Rule 9(b), and Plaintiffs lack standing to press those claims for the same reasons as noted for Plaintiffs' other misrepresentation-based theories.  *See supra* pp. 12–17; *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 326–27 (2009).

Second, any claim under the unlawful prong fails because Plaintiffs fail to identify any violation of a law.  *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 837 (2006) (dismissing UCL

---

to pay when authorizing treatments"); *TML Recovery, LLC v. Humana Inc.*, 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) (dismissing claims for breach of implied/oral contract because "an insurer's verification is not the same as a promise to pay," so a plaintiff must at least state "basic terms, like what services were to be provided, who would provide them, the cost, or the time frame"); *Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*, 228 Cal. App. 4th 644, 649 (2014) (affirming dismissal of implied contract claim because no such claim is created where insurer authorized treatment and stated that provider "would be paid" for that treatment); *Ydm Mgmt. Co. v. Aetna Life Ins. Co.*, 2016 WL 3751943, at *4 (C.D. Cal. July 13, 2016) (dismissing implied and oral contract claims by OON provider who alleged that Aetna promised to pay more than plan terms required, where the complaint "offers no allegation explaining why Plaintiff believes" that Aetna would pay more "than the amount set forth in the Evidence of Coverage [i.e., the plan]").

Gibson, Dunn &
Crutcher LLP

claim because plaintiff failed to identify any other laws that were violated); *see also ABC Servs. Grp., Inc.*, 2019 WL 4137624, at *7 (dismissing similar UCL claim by substance abuse center).

Third, Plaintiffs' unfairness prong claim fails because they fail to allege they were competitors, consumers, or otherwise treated unfairly as prohibited by the UCL. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (rejecting UCL claim where "the alleged victims are neither competitors nor powerless, unwary consumers"); *see also Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*, 2017 WL 4340272, at *4 (E.D. Cal. Sept. 29, 2017); *ABC Servs. Grp., Inc.*, 2019 WL 4137624, at *8 (dismissing similar UCL claim by substance abuse center).

Fourth, relief under the UCL is limited to equitable remedies, and Plaintiffs cannot state a claim for equitable relief because there are adequate remedies at law for any past underpayments.  Further, although Plaintiffs primarily seek injunctive relief under the UCL, they lack Article III standing to do so because they do not allege "a reasonable likelihood of future injury." *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003).  Plaintiffs' speculation that the challenged practices "are likely to continue" is insufficiently specific to establish a personal stake and involves "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  Indeed, Plaintiffs—the only providers whose standing matters at this phase of the case— allege that they "avoid patients with claims that might be subject to repricing by Viant." Compl. ¶ 196.

Finally, Bridging the Gaps, which is based in Virginia (Compl. ¶ 64), fails to allege sufficient facts to support a claim under California's UCL.  To "overcome the presumption against extraterritorial application of a California statute, non-resident plaintiffs, who are not injured in California, must establish that the unlawful conduct giving rise to their claims occurred in California." *Reed v. Dynamic Pet Prods.*, 2015 WL 4742202, at *9 (S.D. Cal. July 30, 2015).  Bridging the Gaps fails to do so here.[12]

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

---

[12] UBH reserves the right to contest which state's laws apply to all Plaintiffs and the putative nationwide class.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–94 (9th Cir. 2012).

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

Gibson, Dunn &
Crutcher LLP

Dated: June 11, 2020                                    Respectfully submitted,


                                                        /s/ *Geoffrey Sigler*
                                                           Geoffrey Sigler

                                                        Attorney for Defendant
                                                        UNITED BEHAVIORAL HEALTH

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249