**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
MOE KESHAVARZI, SBN 223759
  E-Mail: mkeshavarzi@sheppardmullin.com
DAVID DWORSKY, SBN 272167
  E-Mail: ddworsky@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone: 213.620.1780
Facsimile: 213.620.1398

ERROL J. KING, JR. (*admitted pro hac vice*)
Errol.King@phelps.com
**PHELPS DUNBAR LLP**
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 376-0207
Fax: (225) 381-9197

Attorneys for Defendant,
Viant, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE INC. d/b/a SUMMIT ESTATE OUTPATIENT, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>UNITED BEHAVIORAL HEALTH, INC., a California corporation, and VIANT, INC., a Nevada corporation,<br><br>    Defendants. | Case No. 4:20-cv-02249-YGR<br><br>(Hon. Yvonne Gonzalez-Rogers)<br><br>**VIANT, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 9(b) AND 12(b)(6)**<br><br>**[Fed. R. Civ. P. 9(b) and 12(b)(6)]**<br><br>Complaint Filed: April 2, 2020<br>Trial Date:    None Set<br><br>Hearing Date:  August 11, 2020<br>Hearing Time:  2:00 p.m.<br>Courtroom:    1 |

Defendant, Viant, Inc. ("Viant") respectfully submits this Reply Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint filed by Plaintiffs, Pacific Recovery Solutions d/b/a Westwind Recovery, et al., on behalf of themselves and similarly situated out-of-network behavioral health providers (collectively the "Plaintiffs"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (the "Motion"), as follows:

## INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

To paraphrase Plaintiffs' opening sentence in their Opposition to Viant's Motion, "[Plaintiffs] characterize[] [their] allegations as they want them to be, not as they are." Plaintiffs' Opposition ("Pl. Opp."), at p. 1. As Viant made clear in its opening Memorandum in Support of its Motion ("Viant Memo."), Plaintiffs' allegations against Viant fail to meet the standards of Fed. R. Civ. P. 9(b) and 12(b)(6), and nothing that Plaintiffs have said or attempted to add by way of their Opposition changes that fact.

This Court is presented with several issues to resolve:

1. Are the allegations in the Complaint subject to complete or conflict preemption under ERISA Sections 502(a) and 514(a), 29 U.S. §§ 1132(a) & 1144(a)?

2. Have the Plaintiffs failed to plead fraud "with particularity" as required by Fed. R. Civ. P. 9(b), thereby requiring the dismissal of all their state law claims, as well as their civil RICO claims?

3. Have the Plaintiffs failed to meet the "plausibility" standard of Fed. R. Civ. P. 8(a), as articulated by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), thereby requiring the dismissal of all of their claims under Fed. R. Civ. P. 12(b)(6)?

4. Subsumed within the foregoing, have Plaintiffs failed to allege a civil RICO violation, for various reasons previously identified by Viant, thereby requiring dismissal of that claim?

5. And finally, have Plaintiffs failed to make out an antitrust claim against Viant under Section 1 of the Sherman Act, 15 U.S.C. § 1, entitling them to pursue a claim under Section 4 of the Clayton Act, 15 U.S.C. §15?

The answer to each of these questions is simple and straightforward: **Yes**.  Despite their efforts to describe the conclusory allegations of the Complaint as something more that will satisfy the pleading standards of the Supreme Court and the Ninth Circuit, Plaintiffs are really doing nothing more than "standing pat" in the hope that the Court will conclude that they have done just enough to make out a case against Viant (and its co-defendant, United Behavioral Health, Inc. ("United")).  And, to the extent that they have tried to inject extraneous material into the Record through their Opposition, *see* "II. Reimbursement Methodology," Pl. Opp., at pp 1-4, in contravention of California federal court admonitions, *see, e.g., Romero v. HP, Inc.*, 2017 WL 386237, *6 (N.D. Cal. January 27, 2017); *Leon v. Hayward Building Dep't*, 2017 WL 5900550, *3-4 (N.D. Cal. November 28, 2017), they have reinforced the point Viant has been making – the Complaint fails to state claims upon which relief can be granted.[1]

## ARGUMENT

### I. Plaintiffs' Claims are Preempted by ERISA.

Because ERISA preemption of their claims would "gut" their case, Plaintiffs have gone to extraordinary lengths to argue past Viant's correct statements of the applicable law and to distinguish the controlling precedents that Viant has presented to the Court to establish preemption, either complete under ERISA Section 502(a), or conflict under ERISA Section 514(a).  It is undeniable that the underlying health benefit policies administered by United are implicated by

---

[1] The Ninth Circuit has explained that when evaluating a motion to dismiss pursuant to Fed. R. Civ. 12(b)(6), "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998).

Plaintiffs' underpayment claims, however they are couched (*e.g.*, under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Count I.b); as common law torts of intentional misrepresentation/fraudulent inducement, negligent misrepresentation, or a civil conspiracy (Counts II, III, and IV); or as the quasi-contractual claim pf promissory estoppel (Count VI)).[2] Accordingly, because the terms of those plans are implicated in each and every instance where Plaintiffs claim they have been underpaid (and where they have valid assignments and standing to sue), ERISA Section 502 trumps state law.  *See* Viant Memo., at pp. 4-5.

Plaintiffs suggest that the Court look past this clearly laid-out standard and, citing cases relating to coverage, *see* Pl. Opp., at p. 5, determine that there are independent relationships or duties upon which they can rely to seek redress for their alleged damages.  However, that approach ignores the fact that, in this case, where coverage is not at issue (all claims having been paid, *see* Complaint, at ¶¶ 72-73), one must always return to the plans to ascertain what, if anything, Plaintiffs might be entitled to.  This places one squarely back within the realm of ERISA Section 502.

As to ERISA Section 514, because Plaintiffs' state law claims "relate to" ERISA plans of the patients treated by Plaintiffs insofar as they "refer to" or are "in connection with" those plans, then that section preempts those claims.  The Ninth Circuit has unequivocally held that "where the existence of an ERISA plan is a critical factor in establishing liability under a cause of action, the state law claim is preempted."  *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (a case which Plaintiffs fail to discuss).

---

[2] Plaintiffs' fifth count, for breach of oral and/or implied contract, was only brought against United.  Thus, Plaintiffs' statement that Viant "does not contest" that claim is puzzling.  Also, by expressly adopting the arguments raised by United in its motion papers, *see* Viant Memo., at p. 2, Viant *is* contesting Plaintiffs' positions on such issues as the applicability of the "economic loss" doctrine, which Plaintiffs well recognize.

Plaintiffs suggest that raising conflict preemption at this stage of the litigation is premature (even though the decisions granting motions to dismiss based on Section 514 argue to the contrary) and, regardless, is not applicable here under the test articulated in *Paulson v. CNF Inc.*, 559 F.3d 1061 (9th Cir. 2009). However, all Plaintiffs proceed to do is restate the test and then assert their claims fall outside it. Pl. Opp., at p. 7. That is insufficient. ERISA preemption does apply to the claims in this case, requiring the Court to dismiss them. *See* Viant Memo., at pp. 5-6.

## II.  Plaintiffs Have Failed to Meet the Pleading Standard of Rule 9(b).

Plaintiffs' protestations to the contrary, in any instance in which fraud is directly or indirectly pled (*i.e.*, their state law and civil RICO claims), they have failed to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). While Plaintiffs argue that they do not have to be *too* specific, just specific *enough* to allow Viant (and United) to be on notice of the alleged particular misconduct so that they can defend themselves, that is not the standard. Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (*quoting Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir.2004)). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (*quoting Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997)). Plaintiffs do not come close to that level of specificity. Simply saying that "these causes of action are factually and legally supported by the allegations in the Complaint," Pl. Opp., at p. 9, does not establish anything other than that Plaintiffs are unwilling (or unable) to set forth the requisite information.

## III.  Plaintiffs Have Failed to Meet the Plausibility Standard of Twombly/Iqbal.

Cutting across all of the allegations in the Complaint is one fundamental flaw – Plaintiffs have failed to present a plausible claim as required by *Twombly/Iqbal* alleging that Viant (or Cigna) has done anything improper or illegal in engaging in above-board, contractual dealings to control excessive health care costs. Fed. R. Civ. P. 8(a) requires such a showing; in its absence, the

1  Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6).  *See Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *2 (N.D. Cal. April 21, 2020 (Gonzales-Rogers, J.) (dismissal appropriate when a complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory").

The analysis required under *Twombly* and *Iqbal* is straightforward.  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  While not akin to a "probability requirement," the plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support a plaintiff's claim. *Id.* at 556.  However, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.  *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).

In *Iqbal*, the Supreme Court explained the "working principles" underlying its decision in *Twombly*.  Courts considering motions to dismiss should adopt a "two-pronged approach" in applying these principles:  (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 566 U.S. at 679.  Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint, "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.  *Id.* at 682 (quoting *Twombly*, 550 U.S. at 567).

Applying those working principles to the Complaint in this matter leads to the inevitable conclusion that Plaintiffs have not made out a plausible case in any of the Counts against Viant. First, shorn of all of the "merely legal conclusions" – which, in reality, make up the bulk of

Plaintiffs' allegations – the Complaint strives mightily to cast Viant and United as focused on nothing but fraud and deception aimed at depriving Plaintiffs of payments for services rendered at UCR rates in order to line their pockets with ill-gotten gains.  However, when one considers the "obvious alternative explanation" of managed care programs designed and implemented to hold down excessive health care costs for the benefit of plan sponsors, plan participants, and society as a whole, then Viant's and United's conduct appears in a whole new light – a much more plausible one than Plaintiffs' tale of intentional and negligent misrepresentations, conspiracy, racketeering, and anticompetitive conduct.

### IV. **Plaintiffs Have, for Various Reasons, Failed to Make Out a Civil RICO Claim.**

Plaintiffs' claim that Viant has violated 18 U.S.C. 1962(c) by engaging in a "pattern of racketeering activity" through the operation with United of an "association-in-fact" RICO "enterprise" is fatally flawed not only because of its implausibility and lack of specificity as to what Viant alone is alleged to have done, but also because Plaintiffs lack standing, cannot establish that any alleged damages they have suffered were proximately caused by Viant,[3] and cannot show the "common purpose" required for a RICO violation to be brought against Viant as an alleged participant in the claimed RICO enterprise.[4]

---

[3] Plaintiffs have not established that the alleged RICO violations led directly to their injuries. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  There has been no showing that anyone relied on Viant's alleged wrongful conduct; thus, Plaintiffs have not shown they were injured by reason of a RICO predicate offense. *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *17 (C.D. Cal. July 19, 2103).

[4] As is the case here, entities pursuing their own individual economic interests, rather than a shared purpose do not satisfy the "common purpose" element of an "association-in-fact" enterprise. *Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 78190, at *4-*6 (N.D. Cal. January 6, 2015 (Gonzalez-Rogers, J.), *aff'd*, 752 Fed. App'x 380, 382 (9th Cir. 2018).

1    At the outset, Viant is compelled to point out that Plaintiffs' discussion in its Opposition of an alleged claim that Viant (and United) have violated RICO by "laundering monetary instruments" must be disregarded as such does not appear in the Complaint. *See* Pl. Opp., at pp. 17-18. Making such a baseless charge in order somehow to overcome their initial failure to identify a federal health care offense violative of RICO shows the lengths to which Plaintiffs are willing to go to keep their case before the Court.

Viant will not burden the Court with restating the arguments it previously presented concerning the deficiencies in Plaintiffs' RICO allegations. Suffice it to say that Plaintiffs' arguments themselves do nothing to cure those defects with respect to vague and conclusory allegations of fraud. As noted previously, it is to the Complaint, and the Complaint only, that the Court can look to determine the adequacy of Plaintiffs' claims. *See* p. 2 & n.1, *supra*. The attempted injection of extraneous information regarding OPR and FAIR Health is unavailing.

The simple, inescapable conclusion that one must draw in examining Plaintiffs' RICO allegations is that there is no specific factual information conveyed in the Complaint that establishes any of the following: (a) that Viant misrepresented any information to Plaintiffs via the U.S. mail or wires; (b) that Plaintiffs acted in reliance on any information that Viant conveyed to them, whether accurate or not; (c) that there was a "common purpose to deceive" on the part of Viant and United; (d) that there was a distinct enterprise or conspiracy created by Viant and United to divert monies owed to Plaintiffs; (e) that the contractual relationship between Viant and United was anything other than a lawful effort to manage healthcare costs; (f) that any alleged damages incurred by Plaintiffs were the "but for and proximate result" of any action or omission to act on the part of Viant; and (g) that Plaintiffs have standing to sue when the patients involved in the underlying healthcare claims have themselves brought suit against the Defendants.

Plaintiffs' extensive citation to inapposite cases to paint over the foregoing makes interesting reading, but it fails to address the main issue – namely, that outside of conclusory allegations which must be disregarded, there is no valid civil RICO claim set forth in the Complaint.

### V.     Plaintiffs have Failed to Allege a Per Se Violation of the Sherman Act or to Demonstrate Standing to Bring One.

Plaintiffs' efforts to show that they have made out a Sherman Act claim against Viant (and United), and that they have standing and have suffered antitrust injury under the Clayton Act begin with the ludicrous suggestion that Viant has claimed that healthcare services are outside of the scope of the antitrust laws.  What Viant has argued, and continues to argue, is that Plaintiffs' attempt to fashion an antitrust claim without alleging a relevant product or geographic market, or that Viant and United are competitors (which they clearly are not[5]), or that there is any agreement or conspiracy to fix prices, dooms its Sherman Act claim from the outset.  The suggestion that Viant and United have harmed competition, *see* Pl. Opp., at pp. 19-21, thereby supporting Plaintiffs' claim that they have standing, is meaningless unless there are properly defined relevant markets as to which such a claim can be evaluated.  Plaintiffs cannot point to any allegation in the Complaint that provides that crucial element of an antitrust claim.

Further, the same weakness that undermines Plaintiffs' RICO claim afflicts their antitrust claim – they lack standing because any alleged *antitrust* injury that they may have suffered is too remote and not proximately caused by any conduct on the part of Viant.

Plaintiffs spend a significant portion of their Opposition attempting to argue that they have properly alleged a *per se* violation of the Sherman Act, although they seem to morph their claim by moving from a claim of price-fixing to one of market allocation.  They state, correctly so far as it goes, that "[h]orizontal market division is a 'classic per se antitrust violation.'"  Pl. Opp., at p. 22.  They then go on to suggest that "Plaintiffs have sufficiently alleged a horizontal market division in their Complaint as the alleged conduct shows a *de facto* oligopsony."  *Id*.  The problem is that they

---

[5] Unlike United, or any other payer or third-party administrator, Viant does not administer benefits, does not pay claims, does not adjudicate benefits, does not review plan language when pricing claims, does not administer claims, and does not set the rate of payment that will be paid to any provider by United or any other company.

1 left out one key element: a market division *among competitors*. **Viant and United are not**

2 **competitors.** Plaintiffs state that "it is the insurer that is the *per se* buyer of the healthcare services.

3 In essence, the health insurers form an oligopsony as health care buyers." *Id.* Where is Viant in

4 this picture, since it is not an insurer? The answer is straight-forward – it is not in the picture when

5 it comes to an allegation of market disruption.

6 As to alleged price-fixing, Plaintiffs assert, without providing any underlying market facts,

7 that "Defendants' agreements and implementation of a non-MRC fixed price, commonly referred to

8 among Defendants as the 'target price,' is anti-competitive price fixing that inhibits a competitive

9 marketplace." *Id.*, at p. 24. How so, when Viant and United do not compete?

10 Finally, Plaintiffs attempt to distinguish the *WellPoint* decisions, which are directly on

11 point, but it is important to note that in attempting to do so, Plaintiffs make a telling point – they

12 quote a passage from *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d

13 1002 (C.D. Cal. 2011), which makes it clear that an antitrust claim may only arise when

14 "participating *insurers* conspire[d] amongst themselves." (Emphasis added)   That is not the case

15 here.

## CONCLUSION

17 For the forgoing reasons, and the reasons set forth in Viant's opening Memorandum of Points

18 and Authorities in Support of its Motion to Dismiss, as well as those set forth in United's motion

19 papers, Viant, Inc. respectfully asks the Court to dismiss with prejudice the Complaint.

DATED: July 16, 2020

By: /s/ Moe Keshavarzi
Moe Keshavarzi
David E. Dworsky
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone: (213) 620-1780
Fax: (213) 620-1398

and

Errol J. King, Jr. (*admitted pro hac vice*)
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 376-0207
Fax: (225) 381-9197

Attorneys for Defendant, Viant, Inc.