HEATHER L. RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
LAUREN M. BLAS, SBN 296823
  lblas@gibsondunn.com
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

GEOFFREY SIGLER (*admitted pro hac vice*)
  gsigler@gibsondunn.com
JOSHUA LIPTON (*admitted pro hac vice*)
  jlipton@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.995.8500
Facsimile:  202.467.0539

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE INC. d/b/a SUMMIT ESTATE OUTPATIENT, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, and VIANT, INC., a Nevada Corporation,<br><br>Defendants. | Case No.  4:20-cv-02249-YGR<br>Related Case No: 4:20-cv-02254-YGR<br><br>**DEFENDANT UNITED BEHAVIORAL HEALTH'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:    Tuesday, August 11, 2020<br>Time:    2:00 p.m.<br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Crtrm:  Courtroom 1, Fourth Floor<br><br>Complaint Filed:  April 2, 2020 |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ..................................... 2

III.    STATEMENT OF RELEVANT FACTS .................................................................. 2

IV.     ARGUMENTS ......................................................................................................... 2

        A.      Plaintiffs' Antitrust Claim Fails As A Matter Of Law (Count VIII). ........... 2

        B.      Plaintiffs' RICO Claims Also Fail (Count VII). .......................................... 5

        C.      Plaintiffs' State-Law Claims (Counts I–VI) Are Preempted By ERISA. ..... 9

        D.      Plaintiffs' State-Law Claims Should Be Dismissed For Additional Reasons. .......... 12

                1.      The Misrepresentation Claims Fail to Satisfy Rule 9(b) (Counts I-IV).......... 12

                2.      The Economic Loss Rule Bars Counts I-IV.................................. 13

                3.      Plaintiffs' Contract Allegations Lack Sufficient Specificity (Count V). ........ 13

                4.      The Estoppel Claims Also Lacks Sufficient Specificity (Count V)............... 14

                5.      The UCL Claim Fails For Additional Reasons (Count I). ............. 14

V.      CONCLUSION ....................................................................................................... 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABC Services Group v. Health Net of California, Inc.*,
    2020 WL 2121372 (C.D. Cal. May 4, 2020) ...................................................13

*In re Aetna UCR Litig.*,
    2015 WL 3970168 (D.N.J. June 30, 2015) .......................................................6

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) ......................................................................................12

*Arizona v. Maricopa Cty. Med. Soc.*,
    457 U.S. 332 (1982) ..........................................................................................3

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) ..........................................................................................4

*Banks v. ACS Educ.*,
    638 F. App'x 587 (9th Cir. 2016) .....................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................3

*Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp.*,
    187 F.3d 1045 (9th Cir. 1999) ........................................................................10

*Blue Oak Med. Grp. v. State Comp. Ins. Fund*,
    2018 WL 6431878 (C.D. Cal. Aug. 9, 2018) ................................................5, 8

*Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*,
    2020 WL 2027955 (C.D. Cal. Jan. 6, 2020) ...................................................13

*California Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*,
    2018 WL 6074567 (C.D. Cal. June 28, 2018) .................................................13

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986) ..........................................................................................4

*Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*,
    321 F. App'x 563 (9th Cir. 2008) ...................................................................10

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018) ..............................................................6

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*,
    235 F. Supp. 3d 1132 (E.D. Cal. 2017) ............................................................8

Gibson, Dunn &
Crutcher LLP

*Crutcher v. Multiplan, Inc.*,
   2016 WL 6832644 (W.D. Mo. Nov. 18, 2016) ..................................................................5

*Deitz v. Comcast Corp.*,
   2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) .................................................................12

*Desoto v. Condon*,
   371 F. App'x 822 (9th Cir. 2010) ....................................................................................7

*Doctors Med. Ctr. of Modesto, Inc. v. The Guardian Life Ins. Co.*,
   2009 WL 179681 (E.D. Cal. Jan. 26, 2009)...................................................................11

*Enloe Medical Center v. Principal Life Ins. Co.*,
   2011 WL 6396517 (E.D. Cal. Dec. 20, 2011)................................................................14

*Fremont Emergency Servs. (Mandavia), Ltd. v. United HealthCare Ins. Co.*,
   Case No. 19-79278-B (Clark Cty. Nev. Dist. Ct. June 24, 2020)....................................5

*Gilbert v. MoneyMutual LLC*,
   2018 WL 8186605 (N.D. Cal. Oct. 30, 2018).................................................................5

*Groves v. Kaiser Found. Health Plan Inc.*,
   2014 WL 12644296 (N.D. Cal. July 10, 2014) ...............................................................12

*Groves v. Kaiser Found. Health Plan Inc.*,
   32 F. Supp. 3d 1074 (N.D. Cal. 2014) ...........................................................................12

*H.H. v. Aetna Ins. Co.*,
   342 F. Supp. 3d 1311 (S.D. Fla. 2018) ..........................................................................15

*Hoang v. Vinh Phat Supermarket, Inc.*,
   2013 WL 4095042 (E.D. Cal. Aug. 13, 2013) ..................................................................8

*Innovative Metal Design, Inc. v. U.S. Bank Nat'l Ass'n*,
   2015 WL 9434779 (D. Or. Nov. 18, 2015)......................................................................7

*IV Solutions, Inc. v. United Healthcare Srvs., Inc.*,
   2012 WL 12887401 (C.D. Cal. Nov. 19, 2012)..............................................................11

*In re Jamster Mktg. Litig.*,
   2009 WL 1456632 (S.D. Cal. May 22, 2009)..................................................................5

*Josef K. v. Cal. Physicians Serv.*,
   2019 WL 2342245 (N.D. Cal. June 3, 2019) ..................................................................12

*Kamakahi v. Am. Soc. for Reprod. Med.*,
   2013 WL 1768706 (N.D. Cal. Mar. 29, 2013)..................................................................3

*Multifamily Captive Grp. v. Assurance Risk Managers, Inc.*,
   578 F. Supp. 2d 1242 (E.D. Cal. 2008)..........................................................................13

Gibson, Dunn & Crutcher LLP

iii

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015)................................................................................................3

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993)......................................................................................................8

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007)..............................................................................................6, 8

*Pacific Bay Recovery, Inc. v. Cal. Physicians' Services, Inc.*,
  12 Cal. App. 5th 200 (2017)................................................................................................13

*Paulsen v. CNF Inc.*,
  559 F.3d 1061 (9th Cir. 2009)................................................................................................9

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987)..................................................................................................................9

*Port Medical Wellness, Inc. v. Conn. Gen. Life Ins. Co.*,
  24 Cal. App. 5th 153 (2018)................................................................................................11

*Ray Klein, Inc. v. Bd. of Trustees of the Alaska Elec. Health & Welfare Fund*,
  307 F. Supp. 3d 984 (D. Alaska 2018)................................................................................11

*Regents of the Univ. of Cal. v. Principal Fin. Grp.*,
  412 F. Supp. 2d 1037 (N.D. Cal. 2006) ..............................................................................14

*Saterbak v. Nat'l Default Servicing Corp.*,
  2016 WL 4430922 (S.D. Cal. Aug. 22, 2016) ......................................................................8

*Schaum v. Honeywell Retiree Med. Plan No. 507*,
  2006 WL 2496435 (D. Ariz. Mar. 31, 2006) ......................................................................10

*Schneider v. Cal. Dept. of Corrections*,
  151 F.3d 1194 (9th Cir. 1998)................................................................................................2

*Schwartz v. Associated Emp'rs Grp. Benefit Plan & Tr.*,
  2018 WL 453436 (D. Mon. Jan. 17, 2018) .........................................................................10

*Shaw v. Nissan N. Am., Inc.*,
  220 F. Supp. 3d 1046 (C.D. Cal. 2016)..................................................................................5

*Sonner v. Premier Nutrition Corp.*,
  ---F.3d---, 2020 WL 3263043 (9th Cir. 2020) ....................................................................15

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011)................................................................................15

*Stitt v. Citibank, N.A.*,
  2015 WL 75237 (N.D. Cal. Jan. 6, 2015) ..............................................................................5

iv

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)......................................................................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,
    2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)..........................................................................6

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008)....................................................................................................6

*In re Wells Fargo Ins. Mktg. & Sales Practices Litig.*,
    2018 WL 4945541 (C.D. Cal. June 18, 2018) ...........................................................................6

*Welp v. Cigna Health & Life Ins. Co.*,
    2017 WL 3263138 (S.D. Fla. July 20, 2017) ...........................................................................15

*Wise v. Verizon Commc'ns Inc.*,
    600 F.3d 1180 (9th Cir. 2010)..............................................................................................9, 11

**Statutes**

18 U.S.C. § 1956 .............................................................................................................................7

18 U.S.C. § 1956(a)(1) ....................................................................................................................7

18 U.S.C. § 1956(c)(7)(F) ...............................................................................................................7

Cal. Health & Safety Code § 1371.8 .............................................................................................14

Cal. Health & Safety Code § 1374.72 ...........................................................................................14

Cal. Ins. Code § 10144.5 ...............................................................................................................14

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiffs' opposition confirms their Complaint should be dismissed.  Although Plaintiffs try to muddy the waters through digressions about the "relevant market" and "*de facto* oligopsony," they fail to address the two fundamental flaws with their antitrust claim: (1) failure to allege a conspiracy by horizontal competitors, and (2) failure to allege an injury they suffered from a reduction in competition.

Plaintiffs also fail to support their leap from an unremarkable—and perfectly lawful—vendor relationship to a purported RICO enterprise.  Plaintiffs fail to plead facts to support a RICO enterprise, or that United Behavioral Health ("UBH") conducted the enterprise's affairs.  And Plaintiffs supply none of the missing factual details regarding RICO predicate acts of mail and wire fraud required by Rule 9(b).  Instead, Plaintiffs offer a new, unpled theory of money-laundering, but this new theory fares no better than the others.  Lacking any RICO predicate acts, it is no surprise that Plaintiffs cannot explain how their alleged injuries to business or property (i.e., unpaid balance bills) were caused by predicate acts (wire fraud, mail fraud, or money laundering).  Plaintiffs' allegation of injury to business or property, too, is deficient, as there remains a glaring, unexplained inconsistency between their allegation that their patients never paid them any of the amounts at issue and the complete opposite allegation by their patients in *L.D.* that they did pay these same amounts.

In opposing ERISA preemption of the state-law claims, Plaintiffs rely on inapposite cases involving disputes under independent provider agreements.  Here, Plaintiffs' flimsy allegations about verification-of-benefits calls do not support the existence of any independent agreement.  Simply verifying a term of an ERISA plan on a phone call cannot transform the plan's underlying obligation into an independent agreement under state law.  Plaintiffs' arguments cannot be reconciled with numerous controlling authorities about the scope of ERISA preemption and its purpose, which is to ensure that such claims—and the employer-sponsored plans that they impact—are subject to ERISA's nationally-uniform statutory regime, rather than a patchwork of state rules and standards.  Finally, even if Plaintiffs' state-law claims were not preempted, they suffer from numerous pleading failures that require dismissal.

1   **II.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)**

2         The issues to be decided are the same as those in UBH's motion to dismiss.  Dkt. 39 ("Mot.").

3   **III.    STATEMENT OF RELEVANT FACTS**

4         UBH's motion to dismiss summarized Plaintiffs' allegations in the Complaint.  In response,

5   Plaintiffs make new allegations about a third-party web site, FAIRHealth, which contains summary

6   information about charges billed by providers for health care services.  *See* Plaintiffs' Opposition to

7   UBH's Motion to Dismiss, Dkt. 47 ("Opp.") 1-4.  But these allegations do not save their Complaint for

8   several reasons.  First, Plaintiffs did not include them in their Complaint, and they are not permitted to

9   rely on new allegations in their opposition to a motion to dismiss.  *See, e.g.*, *Schneider v. Cal. Dept. of

10  Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Second, Plaintiffs' introduction of FAIRHealth's

11  data (Opp. 2) violates its web site's terms of use, which expressly prohibit its use in litigation.[1]  Third,

12  even if the Court were to consider Plaintiffs' assertions about the FAIRHealth database, they are

13  irrelevant because Plaintiffs have not alleged that their plans require FAIRHealth to be used on any of

14  the claims at issue.  Indeed, Plaintiffs' citations acknowledge that FAIRHealth will not be used for

15  many plans, claims and services.[2]

16  **IV.     ARGUMENTS**

17        **A.     Plaintiffs' Antitrust Claim Fails As A Matter Of Law (Count VIII).**

18        ***No Horizontal Competitor Agreement***.  Plaintiffs agree that they must show an agreement that

19  is *per se* illegal, as they have not attempted to show a violation under the rule of reason.  Opp. 7.  And

20  they concede that they must show a *horizontal* agreement to invoke a *per se* rule and thereby avoid full

21  rule of reason analysis.  *Id.*  But they do not even attempt to point to any allegations showing that UBH

22  and Viant were in fact horizontal competitors.  *See, e.g.*, *In re Musical Instruments & Equip. Antitrust

23

---

24  [1] *See* https://tinyurl.com/yb52r298 ("FAIR Health's Consumer Website and YouCanPlanForThis.Org
25  are provided solely for personal, consumer use, and not for any commercial, professional, research,
    litigation or other purposes.") (last accessed July 16, 2020).

26  [2] *See* https://tinyurl.com/ycwlcsta (discussing use of FAIRHealth beginning in 2011 for "professional"
    services, not facility services, as well as various exclusions to which FAIRHealth will not apply);
27  https://tinyurl.com/y86pp2lp (class action settlement, stating that various plans and claims would not
    be subject to the "New Database," *see, e.g.*, § 4.4, and that the approving court in New York would
28  retain jurisdiction over the settlement, *see* § 23); *see also* Amendment to Settlement Agreement,
    https://tinyurl.com/y9xp4gh9 (amended class definition).

Gibson, Dunn &
Crutcher LLP

*Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).  At best, Plaintiffs allege that UBH engaged Viant as a "third-party 'repricer'" to negotiate rates with providers on its behalf (*see* Mot. 7), but they do not cite any case holding that a purchaser retaining an agent to negotiate prices on its behalf is a horizontal restraint of trade that constitutes a *per se* antitrust violation.  That is unsurprising, as no case supports that radical proposition.

In lieu of factual allegations showing an agreement among horizontal competitors, Plaintiffs argue that they have alleged a "*de facto* oligopsony."  Opp. 7.  It is unclear what Plaintiffs mean by this, because even if Plaintiffs had alleged that UBH participates in an *actual* oligopsony—*i.e.*, a market with few buyers—that would not mean that UBH has committed a *per se* antitrust violation by contracting with a non-competitor "agent" to negotiate rates on its behalf.  It is beyond dispute that mere participation in a concentrated market is not an antitrust violation at all—much less a *per se* one.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-54 (2007).  To invoke a *per se* rule, Plaintiffs must still allege that there was an agreement among horizontal competitors in a *per se* category, which they have not done and cannot do.  *See* Mot. 7-8.  And this requirement exists regardless of what the "relevant market" is.[3]

Plaintiffs' arguments that UBH's use of an "agent" to determine the amounts it will reimburse for certain services somehow constitutes "price fixing" are equally misguided.  Plaintiffs cite a case involving allegations of "a buyer-side conspiracy among purchasers of Donor Services to fix maximum prices for such services," but even that case reserved judgment on whether the agreement should be deemed *per se* unlawful.  Opp. 7 (citing *Kamakahi v. Am. Soc. for Reprod. Med.*, 2013 WL 1768706, at *7-8 (N.D. Cal. Mar. 29, 2013)).  The other case they cite (*Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332 (1982) (cited at Opp. 8)), involved a horizontal agreement among medical providers to fix maximum prices charged for their services.  Plaintiffs' complaint contains no allegations remotely similar to those cases—or any other case that has applied a *per se* rule.

---

[3]  Plaintiffs assert that "[t]here is a nationwide market for mental health and substance abuse disorder treatment even though each treatment facility may not be interchangeable."  Opp. 4.  Plaintiffs point to no support for this dubious proposition, but because Plaintiffs assert a *per se* claim that fails for the reasons set out above, this Court need not reach this market definition issue here.

DEFENDANT UNITED BEHAVIORAL HEALTH'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS – CASE NO. 4:20-CV-02249

Gibson, Dunn & Crutcher LLP

1   Plaintiffs' effort to distinguish the Ingenix-related cases is similarly unpersuasive. Plaintiffs

2   argue that the numerous Ingenix cases dismissing antitrust claims were decided after "[t]he *Ingenix*

3   methodology had been discontinued" (Opp. 9), but none of those decisions hinged on whether the

4   Ingenix database was in use at the time. This Court should follow those cases as well as the many

5   decisions that have dismissed similar antitrust claims (along with many other claims). *See* Mot. 8-9.

6   ***No Antitrust Injury.*** Plaintiffs' opposition does not identify any allegations of injury resulting

7   from any reduction in competition, even though all of their claims (for damages and injunctive relief)

8   require a showing that the alleged injuries "stem[] from a competition-*reducing* aspect or effect of the

9   defendant's behavior." Mot. at 8-9; *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990);

10  *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111-13 (1986).

11  Plaintiffs contend that the alleged underpayments "have forced many providers out of

12  business," speculating that this may have impacted "the quality of services available to potential

13  patients." Opp. 6. But they provide no support whatsoever for these vague assertions and make no

14  effort to tie it to any injury *they* suffered. Rather, Plaintiffs devote just one conclusory sentence to this

15  requirement: "Plaintiffs' injury is 'of the type the antitrust laws were intended to prevent.'" *Id.* at 5.

16  No facts support this conclusion, and Plaintiffs do not even attempt to explain how an increase in

17  competition would have changed anything. Indeed, the Complaint itself alleges that UBH's "drive" to

18  contain costs has been "in place since at least 2005" (Dkt. 1 ("Compl.") ¶ 21), long before UBH

19  allegedly engaged Viant as its agent. While Plaintiffs may want to recover higher reimbursement rates

20  from health plans for their out-of-network services, there are no factual allegations to connect these

21  complaints to any reduction in competition among UBH and anyone else.[4]

22

23

24

---

25  [4] Similarly, Plaintiffs argue that "injury to even one provider may be an antitrust violation." Opp. 8.
    But the Supreme Court has repeatedly held that a plaintiff may not recover under the antitrust laws

26  "merely by showing 'injury causally linked to an illegal presence in the market. Instead, a plaintiff
    must prove the existence of '*antitrust* injury, which is to say injury of the type the antitrust laws were

27  intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Atl. Richfield*,
    495 U.S. at 334 (internal citations omitted). Thus, any alleged harm to providers resulting from

28  something other than a "competition-*reducing* aspect or effect" of UBH's alleged conduct cannot
    support antitrust injury. *Id.* at 344.

Gibson, Dunn &
Crutcher LLP

4

## B.   Plaintiffs' RICO Claims Also Fail (Count VII).

In Plaintiffs' opposition, they attempt to downplay the pleading standards under RICO and Rule 9(b), arguing that all they need to plead is a "scheme" between UBH and Viant to underpay claims using a "non-UCR methodology." Opp. 14-15.   But RICO does not prohibit "ordinary business conduct" (*In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009)), including conduct aimed at controlling medical costs.  Nor can Plaintiffs state a claim under RICO merely by labeling an alleged business relationship as a "fraudulent scheme," untethered to specific allegations demonstrating the who, what, where, when, how, and how/why of the fraud.

***Insufficient Allegations of a RICO Enterprise.***  Plaintiffs argue that they adequately pled a RICO enterprise because they allege a "common purpose" to "illegally and deceptively use a non-UCR methodology [to] underpay [ ] claims for their mutual profit" (Opp. 10), and that UBH and Viant "acted in concert" to develop "policies, practices, and procedures" to price claims and engage in rate negotiations independent of plan terms (*id*. at 11).  But merely adding the adverbs "illegally and deceptively" to a description of otherwise lawful commercial conduct does not constitute a RICO violation. *See, e.g.*, *In re Jamster*, 2009 WL 1456632, at *5 ("Plaintiffs cannot meet their particularized pleading burden by artfully inserting modifiers such as 'unauthorized charges' or 'fraudulently collecting monies' in an attempt to show a common purpose.").  The alleged UBH/Viant contract benefits health plan clients and their members by helping to control medical costs. Mot. 10.  That Plaintiffs disagree with the reimbursement rates does not even come close to establishing that UBH and Viant shared a "fraudulent, common purpose." *Stitt v. Citibank, N.A.*, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015); *see also Blue Oak Med. Grp. v. State Comp. Ins. Fund*, 2018 WL 6431878, at *1 (C.D. Cal. Aug. 9, 2018).[5]

Plaintiffs' cases are distinguishable.  *Crutcher v. Multiplan, Inc.*, 2016 WL 6832644, at *1 (W.D. Mo. Nov. 18, 2016), involved claims of a "silent PPO" arising from provider agreements; it had nothing to do with plan terms requiring UCR payments to out-of-network providers.  *Fremont*

---

[5] Although the Ninth Circuit has not formally resolved whether the common purpose at issue must be "fraudulent" (*see, e.g.*, *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016)), given the nature of Plaintiffs' allegations here, Plaintiffs should be required to allege facts showing that each member of the alleged enterprise shared a fraudulent common purpose. *Stitt*, 2015 WL 75237, at *5; *Gilbert v. MoneyMutual LLC*, 2018 WL 8186605, at *13 (N.D. Cal. Oct. 30, 2018).

Gibson, Dunn &
Crutcher LLP

*Emergency Services (Mandavia), Ltd. v. United HealthCare Insurance Co.*, Case No. 19-79278-B (Clark Cty. Nev. Dist. Ct. June 24, 2020), concerned, in relevant part, claims that executives tried to pressure providers into accepting "manipulated" in-network contract rates; it similarly had nothing to do with plan terms requiring UCR payments to out-of-network providers. *Odom v. Microsoft Corp.*, 486 F.3d 541, 543 (9th Cir. 2007) (en banc), also involved allegations of a secret, undisclosed arrangement between two companies not merely to promote one another's products, but to fraudulently increase the number of subscribers to one of defendant's services, which the court found was not a lawful business objective.[6]  Here, there is nothing unlawful about entering into an alleged agreement to determine reimbursement rates and to negotiate with providers to control out-of-network medical costs—and Plaintiffs' allegations add nothing to convert a lawful agreement into a RICO enterprise.

  ***Insufficient Allegations That UBH Conducted the Enterprise's Affairs.***  As UBH demonstrated, Plaintiffs fail to allege any facts showing that UBH conducted the affairs of the alleged enterprise (as opposed to its own affairs).  Mot. at 11-12; Compl. ¶¶ 355-56, 358.  Plaintiffs' only response is a conclusory assertion that UBH "acted in concert" with Viant to further the alleged common purpose, but lacking any factual support, this bald conclusion does not suffice.  *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008); *In re Aetna UCR Litig.*, 2015 WL 3970168, at *30 (D.N.J. June 30, 2015).

  ***Failure to Allege Predicate Acts.***  Plaintiffs attempt to escape the strictures of Rule 9(b)— which they cannot satisfy—by contending that (1) their RICO claims are based on unspecified "federal health offenses" (Opp. 13); (2) they need not include particularized allegations about the representations made to them because those communications are merely "incidental" to the alleged fraudulent scheme (*id.* at 14); and (3) to the extent the Court requires more detailed allegations, it should grant Plaintiffs leave to conduct discovery (*id.*).

---

[6] In *In re Wells Fargo Insurance Marketing and Sales Practices Litigation*, 2018 WL 4945541 (C.D. Cal. June 18, 2018), the court found that the defendants shared a common purpose (enrolling plaintiffs in unnecessary insurance policies and charging them premiums without their knowledge), but ultimately dismissed the RICO claim because—as here—the predicate acts of fraud were insufficiently pled.  Both *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices & Products Liability Litigation*, 295 F. Supp. 3d 927, 981 (N.D. Cal. 2018) and *In re Volkswagen "Clean Diesel" Marketing, Sales Practices & Products Liability Litigation*, 2017 WL 4890594, at *18 (N.D. Cal. Oct. 30, 2017), concerned alleged schemes involving "defeat devices" which the court ruled had no lawful purpose.

Gibson, Dunn &
Crutcher LLP

Plaintiffs' convoluted argument about "federal health offenses" does not save them. The "federal health offenses" listed in Plaintiffs' Complaint are not in Section 1961's exclusive list of predicate acts, so they cannot support a RICO claim. *Banks v. ACS Educ.*, 638 F. App'x 587, 589 (9th Cir. 2016). In response, Plaintiffs appear to argue that these "offenses" form the basis for a violation of a separate statute, the money laundering statute (18 U.S.C. § 1956), which they claim can serve as a RICO predicate act. Opp. 13. But to rely on the money-laundering statute, Plaintiffs must allege facts showing that "each of the . . . elements" of *this* statute are met—along with any "federal health offenses" that may relate to the money-laundering violation. *Innovative Metal Design, Inc. v. U.S. Bank Nat'l Ass'n*, 2015 WL 9434779, at *3 (D. Or. Nov. 18, 2015). Plaintiffs fail to do so.

Indeed, there are multiple problems with Plaintiffs' newfound money-laundering theory. First, it is nowhere to be found in the Complaint. Even if it were, it would not relieve Plaintiffs of their burden under Rule 9(b). *Desoto v. Condon*, 371 F. App'x 822, 824 (9th Cir. 2010) (Rule 9(b) applies to RICO claims with money laundering as a predicate act). Plaintiffs' allegations do not come close to satisfying Rule 8, let alone Rule 9(b)—they are entirely absent from the Complaint. Plaintiffs do not plead any "federal health offenses," but even if they could do so, this would just go to one element of money-laundering, "specified unlawful activity." 18 U.S.C. § 1956(c)(7)(F). Money-laundering requires much more than this.[7] Plaintiffs' unpled "money-laundering" theory should be rejected.

Plaintiffs all but concede that their allegations of wire and mail fraud fail to satisfy Rule 9(b). They cannot identify *who* made allegedly fraudulent promises to them, *what* that person supposedly said, *when* or *where* such promises were made, and *how* or *why* Plaintiffs were defrauded by these communications. Mot. at 12-17. Plaintiffs walk back from the verification-of-benefits calls that they vaguely describe in the Complaint, arguing that these calls were merely "incidental" to the scheme, in an attempt to avoid Rule 9(b) with respect to these calls. Opp. 14. But Plaintiffs cannot avoid Rule 9(b), and they fail to plead any RICO predicate acts—wire or mail fraud, money-laundering, or anything else—with particularity.

---

[7] For example, Plaintiffs would need to identify "financial transaction[s]" that supposedly were conducted "[with] the proceeds" of federal health offenses, would need to plead facts showing UBH "intended" to promote the commission of those offenses, and would need to plead facts showing how the transactions were designed to "conceal or disguise" the proceeds. 18 U.S.C. § 1956(a)(1). None of these allegations are anywhere to be found in the Complaint.

Gibson, Dunn & Crutcher LLP

Rule 9(b) was designed to weed out this type of claim.  Plaintiffs vaguely allege that "UCR" came up on verification-of-benefits calls, but because Plaintiffs use "UCR" as a shorthand for many different words, phrases, and meanings (*e.g.*, Compl. ¶¶ 5, 17, 74, 94), it is unclear what this allegation means.  Furthermore, Plaintiffs never allege any commitment on any of these calls to calculate "UCR" in a certain way, even though this is the crux of their claim: "what matters is the UCR calculation." Opp. 1.  Whatever Plaintiffs' theory, they cannot establish that they were defrauded.  And having failed to provide any factual details, UBH cannot be deemed to be on notice of any alleged fraud.[8]

Plaintiffs' request to take discovery to supply missing details puts the cart before the horse.  Unlike *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993), cited by Plaintiffs, this is not an insider trading case where the relevant facts are within Defendants' control.  Plaintiffs allege that they participated firsthand in the phone calls which they cite as the basis for their fraud and RICO claims, so they should be able to provide particularized allegations about these calls.  And in any event, *Neubronner*, which predated the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, is no longer good law on this issue.  *See Hoang v. Vinh Phat Supermarket, Inc.*, 2013 WL 4095042, at *15 (E.D. Cal. Aug. 13, 2013) (declining to permit exceptions to Rule 9(b)'s particularity requirement based on cases, like *Neubronner*, that preceded *Twombly* and *Iqbal*); *see also Saterbak v. Nat'l Default Servicing Corp.*, 2016 WL 4430922, at *10 (S.D. Cal. Aug. 22, 2016) (rejecting effort to use claim of fraud "as a pretext for the discovery of unknown wrongs").  Plaintiffs' request for discovery shows that they cannot satisfy Rule 9(b) even with leave to amend.

***Failure to Allege Causation/Injury.***    Plaintiffs' attempt to satisfy RICO's standing requirements falls short as well.  Plaintiffs fail to allege facts showing how they (or anyone else) relied on any of the allegedly fraudulent communications, as needed to establish causation.  Plaintiffs also fail to address the conflict between their injury allegations (*see* Compl. ¶ 212) and their patients'

---

[8] *See*, *e.g.*, *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1179-80 (E.D. Cal. 2017) (dismissing RICO claims where complaint failed to allege any facts explaining how any of defendants' communications "involved a misrepresentation, or how any innocuous communications were an essential part of a scheme to defraud"); *Blue Oak Med. Grp.*, 2018 WL 6431878, at *4 (dismissing RICO claims where complaint failed to plead "which defendants made promises, what exactly that defendant or defendants said, or when they said it"); *compare Odom*, 465 F.3d at 543 (permitting RICO claim to proceed where only deficiency was failure to allege name of specific employee who made representations to plaintiffs).

Gibson, Dunn & Crutcher LLP

allegations regarding their alleged injuries arising from the very same claims (*see L.D.* Compl. ¶¶ 218, 265). Plaintiffs' sole response is to repeat their allegation that "[t]he provider-Plaintiffs herein did not get paid by their patients, and are out-of-pocket the difference between their billables and United and Viant's underpayments." Opp. 8 n.10. But this is no answer, because "the provider-Plaintiffs herein" include Summit Estate, the same provider to whom the *L.D.* plaintiffs claim to have paid "thousands of dollars" in balance bills in the *L.D.* case (in which they make a similarly obfuscating statement about this conflict in a footnote of their opposition brief). Plaintiffs' refusal to address these conflicting allegations—coupled with their strikingly non-committal argument that they have "strong reason to believe" they were injured by the alleged "scheme" (Opp. 14)—shows that they lack standing not just under RICO's requirements, but also under Article III.

### C.    Plaintiffs' State-Law Claims (Counts I–VI) Are Preempted By ERISA.

Plaintiffs' main argument against preemption is that "third-party providers such as Plaintiffs may sue on their own behalf for breach of duties owed to them." Opp. 15. But courts within the Ninth Circuit (and around the country) regularly hold that claims asserted by providers are preempted under ERISA Section 514(a), when—as here—they have "a 'connection with' or 'reference to'" ERISA plans. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009); *see also* Mot. 21.

Plaintiffs do not meaningfully dispute the close connection between their claims and their patients' ERISA plans. Plaintiffs concede in their Complaint that any obligation to pay "UCR" would necessarily arise from their patients' plans. Compl. ¶¶ 74-75. In their opposition, Plaintiffs again acknowledge that UBH's payment obligation "stems from the language of its plans." Opp. 2. And Plaintiffs challenge the same conduct—and seek the very same damages on the same claims—as their patients, whose claims are expressly based on ERISA and the terms of their ERISA plans. Mot. 19-21. Because the ERISA plans (and their alleged "UCR" provisions) are a "critical factor in establishing liability," Plaintiffs' claims are preempted. *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987).

Plaintiffs likewise have no response to UBH's argument that applying state law would undermine Congress's goal to "to establish pension plan regulation as exclusively a federal concern." *Dedeaux*, 481 U.S. at 45-46. Plaintiffs challenge "UCR" determinations under large,

employer-sponsored health plans covering persons throughout the United States.[9]  Permitting Plaintiffs to proceed under California law (and potentially other state laws) would subject these plans to state-specific claims, rules, and standards regarding how any potentially applicable "UCR" should be calculated—exactly the scenario that Congress enacted ERISA Section 514(a) to prevent.  *Id.*  Those risks are heightened here because Plaintiffs are after the very same "UCR" payments—for the same treatments, under the same plans—as their patients, the ERISA plan participants, who have sued separately under ERISA in the parallel *L.D.* case.  These competing claims could give rise to a dizzying array of potential conflicts and inconsistencies if allowed to proceed.  *See Schaum v. Honeywell Retiree Med. Plan No. 507*, 2006 WL 2496435, at *7 (D. Ariz. Mar. 31, 2006) (state-law claims filed by provider were preempted under Section 514(a) because "allow[ing] both the state law claims and the ERISA claim to go forward would create a scenario contrary to the purpose of the ERISA preemption clause").  Under all of these authorities, any rulings about "UCR" should be made under ERISA, taking into account the terms of the relevant health plans—not a patchwork of state laws.[10]

Plaintiffs cite only a handful of cases in which state-law claims survived preemption under Section 514(a), and all are easily distinguishable.  In *Blue Cross of California v. Anesthesia Care Associates Medical Group*, 187 F.3d 1045 (9th Cir. 1999), the providers' claims arose from their network contracts with Blue Cross, which set the fees for the providers' services.  *Id.* at 1048, 1052-54.  In *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008), the Ninth Circuit similarly concluded that "no ERISA-governed relationship is implicated" where a provider's claims are "based on contractual obligations arising directly between the provider and the ERISA plan" and "any claims it might have had under [defendant's] plan either have been resolved or waived."  321 F. App'x. at 565.[11]

---

[9] Plaintiffs' vague reference to the possibility of claims under non-ERISA plans is a red herring, as none are identified in the Complaint.  Opp. 15.  If Plaintiffs truly had any non-ERISA claims, they needed to identify them, and all of the claims under ERISA claims should still be dismissed or stricken.

[10] As discussed in UBH's motion, there is an established framework under ERISA to address parallel claims by members and providers, based on assignments of benefits.  Mot. 22.

[11] Plaintiffs' other cases are similarly distinguishable.  *Schwartz v. Associated Emp'rs Grp. Benefit Plan & Tr.*, 2018 WL 453436, at *1-2, 5 (D. Mon. Jan. 17, 2018) (claims were based on defendant's specific commitment that specific "treatment would be reimbursed in full" without conditioning payment on the terms of the health plan); *IV Solutions, Inc. v. United Healthcare Servs., Inc.*, 2012 WL 12887401, at *1 (C.D. Cal. Nov. 19, 2012) (claims were based on an independent, written contract to

Gibson, Dunn &
Crutcher LLP

1    Unlike the plaintiffs in these cases, here, Plaintiffs make only generalized allegations regarding

2    verification-of-benefits calls, without any specific details that could give rise to an independent

3    contractual agreement or commitment.  Moreover, even if Plaintiffs' allegations were sufficient to

4    support an agreement to pay "UCR," this agreement would not be controlling on the issue in dispute:

5    *how* "UCR" should be calculated.  Plaintiffs contend that, rather than using Viant's database to

6    calculate "UCR" amounts, UBH should have paid Plaintiffs their "billed charges" (as alleged in the

7    Complaint, ¶ 212) or should have used FAIRHealth (as argued in Plaintiffs' opposition brief, *see* Opp.

8    1-2).  Plaintiffs never have alleged that there were any agreements or commitments on *these* issues on

9    any phone calls, so the underlying health plans would be controlling—or at least a "critical factor"—

10   in resolving them.  *Wise*, 600 F.3d at 1190.

11   Plaintiffs also claim to find support in *Port Medical Wellness, Inc. v. Connecticut General Life*

12   *Insurance Co.*, 24 Cal. App. 5th 153 (2018), but there, the court held that a provider's claims *were*

13   preempted under Section 514(a) (*id.* at 176-81), because "[s]tate law causes of action seeking to recover

14   unpaid benefits under a welfare benefit plan regulated under [ERISA] are generally conflict

15   preempted."  *Id.* at 159.  The provider's claim was "fundamentally a claim for unpaid ERISA plan

16   benefits—the precise type of claim section 514(a) of ERISA preempts."  *Id.* at 177.  So too, here.[12]

17   Plaintiffs have no response to the other cases UBH cites dismissing similar claims, arising from

18   verification-of-benefits calls, as preempted under ERISA Section 514(a).  *See* Mot. 20; *see also Ray*

19   *Klein, Inc. v. Bd. of Trustees of the Alaska Elec. Health & Welfare Fund*, 307 F. Supp. 3d 984, 991 (D.

20   Alaska 2018) (similar claims preempted at summary judgment).  And Plaintiffs' attempts to distinguish

21   three decisions by this Court also fall flat.  Plaintiffs argue that *Josef K.* is irrelevant to preemption

22   because the state-law claim there was "unnecessary and moot, not preempted" (Opp. 17), but this Court

23   clearly held that the claim "is preempted by ERISA under the conflict preemption doctrine."  *Josef K.*

24

---

25   deliver certain products and services at an agreed-on price, executed by the plan administrator);
     *Doctors Med. Ctr. of Modesto, Inc. v. The Guardian Life Ins. Co*., 2009 WL 179681 (E.D. Cal. Jan. 26,

26   2009) (claims were based on specific allegations of an agreement to pay for specific treatment at issue).

27   [12] Plaintiffs' remaining cases address a different issue: the test for *complete* preemption under ERISA's
     civil enforcement provision, Section 502(a), as is required for removal to federal court.  But as UBH

28   explained in its motion, Plaintiffs filed this case in federal court, so there is no need to satisfy the test
     for complete preemption here (Mot. 21-22), and Plaintiffs' reliance on cases applying this test—*e.g*.,
     *Marin General*, *Roohipoor*, *Orthopedic Specialists*—is misplaced.

Gibson, Dunn &
Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS –
CASE NO. 4:20-CV-02249

*v. Cal. Physicians Serv.*, 2019 WL 2342245, at *3 (N.D. Cal. June 3, 2019). Plaintiffs ignore the relevance of this Court's decisions in *Groves*, which also supports preemption here. In *Groves*, the plaintiff alleged misrepresentations by an administrator regarding a benefits calculation, and because the alleged misrepresentations arose "*in the course of* daily plan administration," and were rooted in a dispute about the underlying benefits calculation, they were dismissed as preempted. *See Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 3d 1074, 1085-86 (N.D. Cal. 2014); *Groves v. Kaiser Found. Health Plan Inc.*, 2014 WL 12644296, at *2 (N.D. Cal. July 10, 2014). And Plaintiffs cite zero cases for their argument that conflict preemption cannot be raised in a motion to dismiss (Opp. 16-17)—an argument refuted by *Josef K.*, *Groves*, and many other preemption dismissals.

Finally, in opposing preemption, Plaintiffs argue that their case is "readily analogized" to *Wit v. United Behavioral Health*—an ERISA case—purportedly because "the process behind 'UCR' is fundamentally at loggerheads with the accepted meaning of the term." Opp. 18, 19. But as in *Wit*, such a claim cannot be divorced from plan terms, because "the accepted meaning of the term" is contained in the relevant ERISA plans (here, "UCR" provisions). Plaintiffs continue the *Wit* analogy by arguing that they seek a "fair reprocessing of claims" (*id*. at 19), but the reprocessing remedy plaintiffs seek in *Wit* is rooted in ERISA's civil enforcement provision, Section 502(a), and case law governing ERISA benefits claims. Plaintiffs' reliance on *Wit* only further confirms the close connection between their claims and ERISA, which mandates preemption under Section 514(a).

**D.    Plaintiffs' State-Law Claims Should Be Dismissed For Additional Reasons.**[13]

**1.    The Misrepresentation Claims Fail To Satisfy Rule 9(b) (Counts I-IV).**

Plaintiffs' misrepresentation claims under state law—including their claims of negligent misrepresentation[14]—fail under Rule 9(b) for the same reasons as their RICO claims. *See* pp. 4-9, *supra*. Plaintiffs' cases involved far more detailed allegations than what Plaintiffs allege here. *See*,

---

[13] Plaintiffs do not dispute their conspiracy claim is not an independent tort and thus rises and falls with their state-law claims. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 510-11 (1994).

[14] Plaintiffs argue that their negligent misrepresentation claims should not be subject to Rule 9(b), but "[m]ost district courts within the Ninth Circuit have held . . . , that a negligent-misrepresentation claim is subject to the heightened pleading requirements of Rule 9(b)." *Deitz v. Comcast Corp*., 2006 WL 3782902, at *6 (N.D. Cal. Dec. 21, 2006). Plaintiffs offer this Court no reason to depart from the majority rule. And even if Rule 9(b) does not apply, Plaintiffs' allegations are not sufficient to support a plausible claim of negligent misrepresentation under Rule 8 for the reasons given in UBH's motion.

1    *e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (detailed allegations indisputably

2    satisfied Rule 9(b) as to some of the defendants, and the only issue was whether Rule 9(b) had to be

3    satisfied as to all defendants in a multi-defendant case); *Multifamily Captive Grp. v. Assurance Risk*

4    *Managers, Inc.*, 578 F. Supp. 2d 1242, 1249 (E.D. Cal. 2008) (allegations of specific fraudulent

5    communications on specific dates).

6    **2.    The Economic Loss Rule Bars Counts I-IV.**

7    Plaintiffs attempt to distinguish *Bristol SL Holdings, Inc. v. Cigna Health Life Insurance Co.*,

8    2020 WL 2027955 (C.D. Cal. Jan. 6, 2020), because the misrepresentation claim supposedly was

9    dismissed "based on the courts [sic] conclusion that it was not specifically pled, not the economic loss

10    rule." Opp. 21. But the decision unambiguously states, "the Court finds the economic loss rule

11    applies." 2020 WL 2027955, at *4. Plaintiffs' vague assertions about the "policy rationale behind the

12    economic loss rule" (Opp. 21) do not set this case apart from *Bristol*, which involved the same

13    considerations and dismissed the claims under a straightforward application of the economic loss rule.

14    **3.    Plaintiffs' Contract Allegations Lack Sufficient Specificity (Count V).**

15    Plaintiffs provide no basis to distinguish their contract claims from the multiple cases in which

16    similar claims were dismissed for lack of specificity. Plaintiffs argue that *Pacific Bay Recovery, Inc.*

17    *v. California Physicians' Services, Inc.*, 12 Cal. App. 5th 200 (2017), involved a "specific California

18    insurance regulation" (Opp. 22), but the regulation played no part in the contract claim. *See id.* at 216.

19    Rather, the contract claim was dismissed because the plaintiff's allegations of an agreement to pay

20    "usual, reasonable, and customary charges," arising from preauthorization calls with the insurer, were

21    not sufficiently specific—the same problem Plaintiffs face here. *Id.* Plaintiffs do not even attempt to

22    distinguish *ABC Services Group v. Health Net of California, Inc.*, which rejected a similar claim that

23    the defendant made an enforceable promise by allegedly stating during a verification call that it would

24    "pay Plaintiff at its usual and customary rates." 2020 WL 2121372, at *6 (C.D. Cal. May 4, 2020).

25    And the one case Plaintiffs cite, *California Spine & Neurosurgery Institute v. United Healthcare*

26    *Services, Inc.*, 2018 WL 6074567, at *4 (C.D. Cal. June 28, 2018), involved allegations that were far

27    more specific, including the "specific names and dates of the calls between Plaintiff and Defendant

28    regarding payment for Patient's services, what the services would be, what was said, and by whom—

1  including that Defendant agreed to pay a specific price: 75% of the UCR rate until Patient's [maximum

2  out-of-pocket] expense was met, and 100% of the UCR rate afterwards."

3  **4.    The Estoppel Claims Also Lacks Sufficient Specificity (Count V).**

4       Plaintiffs do not dispute that the promissory estoppel claim by Bridging the Gaps should be

5  dismissed.  Mot. 24.  Plaintiffs likewise have no response to UBH's cases showing the estoppel claims

6  fail for lack of specificity (Mot. 23-24), and Plaintiffs' cases are distinguishable.  In *Regents of the*

7  *University of California v. Principal Financial Group*, 412 F. Supp. 2d 1037, 1040 (N.D. Cal. 2006),

8  the claim was based on specific allegations of five written authorizations of specific treatment to a

9  specific patient.  In *Enloe Medical Center v. Principal Life Insurance Co.*, 2011 WL 6396517, *2 (E.D.

10  Cal. Dec. 20, 2011), the defendant did not move to dismiss the complaint, so the pleading requirements

11  were not at issue, and the court's denial of summary judgment rested on a factual dispute arising from

12  competing evidence about what was said on the relevant phone calls.  Here, Plaintiffs have not pled

13  specific facts about any phone calls or any commitments allegedly made on those calls.

14  **5.    The UCL Claim Fails For Additional Reasons (Count I).**

15       Plaintiffs fail to support their thinly-pled UCL claims.  First, for the same reasons discussed

16  above, Plaintiffs' claims under the "fraudulent" prong fail to satisfy Rule 9(b).  To the extent Plaintiffs

17  rely on a page from UnitedHealthcare's website discussing FAIRHealth (Opp. 23), this argument fails

18  for the reasons set out above (*see* p. 2, *supra*) and because Plaintiffs do not allege they reviewed or

19  relied on this page at any point.

20       Second, Plaintiffs' citations to several irrelevant California statutes do not rescue their claims

21  under the "unlawful" prong.  California Health & Safety Code Section 1371.8 prohibits certain plans

22  from rescinding authorization of "a specific type of treatment by a provider" after a provider treats a

23  member relying on that authorization, but there is no allegation here that UBH rescinded an

24  authorization of coverage.  The two other statutes cited by Plaintiffs, Health & Safety Code § 1374.72

25  and Insurance Code § 10144.5, also address an irrelevant issue: they generally require parity in

26  "treatment limitations" as between a plan's coverage of mental health conditions and its coverage of

27  analogous medical conditions.  Plaintiffs allege no facts to support any violation of these statutes, and

28  the only plan provisions Plaintiffs discuss (the "UCR" provisions) apply equally to out-of-network

mental health and medical conditions. *See Welp v. Cigna Health & Life Ins. Co*., 2017 WL 3263138, at *5–6 (S.D. Fla. July 20, 2017) (dismissing parity claim because plaintiff failed to identify the relevant medical analogue or plead the alleged violation with specificity); *H.H. v. Aetna Insurance Company*, 342 F. Supp. 3d 1311 (S.D. Fla. 2018) (same).

Third, because Plaintiffs make no effort to satisfy the "unfairness" prong, this claim should be dismissed for the reasons set out in UBH's motion. *See* Mot. 25; *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp*., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (failing to oppose an argument "constitutes waiver or abandonment in regard to the uncontested issue").

Fourth, even if Plaintiffs could avoid preemption and satisfy the above "prongs," the UCL claim still fails because Plaintiffs fail to state a viable claim for equitable relief. Plaintiffs do not dispute that they lack standing to seek prospective injunctive relief. In arguing that "United misrepresents or misunderstands the damages sought by Plaintiffs" on past claims, Plaintiffs concede that what they seek is "damages." Recasting these "damages" as "a fair and equitable reprocessing" (that just so happens to result in payment of "damages") is not sufficient. Opp. 25; *Sonner v. Premier Nutrition Corp*., ---F.3d---, 2020 WL 3263043 (9th Cir. 2020) (rejecting claim for equitable restitution where plaintiff failed to demonstrate lack of an adequate remedy at law). Finally, Plaintiffs do not dispute that Bridging the Gaps (a Virginia provider, Compl. ¶ 64) lacks any basis to assert a claim under California law, so its UCL claim should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

Dated: July 16, 2020                                        Respectfully submitted,

/s/ *Geoffrey Sigler*
Geoffrey Sigler

Attorney for Defendant
UNITED BEHAVIORAL HEALTH