1

2

3              IN THE UNITED STATES DISTRICT COURT

4            FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6    PACIFIC RECOVERY SOLUTIONS, ET AL.,          CASE NO.  4:20-cv-02249 YGR

7                      Plaintiffs,               ORDER GRANTING MOTIONS TO
                                                 DISMISS WITH LEAVE TO AMEND
8           v.
                                                 Re: Dkt. Nos. 38, 39
9

10   UNITED BEHAVIORAL HEALTH, ET AL.,

11                     Defendants.

12          Plaintiffs[1] bring this putative class action against defendants United Behavioral Health

13   ("United") and Viant, Inc. for claims arising out of United's alleged failure to reimburse plaintiffs

14   "a percentage" of the Usual, Customary, and Reasonable Rates ("UCR") for Intensive Outpatient

15   Program ("IOP") services, which plaintiffs provided to patients with health insurance policies

16   administered by United.  In the complaint, plaintiffs assert, on their own behalf and on behalf of a

17   proposed class of similarly-situated out-of-network IOP providers, claims under Section 1 of the

18   Sherman Act and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and multiple

19   claims under California law.

20          Now pending are two motions to dismiss all claims in the complaint under Federal Rule of

21   Civil Procedure 12(b)(6) on the grounds that: (1) plaintiffs' claims under Section 1 of the Sherman

22   Act and RICO fail for lack of statutory standing; (2) plaintiffs' state-law claims are preempted by

23   the Employee Retirement Income Security Act of 1974 ("ERISA"); and (3) all claims in the

24   complaint are inadequately pleaded.

25

26

27          [1] Plaintiffs are Pacific Recovery Solutions d/b/a Westwind Recovery, Miriam Hamideh
     PhD Clinical Psychologist Inc. d/b/a PCI Westlake Centers, Bridging the Gaps, Inc., and Summit
28   Estate Inc. d/b/a Summit Estate Outpatient.

1   Having carefully considered the pleadings and the parties' briefs, and for the reasons set

2   forth below, the Court **GRANTS** the motions to dismiss **WITH LEAVE TO AMEND**.

3   **I.   BACKGROUND**

4   Plaintiffs allege as follows.  Plaintiffs are out-of-network healthcare providers who

5   provided IOP services to patients who had health insurance policies that United administered.

6   Compl. ¶ 2, Docket No. 1.  Before providing treatment to these patients, "each of the Plaintiffs

7   confirmed with United that the patients had active coverage and benefits for out of network IOP

8   treatment services" through verification-of-benefits ("VOB") calls, during which United

9   "represented" that it would pay the patients' claims in connection with such services.  *Id.* ¶¶ 3, 17,

10  188, 195, 202, 209.  The complaint references payment both "at a percentage" of the UCR and "at

11  the UCR rate."  *See, e.g.*, *id.* ¶¶ 16, 25, 74.  Due to the communications in question, plaintiffs and

12  United "understood" UCR to be "consistent with United's published definition of UCR rates."  *Id.*

13  ¶ 324; *id.* ¶ 17 n.6 (alleging that United published a definition of UCR on its webpage describing

14  out-of-network benefits).  Thus, plaintiffs provided IOP services to the patients in reliance of

15  United's representations.  *Id.* ¶¶ 3, 17, 188, 195, 202, 209.

16  United's representations that it would pay a percentage of the UCR were false, because

17  "United did not pay UCR amounts for any of the patient claims at issue in this litigation."  *Id.* ¶

18  13.  Instead, United engaged defendant Viant, a third-party "repricer," to "negotiate"

19  reimbursements with Plaintiffs.  *Id.*  United has a contract with Viant pursuant to which Viant has

20  "financial incentives" to negotiate reimbursements "at well below the UCR rate."  *Id.* ¶ 33.

21  During its negotiations with plaintiffs, Viant represented that it had authority to negotiate with

22  providers on the patients' behalf and that "the rate it offers is based on the UCR for the provider's

23  geographic location."  *Id.* ¶¶ 34, 48, 52.  Viant's negotiations with plaintiffs resulted in offers to

24  reimburse them for IOP services at an amount below the UCR, and United paid the patients'

25  claims at the "reduced Viant amount."  *Id.* ¶¶ 13-14.  Neither United nor Viant disclosed to

26  Plaintiffs the methodology they used for calculating the reimbursement rates for IOP services.  *Id.*

27  ¶ 54.  United "unjustly retained" the difference between the amounts it "should have paid" to

28

plaintiffs for the IOP services at issue and the amount that United actually did pay based on Viant's negotiated reimbursements. *Id.* ¶ 15.

"[L]iability for the cost of care" that plaintiffs provided to patients ultimately falls on the patients. *Id.* ¶¶ 55, 155, 4. Plaintiffs "make every effort to recover unpaid amounts, first from United, then from patients." *Id.* ¶ 55. Plaintiffs "balance bill" patients for the amounts that the patients owe after taking into account any amounts that United reimbursed. *Id.* ¶¶ 155, 4.

Further, United and other insurers were required as part of the settlement of an unrelated litigation ("*Ingenix* litigation") to underwrite the creation of a database called the "FAIR health" database, which contains rates for the reimbursement for IOP treatment. *Id.* ¶ 20. However, United and the other insurers were *not* required by the *Ingenix* litigation settlement to use the FAIR health database.[2] *Id.*

Plaintiffs assert the following claims on their own behalf and on behalf of a proposed class of similarly-situated out-of-network IOP providers in the United States: (1) a claim for violations of the Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*; (2) intentional misrepresentation and fraudulent inducement; (3) negligent misrepresentation; (4) civil conspiracy; (5) breach of oral or implied contract; (6) promissory estoppel; (7) a claim under RICO, 18 U.S.C. § 1962(c); and (8) a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and

---

[2] Plaintiffs argue in their opposition that United represented to them that it would reimburse them based on UCR rates in the FAIR health database. Opp'n at 9, Docket No. 47. But plaintiffs do not allege that theory in the complaint.

citation omitted).  In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."  *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  A court should grant leave to amend unless "the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III. DISCUSSION

As noted, defendants move to dismiss all claims in the complaint on the grounds that (1) plaintiffs' claims under Section 1 of the Sherman Act and RICO fail for lack of statutory standing; (2) plaintiffs' state-law claims are preempted by ERISA; and (3) all claims in the complaint are inadequately pleaded.

The Court addresses each of these arguments in turn.

### A. Section 1 of the Sherman Act

Section 1 of the Sherman Act makes it unlawful to form a "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States[.]"  15 U.S.C. § 1.  "To establish a claim under Section 1 of the Sherman Act, Plaintiffs must show 1) that there was a contract, combination, or conspiracy; 2) that the agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; and 3) that the restraint affected interstate commerce."  *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1155 (9th Cir. 2001) (citation and internal quotation marks omitted).  In addition to these elements, plaintiffs also must show that they were "harmed by the defendant's anti-competitive contract, combination, or conspiracy, and that this harm flowed from an anti-competitive aspect of the practice under scrutiny."  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (citation and internal quotation marks omitted).  This requirement is generally referred to as "antitrust standing."  *Id.* (citation omitted).

1   Plaintiffs assert a Section 1 claim for damages and injunctive relief against defendants,

2   which is predicated on the theory that defendants entered into a horizontal conspiracy to fix the

3   amount that United reimbursed plaintiffs for the IOP services they provided to patients.  Compl. ¶¶

4   395-98.  Plaintiffs allege that they were injured by the alleged conspiracy because it caused them

5   to be "underpaid" for their services and to incur "significant additional expenses in seeking proper

6   payment."  *Id.* ¶ 406.

7   Defendants move to dismiss plaintiffs' Section 1 claim on the grounds that plaintiffs lack

8   antitrust standing because the injuries they allegedly suffered are derivative of their patients'

9   injuries, and that plaintiffs have not alleged that competition in any market was restrained, or that

10  plaintiffs' injuries resulted from any such injury to competition.

### 1.   Damages

#### a.   Standing

13  Section 4 of the Clayton Act permits private parties to sue for damages arising out of

14  injuries caused by violations of the federal antitrust laws.  15 U.S.C. § 15.  In determining whether

15  a private party has "antitrust standing" to sue under Section 4, courts consider the following

16  factors: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust

17  laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the

18  harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages."

19  *American Ad Management, Inc. v. General Tel. Co.*, 190 F.3d 1051, 1054-55 (9th Cir. 1999).

20  Here, the first factor is not met, because plaintiffs' allegations do not raise the reasonable

21  inference that the type of injury they suffered is of the type that the antitrust laws were intended to

22  prevent.  "[T]he central purpose of the antitrust laws, state and federal, is to preserve competition."

23  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 988 (9th Cir. 2000).  Plaintiffs allege that

24  their patients are liable for the difference between the amount reimbursed by United and the

25  amount owed for the cost of the IOP services at issue.  Plaintiffs are "injured" only to the extent

26  that their patients fail to pay them that difference.  It appears that any such injury would arise

27  directly from the patients' failure to comply with their financial obligations to plaintiffs, and not

28  from defendants' conduct.  Plaintiffs have cited no case that shows that the antitrust laws were

United States District Court
Northern District of California

United States District Court
Northern District of California

1    intended to prevent this type of injury, which, based on the allegations in the complaint, has

2    nothing to do with competition.

3         The second factor also is not met, because plaintiffs' injury, if any, was not proximately

4    caused by the alleged conspiracy.  To assess the directness of the plaintiff's injury, courts "look to

5    the chain of causation between [plaintiff's] injury and the alleged restraint in the market."

6    *American Ad Management*, 190 F.3d at 1058.  Here, plaintiffs allege that the direct victims of the

7    alleged conspiracy were "United's members" (i.e., plaintiffs' patients) because they "incurred

8    liability for illegally inflated out-of-pocket payments for out-of-network IOP services than they

9    would have paid" in the absence of the conspiracy.  Compl. ¶ 407.  As noted above, plaintiffs

10   allege that their own injury arises only to the extent that their patients do not pay the amounts that

11   United does not reimburse.  Accordingly, plaintiffs' injuries appear to be derivative of injuries that

12   their patients allegedly suffered as a result of defendants' alleged conspiracy.

13        The third factor also is not met, because plaintiffs' injuries are speculative.  To the extent

14   that a patient pays the balance owed to plaintiffs for the IOP services at issue, then plaintiffs

15   would suffer no injury as to that patient.  Plaintiffs' allegations do not raise the reasonable

16   inference that all patients with United coverage have failed to pay the balances they owe to

17   plaintiffs, or that it is certain that none of these patients will pay such balances in the future.

18        The remaining factors also are not satisfied, because plaintiffs' allegations do not foreclose

19   the possibility that their patients, as the direct victims of the alleged conspiracy, could also sue

20   defendants to recover damages for the alleged conspiracy.  If both the patients and plaintiffs were

21   to sue defendants under the Sherman Act, the risk of duplicative recoveries would be significant.

22   Avoiding such duplication would require fact-intensive inquiries and calculations.

23        In light of the foregoing, the Court cannot reasonably infer that plaintiffs have antitrust

24   standing.  *See In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 902

25   (C.D. Cal. 2012) (dismissing claims by healthcare providers for lack of antitrust standing because

26   "there exist more direct victims in the form of the Subscribers [patients]" and because the

27   plaintiffs' injury "is entirely derivative of the injury inflicted on the Subscribers").  Accordingly,

28   plaintiffs' Section 1 claim for damages is subject to dismissal on that basis.

### b. Elements of a Section 1 Claim

Even if plaintiffs had alleged facts to show that they have antitrust standing, their claim for damages would nevertheless be subject to dismissal because plaintiffs have not alleged facts to satisfy the first and second elements required to state a claim under Section 1.

To satisfy the first element of a Section 1 claim, the plaintiff must plead that "there is some restraint of trade." *Newman v. Universal Pictures*, 813 F.2d 1519, 1522 (9th Cir. 1987). Here, plaintiffs allege conclusorily that defendants engaged in a horizontal conspiracy to "fix" the amount that United reimbursed plaintiffs for their IOP services. Compl. ¶ 397. This allegation does not raise the reasonable inference that defendants' alleged conspiracy restrained trade through price-fixing, because plaintiffs allege that Viant negotiated the amounts that United reimbursed plaintiffs, which suggests that the amounts that United reimbursed plaintiffs differed based on the outcome of each negotiation and were, therefore, not fixed. Further, plaintiffs admit in their opposition that, if they had not provided IOP services to United patients, they would have provided them to patients who were "insured by other health insurance providers or self-pay patients," suggesting that the conditions in the marketplace were such that plaintiffs were not bound to accept United patients despite the allegedly "fixed" prices. Opp'n at 8, Docket No. 47. Accordingly, the Court cannot reasonably infer that the alleged conspiracy restrained trade.

To satisfy the second element of a Section 1 claim, the plaintiff must plead that the restraint at issue *unreasonably* restrained trade under either the per se rule or the rule of reason. *Cnty. of Tuolumne,* 236 F.3d at 1155. Here, plaintiffs have not pleaded an unreasonable restraint of trade under either the per se rule or the rule of reason.

The per se rule applies to restraints that are unlawful per se, such as horizontal agreements among competitors to fix prices or to divide markets, which "always or almost always tend to restrict competition and decrease output." *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (internal citation omitted). Where the per se rule applies, the conduct at issue is deemed to be unlawful under Section 1 without any inquiry into its actual effect on competition. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015) ("Once the agreement's existence is established, no further inquiry into the practice's actual

United States District Court
Northern District of California

1  effect on the market or the parties' intentions is necessary to establish a § 1 violation.").  Here,

2  there are no allegations in the complaint suggesting that defendants are competitors.  Plaintiffs

3  allege that Viant negotiates rates with providers on behalf of United, suggesting that Viant is

4  United's agent.  Plaintiffs cite no authority showing that a conspiracy between a principal and an

5  agent who do not compete constitutes a horizontal restraint subject to the per se rule.

6  Additionally, as discussed above, plaintiffs' allegations do not support the inference that

7  defendants "fixed" the amount they reimbursed plaintiffs for their services.  Accordingly, the

8  allegations in the complaint do not raise the inference that defendants unreasonably restrained

9  trade through a horizontal price-fixing conspiracy subject to the per se rule.  *Cf. Arizona v.*

10  *Maricopa Cty. Med. Soc.*, 457 U.S. 332, 356, (1982) (holding that agreement among medical

11  practitioners "who compete with one another for patients" to fix the prices of their medical

12  services was per se unlawful under Section 1).

13        The rule of reason applies to all other restraints that are not subject to the per se rule.

14  *Leegin*, 551 U.S. at 885-86.  "[T]he inquiry mandated by the Rule of Reason is whether the

15  challenged agreement is one that promotes competition or one that suppresses competition."  *Nat'l*

16  *Soc'y of Prof'l Engrs v. United States*, 435 U.S. 679, 691 (1978).  Courts in the Ninth Circuit

17  employ a burden-shifting framework to apply the rule of reason, which requires the plaintiff, as

18  the first step, to "delineate a relevant market and show that the defendant plays enough of a role in

19  that market to impair competition significantly."  *Cnty. of Tuolumne*, 236 F.3d at 1150 (citation

20  and internal quotation marks omitted).  The relevant market must "encompass the product at issue

21  as well as all economic substitutes for the product[,]" and it must include "the group or groups of

22  sellers or producers who have actual or potential ability to deprive each other of significant levels

23  of business."  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008)

24  (citations and internal quotation marks omitted).   Only if the plaintiff makes the threshold

25  showing of a relevant market in which the defendant has sufficient market power to impair

26  competition does the court then consider, at the second step, whether defendants can show that a

27  legitimate procompetitive effect is produced by the challenged behavior, and if so, whether the

28

United States District Court
Northern District of California

1  plaintiffs can demonstrate, at the third step, that there are less restrictive alternatives to the

2  challenged conduct.  *Cnty. of Tuolumne*, 236 F.3d at 1150.

3        In the complaint, plaintiffs do not define the relevant market, the entities that compete in

4  that market, the market power of each competitor, the product or products at issue, or the

5  substitutes for the product or products.  Plaintiffs also have not alleged facts showing that

6  defendants have sufficient market power in the relevant market to impair competition.  Further,

7  plaintiffs have averred no facts showing that defendants' conduct lacks any procompetitive effect.

8  Accordingly, the Court cannot infer that defendants' alleged conspiracy unreasonably restrained

9  trade under the rule of reason.

10        Accordingly, in light of the foregoing, plaintiffs' claim for damages under Section 1 is

11  subject to dismissal.

12  **2.      Injunctive Relief**

13        In the complaint, plaintiffs request, in addition to damages, "any necessary injunctions" to

14  bar defendants' allegedly anticompetitive conduct.  Compl. ¶ 409.

15        Section 16 of the Clayton Act governs claims for injunctive relief "against threatened loss

16  or damage by a violation of the antitrust laws[.]"  15 U.S.C. § 26.  To obtain injunctive relief, "a

17  private plaintiff must generally meet all the requirements that apply to the damages plaintiff,

18  except that the injury itself need only be threatened, damage need not be quantified, and

19  occasionally a party too remote for damages might be granted an injunction."  *Lucas Auto. Eng'g,*

20  *Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1234 (9th Cir. 1998).  Threatened injury of the

21  type the antitrust laws were intended to prevent is a prerequisite to obtaining equitable relief.  *Id.*

22  (citation omitted).

23        Here, as discussed above, plaintiffs have not alleged factual matter showing that they have

24  suffered or are likely to suffer injury of the type that the antitrust laws were intended to prevent.

25  Plaintiffs also have not averred facts to raise the inference that defendants' alleged conspiracy

26  unreasonably restrained trade and thus violated the antitrust laws.

27        Accordingly, plaintiffs' claim for injunctive relief is subject to dismissal.

28  //

**B.     RICO**

Section 1962(c) of RICO provides, "It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

Here, plaintiffs allege that defendants violated RICO Section 1962(c).  This claim is premised on allegations that United and Viant are engaged in an illegal "kick-back" scheme through which United and Viant conspired to take and retain for their own benefit funds given to them by plan members.  Compl. ¶ 360.  Plaintiffs allege that "United's agents" lied to plaintiffs during "the initial VOB and Provider calls" by representing that "benefits were available and paid based on the UCR," *id.* ¶ 355, and that Viant misrepresented during its negotiations with plaintiffs that it had authority to negotiate the rates of reimbursement on behalf of patients, *id.* ¶ 358. Plaintiffs allege that United and Viant's representations were false because United had a contract with Viant to underpay the claims, which was not disclosed to plaintiffs.  Plaintiffs further aver that they were injured by this alleged scheme because they were underpaid for the IOP services they provided to United patients.  *Id.* ¶ 386.  Plaintiffs allege that the predicate offenses for their RICO claim are wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, as well as "Health Care Offenses" in violation of 18 U.S.C. § 24 and ERISA, 18 U.S.C. § 1027.  *Id.* ¶¶ 354-59.

Defendants move to dismiss this claim on the grounds that plaintiffs lack RICO standing and that plaintiffs' allegations are insufficient to state a claim under Section 1962(c).

**1.     Standing**

To establish RICO standing, a plaintiff must plead an injury to business or property that was proximately caused by the alleged RICO predicate offense.  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 2 (2010) ("To establish that an injury came about by reason of a RICO violation, a plaintiff must show that a predicate offense not only was a but for cause of his injury, but was the proximate cause as well.") (citation and internal quotation marks omitted).  In determining whether a plaintiff's injury has a sufficient causal nexus to the RICO predicate offense, courts look

United States District Court
Northern District of California

to the same factors that courts consider to determine whether a plaintiff has antitrust standing.  *See Oregon Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999) ("To determine whether an injury is 'too remote' to allow recovery under RICO and the antitrust laws, the Court applies the following three-factor 'remoteness' test: (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.").

The Court concludes that plaintiffs' allegations do not raise the inference that they have RICO standing for the same reasons that such allegations do not raise the inference that plaintiffs have antitrust standing.  By plaintiffs' own allegations, defendants' conduct appears to have caused injury, first and foremost, to plaintiffs' patients, because it increased the amounts that the patients owed to plaintiffs for IOP services.  *See, e.g.*, Compl. ¶ 364 ("The excessive balance bills that Plaintiffs are forced to issue is a clear harm to the patients as they now owe large sums that were properly United's responsibility to pay.").  The proximate cause of plaintiffs' own injury appears to be the non-payment by their patients of any amounts that United did not reimburse.  Plaintiffs' injury appears to be, therefore, derivative of their patients' injuries and too remote to confer them with standing.  Further, as discussed above, the risk of duplicative recoveries and of having to engage in fact-intensive damages calculations to prevent such duplication is high if both plaintiffs and their patients sue defendants for the same conduct.

Accordingly, plaintiffs' RICO claim is subject to dismissal for lack of statutory standing. *See Oregon Laborers*, 185 F.3d at 963-67 (holding that health care trust funds lacked standing under RICO to sue tobacco companies because their injury was derived from the smokers' injury and was therefore too remote).

### 2.    Elements of RICO Section 1962(c) Claim

To state a claim under Section 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc).  "Rule 9(b)'s requirement that '[i]n all averments of fraud or

United States District Court
Northern District of California

United States District Court
Northern District of California

1  mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies

2  to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir.

3  2004) (internal citation omitted).

4      Even if plaintiffs had RICO standing, their RICO claim under Section 1962(c) would

5  nevertheless be subject to dismissal for failure to allege facts to satisfy the following elements.

6          **a.      Enterprise**

7      "An enterprise that is not a legal entity is commonly known as an 'association-in-fact'

8  enterprise." *Id.* at 940 (citation omitted).  To plead an association-in-fact enterprise, a plaintiff

9  must allege: (1) a common purpose of engaging in a course of conduct; (2) an ongoing

10  organization, either formal or informal; and (3) facts that the associates function as a continuing

11  unit.  *Odom*, 486 F.3d at 553 (citation omitted).

12      Here, plaintiffs have not averred factual matter suggesting that defendants acted with a

13  common purpose of engaging in a course of conduct.  The allegations in the complaint describe a

14  contractual relationship between defendants that required Viant to negotiate reimbursements on

15  behalf of United.  Plaintiffs allege no facts to raise the inference that defendants' activities

16  pursuant to this contractual relationship were contrary to United's obligations under the ERISA

17  plans it administered or to the terms of such plans.  Courts routinely hold that the "common

18  purpose" requirement is not met where, as here, the allegations in the complaint are consistent

19  only with the execution of a routine contract or commercial dealing.  *See, e.g.*, *Gardner v. Starkist*

20  *Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("Simply characterizing routine commercial

21  dealing as a RICO enterprise is not enough."); *Gomez v. Guthy–Renker, LLC*, No. 14-cv-01425-

22  JGB, 2015 WL 4270042, at *11 (C.D. Cal. Jul. 13, 2015) ("RICO liability must be predicated on a

23  relationship more substantial than a routine contract between a service provider and its client.").

24          **b.      Conduct**

25      To satisfy the "conduct" element of a Section 1962(c) claim, a plaintiff must allege facts

26  that the defendant had "some part in directing [the enterprise's] affairs."  *Walter v. Drayson*, 538

27  F.3d 1244, 1249 (9th Cir. 2008) (citation and internal quotation marks omitted).  Simply being "a

28

part" of the enterprise or "performing services" for the enterprise does not rise to the level of direction required.  *Id.*

Here, plaintiffs have not alleged facts to raise the inference that either United or Viant directed the affairs of the alleged scheme for RICO purposes.  Allegations showing that a defendant conducted its own affairs is insufficient to raise the inference that the defendant conducted the affairs of an enterprise.  *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 939 (N.D. Cal. 2013) (Gonzalez Rogers,  J.) (holding that RICO liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs") (emphasis in the original).  As discussed above, the allegations in the complaint are consistent only with defendants conducting their own affairs pursuant to the contract that required Viant to negotiate reimbursements on behalf of United, which plaintiffs do not allege was contrary to the ERISA plans that United administered.  In the absence of allegations that raise the inference that either defendant performed actions to further a scheme rather than their own individual affairs pursuant to the contract just described, the conduct element is not satisfied.

### c.      Pattern of Racketeering Activity

A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after [1970] and the last of which occurred within ten years after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  Racketeering activity is also referred to as the "predicate acts."  *Living Designs, Inc. v. E.I. Dupont de Nemours and Co*., 431 F.3d 353, 361 (9th Cir. 2005).  Offenses that can constitute predicate acts for a RICO violation are listed in 18 U.S.C. § 1961(1).

As noted, plaintiffs allege that their RICO claims are predicated on wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, as well as "Health Care Offenses" in violation of 18 U.S.C. § 24 and ERISA, 18 U.S.C. § 1027.  Compl. ¶¶ 354-59.

The alleged "Heath Care Offenses" cannot serve as predicates for a RICO claim because they are not listed in 18 U.S.C. § 1961(1).  Plaintiffs argue that these offenses can give rise to a RICO claim to the extent that they relate to the laundering of monetary instruments in violation of 18 U.S.C. § 1956.  Opp'n at 13, Docket No. 47.  While money laundering is listed in Section

United States District Court
Northern District of California

1961(1) and can, therefore, serve as a RICO predicate offense, the complaint is devoid of allegations that defendants engaged in money-laundering activities.  Accordingly, in the absence of allegations in the complaint that tie the "Health Care Offenses" in question to an offense that can serve as a predicate for a RICO claim, plaintiffs' RICO claim is subject to dismissal to the extent that it is based on "Health Care Offenses."

Wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, can serve as predicate offenses.  Plaintiffs, however, have failed to allege facts to raise the reasonable inference that defendants committed at least two instances of either offense.

Wire fraud and mail fraud share the same elements: (1) that the defendant formed a scheme to defraud; (2) used the United States wires [for wire fraud] or United States mail [for mail fraud] in furtherance of the scheme; and (3) did so with a specific intent to deceive or defraud.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (citations omitted).  Alleged violations of RICO predicated on fraudulent communications, as the ones here, are subject to Federal Rule of Civil Procedure 9(b), which requires that the plaintiff "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Id.* at 1401.

Plaintiffs have not averred the specific facts required to raise the reasonable inference that defendants committed at least two instances of mail fraud or wire fraud.  The allegations in the complaint do not identify the time, place, and specific content of the fraudulent communications at issue, or identify the person or persons involved in such communications.  Plaintiffs also do not aver factual matter to raise the inference that such communications were sent over the United States wires or United States mail across state lines.  Accordingly, plaintiffs have not plausibly alleged that defendants engaged in acts of mail fraud or wire fraud that constitute a pattern of racketeering activity.

Based on the foregoing, plaintiffs' RICO claim under Section 1962(c) is subject to dismissal.

//

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    Conspiracy under Section 1962(d)

Section 1962(d) provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  A defendant cannot be liable for a RICO conspiracy under Section 1962(d) if the defendant is not liable under the substantive RICO provisions, namely Sections 1962(a), (b), or (c).  *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

In the complaint, plaintiffs allege that defendants' purported scheme in violation of RICO was a "conspiracy."  *See, e.g.*, Compl. ¶ 368.  To the extent that plaintiffs sought to assert a claim against defendants under Section 1962(d) based on these allegations, such a claim is subject to dismissal because plaintiffs have failed to plead a substantive RICO violation under Section 1962(c), as discussed above.  *See Howard*, 208 F.3d at 751.

### C.    State-law Claims

Plaintiffs assert the following state-law claims against defendants: (1) violation of the UCL, Bus. & Prof. Code § 17200 *et seq.*; (2) intentional misrepresentation and fraudulent inducement; (3) negligent misrepresentation; (4) civil conspiracy; (5) breach of oral or implied contract; and (6) promissory estoppel.  All of these claims are predicated on the theory that United falsely represented during the VOB calls that it would reimburse plaintiffs for IOP services at a percentage of UCR.

Defendants move to dismiss these claims on the grounds that they are preempted under ERISA Section 502(a) and ERISA Section 514(a) because the claims depend on the existence and terms of ERISA plans.

ERISA Section 502(a), 29 U.S.C. § 1132(a), is irrelevant here.  Complete preemption under Section 502(a) is a "jurisdictional rather than a preemption doctrine," as it "provides a basis for federal question removal jurisdiction."  *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009).  Here, the Court need not determine whether federal question removal jurisdiction exists, because the complaint was filed in federal court, not state court, and

because plaintiffs assert federal claims that provide a basis for jurisdiction under 28 U.S.C. § 1331.

ERISA Section 514(a) expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]"  29 U.S.C. § 1144(a).  "While this section suggests that the phrase 'relate to' should be read broadly, the Supreme Court has recently admonished that the term is to be read practically, with an eye toward the action's actual relationship to the subject plan."  *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995)).  "Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA 'if it has a connection with or reference to such a plan.'"  *Id.* (citation omitted).  "In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival.  If so, a sufficient 'reference' exists to support preemption."  *Id.* (citations omitted).  "In determining whether a claim has a 'connection with' an employee benefit plan, courts in this circuit use a relationship test.  Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant."  *Id.* (citations omitted).

Here, the allegations in the complaint suggest that each of the state-law claims at issue depends on the existence and terms of an ERISA plan.  Plaintiffs connect United's alleged obligation to pay for IOP services at a percentage of the UCR to the patients' ERISA plans by alleging that "[e]very plan at issue in this litigation was obligated to pay out-of-network IOP claims at the UCR rate."  Compl. ¶¶ 74, 75.  Further, plaintiffs aver that the parties' understanding as to what United meant when it represented that it would pay a percentage of the UCR was based on United's published definition of UCR on its webpage describing out-of-network *benefits*, which suggests that the UCR definition has a connection to the terms of benefit plans.  *See* Compl. ¶ 324 (alleging that plaintiffs and United understood UCR to be "consistent with United's published definition of UCR rates"); *id.* ¶ 17 n.6 (alleging that United published a definition of

16

1    UCR on its webpage describing out-of-network benefits).  To the extent that plaintiffs' state-law

2    claims depend on ERISA plans and their terms, such claims are preempted under ERISA Section

3    514(a).  *See Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1191 (9th Cir. 2010) (holding that

4    state-law claims predicated on "theories of fraud, misrepresentation, and negligence" are

5    preempted under Section 514(a) because they "depend on the existence of an ERISA-covered plan

6    to demonstrate that [the plaintiff] suffered damages").

7             During oral argument, plaintiffs relied extensively on *Fremont Emergency Servs.*

8    *(Mandavia), Ltd. v. UnitedHealth Grp., Inc.*, __F. Supp. 3d__, No. 219CV832JCMVCF, 2020 WL

9    1970710 (D. Nev. Feb. 20, 2020) to argue that their state-law claims are not preempted under

10   Section 514(a).  There, providers of emergency services had provided emergency care to patients

11   "regardless of an individual's insurance coverage or ability to pay."  *Id.* at *1.  The providers

12   "never had a written agreement [with United] governing the rates of reimbursement for emergency

13   services rendered," but they nevertheless submitted claims to United for reimbursement, and

14   United "routinely paid them" at the range of 75% to 90%.  *Id.*  United, without notice, reduced the

15   rates of reimbursement to 12% to 60%, which the providers alleged was "below the usual and

16   customary rates."  *Id.*  The providers sued United in state court for state-law claims arising out of

17   United's alleged "underpayment" of claims, and United removed the action to federal court on the

18   basis that the claims were completely preempted under ERISA Section 502(a).  The providers then

19   moved to remand.  The court held that the state-law claims were not preempted under ERISA

20   Section 502(a) and that federal question removal jurisdiction, therefore, did not exist based on

21   Section 502(a).  *Id.* at *2.  The court recognized that complete preemption under Section 502(a)

22   requires a finding, pursuant to *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004), that (1) the

23   plaintiff "could have brought his claim under ERISA § 502(a)(1)(b)," and that (2) "there is no

24   other independent legal duty that is implicated by a defendant's actions."  *Id.*  The court in

25   *Fremont* held that the first requirement for complete preemption was not met because the

26   providers could not have brought their claims under ERISA Section 502(a)(1)(b), as they "d[id]

27   not contend they are owed an additional amount from the patients' ERISA plans" and their claims

28   against United were premised on the "implied-in-fact contract with United," which was

1    independent of the terms of any ERISA plan.  *Id.*  Because federal question removal jurisdiction

2    did not exist by virtue of ERISA Section 502(a), the court remanded the case to state court.

3            *Fremont* is distinguishable.  First, as noted, removal jurisdiction is not at issue; for that

4    reason, the analysis in *Fremont* regarding the applicability of complete preemption under ERISA

5    Section 502(a) has no bearing on the question the Court must answer here, which is whether the

6    state-law claims are subject to conflict preemption under ERISA Section 514(a).  *See Lyons v.*

7    *Alaska Teamsters Employer Serv. Corp.*, 188 F.3d 1170, 1172 (9th Cir. 1999) ("In an ERISA case,

8    in which the ground for removal is complete preemption, determining jurisdiction will necessarily

9    involve analyzing whether there is preemption of the plaintiff's claims.  However, the preemption

10   determination made for purposes of determining jurisdiction has no bearing on whether the

11   defendant can actually establish a substantive preemption defense [under ERISA Section

12   514(a)].") (citations omitted).  Second, the alleged agreement that formed the basis of the state-law

13   claims in *Fremont* had no connection to the terms of any ERISA plan, and the providers in that

14   case were not seeking further payments under the terms of an ERISA plan.  Here, by contrast, the

15   allegations in the complaint suggest that the alleged representations by United that form the basis

16   of plaintiffs' state-law claims have at least some connection to the terms of their patients' ERISA

17   plans, as discussed above.  Plaintiffs' allegations do not raise the reasonable inference that they

18   had an agreement with United apart from the patients' ERISA plans that governed the amounts of

19   United's reimbursements for the IOP services in question.  Further, plaintiffs appear to be seeking

20   additional reimbursements under their patients' ERISA plans, as they request that the Court order

21   United to "reprocess" the claims for reimbursement "using an appropriate methodology."  Compl.

22   at 60.

23           Accordingly, plaintiffs' state-law claims are preempted under ERISA Section 514(a) and

24   are subject to dismissal on that basis.

25           **D.     Leave to Amend**

26           Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to

27   amend] when justice so requires."  *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir.

28

United States District Court
Northern District of California

2011).  The Court, however, need not grant leave to amend where amendment would be futile.  *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).

As noted during oral argument, the Court appreciates plaintiffs' attempt to rectify an allegedly unjust issue on a class-wide basis.  However, as alleged, plaintiffs have not stated a viable claim.  That said, because it is not clear that amendment of the complaint would be futile, the Court will grant plaintiffs leave to amend their claims to attempt to show that they have antitrust and RICO standing, and to otherwise state cognizable claims under Section 1 of the Sherman Act and RICO.  The Court also will grant plaintiffs leave to amend their state-law claims to allege a cognizable theory for relief that avoids preemption under ERISA Section 514(a).

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motions to dismiss **WITH LEAVE TO AMEND**.  Plaintiffs may file an amended complaint within thirty (30) days of the date this order is filed.  Defendants may file a response to the amended complaint within thirty (30) days of the date it is filed.

This order terminates Docket Numbers 38 and 39.

**IT IS SO ORDERED.**

Dated: August 25, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**