1  **SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP
   MOE KESHAVARZI, SBN 223759
2      E-Mail: mkeshavarzi@sheppardmullin.com
   DAVID DWORSKY, SBN 272167
3      E-Mail: ddworsky@sheppardmullin.com
   333 South Hope Street, 43rd Floor
4  Los Angeles, California 90071
   Telephone: 213.620.1780
5  Facsimile: 213.620.1398

6  ERROL J. KING, JR.
7  **PHELPS DUNBAR LLP**
   II City Plaza
8  400 Convention Street, Suite 1100
   Baton Rouge, Louisiana 70802
9  Telephone: (225) 376-0207
   Fax: (225) 381-9197
10 Errol.King@phelps.com

11 *Attorneys for Defendant MultiPlan, Inc.*

12

13                    **UNITED STATES DISTRICT COURT**

14                  **NORTHERN DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE RECOVERY CENTER, INC., on behalf of themselves and all others similarly situated,<br><br>                          Plaintiffs,<br><br>          vs.<br><br>UNITED BEHAVIORAL HEALTH, INC., a California corporation, and MULTIPLAN, INC., a New York corporation,<br><br>                          Defendants. | Case No. 4:20-cv-02249-YGR<br>Related Case No. 4:20-cv-02254-YGR<br><br>**MULTIPLAN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 9(b) and 12(b)(6)]**<br><br>Date:        Tuesday, December 22, 2020<br>Time:        2:00 p.m.<br>Judge:       Hon. Yvonne Gonzalez-Rogers<br>Courtroom:   Courtroom 1, Fourth Floor<br><br>First Amended Complaint Filed:<br>September 25, 2020 |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 22, 2020, at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Yvonne Gonzalez Rogers in Courtroom 1 on the 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant, MultiPlan, Inc. ("MultiPlan"), will and hereby does move this Court for an Order, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the First Amended Class Action Complaint ("FAC") filed by Pacific Recovery Solutions d/b/a Westwind Recovery, et al. ("Plaintiffs"), on the following grounds:

1.      All of Plaintiffs' state law causes of action against MultiPlan are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

2.      All of Plaintiffs' causes of action against MultiPlan fail to state claims against MultiPlan upon which relief can be granted.

Pursuant to L.R. 7-2(b)(3), MultiPlan requests that the Court dismiss the Complaint in its entirety with prejudice. This Motion is based on this Notice of Motion, Motion, and the Memorandum of Points and Authorities attached, filed concurrently herewith, all pleadings on file with this Court, and on such oral argument as may be presented at the hearing on this matter.

Dated:  October 30, 2020

By:      /s/ Moe Keshavarzi
_____
Moe Keshavarzi
David Dworsky
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, CA  90071
Telephone: (213) 620-1780
Fax:  (213) 620-1398

and

Errol J. King, Jr.
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone:  (225) 376-0207
Fax:  (225) 381-9197
Attorneys for Defendant, MultiPlan, Inc.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED....................................1

ARGUMENT ...............................................................................................................................3

I.      Plaintiffs' State Law Claims against MultiPlan are Preempted by ERISA.......................3

II.     Plaintiffs Continue to Fail to Meet the Pleading Standard of Rule 9(b). ...........................4

III.    Plaintiffs Have Failed to Meet the Plausibility Standard of Twombly/Iqbal. ...................6

IV.     Plaintiffs Have Again Failed to Make Out Their Civil RICO Claims. ..............................7

V.      Plaintiffs' State Law Are Insufficiently Pled..................................................................11

        A.      *Plaintiffs Fail To State A Claim For Statutory Unfair Competition.* ...................11
        B.      *Plaintiffs Fail To State A Claim For Intentional Misrepresentation Or Fraudulent Inducement.* ...............................................................................14
        C.      *Plaintiffs Fail To State A Claim For Negligent Misrepresentation.*......................15
        D.      *Plaintiffs Fail To State A Claim For Civil Conspiracy.*........................................16
        E.      *Plaintiffs Fail To State A Claim For Promissory Estoppel.*..................................17

VI.     Plaintiffs Have Not Properly Alleged a Sherman Act Violation, Shown They

        Have Antitrust Standing, or That They Are Entitled to Injunctive Relief .......................18

CONCLUSION ...........................................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABC Servs. Grp., Inc. v. United Healthcare Servs.*,
  2019 WL 4137624 (C.D. Cal. June 14, 2019).................................................13, 14

*Anza v. Ideal Steal Supply Corp.*,
  547 U.S. 451 (2006).......................................................................... 11

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ......................................................................... 18

*Ashcroft v. Iqbal*,
  566 U.S. 662 (2009)................................................................2, 6, 7, 16

*Ass'n of Wash. Publ. Hosp. Dists v. Philip Morris Inc.*,
  241 F.3d 696 (9th Cir. 2001) ............................................................. 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................2, 6, 7

*Cansino v. Bank of Am.*,
  224 Cal. App. 4th 1462 (2014) .......................................................... 17

*City & County of San Francisco v. Purdue Pharma L.P.*,
  Case No. 3:18-cv-07591-CRB, slip op................................................ 11

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*,
  68 Cal. App. 4th 445 (1998) ............................................................. 15

*Daugherty v. American Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) ........................................................... 13

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*,
  523 F.3d 1116 (9th Cir.2008) ........................................................... 22

*Diaz v. Gates*,
  420 F.3d 897 (9 Cir. 2005) (en banc)................................................. 11

*Diediker v. Peelle Financial Corp*.
  60 Cal. App. 4th 288 (1997)............................................................. 17

*Dooley v. Crab Boat Owners Ass'n*,
  2004 WL 902361 (N.D. Cal. Apr. 26, 2004).......................................... 8

*Eastman v. Quest Diagnostics Inc.*,
  2016 WL 1640465 (N.D. Cal. April 26, 2016)...................................... 22

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .......................................................................... 16

*Ellis v. J.P. Morgan Chase & Co.*,
    2015 WL 78190 (N.D. Cal. January 6, 2015), *aff'd*, 752 Fed. App'x 380 (9th
    Cir. 2018).......................................................................................................... 10

*Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*,
    2013 U.S. Dist. LEXIS 53401 (C.D. Cal. Apr. 10, 2013)...................................... 19

*Gilbert v. Bank of America*,
    2014 WL 12644028 (N.D. Cal. Sept. 23, 2014) .................................................. 11

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) .......................................................................... 21

*Godecke v. Kinetic Concepts, Inc.*,
    937 F.3d 1201 (9th Cir. 2019) .......................................................................... 6

*Gomez v. Guthy–Renker, LLC*,
    2015 WL 427004 (C.D. Cal. July 13, 2015) ...................................................... 11

*Gonzales v. Lloyds TSB Bank*,
    532 F. Supp. 2d 1200 (C.D. Cal. June 7, 2006).................................................. 18

*Hansen v. Marin Gen. Hosp.*,
    2018 WL 4638606 (N.D. Cal. Sept. 24, 2018) .................................................. 21

*Heldt v. Guardian Life Ins. Co. of Am.*,
    2017 U.S. Dist. LEXIS 36490 (S.D. Cal. Mar. 13, 2017)...................................... 4

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992)........................................................................................ 11

*Hopkins v. American Home Mortgage Servicing, Inc.*,
    2014 WL 580769 (N.D. Cal. Feb. 13, 2014)...................................................... 10

*Jacobsen v. Katzer*,
    2006 WL 3000473 (N.D. Cal. Oct. 20, 2006) .................................................... 22

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .......................................................................... 21

*Khoury v. Maly's of Cal., Inc.*,
    14 Cal. App. 4th 612 (1993).............................................................................. 13

*LD, et al. v. United Behavioral Health, Inc.*,
    Civil Action No. 5:20-cv-02254-YGR.................................................................. 24

*Lesnik v. Eisenmann SE*,
    374 F. Supp. 3d 923 (N.D. Cal. 2019) .............................................................. 5

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ................................................................... 14

*Mangindin v. Wash. Mut. Bank*,
  637 F. Supp. 2d 700 (N.D. Cal. 2009) ...................................................... 18

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009) ................................................................. 14

*Moss v. Infinity Ins. Co.*,
  197 F. Supp. 3d 1191 (N.D. Cal. 2016) .................................................... 12

*Mou v. SSC San Jose Operating Co., L.P.*,
  415 F. Supp. 3d 918 (N.D. Cal. 2019) (Davila, J.) .................................... 4

*name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
  795 F.3d 1124 (9th Cir. 2015) .................................................................. 21

*NCAA v. Board of Regents*,
  468 U.S. 85 (1984) .................................................................................... 20

*NorthBay Healthcare Group v. Kaiser Foundation Health Plan, Inc.*,
  2018 WL 4096399 (N.D. Cal. August 28, 2018).......................................... 22

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) (en banc)....................................................... 8

*Orcilla v. Big Sur, Inc.*,
  244 Cal. App. 4th 982 (2016) ................................................................... 15

*Paulsen v. CNF Inc.*,
  559 F.3d 1061 (9th Cir. 2009) .................................................................... 3

*Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*,
  2017 U.S. Dist. LEXIS 162863 (E.D. Cal. Sept. 29, 2017) ..................... 13, 14, 15

*Ragland v. U.S. Bank National Assn.*,
  209 Cal. App. 4th 182 (2012) ................................................................... 17

*Richardson v. Dallas R. Hall & Associates*,
  1996 WL 308261 (N.D. Cal. May 23, 1996).............................................. 9

*Saniefar v. Moore*,
  2017 WL 5972747 (E.D. Cal. Dec. 1, 2017) .............................................. 9

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ..................................................................... 4

*Smith v. Ayres*,
  845 F.2d 1360 (5th Cir. 1988) ................................................................... 9

*Smith v. City and County of San Francisco,*
    225 Cal. App. 3d 38 (1990) ................................................................................. 19

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,*
    171 F.3d 912 (3d Cir. 1999) ................................................................................ 22

*Stitt v. Citibank, N.A.,*
    2015 WL 75237 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 Fed. App'x 99 (9th Cir.
    2018) ................................................................................................................10, 11

*Sugarman v. Muddy Waters Capital LLC,*
    2020 WL 633596 (N.D. Cal. Feb. 3, 2020) .............................................................. 8

*Sonner v. Premier Nutrition Corp.*, 917 F.3d 834, 844 (9th Cir. 2020) ....................... 15

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ................................................................................... 5

*Synopsis, Inc. v. Ubiquiti Networks, Inc.,*
    313 F.Supp.3d 1056 (N.D. Cal. 2018) ..................................................................... 8

*Tucker v. Post Consumer Brands, LLC,*
    2020 WL 1929368 (N.D. Cal. April 21, 2020) (Gonzales-Rogers, J.) ...................... 6

*United States v. Garrido,*
    713 F.3d 985 (9th Cir. 2013) ................................................................................... 9

*United States v. Miller,*
    953 F.3d 1095 (9th Cir. 2020) ................................................................................. 8

*United States v. Woody's Trucking, LLC,*
    2018 WL 443454 (D. Mont. Jan. 16, 2018) ............................................................. 8

*Urenia v. Pub. Storage,*
    2014 WL 5781250 (C.D. Cal. Nov. 6, 2014) ........................................................... 9

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ................................................................................. 5

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.,*
    2013 WL 12130034 ( C.D. Cal. July 19, 2013)...................................................... 11

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.,*
    903 F.Supp.2d 880 (C.D. Cal. 2012) ................................................................. 8, 23

*Woodell v. Expedia Inc.,*
    2019 WL 3287896 (W.D. Wash. July 22, 2019) .................................................... 10

**Statutes**

15 U.S.C. § 1 ................................................................................................................ 2, 19

15 U.S.C. § 15 ................................................................................................ 2, 22

18 U.S.C. § 1341.................................................................................................... 8

18 U.S.C. § 1343.................................................................................................... 8

18 U.S.C. § 1962(c) ........................................................................................... 7, 8

18 U.S.C. § 1962(d) .............................................................................................. 8

29 U.S.C. § 1144(a) .......................................................................................... 2, 3

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...................................................... 4, 12

**Rules**

Fed. R. Civ. P. 8(a) .......................................................................................... 2, 6

Fed. R. Civ. P. 9(b) ..................................................................................... passim

Fed. R. Civ. P. 12(b)(6)........................................................................ 2, 4, 5, 6, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant, MultiPlan, Inc. ("MultiPlan") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the First Amended Class Action Complaint ("FAC") filed by Plaintiffs, Pacific Recovery Solutions d/b/a Westwind Recovery, et al., on behalf of themselves and similarly situated out-of-network behavioral health providers (collectively the "Plaintiffs"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (the "Motion"), as follows:

## INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Following this Court's August 25, 2020 Order Granting Motions to Dismiss with Leave to Amend ("August 25 Dismissal Order") [Dkt. 61], on September 24, 2020, Plaintiffs filed their First Amended Class Action Complaint [Dkt. 62]. In addition to substituting MultiPlan as a defendant in the place of its affiliate Viant, Inc. ("Viant"),[1] Plaintiffs have attempted to cure the numerous deficiencies in the original Complaint that led to its dismissal with the assertion of new allegations that still come up short in making out the ten claims Plaintiffs seek to continue to press against Defendants.

Much of what Plaintiffs have added appears to have been designed to fabricate a façade of allegedly carefully planned and orchestrated actions, based on discussions and other dealings between MultiPlan and its co-Defendant, United Behavioral Health, Inc. ("United"), and among United and its competitors, to defraud Plaintiffs, to restrict competition, and to line their pockets, all to the detriment of providers and their patients. As before, however, this newly alleged, vast conspiracy fails to present a plausible theory of wrongdoing, particularly when held up against the legitimate cost-containment efforts of Defendants that are reflected in their entirely above-board business dealings. Yet, to hear Plaintiffs tell it, everything that MultiPlan and Viant do is designed with one purpose — to establish and justify unreasonably low and inaccurate pricing information that can be passed on to United and other insurers for their use in underpaying providers such as

---

[1] Despite the continued focus on alleged actions of Viant in connection with the underlying patient claims, Plaintiffs' substitution of MultiPlan for Viant appears to reflect Plaintiffs' belief that, because of the contractual relationship between United and MultiPlan, as well as interaction of certain MultiPlan representatives with United personnel, MultiPlan is now the proper party to be sued. MultiPlan reserves the right to address this issue in subsequent motion practice. Regardless, MultiPlan, on its own and on behalf of Viant, denies any alleged wrongdoing and asserts that Plaintiffs have failed to make out any claims against either entity.

Plaintiffs, with MultiPlan and Viant, among others, reaping the financial rewards. And, of course, all of this allegedly has been done in secret, through clandestine meetings and employing "whitepapers" with stratagems to be employed by the evil-minded participants. Such fanciful speculation as to Defendants' motives, and outright mischaracterization of MultiPlan's and Viant's systems and data analyses, as well as United's use of the same, does nothing to alter the fact that Plaintiffs have no legally cognizable claims against Defendants. Accordingly, as was the case with the original Complaint, the FAC should be dismissed in its entirety, and with prejudice.

<u>Issues to be resolved by the Court in considering this Motion</u>:

1.    Are the allegations in the FAC subject to conflict preemption under ERISA Section 514(a), 29 U.S. § 1144(a)?

2.    Have the Plaintiffs failed to plead fraud "with particularity" as required by Fed. R. Civ. P. 9(b), thereby requiring the dismissal of all their state law claims, as well as their civil RICO claims?

3.    Have the Plaintiffs failed to meet the "plausibility" standard of Fed. R. Civ. P. 8(a), as articulated by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), thereby requiring the dismissal of all of their claims under Fed. R. Civ. P. 12(b)(6)?

4.    Subsumed within the foregoing, have Plaintiffs failed to allege a civil RICO violation, for various reasons previously identified by MultiPlan, thereby requiring dismissal of that claim, as well as the related RICO conspiracy claim?

5.    And finally, have Plaintiffs failed to make out an antitrust claim against MultiPlan under Section 1 of the Sherman Act, 15 U.S.C. § 1, entitling them to pursue a claim under Section 4 of the Clayton Act, 15 U.S.C. § 15?

The answer to each of these questions remains a simple and straightforward "*yes*." Despite their efforts through the FAC to change or augment the conclusory allegations of the original

1  Complaint in order to satisfy the pleading standards of the Supreme Court and the Ninth Circuit,

2  Plaintiffs have failed to do so.  Accordingly, the FAC should be dismissed with prejudice.[2]

3  <u>**ARGUMENT**</u>

4  **I.    <u>Plaintiffs' State Law Claims against MultiPlan are Preempted by ERISA.</u>**

5       At page 17 of its August 25 Dismissal Order, the Court held that "to the extent that plaintiffs'

6  state-law claims depend on ERISA plans and their terms, such claims are preempted under ERISA

7  Section 514(a)," citing *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1191 (9th Cir. 2010).  In the

8  FAC, Plaintiffs attempt to address this unequivocal statement by asserting that:  (a) "a large

9  percentage of the claims which underlie the lawsuit do not involve ERISA plans." [FAC, ¶ 33], and

10  (b) "Plaintiffs' claims [are not] conflict preempted because . . . [i]t is well established that third-

11  party providers such as Plaintiffs may sue on their own behalf for breach of duties owed to them."

12  [*Id*., ¶ 36].  The first statement embodies Plaintiffs' concession that ERISA plans *are* involved with

13  respect to a number of their claims; the lack of a specific figure leads one to suspect that it is quite

14  a few. The Court's earlier ruling mandates that all of those claims be dismissed as ERISA-

15  preempted.

16       The second statement is incorrect.  Section 514(a) states that ERISA shall supersede "any

17  and all state laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA,

18  § 514, 29 U.S.C. §1144(a). A state law claim "relates to" an ERISA plan if it has either a "reference

19  to" or "connection with" such a plan.  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081–82 (9th Cir. 2009).

20  "The Ninth Circuit has employed a "relationship test" in analyzing "connection with" preemption,

21  under which a state law claim is preempted when the claim bears on an ERISA-regulated

22  relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, or

23  between employer and employee." *Heldt v. Guardian Life Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS

24  36490, *24–*25 (S.D. Cal. Mar. 13, 2017).  It is undeniable that the underlying health benefit

25  policies administered by United are implicated by Plaintiffs' underpayment claims, however they

26  are couched (*e.g.*, under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et*

27
28  ---
[2] MultiPlan also adopts the arguments of its co-Defendant United set forth in the latter's Motion to Dismiss and supporting Memorandum with respect to those Counts of the FAC that are directed both to MultiPlan and United.

*seq.* (Count IV); as common law torts of intentional misrepresentation/fraudulent inducement, negligent misrepresentation, or a civil conspiracy (Counts IV–VI); or as the quasi-contractual claim of promissory estoppel (Count IX)).[3]

Plaintiffs' state law causes of action, no matter the underlying theory, relate to ERISA-governed employee benefit plans and are therefore conflict preempted by ERISA, § 514. Specifically, each of Plaintiffs' claims relate to the right to receive benefits under the terms of ERISA plans and also directly affect the relationship between ERISA entities. Although Plaintiffs argue that there are independent grounds to support their state law claims and point to cases in the FAC to advance that argument, this Court has already concluded to the contrary, and nothing that Plaintiffs have put forth alters the correctness of the ruling. Accordingly, Plaintiffs' state law causes of action must be dismissed pursuant to Rule 12(b)(6).

## II.   <u>Plaintiffs Continue to Fail to Meet the Pleading Standard of Rule 9(b).</u>

It remains the case with respect to the FAC that in any instance in which fraud is directly or indirectly pled (*i.e.*, Plaintiffs' state law and civil RICO claims), Plaintiffs continue to fail to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires allegations "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Mou v. SSC San Jose Operating Co., L.P.*, 415 F. Supp. 3d 918, 924 (N.D. Cal. 2019) (Davila, J.). Thus, a plaintiff must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).[4] A plaintiff must also plead facts explaining why a statement was false when it was made. *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 937–38 (N.D. Cal. 2019).

---

[3] Two counts in the FAC involve claims only directed against United: Count III, for its alleged violation of California Business & Professions Code §§ 17200 *et seq.*; and Count VIII, for its alleged breach of oral and/or implied contract.

[4] In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

In the Ninth Circuit, Rule 9(b) applies where a complaint "sounds" or is "grounded" in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). And, as this Court noted at page 12 of the August 25 Dismissal Order, "Rule 9(b)'s requirement that '[i]n all averments or fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims," citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004). The Ninth Circuit has also recognized that, when a complaint "is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint." *Vess*, 317 F.3d at 1107. "[S]uch dismissals are appropriate," even though "there is no explicit basis in the text of the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* Thus, a motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

The FAC alleges fraud, using that word or comparable ones, at numerous points. [*See* FAC, ¶¶ 16–18, 25, 27–28, 73, 75, 111, 113, 115–16, 119–25, 129, 131–40, 153–60, 165, 183, 196–98, 214, 226–29, 239, 253, 267, 274, 281–82, 287, 297, 304, 311, 316, 326, 333, 340, 346, 357, 364, 371–72, 379, 392, 426, 431, 439 (b)–(f) & (l), 455, 457, 463, 467 (d)–(e) & (g), 476 (b)–(d), (g) & (j)–(k), 484–86, 489–95, 501–05, and 554–57]. Furthermore, in various places, the FAC employs additional terms, such as "lies," "scheme," "fig leaf," and other pejorative terms, that expressly or impliedly paint MultiPlan and its co-defendant United as fraudsters. [*See, e.g., id.*, ¶¶ 29, 111, 136, 165]. Yet, all of those allegations lack the specificity required by Rule 9(b). The law is clear that such conclusory allegations are nothing more than makeweight to be ignored by the Court.

Moreover, where Plaintiffs tried to present "representative" claims involving each of the providers, presumably attempting to create the appearance of specificity, [*see* FAC, ¶¶ 258–377], they failed to do so, and also failed to show where MultiPlan was involved at all. References to Provider Remittance Advices ("PRA") sent by United along with claim reimbursement that indicate the use of the Viant pricing tool do not show that anyone was misled, since they were sent long after services were rendered. In the end, Plaintiffs still have not set forth the "time, place, and specific content of the fraudulent communications or identif[ied] the person or persons involved." *See*

August 25 Dismissal Order, at p. 14.  Accordingly, all of the counts of the FAC that are predicated on those examples are therefore subject to dismissal.

**III.**   **Plaintiffs Have Failed to Meet the Plausibility Standard of Twombly/Iqbal.**

Cutting across all of the allegations in the FAC is one fundamental flaw — Plaintiffs have failed to present a plausible claim as required by *Twombly/Iqbal* alleging that MultiPlan (or United) has done anything improper or illegal in engaging in above-board, contractual dealings to control excessive health  care costs.  Fed. R. Civ. P. 8(a) requires such a showing; in its absence, the FAC is subject to dismissal under Fed. R. Civ. P. 12(b)(6).  *See Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (dismissal may be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory"); *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *2 (N.D. Cal. April 21, 2020) (Gonzales-Rogers, J.) (same).

The analysis required under *Twombly* and *Iqbal* is straightforward. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In *Iqbal*, the Supreme Court explained that courts considering motions to dismiss should adopt a "two-pronged approach" in applying these principles:  (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 566 U.S. at 679.[5]

Applying those working principles to the FAC in this matter leads to the inevitable conclusion that Plaintiffs have not made out a plausible case in any of the Counts against MultiPlan. First, shorn of all of the "legal conclusions" — which, in reality, make up the bulk of Plaintiffs' allegations – the FAC strives mightily to cast MultiPlan and United as focused on nothing but fraud and deception aimed at depriving Plaintiffs of payments for services rendered at UCR rates in order to line their pockets with ill-gotten gains.  The alleged "details" regarding pricing policies and mechanisms – discussions of "FRED," "SAF," "OPR," "cross-walking" and "target pricing" — add

---

[5] Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint, "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.  *Iqbal*, 566 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567).

nothing. However, when one considers the "obvious alternative explanation" of managed care programs designed and implemented to hold down excessive health care costs for the benefit of plan sponsors, plan participants, and society as a whole, then MultiPlan's and United's conduct appears in a whole new light – a much more plausible one than Plaintiffs' tale of intentional and negligent misrepresentations, conspiracy, racketeering, and anticompetitive conduct. Other than conclusory and unsupported characterizations — which, again, the Court must disregard — nothing in Plaintiffs' recitation of purported meetings between MultiPlan and United, or the purported exchange of information in whitepapers and other communications, presents a plausible case of wrongdoing. Under *Twombly/Iqbal*, claims based upon such allegations should be dismissed.

## IV. Plaintiffs Have Again Failed to Make Out Their Civil RICO Claims.

This Court rejected Plaintiff's civil RICO claims in the original Complaint on several grounds. *See* August 25 Dismissal Order, at pp. 12-15. Now, in Count I of the FAC, Plaintiffs attempt to survive dismissal by putting forth a new set of allegations claiming violations of 18 U.S.C. § 1962(c). In Count II of the FAC, Plaintiffs re-allege a RICO conspiracy violative of 18 U.S.C. §1962(d). However, as the Court has noted, no RICO conspiracy claim can stand without an underlying substantive RICO claim. *Id.*, at p. 15.

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). "To plead a RICO pattern, at least two predicate acts of racketeering activity need to be alleged." *Synopsis, Inc. v. Ubiquiti Networks, Inc.*, 313 F.Supp.3d 1056, 1077 (N.D. Cal. 2018) (citation omitted). Furthermore, "where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F.Supp.2d 880, 914 (C.D. Cal. 2012) (emphasis in original); *accord*, *Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, *5 (N.D. Cal. Apr. 26, 2004).

Plaintiffs also attempt to allege mail fraud (18 U.S.C. § 1343) and wire fraud (18 U.S.C. § 1341) as the predicate acts to support their RICO claim. [*See* FAC, ¶¶ 119, 125, 457]. Both mail and wire fraud have four essential elements, which must be pleaded in conformity with Rule 9(b): "(1)

a scheme to defraud, (2) the statements made and facts omitted as part of the scheme were material, (3) use of the wires, or United States mail, in furtherance of the scheme, and (4) a specific intent to deceive or defraud."  *United States v. Woody's Trucking, LLC*, 2018 WL 443454, * (D. Mont. Jan. 16, 2018) (citing *United States v. Woods*, 335 F.3d 993, 997–99 (9th Cir. 2003)). *See also Sugarman v. Muddy Waters Capital LLC*, 2020 WL 633596, *4 (N.D. Cal. Feb. 3, 2020). As to the fourth element, the Ninth Circuit recently clarified that, to be guilty of mail or wire fraud, "a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat." *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020) (emphasis in original). Additionally, the mail and wire fraud statues both include an "interstate nexus" requirement; in the case of mail fraud, this element is satisfied by the use of the United States postal service. *See Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988). "A claim for wire fraud, however, requires that wire communication cross state lines." *Richardson v. Dallas R. Hall & Associates*, 1996 WL 308261, *2 (N.D. Cal. May 23, 1996). *See also United States v. Garrido*, 713 F.3d 985, 998 (9th Cir. 2013).

Here, Plaintiffs' conclusory allegations of mail and wire fraud fail at the outset because, as discussed above, Plaintiffs have failed to allege any fraud, by either Defendant, with the requisite particularity required under Rule 9(b).  *See, e.g.*, *Urenia v. Pub. Storage*, 2014 WL 5781250, *6 (C.D. Cal. Nov. 6, 2014). Plaintiffs' allegations of mail and wire fraud are also insufficient because Plaintiffs do not plead that any wire communications crossed state lines — a necessary element to sustain a claim of wire fraud.  Plaintiffs in this case have alleged only that (1) some communications to further the alleged scheme were transmitted by wire, and that (2) "activities that span multiple states and affect interstate commerce" occurred.  [*See* FAC, ¶¶ 119, 125, 188, 452, 457, 463]. But there is no specific allegation describing any particular communication sent by "wire" (fax, phone, or otherwise) that crossed a state line, which is fatal to Plaintiffs' claim. *See Saniefar v. Moore*, 2017 WL 5972747, *10 (E.D. Cal. Dec. 1, 2017) (claim dismissed where no allegation of interstate communication); *Richardson*, 1996 WL 308261, *2. Also absent from the FAC are any factual allegations demonstrating a specific intent to deceive or defraud on the part of MultiPlan.

1    Plaintiffs have not cured the defects identified in the Court's August 25 Dismissal Order at

2    pages 13–14. Mere conclusory allegations mimicking the language of the RICO statute is not

3    enough. As Plaintiffs continue to fail to establish that MultiPlan engaged in any "pattern of

4    racketeering activity," their RICO claim must be dismissed.

5    In addition to the foregoing, at pages 12–13 of the August 25 Dismissal Order, the Court

6    rejected Plaintiffs' earlier attempt to plead the existence of an "association-in-fact" enterprise,

7    allegedly consisting of United and Viant, acting in concert with a common purpose and each

8    directing some part of the affairs of the alleged scheme for RICO purposes.  Now, Plaintiffs seek to

9    remedy that failure, but substituting MultiPlan for Viant as a participant in the alleged RICO

10   enterprise.  [*See* FAC, ¶¶ 114–40].  However, Plaintiffs' new allegations come up short, as they do

11   not address the fundamental flaws which the Court previously identified:   (1) "the 'common

12   purpose' requirement is not met where . . . the allegations in the complaint are consistent only with

13   the execution of a routine contract or commercial dealing:" and (2) "[s]imply being 'a part' of the

14   enterprise or 'performing services' for the enterprise does not rise to the level of the direction

15   required."  *See* August 25 Dismissal Order, at pp. 12-13 (citations omitted).

16   To sustain a RICO claim where an "association-in-fact" enterprise is concerned, Plaintiffs

17   must allege three separate elements: "(i) a common purpose of engaging in a course of conduct; (ii)

18   evidence of an ongoing organization, formal or informal; and (iii) evidence that the various

19   associates function as a continuing unit." *Hopkins v. American Home Mortgage Servicing, Inc.*,

20   2014 WL 580769, *4 (N.D. Cal. Feb. 13, 2014).

21   "Where the alleged association-in-fact is formed through routine contracts for services, the

22   'common purpose' element is unmet because the entities are pursuing their own individual economic

23   interests, rather than a shared purpose."  *Woodell v. Expedia Inc.*, 2019 WL 3287896, *8 (W.D.

24   Wash. July 22, 2019).[6] Here, all of MultiPlan's actions are attributable to the performance of

25   Network Access Agreement with United.  Plaintiffs present a litany of actions involving meetings,

26   shared approaches to dealings with providers, analyses of claims to develop pricing parameters, and

27

28   _____

[6] *See Stitt v. Citibank, N.A.*, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 Fed. App'x 99 (9th Cir. 2018); *see also Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 78190, at *4 –*6 (N.D. Cal. January 6, 2015), *aff'd*, 752 Fed. App'x 380, 382 (9th Cir. 2018).

the like, but they fail to show that these are anything more than the conduct of a business relationship whose ultimate goal is cost-containment designed to benefit patients, employers, and society as a whole.  Regardless of their alleged payment expectations, Plaintiffs have not shown that Defendants set out to, or did in fact, engage in a pattern of racketeering that defrauded them by means of a RICO enterprise, rather than engage in normal business activity.[7]  "Despite the wide variety of approaches adopted by courts in interpreting the requirements of RICO, there has been a remarkable uniformity in their conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client."  *Gomez v. Guthy–Renker, LLC*, 2015 WL 427004, *11 (C.D. Cal. July 13, 2015) (listing cases).  In the end, the FAC fails to allege that MultiPlan did anything more than carry out the terms of its contract with United.  On this showing, Plaintiffs' enterprise allegations fail as a matter of law. *Stitt*, 2015 WL 75237, at *5.

Finally, the Court dismissed Plaintiffs' prior RICO claims for lack of standing and proximate cause.  *See* August 25 Dismissal Order, at pp. 10-11.   Plaintiffs have not remedied this deficiency in the new allegations of the FAC. "In order to state a RICO claim, Plaintiffs must allege they suffered injury to their 'business or property' as a proximate result of the alleged racketeering activity."  *Gilbert v. Bank of America*, 2014 WL 12644028, *4 (N.D. Cal. Sept. 23, 2014).  "Without a harm to a specific business or property interest - a categorical inquiry typically determined by reference to state law - there is no injury to business or property within the meaning of RICO."  *Diaz v. Gates*, 420 F.3d 897, 900 (9 Cir. 2005) (en banc).  Plaintiffs have failed to allege any such injury, as they were paid appropriately.

A plaintiff must show that a RICO predicate offense "not only was a "but for' cause of its injury, bat was the proximate cause as well."  *Holmes v.  Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).  "When a Court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steal Supply Corp.*, 547 U.S. 451, 461 (2006).  "If Plaintiffs are unable to show that anyone relied on Defendants'

---

[7] Plaintiffs allege that "[t]he relationships between United MultiPlan are not merely standard commercial contracts; instead, United and MultiPlan exploit their contractual arrangements to provide a fig leaf of legitimacy for their racketeering activity."  [FAC, ¶ 29].  Such conclusory pleading avails Plaintiffs nothing in advancing their RICO claim.  It remains implausible.

allegedly wrongful conduct, they cannot show that they were injured by reason of a RICO predicate offense." *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, *17 ( C.D. Cal. July 19, 2013) (dismissing civil RICO claim premised on mail fraud brought by health care subscribers and providers alleging underpayment of UCR rates); *see also City & County of San Francisco v. Purdue Pharma L.P.*, Case No. 3:18-cv-07591-CRB, slip op., at pp. 37-41, 46 (extensive analysis of proximate cause holdings of the Supreme Court and the Ninth Circuit leading to dismissal of claim because relationship between alleged injuries and predicate acts indirect).

Plaintiffs provide only conclusory allegations as to the existence pf RICO proximate cause. [*See* FAC, ¶¶ 378–88]. They simply claim that "[e]very Plaintiff has been directly injured;" that "there are no other victims who have been directly injured, or more directly injured than Plaintiffs;" and that "Plaintiffs' injuries are not just the foreseeable and natural consequence of Defendants' scheme, they are the objective of the scheme." [*See* FAC, ¶¶ 378, 382, 384]. Yet, in the very next series of allegations, Plaintiffs assert that the alleged "Enterprise" causes damages beyond those done to Plaintiffs, including the IOP patients' employers. [*Id.*, at ¶¶ 385–86]. And, although Plaintiffs have diligently scrubbed from the FAC any reference to their *patients*' owing them balances, that highly relevant fact persists, and as a result, the lawsuit brought by such patients is still be pursued. [*Id.*, ¶ 9, where Plaintiffs address the waiver of any "perceived or potential conflict" arising from that case]. Artful pleading aside, as the Court noted at page 11 of the August 25 Dismissal Order: "[t]he proximate cause of plaintiffs' own injury appears to be the non-payment by their patients of any amounts that United did not reimburse." Therefore, Plaintiffs lack RICO standing. For all of the preceding reasons, Plaintiffs' civil RICO claims must be dismissed.

## V.    **Plaintiffs' State Law Are Insufficiently Pled.**

### A.  *Plaintiffs Fail To State A Claim For Statutory Unfair Competition.*

In Count IV of the FAC, Plaintiffs assert that MultiPlan has violated the California Business & Professions Code §§ 17200 *et seq*. ('UCL'). To assert a claim for violation of the UCL, a plaintiff must allege facts to plausibly show that the defendant's business act or practice is "(1) unlawful (i.e., is forbidden by law), (2) unfair (i.e., harm to victim outweighs any benefit) or (3) fraudulent (i.e., is likely to deceive members of the public)." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191,

1198 (N.D. Cal. 2016). A plaintiff asserting fraudulent business practices under the third prong of the UCL must also satisfy the "heightened pleading requirement" of Fed. R. Civ. P. 9(b). *Id.*

Plaintiffs' UCL claim should be dismissed because it fails to set forth with the required specificity how MultiPlan acted unlawfully, unfairly, or fraudulently, or otherwise participated in any alleged misconduct that falls with the reach of the UCL. Still absent from the FAC are any allegations identifying, with "reasonable particularity," the "facts supporting the statutory elements of the violation." *See Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993). Therefore, regardless of which prong Plaintiff is relying upon, its conclusory allegations are insufficient to state a UCL claim against MultiPlan under any theory.

"Unlawful" is defined as "an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *ABC Servs. Grp., Inc. v. United Healthcare Servs.*, 2019 WL 4137624 (C.D. Cal. June 14, 2019), at *20. To adequately allege a UCL claim under the "unlawful" prong, a plaintiff must allege sufficient facts to establish an underlying violation of a law. *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006). While the FAC cites multiple statutory provisions that MultiPlan allegedly violated, it fails to identify which of MultiPlan's alleged acts or omissions violated which particular statutory provisions or to otherwise set forth facts demonstrating how MultiPlan's conduct violated such provisions. Courts have previously found that allegations very similar to those asserted by Plaintiffs in the instant case "are not sufficient to support a claim that Defendants engaged in practices forbidden by law." *ABC Servs. Grp., Inc.*, 2019 U.S. Dist. LEXIS 168445 at *21. Without any facts to plausibly establish a statutory violation, Plaintiffs' UCL claim cannot survive under the "unlawful" prong.

As to the "unfair" prong, courts have noted that the term "unfair" is not clearly defined in the UCL, and that California courts have articulated three possible tests for determining if an alleged practice is "unfair." *Id.* at *21–22. But like the plaintiff-assignee in that case, Plaintiffs have alleged no facts that would allow this Court to perform any of one those tests. In fact, Plaintiffs do not even allege any specific unfair behavior. Thus, to the extent Plaintiffs are relying on an "unfair" theory of liability, Plaintiffs' UCL claim should be dismissed, as it fails to explain how Defendants acted unfairly. *See Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*, 2017 U.S.

Dist. LEXIS 162863, *9–10 (E.D. Cal. Sept. 29, 2017); *ABC Servs. Grp., Inc.*, 2019 WL 4137624 at *22–23. Further, any claim under the unfairness prong fails because Plaintiffs fail to allege that they were competitors, consumers, or otherwise treated unfairly as prohibited by the UCL. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (rejecting UCL claim where "the alleged victims are neither competitors nor powerless, unwary consumers"); *see also Prime Healthcare Servs.-Shasta, LLC,* 2017 U.S. Dist. LEXIS 162863, at *9–10 (E.D. Cal. Sept. 29, 2017); *ABC Servs. Grp., Inc.*, 2019 WL 4137624, at *8 (dismissing similar UCL claim by substance abuse center)."

Perhaps more importantly, Plaintiffs do not plead sufficient facts to demonstrate that they even have standing to assert a UCL claim under any one of the three prongs. "In addition to pleading facts sufficient to show that the defendant's acts constituted an unlawful, unfair, or fraudulent business practice" under § 17200, a plaintiff asserting a UCL cause of action must "also plead facts sufficient to establish he or she has standing to bring an action under the UCL as amended by Proposition 64," which requires a showing that the plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1253, 1257 (2009). While Plaintiffs allege, pursuant to UCL § 17203, that they are entitled to restitution based on "the UCR […] and the alleged underpayment they received for IOP services provided,"[8] and that MultiPlan should disgorge monies it received from United, this claim does nothing more than simply restate the legal elements necessary to establish standing under the UCL. [*See* FAC, ¶ 479]. The FAC is completely bereft of any facts to support these conclusory assertions or to otherwise establish Plaintiffs' standing, and as such, its UCL claim fails.

Finally, because the UCL only provides for equitable relief, a plaintiff alleging a UCL cause of action must establish "that there is no adequate remedy at law available." *See Sonner v. Premier Nutrition Corp.*, 917 F.3d 834, 844 (9th Cir. 2020) Plaintiffs contend that their legal remedies are inadequate; however, given the other causes of action that clearly provide legal remedies, this

---

[8] Plaintiffs' allegation, as stated, would provide them with a double recovery; apparently, they omitted the all-important "difference between" UCR and what they received.

assertion is baseless.  Accordingly, Plaintiffs' UCL claim against MultiPlan in Count IV must be dismissed.

> ### B.  Plaintiffs Fail To State A Claim For Intentional Misrepresentation Or Fraudulent Inducement.

Under California law, "[f]raud is an intentional tort," and "it is the element of fraudulent intent, or intent to deceive, that distinguishes it from actionable negligent misrepresentation and from nonactionable innocent misrepresentation. It is the element of intent which makes fraud actionable, irrespective of any contractual or fiduciary duty one party might owe to the other." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal. App. 4th 445, 482 (1998). "Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages." *Orcilla v. Big Sur, Inc.,* 244 Cal. App. 4th 982, 1008 (2016). Indeed, even assuming that a claimant has relied on an "actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes. If the defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent inducement, causation cannot be alleged and a fraud cause of action cannot be sustained." *Id.*

In addition to the fatal infirmities in Count V of the FAC previously pointed out in connection with the discussion of the Plaintiffs' failure to satisfy the strictures of Rule 9(b), Plaintiffs' claim for intentional misrepresentation/fraudulent inducement proceeds from the premise that MultiPlan and United, rather than attempting to control healthcare costs for the health benefit plans contracted with United, as well as their members, are engaged in a concerted effort to systematically underpay claims from Plaintiffs with the intent to "push[] more expensive, out-of-network providers out of business."  [*See* FAC, ¶ 493]. Plaintiffs further allege that "United and MultiPlan knew they were deceiving the Plaintiffs," with the result that both would receive additional monies from the scheme, depriving Plaintiffs of funds to which they were allegedly entitled. [*Id.,* ¶ 492]. However, other than these conclusory allegations, Plaintiffs can point to nothing that suggests that MultiPlan made any representation that it knew to be false with the necessary intent. Thus, under the very cases cited in the FAC, at least three of the five elements needed to establish claims of fraudulent inducement or intentional misrepresentation are missing.

Further, under the *Iqbal/Twombly* plausibility standard, Plaintiffs' claims in Count V must fall because they fail to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663 (citing *Twombly,* 550 U.S. at 556); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (deciding whether a complaint contains "sufficient 'factual enhancement' to cross 'the line'" between speculation and plausibility requires a "context-specific" determination that the court must make by "draw[ing] on its judicial experience and common sense").

More plausible, because it is consistent with the actual facts, are the legitimate concerns and efforts undertaken by United, employing MultiPlan, to rein in the costs associated with providers such as Plaintiffs.  As noted previously, Plaintiffs allege that they are entitled to be paid the full amount they bill for every claim submitted because they claim that they never charge anything but UCR. But in reality, this is never true; the whole concept of managed care is necessary to put a check on the charges that providers submit, allowing health benefit plans and their members to receive treatment at more reasonable costs. Indeed, the mechanism that Plaintiffs deride as "beyond 'useful business practices'" is not such at all. The involvement of MultiPlan and its affiliate Viant in that process, both with respect to repricing and negotiation are not intended to, and in fact, do not defraud or intentionally misrepresent anything. Instead, they are intended to implement the goal of ensuring that claims submitted are properly priced, and where such action is warranted, negotiated to ensure that payment is appropriate once United so directs.[9] That MultiPlan receives recompense for providing such services is not the result of fraud or intended to encourage fraud; it is simply part of a legitimate business arrangement. Plaintiffs' attempt to convert this arrangement into something nefarious through their conclusory allegations should not be allowed.  Count V of the FAC should be dismissed with prejudice pursuant to Rules 9(b) and 12(b)(6).

C.  *Plaintiffs Fail To State A Claim For Negligent Misrepresentation.*

"The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent

---

[9] Thus, Plaintiffs received exactly the amounts to which they were entitled; no damages were sustained.

1  to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the

2  misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th

3  182, 196 (2012). "Where the defendant makes false statements, honestly believing that they are true,

4  but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a

5  form of deceit. If defendant's belief is both honest and reasonable, the misrepresentation is innocent

6  and there is no tort liability." *Diediker v. Peelle Financial Corp.*, 60 Cal. App. 4th 288, 297 (1997).

7  Moreover, "[t]he law is well established that actionable misrepresentations must pertain to past or

8  existing material facts. Statements or predictions regarding future events are deemed to be mere

9  opinions which are not actionable." *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014).

10     Count VI of the FAC appears to be a "tag-along" claim limited to seven paragraphs that

11  covers the same ground as Count V.  Plaintiffs simply assert that there were representations made;

12  that they were not true based on the alleged intent of United and MultiPlan not to live up to them;

13  and that it was United's and MultiPlan's intent that Plaintiffs would rely on the representations

14  made. Again, nothing is alleged that comes close to the requirements of Rule 9(b). Moreover,

15  Plaintiffs' assertions are unsupported, conclusory allegations belied by the realities of what was

16  occurring – namely, that United, with MultiPlan's assistance when called upon, was seeking to

17  control costs for the health benefit plans with which United contracted.  There is nothing alleged by

18  Plaintiffs to suggest that it is not plausible that, for purposes of this Motion, that MultiPlan did not

19  reasonably believe that the statements made to Plaintiffs were true.  Also, the alleged statements

20  point only to future actions, which are not actionable.  Under the circumstances, Count VI of the

21  FAC is subject to dismissal with prejudice.

22         D.  *Plaintiffs Fail To State A Claim For Civil Conspiracy.*

23     Plaintiffs' attempt to hold MultiPlan liable based on the theory of civil conspiracy is equally

24  without merit. Under California law, conspiracy is not an independent cause of action, but "a legal

25  doctrine that imposes liability on persons who, although not actually committing a tort themselves,

26  share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip.*

27  *Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). The elements of a civil conspiracy

28  claim include: "(1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation

1    of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a

2    conspiracy." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 708 (N.D. Cal. 2009).   In

3    addition, the conspiring defendants must "have actual knowledge that a tort is planned and concur

4    in the tortious scheme with knowledge of its unlawful purpose." *Gonzales v. Lloyds TSB Bank*, 532

5    F. Supp. 2d 1200, 1208 (C.D. Cal. June 7, 2006). Plaintiffs' claims of civil conspiracy are nothing

6    more than cursory, boilerplate-type allegations cast in the form of factual assertions. As the other

7    claims that allege tortious activity are unsustainable, Plaintiffs' claim for civil conspiracy lacks an

8    essential element:  an underlying tort. Accordingly, Plaintiffs have failed to state a claim against

9    MultiPlan for civil conspiracy, and Count VII of the FAC should be dismissed.

10             *E.   Plaintiffs Fail To State A Claim For Promissory Estoppel.*

11          The elements for a claim of promissory estoppel are: "(1) a promise clear and unambiguous

12    in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both

13    reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."

14    *Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*, 2013 U.S. Dist. LEXIS 53401,

15    *12 (C.D. Cal. Apr. 10, 2013). Plaintiffs' claim fails at the outset, because it does not allege any

16    promise whatsoever on the part of either MultiPlan, much less a "clear and unambiguous" promise.

17    Moreover, while Plaintiffs attempt to characterize routine verification and/or preauthorization

18    communications as "a promise to pay," courts have consistently rejected such arguments, holding

19    that "representations about the terms of certain insurance policies […] do not amount to a clear and

20    unambiguous promise by Defendants to pay for substance abuse treatment services" at the rate set

21    forth in those policies.  *See Pac. Bay Recovery*, 12 Cal. App. 5th at 204, 215 n.6.

22          Finally, even if Plaintiffs had alleged that MultiPlan made a clear and unambiguous promise,

23    its claim would nevertheless fail because Plaintiffs have not pled any facts to establish justifiable

24    reliance. A "party claiming estoppel must specifically plead all facts relied on to establish its

25    elements," and "[o]ne essential element is detrimental reliance by the promisee." *Smith v. City and

26    Cnty of San Francisco,* 225 Cal. App. 3d 38, 48 (1990). Mere conclusory allegations that a plaintiff

27    "reasonably and justifiably relied" on alleged promises by a defendant will not suffice. *Id.* Plaintiffs

28    nakedly assert here that "there was a well-established course of conduct where Plaintiffs had been

1    promised reimbursement at the UCR rate and had received payment at the UCR rate; therefore,

2    reliance was reasonable," [FAC, ¶ 542], but do not set forth a single fact to support these assertions.

3    *See Gateway Rehab*, 2013 U.S. Dist. LEXIS 53401 at *13–14. As a result, Plaintiffs fail to state a

4    claim for promissory estoppel, and their ninth cause of action must be dismissed with prejudice.

**VI.    Plaintiffs Have Not Properly Alleged a Sherman Act Violation, Shown They Have Antitrust Standing, or That They Are Entitled to Injunctive Relief .**

7        In dismissing Plaintiffs' prior attempt to assert a violation of Section 1 of the Sherman Act,

8    15 U.S.C. § 1, the Court determined that Plaintiffs lacked antitrust standing, had failed to allege

9    necessary elements of an antitrust claim, whether *per se* or rule of reason, and were not entitled to

10   injunctive relief.  *See* August 25 Dismissal Order, at pp. 4–9.  Plaintiffs attempted to address these

11   deficiencies in the FAC but have still fallen short. No unreasonable restraint of trade has been shown.

12       Plaintiffs have not completely foregone their claim that United, with the participation of

13   MultiPlan, but now also with the addition of United's alleged competitors Cigna, Aetna and Anthem,

14   have engaged in price-fixing, a *per se* violation of the Sherman Act.  [*See* FAC, ¶¶ 389, 394, 403–

15   15, 548–58].  However, in an apparent effort to support a rule of reason claim, Plaintiffs have also

16   attempted to allege a relevant market, which appears to be nationwide and is focused on the purchase

17   of healthcare services by insurance companies.  [*Id.*, ¶¶ 395–400]. The viability of that relevant

18   market allegation is open to challenge, since Plaintiffs have offered no economic theory that

19   supports it.  They do claim that "the buyer-seller relationship between Plaintiffs and [United] and

20   its competitors implicated the competitiveness of actors within a defined market, implying existence

21   of a market vulnerable to the types of manipulation and abuses the Sherman Act was designed to

22   prevent." [*Id.*, ¶ 400].  However, if that allegation were even susceptible of understanding, its layers

23   of implications render it valueless for purposes of analyzing Plaintiffs' claim.  Moreover, where is

24   the agreement to restrain trade, even if a relevant market were properly alleged?

25       Furthermore, Plaintiffs have not shown that United and its competitors possess market

26   power, *i.e.*, the ability to control price and restrict entry.  *See, e.g. NCAA v. Board of Regents*, 468

27   U.S. 85, 109 n.38 (1984).  While Plaintiffs offer some alleged market share figures, [*see* FAC, ¶

28

419], those low numbers do not permit the Court to find or infer the existence of market power, which would be essential in either a *per se* or rule of reason analysis.

Plaintiffs now seem to recognize that, since MultiPlan (and its affiliate Viant) are not insurers, there can be no direct claim against them for violating the antitrust laws.  Instead, Plaintiffs seek to point to various alleged actions involving MultiPlan as a vehicle through which a price-fixing conspiracy among United and its alleged competitors is effectuated — without naming MultiPlan itself as a co-conspirator or an aider-and-abettor, or without alleging a single *specific* fact to support that charge. [*Id.*, ¶¶ 406–15]. Again, "[t]o establish a section 1 violation under the Sherman Act, a plaintiff must demonstrate . . . : (1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (*i.e.*, 'antitrust injury')." *Hansen v. Marin Gen. Hosp.*, 2018 WL 4638606, *12 n.10 (N.D. Cal. Sept. 24, 2018) (*quoting McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988)).  The Ninth Circuit has held that to state a Section 1 claim a plaintiff must plead not simply ultimate facts, but "evidentiary facts" which, if true, will prove each element of a Section 1 claim.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) (emphasis supplied) (citations omitted).  Plaintiffs' failure in this regard is beyond dispute, as their allegations are nothing but conclusory characterizations.

The implausibility of Plaintiffs' claim that MultiPlan is somehow the "hub" of a "spoke-and-wheel" buyer cartel, and that its dealings with United, and with other insurers which it contracts to provide cost-containment services, is manifest.  Legitimate business meetings are not converted to "smoke-filled rooms" in which the insurers engage in anticompetitive activity simply because Plaintiffs declare it to be so. *See, e.g., name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130–31 (9th Cir. 2015) (recognizing that "courts must consider obvious alternatives for a defendant's behavior when analyzing plausibility" and affirming dismissal of Sherman Act claim when defendant's decision-making was "fully consistent" with rational, lawful business behavior).

Plaintiffs also continue to fail to allege antitrust injury. Antitrust injury requires proof of "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003).[10]  Plaintiffs cannot show that they suffered an antitrust injury, because they cannot show that they were either competitors or consumers of products offered by United/MultiPlan in any relevant market, or otherwise participated in any relevant market. There is no allegation that Plaintiffs purchased anything from United and/or MultiPlan or competed with them in any way. Without a showing that Plaintiffs' injuries were the result of transactions within a discrete marketplace, transactions in which Plaintiffs in some way participated, Plaintiffs cannot show that any injury they suffered was "of the type the antitrust laws were intended to prevent."  *See  Ass'n of Wash. Publ. Hosp. Dists v. Philip Morris Inc.*, 241 F.3d 696, 705 (9th Cir. 2001); *Jacobsen v. Katzer*, 2006 WL 3000473, *3 (N.D. Cal. Oct. 20, 2006).

Finally, Plaintiffs have still failed adequately to allege antitrust standing under the § 4 of the Clayton Act, 15 U.S.C. § 15(a).  "The Supreme Court has interpreted that section narrowly, thereby constraining the class of parties that have statutory standing to recover damages through antitrust suits." *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120 (9th Cir.2008) (citations omitted).  As this suggests, the antitrust standing requirement addresses the same issues as the RICO standing requirement, and (like RICO standing) precludes suit by a plaintiff whose injury is too remote from the alleged antitrust violation.  *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc*., 171 F.3d 912, 921 (3d Cir. 1999).

To determine whether an injury is "too remote" to allow recovery under the antitrust laws, courts in the Ninth Circuit consider three factors: "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules

---

[10] "In addition, the injured party must be a participant in the same market as the alleged malefactor. In other words, the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Eastman v. Quest Diagnostics Inc.*, 2016 WL 1640465, *6 (N.D. Cal. April 26, 2016).  Plaintiffs for not meet this test.

1    apportioning damages to obviate the risk of multiple recoveries." *Ass'n. of Wash. Publ. Hosp. Dists.*

2    *v. Philip Morris Inc.*, 241 F.3d at 701; *see also NorthBay Healthcare Group v. Kaiser Foundation*

3    *Health Plan, Inc.*, 2018 WL 4096399, *6 (N.D. Cal. Aug. 28, 2018). These principles have been

4    applied by the Central District of California, in a case involving claims of underpayment of UCR

5    rates, to the conclusion that medical providers lack antitrust standing to assert such claims:

6
7    > Applying this three-factor test, it is plain that the Provider and Association Plaintiffs
>    cannot establish antitrust standing. First, there exist more direct victims in the form
>    of the Subscribers. Without the under-reimbursements to the Subscribers, . . . there

8    > is no "direct link" between the harm the Provider Plaintiffs suffered and Defendants'
>    alleged misconduct, which is entirely derivate of the injury inflicted on the

9    > Subscribers. . . .   In sum, because the harm suffered by the Provider and Association
>    Plaintiffs merely flows from the misfortunes visited upon the Subscribers by

10   > WellPoint and the Insurer Conspirators' acts, the proximate cause requirement is not
>    met.

11   > * * * * *

12   > Second, ascertaining the Provider and Association Plaintiffs' damages attributable to
>    WellPoint's wrongful conduct would entail considerable speculation regarding how

13   > the Subscribers would have behaved had WellPoint accurately disclosed its ONS
>    reimbursement metrics, including whether a subscriber would have selected a

14   > different ONS provider or an in-network provider, or would have agreed to pay the
>    balance had they been informed of the lower ONS reimbursement figures upfront.

15   > Finally, the potential for duplicative recovery weighs against standing given that the
>    Subscriber Plaintiffs' causes of action for breach of contract and nonpayment of

16   > benefits under ERISA section 1132(a)(1)(B) seek recovery for the same under-
>    reimbursements.

17   *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F.Supp.2d 880, 902 (C.D. Cal. 2012).

18        The same analysis applies here.   Neither United nor MultiPlan has any contract *with*

19   *Plaintiffs* under which UCR payments are owed.   [*See* FAC, ¶ 53].   Rather, United's payment

20   obligations are determined by the terms of the subscribers' policies.   Thus, any underpayment which

21   Plaintiffs may receive is an injury entirely derivative of the more direct injury (the putative breach

22   of contractual or ERISA obligations) to the subscribers.   Moreover, the same uncertainty that existed

23   in *In re Wellpoint* regarding what subscribers would have done had they been advised in advance of

24   the specific UCR rates United would pay (seek a different provider, agree to nonetheless pay the

25   balance, *etc.*) exists here. Finally, the subscribers in this case are not only capable of asserting breach

26   of contract and ERISA claims based upon this alleged underpayment of UCR rates, but they have

27

28

1   in fact have done so, in a separate lawsuit currently pending in this Court.[11]  As the Court has already

2   noted, Plaintiffs lack antitrust standing.  The FAC does not change that conclusion.

3          At page 9 of its August 25 Dismissal Order, the Court also determined that Plaintiffs were

4   not entitled to injunctive relief to bar Defendants' allegedly anticompetitive conduct because they

5   lacked antitrust standing and had not "averred facts to raise the inference that defendants' alleged

6   conspiracy unreasonably restrained trade and thus violated the antitrust laws." Nothing that

7   Plaintiffs now allege alters that conclusion.  Plaintiffs continue to lack standing and have failed to

8   make out antitrust claim.  For all of the preceding reasons, Plaintiffs' Sherman Act claim must be

9   dismissed.

10                                         **CONCLUSION**

11         For the forgoing reasons, as well as those set forth in United's motion papers, MultiPlan,

12  Inc. respectfully asks the Court to dismiss with prejudice the First Amended Class Action

13  Complaint.

14  Dated:   October 30. 2020              By: */s/ Moe Keshavarzi*
                                              Moe Keshavarzi
15                                            David E. Dworsky
                                              Sheppard Mullin
16                                            333 South Hope Street, 43rd Floor
                                              Los Angeles, CA 90071
17                                            Telephone: (213) 620-1780
                                              Fax: (213) 620-1398
18
19                                            and

20                                            Errol J. King, Jr.
                                              Phelps Dunbar LLP
21                                            II City Plaza
                                              400 Convention Street, Suite 1100
22                                            Baton Rouge, Louisiana 70802
                                              Telephone: (225) 376-0207
23                                            Fax: (225) 381-9197

24                                            Attorneys for Defendant, MultiPlan, Inc.

25
26
27
28  [11] *LD, et al. v. United Behavioral Health, Inc.*, Civil Action No. 5:20-cv-02254-YGR in the United States District Court for the Northern District of California.