HEATHER L. RICHARDSON, SBN 246517
 hrichardson@gibsondunn.com
LAUREN M. BLAS, SBN 296823
 lblas@gibsondunn.com
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

GEOFFREY SIGLER (*admitted pro hac vice*)
 gsigler@gibsondunn.com
JOSHUA LIPTON (*admitted pro hac vice*)
 jlipton@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.995.8500
Facsimile:  202.467.0539

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE INC. d/b/a SUMMIT ESTATE OUTPATIENT, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, a California Corporation, and MULTIPLAN, INC., a New York Corporation,<br><br>Defendants. | Case No.  4:20-cv-02249-YGR<br>Related Case No: 4:20-cv-02254-YGR<br><br>**DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    Tuesday, December 22, 2020<br>Time:   2:00 p.m.<br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Crtrm:  Courtroom 1, Fourth Floor<br><br>Complaint Filed:  April 2, 2020 |

Gibson, Dunn &
Crutcher LLP

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, December 22, 2020 at 2:00 p.m., or as soon thereafter as the matter can be heard, in Courtroom 1, Fourth Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant United Behavioral Health ("UBH") moves the Court for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing Plaintiffs' claims—for violation of California's Unfair Competition Law (Bus. & Prof. Code § 17200), for intentional and negligent misrepresentation, civil conspiracy, breach of oral and/or implied contract, and promissory estoppel, for violation of and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1962(c) and (d)), and for violation of Section 1 of the Sherman Act (15 U.S.C. § 1)—for failing to state a claim upon which relief may be granted and/or preemption under ERISA section 514(a), 29 U.S.C. § 1144(a).

UBH's motion is based upon this Notice of Motion and Motion and the Memorandum of Points and Authorities set forth below, as well as the records, pleadings, and papers on file in this action, including the Declaration of Ngoc Han S. Nguyen, the Request for Judicial Notice and all exhibits thereto, and such other matters as may be presented before or at the time of the hearing on this Motion.

Dated: October 30, 2020

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

/s/ *Geoffrey Sigler*
Geoffrey Sigler

Attorney for Defendant
UNITED BEHAVIORAL HEALTH

Gibson, Dunn & Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ......................................... 2

III.    BACKGROUND ........................................................................................................... 3

IV.     STANDARD OF REVIEW ........................................................................................... 4

V.      ARGUMENTS .............................................................................................................. 4

        A.      Plaintiffs' Antitrust Claim Fails As A Matter Of Law (Count X) ................................. 4

        B.      Plaintiffs' RICO Claims Also Fail (Counts I and II) ..................................................... 8

                1.      Plaintiffs Lack RICO Standing ........................................................................... 8

                2.      Plaintiffs Have Still Failed To Allege A RICO Enterprise ............................. 9

                3.      UBH Did Not Direct A RICO Enterprise ......................................................... 10

                4.      Plaintiffs' Allegations Still Fail To Satisfy Rule 9(b) ..................................... 12

        C.      Plaintiffs' State-Law Claims Are Preempted (Counts III–IX) .................................... 16

        D.      Plaintiffs' State-Law Claims Fail For Independent Reasons ...................................... 19

                1.      Plaintiffs' Misrepresentation Claims Still Lack Particularity Under Rule
                        9(b) (Counts III–VII) ......................................................................................... 19

                2.      The Economic Loss Rule Bars The Misrepresentation Claims (Counts
                        III–VII) ................................................................................................................ 19

                3.      Plaintiffs' UCL Claim Fails For Various Reasons (Count III) ....................... 19

                4.      Plaintiffs' Contract Claims Still Fail For Lack Of Specificity, And
                        Their Estoppel Claims Fail For Similar Reasons (Counts VIII–IX) ............... 21

VI.     CONCLUSION ........................................................................................................... 22

Gibson, Dunn &
Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABC Servs. Grp. v. Health Net of Cal., Inc.*,
2020 WL 2121372 (C.D. Cal. May 4, 2020) ..............................................................21, 22

*ABC Servs. Grp., Inc. v. United Healthcare Servs.*,
2019 WL 4137624 (C.D. Cal. June 14, 2019) ..............................................................20

*Advanced Choices, Inc. v. State Dept. of Health Servs.*,
182 Cal. App. 4th 1661 (2010).................................................................................21

*In re Aetna UCR Litig.*,
2015 WL 3970168 (D.N.J. June 30, 2015) ..................................................................12

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) .........................................................................4

*In re Air Passenger Computer Reservation Sys. Antitrust Litig.*,
694 F. Supp. 1443 (C.D. Cal. 1988) .............................................................................8

*Apollo Grp., Inc. v. Avnet, Inc.*,
58 F.3d 477 (9th Cir. 1995).........................................................................................19

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ........................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....................................................................................................4

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990)........................................................................................4

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
2016 WL 3880989 (N.D. Cal. July 18, 2016)................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................4, 6, 7

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012)......................................................................................8

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) .....................................................................................................9

*Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*,
2020 WL 2027955 (C.D. Cal. Jan. 6, 2020).................................................................19

*Cansino v. Bank of Am.*,
   224 Cal. App. 4th 1462 (2014)................................................................16

*Cedric Kushner Promotions Ltd. v. King*,
   533 U.S. 158 (2001) .............................................................................10

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)................................................................................20

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010).................................................................3

*Doctors Med. Ctr. of Modesto, Inc. v. The Guardian Life Ins. Co.*,
   2009 WL 179681 (E.D. Cal. Jan. 26, 2009)..............................................18

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,
   2013 WL 12114069 (C.D. Cal. Mar. 12, 2013) ........................................12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014).....................................................................4

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004)..................................................................12

*Gardner v. Starkist Co.*,
   418 F. Supp. 3d 443 (N.D. Cal. 2019) ......................................................9

*Gobeille v. Liberty Mut. Ins. Co.*,
   136 S. Ct. 936 (2016) ...............................................................................17

*Gomez v. Guthy-Renker, LLC*,
   2015 WL 4270042 (C.D. Cal. July 13, 2015) ............................................9

*Groves v. Kaiser Found. Health Plan Inc.*,
   2014 WL 12644296 (N.D. Cal. July 10, 2014)...........................................18

*Groves v. Kaiser Found. Health Plan Inc.*,
   32 F. Supp. 3d 1074 (N.D. Cal. 2014).......................................................18

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992)..................................................................................8

*Howard v. Am. Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000)......................................................................8

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).......................................................................6

*In re Int'l Rectifier Corp. Sec. Litig.*,
   2008 WL 4555794 (C.D. Cal. May 23, 2008) ...........................................16

Gibson, Dunn &
Crutcher LLP

iii

*Josef K. v. Cal. Physicians' Serv.*,
    2019 WL 2342245 (N.D. Cal. June 3, 2019) ...........................................................................17

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................................................4

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ..................................................................................................3

*In re Late Fee & Over-Limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007) ......................................................................................7

*Lewis v. Rodan & Fields, LLC*,
    2019 WL 978768 (N.D. Cal. Feb. 28, 2019) .............................................................................9

*Linear Tech. Corp. v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007) .................................................................................................20

*In re MacBook Keyboard Litig.*,
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .........................................................................20

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ......................................................................................4

*Nat'l Standard Fin., LLC v. Physicians Hosp. of Desert Cities, LLC*,
    2013 WL 12129953 (C.D. Cal. Nov. 18, 2013) ......................................................................14

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
    54 F.3d 1424 (9th Cir. 1995) ..................................................................................................15

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ....................................................................................................9

*Pacific Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
    12 Cal. App. 5th 200 (2017) ...................................................................................................21

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ....................................................................................................3

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987) ..................................................................................................................17

*Port Medical Wellness, Inc. v. Conn. Gen. Life Ins. Co.*,
    24 Cal. App. 5th 153 (2018) ...................................................................................................17

*Rattagan v. Uber Techs., Inc.*,
    2020 WL 4818612 (N.D. Cal. Aug. 19, 2020) ..........................................................................5

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) ....................................................................................................5

Gibson, Dunn &
Crutcher LLP

iv

*Reed v. Dynamic Pet Prods.*,
  2015 WL 4742202 (S.D. Cal. July 30, 2015) ...............................................................19

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
  2020 WL 3969064 (N.D. Cal. July 8, 2020) ....................................................................6

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ....................................................................................................11

*River City Mkts., Inc. v. Fleming Foods W., Inc.*,
  960 F.2d 1458 (9th Cir. 1992).......................................................................................11

*Schaum v. Honeywell Retiree Med. Plan No. 507*,
  2006 WL 2496435 (D. Ariz. Mar. 31, 2006) ................................................................18

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985)..........................................................................................16

*Sencion v. Saxon Mortg. Servs., Inc.*,
  2011 WL 311383 (N.D. Cal. Jan. 28, 2011) ..................................................................20

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)..........................................................................................20

*Stitt v. Citibank, N.A.*,
  2015 WL 75237 (N.D. Cal. Jan. 6, 2015) .................................................................9, 10

*Summit Estate v. United Healthcare Ins. Co.*,
  2020 WL 5436655 (N.D. Cal. Sept. 10, 2020) ........................................................18, 21

*Townsend v. Chase Bank USA N.A.*,
  2009 WL 426393 (C.D. Cal. Feb. 15, 2009).................................................................14

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
  660 F. Supp. 2d 1163 (C.D. Cal. 2009).........................................................................19

*United States v. Miller*,
  953 F.3d 1095 (9th Cir. 2020).......................................................................................15

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
  382 F. Supp. 2d 1173 (N.D. Cal. 2004) ........................................................................16

*W.J. Schafer Assocs., Inc. v. Cordant, Inc.*,
  254 Va. 514, 493 S.E.2d 512 (1997)..............................................................................22

*Walter v. Drayson*,
  538 F.3d 1244 (9th Cir. 2008)........................................................................................11

*In re WellPoint Inc. Out-of-Network "UCR" Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011).........................................................................12

Gibson, Dunn &
Crutcher LLP

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012)................................................................................5

*Wise v. Verizon Commc'ns Inc.*,
    600 F.3d 1180 (9th Cir. 2010)......................................................................................17

**Statutes**

18 U.S.C. § 664 ...............................................................................................................8

18 U.S.C. § 1962(c) ...................................................................................................8, 11

29 U.S.C. § 1144(a) ......................................................................................................16

**Other Authorities**

P. Areeda & H. Hovenkamp, *Antitrust Law*, § 518.3c (1986 Supp.)......................................8

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This Court dismissed Plaintiffs' original complaint in its entirety, without prejudice, for failure to state a claim and because Plaintiffs' state-law claims were preempted by ERISA. Dkt. 61 ("Order"). Plaintiffs' Amended Complaint adds more hyperbole and far-fetched accusations of plotting and scheming between Defendant United Behavioral Health ("UBH") and Defendant MultiPlan, but it suffers from the same fundamental flaws and should be dismissed for the same reasons.

As before, the provider-plaintiffs here seek the same damages as the member-plaintiffs in the related case, *LD v. United Behavioral Health*, Case No. 4:20-cv-02254-YGR ("*LD*"), so the providers' purported "injuries"—health plan reimbursements that they allege should have been higher—are derivative of any injuries suffered by the plan members whom they treated. As this Court previously recognized, the derivative nature of Plaintiffs' injuries defeats any claim of standing under the Sherman Act and under RICO. Plaintiffs' conclusory assertion that "[t]here are no other victims of this scheme who have been directly injured, or more directly injured, than Plaintiffs, by Defendants' fraudulent conduct" (FAC ¶ 382) is not sufficient to given them standing. Further, this allegation cannot be squared with *their patients'* allegation in *LD* that "[e]very Plaintiff has been directly injured by Defendants' scheme." *LD* FAC ¶ 412; *see also id.* ¶ 416 ("Plaintiffs and other IOP patients have been directly and proximately injured by Defendants' fraudulent conduct"). The *LD* member-plaintiffs allege they were injured by the same practices, on the same claims, and they seek the same damages as Plaintiffs here. Their conflicting allegations underscore what is already clear: Plaintiffs' injuries (if any) are entirely derivative of the plan members whom they treated, and therefore Plaintiffs lack standing under the Sherman Act and RICO.

Plaintiffs' antitrust and RICO claims also fail for many other reasons. They once again fail to plausibly allege: a price-fixing conspiracy by competitors (as opposed to independent parallel decisions by various claims administrators to use MultiPlan/Viant as a vendor); the existence of a RICO enterprise; that UBH directed the purported enterprise; or predicate acts with particularity under Rule 9(b). This is a benefits reimbursement dispute, not an antitrust or RICO conspiracy.

Gibson, Dunn & Crutcher LLP

1

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

Plaintiffs' state-law claims also have not changed materially, so they are still preempted by ERISA. While Plaintiffs have now deleted allegations referring to their patients' ERISA plans, they still challenge "UCR" payments made under these health plans. The plan terms (including "UCR" definitions) will control any determination of whether UBH reimbursed the proper amount for Plaintiffs' services. And even if Plaintiffs' state-law claims were not preempted, they continue to suffer from multiple pleading defects, including: failure to satisfy Rule 9(b) for the misrepresentation-based claims; failure to allege a meeting of the minds for the contract claims; and failure to satisfy the requirements for a claim under California's Unfair Competition Law ("UCL"). Given Plaintiffs' inability to state a claim even with the benefit of the Court's direct guidance in its previous ruling, further amendment would be futile, and the Amended Complaint should be dismissed with prejudice.

## II.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

1.      Whether Plaintiffs' antitrust claims are subject to dismissal because they failed to allege either (a) a direct antitrust injury or (b) the elements of a Section 1 claim;

2.      Whether Plaintiffs' RICO claims are subject to dismissal because they failed to plead (a) that any predicate act caused injury to business or property, (b) that Defendants formed a RICO enterprise, (c) that UBH "conducted" the affairs of the purported enterprise, or (d) predicate acts of fraud with the specificity required by Rule 9(b);

3.      Whether Plaintiffs' state-law claims are preempted by ERISA;

4.      Whether, even if not preempted, Plaintiffs' misrepresentation claims fail to satisfy Rule 9(b) or are barred by the economic loss rule;

5.      Whether, even if not preempted, Plaintiffs' equitable claims under the UCL fail because they do not allege (a) facts satisfying any of the UCL's prongs, (b) a basis to seek injunctive or other equitable relief, or (c) facts supporting relief under the UCL for Plaintiff Bridging the Gaps, which is not based in California; and

6.      Whether, even if not preempted, Plaintiffs' contract and estoppel claims lack sufficient specificity to state a claim.

1  **III.    BACKGROUND**

2          This Court correctly summarized Plaintiffs' claims in its previous dismissal ruling (*see* Order

3  at 1–3), so UBH will not repeat that summary here.  Although Plaintiffs revised their allegations

4  somewhat in the Amended Complaint, their claims are still fundamentally the same: Plaintiffs contend

5  UBH under-reimbursed intensive outpatient ("IOP") services that Plaintiffs provided to members of

6  health plans administered by UBH.  According to Plaintiffs, "[e]very claim at issue in this litigation

7  was required to be paid at a percentage of [UCR]" (FAC ¶ 13), but instead UBH hired a vendor,

8  MultiPlan, to reprice claims at a "fraudulent UCR rate."  *Id*. ¶¶ 70, 72.

9          Plaintiffs also have added a few scattershot details about some of the plan members for whom

10  UBH allegedly under-reimbursed the IOP services.   But those details undermine—rather than

11  support—their claims.  Indeed, one of the plan members in Plaintiffs' Amended Complaint ("CS") is

12  also a named plaintiff (identified as "BW") in the related *LD* litigation, in which plan members are

13  asserting many of the same claims and allegations under ERISA based on their ERISA plans.  CS and

14  all of the other members for whom Plaintiffs seek increased reimbursement were members of ERISA

15  plans.  *See* Declaration of Ngoc Han S. Nguyen ("Nguyen Decl.") Exs. A–I.[1]  Plaintiffs still seek to

16  recover the same damages as the plan members whom they treated, giving rise to the same "risk of

17  duplicative recoveries and of having to engage in fact-intensive damages calculations to prevent such

18  duplications" that this Court recognized in its previous ruling.  Order at 11.[2]

19          Plaintiffs re-assert most of the same causes of action that this Court previously dismissed:

20  RICO, section 1 of the Sherman Act, California's UCL, intentional misrepresentation/fraudulent

21

22  _____

23  [1] This Court may properly consider all of these members' summary plan descriptions, because they
    are central to the Amended Complaint.  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th
24  Cir. 2010); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d
    699, 705–06 (9th Cir. 1998), *superseded by statute on other grounds*.  But even if this Court were
25  to conclude that it will not consider these summary plan descriptions, this Court should still dismiss
    all of Plaintiffs' claims that relate to ERISA plans for the reasons set out below.  This would have
26  the practical effect of requiring dismissal of these claims.

27  [2] This Court raised concerns about a potential conflict between these two cases at the hearing on
    Defendants' previous motions to dismiss.  In an attempt to address these concerns, both sets of
28  plaintiffs now claim that they are aware of the related cases and their common representation by
    the same attorneys and "have waived any perceived or potential conflict."  FAC ¶ 8; *see also LD*
    FAC ¶ 9.

Gibson, Dunn &
Crutcher LLP

3
DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

inducement, negligent misrepresentation, civil conspiracy, breach of oral and/or implied contract, and promissory estoppel. The only differences involve breaking the UCL counts (previously labeled as I.a and I.b) into two separate counts (one against UBH (Count III), and one against MultiPlan (Count IV)), and adding a separate count for conspiracy to violate RICO (Count II). Plaintiffs also substituted MultiPlan in for Viant as a defendant.

## IV.   STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Determining whether a complaint contains "sufficient 'factual enhancement' to cross 'the line'" between speculation and plausibility requires a "context-specific" determination that a court must make by "draw[ing] on its judicial experience and common sense." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Additionally, claims grounded in fraud are subject to the heightened-pleading requirements of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation and quotation marks omitted). To satisfy this standard, a plaintiff must "allege 'the particular circumstances surrounding [the] representations' at issue," *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (citation omitted), including what was omitted and how it should have been revealed, as well as details concerning the representations that were made that the plaintiff relied on. *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).

## V.   ARGUMENTS

### A.   Plaintiffs' Antitrust Claim Fails As A Matter Of Law (Count X)

#### 1.   Plaintiffs Still Lack Antitrust Standing

The Court properly dismissed Plaintiffs' original complaint because their claims were "derivative of injuries that their patients allegedly suffered." Order at 6. Put simply, this Court found that Plaintiffs' patients—who are enrolled in ERISA plans that UBH administers—are injured more directly by any under-reimbursements than Plaintiffs are. This remains true in the Amended Complaint, so Plaintiffs' antitrust claims should be dismissed again for lack of antitrust standing.

Gibson, Dunn &
Crutcher LLP

4

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

Plaintiffs' original complaint included multiple allegations making this clear.  For example, Plaintiffs alleged that "liability for the cost of care" falls on patients, and Plaintiffs "make every effort to recover unpaid amounts" from patients. Dkt. 1 ¶ 55; *see also id.* ¶ 151 ("[E]ach patient agreed to be liable for the difference between the amount the treating provider billed, and the amount United reimbursed.").  Plaintiffs alleged that they "balance bill their patients for the amounts that they are owed" as a result of UBH's alleged under-reimbursement.  *Id.* ¶ 155; *see also* Order at 3.  Based on these allegations, the Court concluded that "Plaintiffs are 'injured' only to the extent that their patients fail to pay them that difference," and it thus "appears that any such injury would arise directly from the patients' failure to comply with their financial obligations to plaintiffs, and not from defendants' conduct."  Order at 5.  Plaintiffs were thus found to lack antitrust standing because they had not suffered an injury that the antitrust laws were intended to prevent.  *Id.* at 5–6, 9.

Plaintiffs now try to evade this standing requirement by *deleting* the allegations cited in the Court's previous ruling from their Amended Complaint.  But Plaintiffs cannot run away from their own allegations or contradict them, because an "amended complaint may only allege other facts consistent with the challenged pleading."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (citation omitted) (affirming dismissal without leave to amend where "[i]t would not be possible for [plaintiff] to amend his complaint to allege a completely new injury that would confer standing to sue without contradicting any of the allegations of his original complaint"); *see also, e.g.*, *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1180 (N.D. Cal. 2019) (plaintiff will "be held to the concessions in their [complaint]"); *Rattagan v. Uber Techs., Inc.*, 2020 WL 4818612, at *3 (N.D. Cal. Aug. 19, 2020) (entering sanctions against plaintiff for filing an "inaccurate and misleading" amended complaint in which plaintiff "deleted" the key allegation that had caused dismissal of the original complaint, and "worded the FAC so as to imply" the opposite premise); *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.* ("*WellPoint II*"), 903 F. Supp. 2d 880, 903–06 (C.D. Cal. 2012) (finding providers lacked federal antitrust standing).

Moreover, the Amended Complaint still shows that Plaintiffs' injuries are derivative: it is only because "[m]ost patients cannot shoulder the full costs of MH/SUD treatment" (*i.e.*, the patients cannot or will not pay their balance bills) that "in the vast majority of cases . . . the provider bears the full cost

Gibson, Dunn &
Crutcher LLP

5

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1    of treatment services. . . ." FAC ¶ 62; *see also id* ¶ 89.  The *LD* plaintiffs' allegations—of which

2    Plaintiffs allege they are aware—also make this clear.  *See supra* at 1.  Beyond that, the Amended

3    Complaint is completely devoid of factual allegations showing any direct, non-derivative injury to

4    Plaintiffs.  In short, Plaintiffs needed to plead facts showing that they have antitrust standing.  They

5    failed to do so.

### 2.  Plaintiffs Have Not Pled the Elements of a Section 1 Claim

7    This Court previously dismissed Plaintiffs' antitrust claim, premised on UBH's vendor

8    agreement with Viant, for failure to allege a horizontal agreement that could be deemed *per se* unlawful.

9    Order at 7–8.  Plaintiffs now claim there was an agreement between UBH and "its competitors,

10   including but not limited to Cigna, Aetna and Anthem" that they would all "mak[e] mutual use of Viant

11   to fix prices for out of network services."  FAC ¶ 415.  Once again, Plaintiffs come nowhere close to

12   pleading factual allegations sufficient to carry their claim of a horizontal conspiracy across *Twombly*'s

13   plausibility threshold.  *See Twombly*, 550 U.S. at 557 (plaintiff in Section 1 conspiracy case must offer

14   factual allegations "plausibly suggesting (not merely consistent with) agreement").

15   Plaintiffs allege that UBH and several other insurers each have a *vertical* agreement with

16   MultiPlan.  FAC ¶ 406.  But the fact that insurers might each have vertical agreements with a vendor

17   does not plausibly establish a *horizontal* agreement, just as a hub and several spokes do not make a

18   wheel.  Plaintiffs' horizontal conspiracy theory requires them to show a rim to the wheel—that is, an

19   agreement among UBH and its competitors.  *See, e.g.*, *In re Insurance Brokerage Antitrust Litig.*, 618

20   F.3d 300, 327 (3d Cir. 2010) (affirming dismissal of complaint where plaintiffs alleged parallel vertical

21   agreements but "had not adequately alleged the existence of a 'wheel' or 'rim' (that is, a horizontal

22   agreement) connecting the insurer-spokes"); *Reveal Chat Holdco, LLC v. Facebook, Inc*., 2020 WL

23   3969064, at *14 (N.D. Cal. July 8, 2020) (dismissing a Sherman Act claim because the plaintiffs

24   "fail[ed] to plausibly allege the rim of the wheel" i.e., "horizontal agreements among the spokes"); *Bay*

25   *Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 2016 WL 3880989, at *12 (N.D. Cal. July 18, 2016)

26   (finding that plaintiffs failed to sufficiently allege a per se violation of the Sherman Act when they

27   failed to allege an understanding between the horizontal competitors – essentially, because "there is no

28   'rim'").  This they cannot do.

Gibson, Dunn &
Crutcher LLP

Here, just as in *Twombly*, the Amended Complaint itself provides a perfectly rational, non-conspiratorial reason why United and other insurers contracted with MultiPlan: "cost control." FAC ¶ 160. As the Supreme Court explained in *Twombly*, "there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway." 550 U.S. at 566. Likewise, the allegation that UBH knew that other insurers were using MultiPlan's allegedly money-saving services (FAC ¶ 415) adds nothing to Plaintiffs' conspiracy claim. *See Twombly*, 550 U.S. at 553–54 ("conscious parallelism" is not unlawful and is inadequate to show a conspiracy). To the contrary, armed with the knowledge that other insurers were saving money with MultiPlan's services, it would be a perfectly rational independent decision for UBH (or any other claims administrator or insurer) to avail itself of those services. Finally, Plaintiffs do not plausibly show a conspiracy by alleging that UBH and other insurers attended meetings in which MultiPlan discussed its services. FAC ¶ 409. Meetings between vendors and their customers happen all the time in every industry—such meetings do not plausibly support a claim that there was a *per se* illegal agreement to fix prices. *See, e.g.*, *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 963–64 (N.D. Cal. 2007); *see also Twombly*, 550 U.S. at 567 n.12.

In any event, the Amended Complaint also alleges an *absence* of parallel pricing conduct between UBH and other insurers, as it offers detailed allegations about the bespoke process through which UBH establishes UBH-specific reimbursement rates through Viant's methodology. FAC ¶¶ 215–20. Plaintiffs allege, in fact, that each customer selected its own percentile to use for reimbursement purposes, decided when to use Viant's database (as opposed to some other methodology), and that "United had complete control over the Target Price" that generated UBH-specific reimbursement rates from Viant. *Id.* ¶ 219. There is no allegation that could plausibly suggest that these UBH-specific rates were somehow "fixed" with other insurers.

Plaintiffs likewise fail to offer factual allegations to support a claim under the rule of reason. Order at 8–9. Plaintiffs pay lip service to the requirement that they allege a relevant market, claiming that the relevant market is the sale of all healthcare services in the United States. FAC ¶¶ 395–97. But Plaintiffs once again "have not alleged facts showing that defendants have sufficient market power in the relevant market to impair competition." Order at 9. In light of the mammoth relevant market

Gibson, Dunn & Crutcher LLP

Plaintiffs assert, that would be a tall order.  And they do not even attempt to do so.  Instead, Plaintiffs allege that UBH "held a 15-20% market share for the services Plaintiffs offered"—a share level that is far too low to support any plausible claim of market power.  *See, e.g.*, *In re Air Passenger Computer Reservation Sys. Antitrust Litig.*, 694 F. Supp. 1443, 1456 (C.D. Cal. 1988) ("There is substantial merit in a presumption that market shares below 50 or 60 percent do not constitute [market] power.") (quoting P. Areeda & H. Hovenkamp, *Antitrust Law*, § 518.3c (1986 Supp.)).  And, unsurprisingly, Plaintiffs do not even attempt to allege that United's agreement with MultiPlan that allegedly reduced the reimbursement levels for certain behavioral healthcare services from out-of-network providers somehow harmed competition in an alleged nationwide market for the sale of all healthcare services. This provides yet another basis to dismiss Count X.  *See, e.g.*, *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012).  Plaintiffs' antitrust claims therefore fail for multiple reasons, and they should be dismissed again.

### B.     Plaintiffs' RICO Claims Also Fail (Counts I and II)

This Court previously dismissed Plaintiffs' RICO claims on the ground that they lacked standing, failed to allege a RICO enterprise, failed to allege that UBH had directed the enterprise, and failed to plead predicate acts of mail or wire fraud with particularity under Rule 9(b).  *See* Order at 11–14.  The RICO claims in the Amended Complaint should be dismissed for the same reasons.[3]

### 1.     Plaintiffs Lack RICO Standing

As is the case with their antitrust claims, Plaintiffs lack standing to sue under RICO because their purported injury to "business or property" is, as this Court held, "derivative of their patients' injuries and too remote to confer them with standing."  Order at 11; *see also* 18 U.S.C. § 1962(c); *id.* § 664; *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992).  That analysis continues to apply. Plaintiffs are injured only to the extent that their patients fail to pay their balance bills.  *See* FAC ¶ 62; Dkt. 1, ¶ 212; *LD* Dkt. 1, ¶¶ 218, 265.

Plaintiffs summarily assert that they are the proper plaintiffs (not their patients, who are suing in *LD*) and that they suffered the only direct injury (FAC ¶¶ 382–83), but these conclusory assertions

---

[3] Because Plaintiffs cannot plead a substantive claim under RICO, their RICO conspiracy claim fails as well.  Order at 15 (citing *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)).

Gibson, Dunn &
Crutcher LLP

are not sufficient to establish standing.  As noted above, these assertions conflict with allegations by Plaintiffs' patients in the related *LD* case.  *See supra* at 1.  Furthermore, Plaintiffs and their patients, the *LD*-plaintiffs, indisputably seek the same damages on the same claims—thus raising the very same concern this Court expressed in its previous dismissal ruling, namely, that the "risk of duplicative recoveries and of having to engage in fact-intensive damages calculations to prevent such duplication is high if both plaintiffs and their patients sue defendants for the same conduct." Order at 11.  Numerous courts have held that this risk is a key consideration in applying RICO's proximate causation requirement.  *See*, *e.g.*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657–58 (2008).  Plaintiffs allege that they are aware of the *LD* case and waive any conflicts (FAC ¶ 8), though it is unclear how any waiver would apply to these conflicting allegations and theories—or save their claims from dismissal for lack of standing.  However these two sets of plaintiffs may try to reconcile these matters, the provider-plaintiffs allege no facts to support any direct injury, and therefore, their RICO claims should again be dismissed on standing grounds.

## 2.    Plaintiffs Have Still Failed To Allege A RICO Enterprise

In granting UBH's first motion to dismiss, the Court ruled that the allegations in the original complaint merely "describe[d] a contractual relationship between defendants that required Viant to negotiate reimbursements on behalf of United," and failed to allege any facts "to raise the inference that defendants' activities pursuant to this contractual relationship were contrary to United's obligations under the ERISA plans it administered or to the terms of any such plans."  Order at 12.  The Court's ruling was consistent with a long line of authorities requiring Plaintiffs to plead: "(1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that provide sufficient evidence the associates function as a continuing unit." *Stitt v. Citibank, N.A.*, 2015 WL 75237, at *3 (N.D. Cal. Jan. 6, 2015) (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007)).  Additionally, it is well established that allegations concerning "routine commercial dealing," without more, do not establish that a "common purpose" exists under RICO. *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (summarizing cases); *Lewis v. Rodan & Fields, LLC*, 2019

Gibson, Dunn &
Crutcher LLP

9

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1  WL 978768, at *4 (N.D. Cal. Feb. 28, 2019) (dismissing claim where supposed enterprise was not

2  "anything other than an ordinary business relationship").

3        Plaintiffs' additions to the Amended Complaint are long on overheated rhetoric and short on

4  facts to support the existence of a RICO enterprise.  They allege, for example, that UBH and MultiPlan

5  "joined together to create and exploit a false and fraudulently manipulated database as an excuse for

6  under-reimbursing Plaintiffs" and "worked together to develop the false and fraudulent UCR rates that

7  were applied to out of network IOP providers."  FAC ¶¶ 116, 121–22.  But Plaintiffs' revised wording

8  does not overcome the fact that their theory is the same as what they pled in their original complaint—

9  *i.e.*, that UBH and Viant (a MultiPlan subsidiary) had a "common purpose" to "underpay[] for IOP

10  services and increas[e] the profits [of] the Enterprise participants and their Co-Conspirators."  Dkt. 1

11  ¶ 370.  Plaintiffs' new allegations merely append sinister-sounding descriptors to a vendor arrangement

12  that benefits UBH, its health plan clients, and their members by helping to control medical costs—

13  exactly what managed care companies are supposed to do.  FAC ¶ 160.  That there are "incentives" for

14  MultiPlan to reduce the amount United pays on out-of-network claims (*e.g.*, *id.* ¶¶ 476(c), 480) is

15  unremarkable too, given that MultiPlan is a "cost management" company.  *Id.* ¶ 4.  As before, the most

16  one can infer from these allegations is that United (not UBH) has a "service contract[]" with MultiPlan

17  to reduce medical costs (*id.*), which "does not render plausible [P]laintiffs' claim that the members of

18  the . . . Enterprise associated for [an] alleged, and fraudulent, common purpose."  *Stitt*, 2015 WL 75237,

19  at *5.

### 3.      UBH Did Not Direct A RICO Enterprise

21        Plaintiffs also fail to plead any facts suggesting UBH conducted the affairs of a RICO enterprise,

22  as opposed to conducting its own affairs, in service of its customers, by seeking to reduce medical costs.

23  Section 1962(c) liability "depends on showing that the defendants conducted or participated in the

24  conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Stitt*, 2015 WL 75237, at *3 (quoting

25  *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 163 (2001)).  "Virtually every business contract

26  can be called an 'association in fact,'" but "[t]o constitute a proscribed RICO enterprise[,] the associates

27  must participate, directly or indirectly 'in the conduct of such enterprise's affairs through a pattern of

28

Gibson, Dunn &
Crutcher LLP

10

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1   racketeering activity.'" *River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462–63 (9th

2   Cir. 1992) (quoting 18 U.S.C. § 1962(c)).

3          This Court previously concluded that Plaintiffs' allegations were "consistent only with

4   defendants conducting their own affairs pursuant to the contract that required Viant to negotiate

5   reimbursements on behalf of United, which plaintiffs do not allege was contrary to the ERISA plans

6   that United administered." Order at 13.  The same is true in the Amended Complaint.  Plaintiffs contend

7   that "management" was evident insofar as "United" made verification-of-benefits calls to providers

8   and issued underpayments, but those steps were merely consistent with UBH's role as a claims

9   administrator for these plans—which is its independent business function.  FAC ¶¶ 123, 126.  This

10  Court rejected similar allegations as insufficient in the original complaint.  *See* Dkt. 1 ¶¶ 355–56

11  (similar allegations of VOB calls and EOBs issued by UBH, without any alleged involvement by

12  Viant).  Plaintiffs also allege that "United determined the fraudulent rates for under-payment that would

13  be presented as UCR," which they claim shows "management over the enterprise."  FAC ¶ 123.  But

14  UBH's selection of methodologies and rates from a menu of options by a vendor, MultiPlan, fails to

15  show any RICO enterprise—or that UBH had "some part in directing [the enterprise's] affairs," as

16  opposed to UBH's own, independent business affairs.  *Reves v. Ernst & Young*, 507 U.S. 170, 179

17  (1993).  "[D]irecting" requires more than "simply being involved" or "performing services for the

18  enterprise." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).  Relevant considerations include

19  whether the defendant "occup[ies] a position in the 'chain of command'. . . through which the affairs

20  of the enterprise are conducted," whether it "knowingly implement[ed] [the] decisions of upper

21  management," and whether its "participation was 'vital' to the mission's success."  *Id.*; *see also Reves*,

22  507 U.S. at 185 (holding RICO liability requires a "showing that the defendants conducted or

23  participated in the conduct of the '*enterprise's* affairs,' not just their own affairs").

24          Here, Plaintiffs do not allege facts showing UBH "directed" or "knowingly implemented" the

25  decisions of "upper management" with respect to the rates at which providers were reimbursed.

26  Plaintiffs conspicuously avoid saying that UBH set or dictated any aspect of MultiPlan's available

27  products or services—undoubtedly because they cannot.  The most one can infer from Plaintiffs' vague

28  allegations is that UBH was somehow involved because it used these products and services.  But

Gibson, Dunn &
Crutcher LLP

11

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

involvement alone is insufficient to show management over an enterprise, and moreover, is entirely consistent with United "carrying out the functions it was contractually required to perform," namely, to help its health plan clients contain medical costs. *Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2013 WL 12114069, at *13 (C.D. Cal. Mar. 12, 2013); *see also In re WellPoint Inc. Out-of-Network "UCR" Rates Litig.* ("*WellPoint I*"), 865 F. Supp. 2d 1002, 1034–35 (C.D. Cal. 2011) ("[T]he existence of a business relationship between WellPoint, Ingenix, and the Insurance Defendants [regarding use of Ingenix's database to calculate UCR rates] without more does not show that WellPoint conducted the enterprise."); *In re Aetna UCR Litig.*, 2015 WL 3970168, at *28 (D.N.J. June 30, 2015) ("commercial interactions" involving Aetna's use of the Ingenix database to calculate UCR rates were "insufficient to compel liability" under RICO). "What is missing" (as in the *Ingenix* litigation on which Plaintiffs purport to rely) "is some—any—indication that [UBH] guided the alleged scheme to *defraud insureds*." *In re Aetna UCR Litig.*, 2015 WL 3970168, at *30.

### 4.    Plaintiffs' Allegations Still Fail To Satisfy Rule 9(b)

Because Plaintiffs' RICO claims depend on predicate acts of mail and wire fraud, Plaintiffs must plead with particularity the who, what, when, where, how, and why of this alleged mail and wire fraud. *WellPoint I*, 865 F. Supp. 2d at 1036; *see Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). This Court previously found that "Plaintiffs have not averred the specific facts required to raise the reasonable inference that defendants committed at least two instances of mail fraud or wire fraud," because they "do not identify the time, place, and specific content of the fraudulent communications at issue, or identify the person or persons involved in such communications," and "do not aver factual matter to raise the inference that such communications were sent over the United States wires or United States mail across state lines." Order at 14.

Although the Amended Complaint now includes some scattershot information about a few plan members whom Plaintiffs treated, none of these allegations show any fraudulent statements by UBH (or anyone else). And they still lack the necessary specificity under Rule 9(b).

***Time/Place Allegations.*** Plaintiffs added allegations about twelve patients whom they allegedly treated based on representations by "United" on verification-of-benefits calls that services would be reimbursed at a percentage of "UCR." FAC ¶¶ 258–377. But Plaintiffs' allegations about

Gibson, Dunn &
Crutcher LLP

12

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1   when these phone calls occurred, and how they related to the services at issue, still lack critical details—

2   and the limited information they do provide undermines, rather than supports, Plaintiffs' fraud theory.

3        For starters, Plaintiffs' allegations show that the VOB calls occurred weeks or months prior to

4   the services at issue—and apparently involved discussions about coverage of *other* services not at issue

5   in the case. For example, Plaintiffs allege that "UCR" came up on a VOB call regarding patient TM

6   on 5/29/2018 (FAC ¶ 268), but they did not seek authorization or payment for the IOP services at issue

7   in this case until more than five months later (11/9/2018 and 11/12/18, respectively, *see id*. ¶¶ 269–71).

8   In the period of time after the May 29, 2018 phone call and before the IOP services in November 2018,

9   Plaintiffs provided other services not at issue in this case (residential treatment) to the same patient,

10  and they were reimbursed to their satisfaction for these services—making it much more likely that these

11  irrelevant services (rather than the IOP services) were discussed on the May 29, 2018 call. *Id*. ¶ 283.

12  Also notably, Plaintiffs do not allege that any discussions they had with UBH about "UCR" (either on

13  the May 29, 2018 phone call or at any other point) related to the IOP services at issue in this case. This

14  chronology—along with the absence of any other allegations tying the May 29 call to the IOP services

15  at issue—does not support a plausible claim that Plaintiffs were defrauded into providing IOP services

16  in November by representations about "UCR" on the May call.

17       Plaintiffs' allegations about other patients involve similar gaps of weeks or months between the

18  VOB calls (which supposedly defrauded Plaintiffs) and the IOP services at issue (which Plaintiffs

19  supposedly provided in reliance on the phone calls). *See* FAC ¶¶ 261–62 (almost two-week lag between

20  the VOB call and IOP authorization/invoice); *id*. ¶¶ 275–78 (two-month lag); 305–308 (three-month

21  lag); 327–30 (two-month lag); 350–53 (two-month lag); 359–61 (almost two-month lag); 365–68 (more

22  than two-month lag). Plaintiffs also continue to omit key details, such as the timing for a second

23  authorization phone call and the identity of the representative. *Id*. ¶¶ 321, 335. And in each case,

24  Plaintiffs allege that they provided other services to these patients (which were reimbursed to their

25  satisfaction) for a period of time after the verification-of-benefits call on which they allegedly relied,

26  making it more likely that these other, irrelevant services—not the IOP services—were discussed on

27  the calls Plaintiffs allege. *Id*. ¶ 283 (alleging that Plaintiffs provided "higher levels of services" to

28  "three Patients, including residential inpatient treatment and partial hospitalization" and that "United

Gibson, Dunn &
Crutcher LLP

13

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

paid the claims precisely as it had promised on the verification call"). These gaps of weeks or months between the VOB calls and the IOP services at issue—as well as the intervening services that were provided and reimbursed to Plaintiffs' satisfaction after the calls but before the IOP services at issue—undermine Plaintiffs' theory of fraud. And these gaps are particularly problematic when combined with the lack of any specificity about what was said on these calls—*e.g.*, were the IOP services at issue even discussed?

*"Specific Content" on Phone Calls.* Despite the apparent centrality of these verification-of-benefits calls to Plaintiffs' theory of fraud, their description of what was said on these calls remains extremely vague. Plaintiffs broadly allege variants of the statement that the provider "would be paid at [X]% of a rate based upon UCR" (*e.g.*, FAC ¶¶ 262, 269, 276, 292, 299, 306, 321, 328, 335, 351, 359, 366), but they do not even allege that the IOP services at issue were discussed on these calls—which is far from a foregone conclusion given the wide chronological gaps discussed above.

Moreover, Plaintiffs fail to allege any specific facts about what, if anything, was said about "UCR" on these calls. Plaintiffs do not allege, for example, whether the acronym "UCR" was actually used on these calls, or whether there was any discussion of specific UCR rates, methodologies, or payments for services. All of these question marks about what (if anything) was said about UCR are significant because, as before, Plaintiffs' claims are rooted in a dispute about what UCR means and how reimbursement rates should be calculated (*e.g.*, what data sources should be used, and how the data should be assembled) for the services they provide. FAC ¶ 167. But without specifying what was actually said in the challenged communications about UCR, Plaintiffs cannot establish that they were *defrauded* by these calls—and thus, cannot state a claim for fraud. *Nat'l Standard Fin., LLC v. Physicians Hosp. of Desert Cities, LLC*, 2013 WL 12129953, at *9 (C.D. Cal. Nov. 18, 2013) (dismissing misrepresentation claim under Rule 9(b) because the complaint "[did] not identify any specific statements made by the Manager defendants, except in the most general sense"); *Townsend v. Chase Bank USA N.A.*, 2009 WL 426393, at *5 (C.D. Cal. Feb. 15, 2009) (RICO claim insufficiently pled where plaintiffs "fail[ed] to mention any specific statements, charges, or penalties").

*How/Why the Fraud Was Perpetrated.* As before, Plaintiffs' claims of fraud rest almost entirely on allegations that they would be paid a percentage of "UCR," but Plaintiffs readily

acknowledge in the Amended Complaint that there are a variety of definitions, methodologies, data sources, and rates that can be used to pay "UCR."  *See, e.g.*, FAC ¶¶ 13, 56, 87, 102; *see also* Nguyen Decl. ¶¶ 4–12 & Exs. A–I (capturing variety of methods for calculating out-of-network reimbursement rates).  Meanwhile, this dispute about "UCR" has been going on for years—so Plaintiffs know that UBH interprets and applies "UCR" differently than they do.  In the Amended Complaint, Plaintiffs allege that UBH's alleged scheme involving MultiPlan, and the alleged underpayments for IOP services, began years ago, in 2015.  FAC ¶¶ 30, 150.  And one of the Plaintiffs, Summit Estate, has been in active litigation against UBH about "UCR" reimbursements since 2017.  *See Summit Estate, Inc. v. United Healthcare Ins. Co.* (*Summit Estate*), Case 4:19-cv-06724-YGR, Dkt. 1-3 at 2 (complaint filed in state court on May 1, 2017, seeking relief on alleged UCR underpayments dating back years).

Given these allegations, even *if* Plaintiffs were told they would be paid a percentage of "UCR" for IOP services, it remains unclear how and why Plaintiffs could have been *defrauded* by such high-level statements given that they plainly have—and have had for years—a different view of UCR than Defendants.  Plaintiffs' disagreement with the rates they are being paid, or methodologies used to calculate those rates, does not mean they are defrauded every time they receive a communication describing plan coverage.

***Lack of Fraudulent Intent.***  Plaintiffs now include first names and in some cases, last initials for at least a few calls about the patients at issue.  *See, e.g.*, FAC ¶¶ 262, 269, 276, 292, 299, 306, 321, 328, 335, 351, 359, 366.  But names are lacking for most of the other calls that are alleged to form the basis for the "fraud."  More importantly, Plaintiffs' allegations are utterly lacking in trying to show that these partially named "United representatives" intended to defraud Plaintiffs.  *See United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020) ("[A] defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions.  In other words, a defendant must intend to deceive *and* cheat.") (emphasis in original).  Plaintiffs provide no facts linking back their allegations about UBH's purported role in the fraud with any of these individuals, and have not created any sort of inference, much less a plausible one, that they were somehow part of a master plan to defraud Plaintiffs.  And without such specific allegations, their fraud claims fail.  *See, e.g., Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d

1424, 1435 (9th Cir. 1995) (holding that "there is no case law supporting an independent 'collective scienter' theory"); *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014) ("Nor is the knowledge element of fraud satisfied by the complaint's conclusory statement that defendants 'knew that the . . . [r]epresentation[] [was] either false or at least highly speculative' because the allegation does not identify how" that knowledge was supposedly obtained).  "For scienter to be attributed to [a corporation], Plaintiffs must sufficiently plead that at least one of [the corporation's] officers had the requisite scienter at the time they made the allegedly misleading statements." *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *21 (C.D. Cal. May 23, 2008).  Plaintiffs do not plead any facts to satisfy this requirement.

In short, as before, because Plaintiffs' allegations are not "specific enough to give [UBH] notice of the particular misconduct which is alleged to constitute the fraud charged," they fail as a matter of law. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1187 (N.D. Cal. 2004) (finding general allegations of reliance on defendant's statements insufficient as a matter of law under Rule 9(b)).

## C.    Plaintiffs' State-Law Claims Are Preempted (Counts III–IX)

This Court previously held that "each of the state-law claims at issue depends on the existence and terms of an ERISA plan," and therefore, were all preempted under ERISA Section 514(a), 29 U.S.C. § 1144(a).  Order at 16.  As this Court recognized, Plaintiffs' allegations in the original complaint showed that the underlying ERISA plans (covering Plaintiffs' patients) included an obligation to pay "UCR" for out-of-network services.  *Id*.  Plaintiffs also alleged that the parties' understanding of what "UCR" meant—in connection with their claims that misrepresentations and contracts arose from references to "UCR" on verification-of-benefits calls—was based on "United's published definition of UCR on its webpage describing out-of-network *benefits*, which suggests that the UCR definition has a connection to the terms of benefits plans." *Id*. at 16–17 (emphasis in original).

All of this remains true in the Amended Complaint.  Although Plaintiffs are no longer so explicit about it, their allegations still show that their claims have a connection with ERISA plans.  First, the relevant payment obligation that Plaintiffs seek to enforce arose, first and foremost, from ERISA plans.

Gibson, Dunn &
Crutcher LLP

See FAC ¶ 428 (alleging that "[i]t is arbitrary, capricious, improper, and *a breach of plan terms* for United to pay rates other than a true UCR arrived at under a fair methodology" (emphasis added)).

Second, all of the relevant communications between Plaintiffs and UBH were about the patient's plan benefits. On Plaintiffs' "VOB" phone calls with UBH prior to rendering services to patients, they were verifying *benefits* under the relevant health plans. FAC ¶¶ 262, 269, 276, 292, 299, 306, 321, 328, 335, 351, 359, 366. Likewise, the "PRA" communications Plaintiffs received with their payments—communications that Plaintiffs also contend were fraudulent—stated explicitly that the payments were calculated based on "the eligible expense amount for out-of-network services under your plan in your area." *Id.* ¶¶ 267, 274, 281, 297, 304, 311, 326, 333, 340, 357, 364, 371, 390, 428.

Third, as support for Plaintiffs' understanding of what "UCR" meant, they continue to rely on the same published web site referring to plan "*benefits*"—as this Court previously recognized. Order at 16–17; *see also* FAC ¶¶ 154 & n.19, 529. All of these allegations show that the plans' definitions of UCR are at least "a critical factor in establishing liability." *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010); *see Josef K. v. Cal. Physicians' Serv.*, 2019 WL 2342245, at *3 (N.D. Cal. June 3, 2019) ("[B]ut for the existence of [plaintiffs'] ERISA plan, plaintiffs would not have suffered the harm alleged."); *Port Medical Wellness, Inc. v. Connecticut Gen. Life Ins. Co.*, 24 Cal. App. 5th 153, 177 (2018) (holding that provider's claim was preempted because it was "fundamentally a claim for unpaid ERISA plan benefits—the precise type of claim section 514(a) of ERISA preempts").

It also remains the case that the goals underlying preemption apply with full force here. Plaintiffs ask this Court to rule on the methodologies and calculations to be used for "UCR" reimbursements, but doing so under a patchwork of state laws—rather than under ERISA and the terms of the underlying benefits plans—would undermine Congress's goal to "to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987); *see also Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016). All of the patients alleged in Plaintiffs' Amended Complaint are covered by ERISA plans.[4]

---

[4] Plaintiffs' vague reference to the possibility of claims under non-ERISA plans is a red herring, as none are identified in the Amended Complaint. *See* Nguyen Decl. ¶¶ 4–12 & Exs. A–I. If Plaintiffs truly had any non-ERISA claims, they needed to identify them, and in any event all of the claims under ERISA claims should still be dismissed or stricken.

Gibson, Dunn & Crutcher LLP

17

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

Additionally, plaintiffs in the *LD* case—whose claims would also be at issue in this case, because they were treated by Summit Estate—are asking this Court to rule on many of the same "UCR" issues and claims under ERISA—underscoring the close connection between Plaintiffs' claims and the underlying ERISA plans.[5] Permitting Plaintiffs to proceed under California law (and potentially other state laws), while their patients seek to litigate the same issues under ERISA, would subject these ERISA plans to a range of conflicting claims, rules, and standards regarding how any potentially applicable "UCR" should be calculated—exactly the scenario that Congress enacted ERISA Section 514(a) to prevent.

Plaintiffs' Amended Complaint cites to this Court's ruling in an individual case brought separately by Summit Estate, which is also a Plaintiff in this case. There, this Court found that Summit Estate's state-law claims about UCR reimbursements were "independent of any statements that United allegedly made with respect to the insurance policies of Summit Estate's patients." *Summit Estate v. United Healthcare Ins. Co.*, 2020 WL 5436655, at *2 (N.D. Cal. Sept. 10, 2020). But the allegations here—showing that Plaintiffs rely on terms of benefits, calls about plan benefits, and a web site referring to plan benefits—involve a closer connection to the underlying ERISA plans, as described above.[6]

---

[5] *See Schaum v. Honeywell Retiree Med. Plan No. 507*, 2006 WL 2496435, at *7 (D. Ariz. Mar. 31, 2006) (state-law claims filed by provider were preempted under Section 514(a) because "allow[ing] both the state law claims and the ERISA claim to go forward would create a scenario contrary to the purpose of the ERISA preemption clause").

[6] For similar reasons, as addressed in the previous round of briefing, Plaintiffs' claims are distinguishable from other cases in which individual providers asserted state-law claims based on independent contracts, representations, and commitments focused on the specific claims at issue. *See Doctors Med. Ctr. of Modesto, Inc. v. The Guardian Life Ins. Co.*, 2009 WL 179681 (E.D. Cal. Jan. 26, 2009) (claims were based on specific allegations of an agreement to pay for specific treatment at issue). Additionally, the allegations here show the communications at issue arose "*in the course of* daily plan administration," and were rooted in a dispute about the underlying benefits calculation. *Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 3d 1074, 1085–86 (N.D. Cal. 2014); *see also Groves v. Kaiser Found. Health Plan Inc.*, 2014 WL 12644296, at *2 (N.D. Cal. July 10, 2014).

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

### D.     Plaintiffs' State-Law Claims Fail For Independent Reasons

#### 1.     Plaintiffs' Misrepresentation Claims Still Lack Particularity Under Rule 9(b) (Counts III–VII)

Plaintiffs' misrepresentation claims under state law fail under Rule 9(b) for the same reasons as their RICO claims.  *See* pp. 12–16, *supra*.

#### 2.   The Economic Loss Rule Bars The Misrepresentation Claims (Counts III–VII)

Under the economic loss rule, "a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort.  Instead, the claimant is limited to recovery under the law of the contract."  *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995); *see also Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*, 2020 WL 2027955, at *4 (C.D. Cal. Jan. 6, 2020) (dismissal warranted where plaintiffs "[do not] attempt to distinguish any [concrete, quantifiable] harm above and beyond those economic damages").  Here, Plaintiffs' alleged harms are purely pecuniary: they allege underpayments.  FAC ¶¶ 429–35.  And as explained above, these alleged harms are based on the terms of a contract—the terms of the relevant ERISA plans.  Plaintiffs "[do not] attempt to distinguish any [concrete, quantifiable] harm above and beyond those economic damages."  *Bristol SL Holdings*, 2020 WL 2027955, at *4.  Allegations that UBH "promised to reimburse [them] and failed to do it" are "not enough for tort damages."  *Id.*; *see also United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1184 (C.D. Cal. 2009) (dismissing claims against an insurer under the economic loss rule because the "allegedly tortious conduct and representations were all made pursuant to a purely contractual duty").

#### 3.     Plaintiffs' UCL Claim Fails For Various Reasons (Count III)

Plaintiffs fail to state a claim under any "prong" of California's Unfair Competition Law ("UCL").  First, Plaintiffs do not appear to be asserting a claim under the "fraudulent" prong, but if they were, that claim would fail under Rule 9(b) for the same reasons articulated above.  *See* pp. 12–16, *supra*.

Second, the UCL claim by Bridging the Gaps fails because it is a Virginia provider and thus not entitled to bring suit under the UCL.  *Reed v. Dynamic Pet Prods.*, 2015 WL 4742202, at *9 (S.D. Cal.

Gibson, Dunn & Crutcher LLP

19

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1    July 30, 2015).

2    Third, Plaintiffs' claim under the "unlawful" prong fails because they do not "state with

3    reasonable particularity the facts supporting the statutory elements of the violation." *Sencion v. Saxon*

4    *Mortg. Servs., Inc.*, 2011 WL 311383, at *4 (N.D. Cal. Jan. 28, 2011). Plaintiffs make a passing

5    reference to a few California regulations (*e.g.*, FAC ¶ 467(h)), but they fail to plead any facts to support

6    violations of these regulations—or even to show that they applied to any of the claims or plans at issue.[7]

7    Fourth, Plaintiffs also cannot plead a violation of the "unfair" prong because they have not—

8    and cannot—allege that they were consumers, competitors, or otherwise treated unfairly as prohibited

9    by the UCL. *See Linear Tech. Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 135 (2007)

10   (rejecting UCL claim where "the alleged victims are neither competitors nor powerless, unwary

11   consumers"); *ABC Servs. Grp., Inc. v. United Healthcare Servs.*, 2019 WL 4137624, at *8 (C.D. Cal.

12   June 14, 2019) (dismissing similar UCL claim by substance abuse center).

13   Finally, all of Plaintiffs' claims under the UCL fail for the additional reason that they fail to

14   plead any facts to support a claim for equitable relief, and the UCL only allows equitable relief. Under

15   the Ninth Circuit's recent decision in *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir.

16   2020), equitable claims—including for injunctive relief—may only be brought where the plaintiffs lack

17   an adequate remedy at law, which, aside from a conclusory allegation (FAC ¶ 473) has not been alleged

18   here with any specificity. *Id*.; *see also In re MacBook Keyboard Litig*., 2020 WL 6047253, at *3 (N.D.

19   Cal. Oct. 13, 2020) (explaining that although injunctive relief was not at issue in *Sonner*, "nothing about

20   the Ninth Circuit's reasoning indicates that the decision is limited to claims for restitution"). Plaintiffs

21   assert that they seek "an injunction prohibiting United's ongoing conduct" (FAC ¶ 472), but they allege

22   only past harms—for which they seek monetary relief—and therefore lack standing to seek injunctive

23   or other prospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Additionally,

---

24   [7]   Plaintiffs cite section 1300.71(a)(3)(B) of Title 28 of California's Code of Regulations, but that
25   section applies only to emergency services under certain types of insured California health plans,
     and there are no allegations that this regulation applied to any of the claims at issue here. Subpart
26   (a)(3)(C), which applies to non-emergency services, states that services by non-contracted
     providers should be reimbursed at "the amount set forth in the enrollee's Evidence of Coverage"—
27   further showing that Plaintiffs' claims depend on plan terms and are preempted given that all plans
     at issue are ERISA plans. Likewise, Plaintiffs fail to allege that section 1371 of the California
28   Health and Safety Code (which generally requires prompt payment of claims) applies to any of the
     claims at issue, or that it has been violated.

Gibson, Dunn &
Crutcher LLP

Plaintiffs' recasting of their claim for damages (*i.e.*, increased "UCR" reimbursement) as restitution or disgorgement is not sufficient. *See MacBook*, 2020 WL 6047253, at *3; *Sonner*, 971 F.3d at 844. For multiple reasons, therefore, Plaintiffs' UCL claim fails.

### 4. Plaintiffs' Contract Claims Still Fail For Lack Of Specificity, And Their Estoppel Claims Fail For Similar Reasons (Counts VIII–IX)

Plaintiffs' breach-of-contract claims fail because they do not allege a meeting of the minds on the key issues in dispute—the amount or methodology by which "UCR" would be determined. Plaintiffs' newly added allegations about several of their verification-of-benefits calls fail to cure this deficiency. As already discussed above, Plaintiffs do not allege that they discussed the IOP services at issue on any of these calls. Additionally, Plaintiffs allege only that UBH verified that benefits would be paid at a percentage of "UCR," but they allege no facts to support any discussions or meeting of the minds on how UCR would be calculated or determined. Plaintiffs make generalized assertions about a "course of dealing" (FAC ¶¶ 517–18), but these allegations actually refute Plaintiffs' contract theory, because Plaintiffs also allege that UBH has been calculating "UCR" using a disputed methodology since 2015. *Id.* ¶ 110. Plaintiffs' allegations also distinguish their claims from Summit Estate's case, because here Plaintiffs' allegations do not show that UBH assumed a payment obligation "apart from" verifying coverage. *Summit Estate*, Dkt. 33 at 6.

Courts have dismissed breach-of-contract claims arising from similar allegations about verification-of-benefits calls. In *Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*, 12 Cal. App. 5th 200, 205 (2017), for example, the contract claim was dismissed because the plaintiff's allegations of an agreement to pay "usual, reasonable, and customary charges," arising from preauthorization calls with the insurer, were not sufficiently specific—the same problem Plaintiffs face here. In *ABC Services Group v. Health Net of California, Inc*., the court rejected a similar claim that the defendant made an enforceable promise by allegedly stating during a verification call that it would "pay Plaintiff at its usual and customary rates." 2020 WL 2121372, at *6 (C.D. Cal. May 4, 2020).

For similar reasons, Plaintiffs' promissory estoppel claim fails. Promissory estoppel requires a "clear and unambiguous promise" by the defendant, as well as reasonable and foreseeable reliance by the plaintiff to its detriment. *See, e.g.*, *Pacific Bay*, 12 Cal. App. 5th at 215 n.6; *Advanced Choices*,

Gibson, Dunn &
Crutcher LLP

21

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

*Inc. v. State Dept. of Health Servs.*, 182 Cal. App. 4th 1661, 1672 (2010). Not only have Plaintiffs failed to allege any "clear and unambiguous [promise]" by UBH with respect to the issues in dispute, but—as explained *supra*—Plaintiffs also cannot allege they reasonably relied on the alleged phone calls. *ABC Servs.*, 2020 WL 2121372, at *6. Finally, because promissory estoppel does not exist under Virginia law, Bridging the Gaps cannot assert this claim, either. *See W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 254 Va. 514, 521, 493 S.E.2d 512, 516 (1997) ("[W]e hold that promissory estoppel is not a cognizable cause of action in the Commonwealth, and we decline to create such a cause of action.").

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed in its entirety. Because Plaintiffs have already been given leave to amend, further leave to amend would be futile, and this case therefore should be dismissed with prejudice.

Dated: October 30, 2020

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


/s/ *Geoffrey Sigler*
  Geoffrey Sigler

Attorney for Defendant
UNITED BEHAVIORAL HEALTH

Gibson, Dunn &
Crutcher LLP