**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
MOE KESHAVARZI, SBN 223759
  E-Mail: mkeshavarzi@sheppardmullin.com
DAVID DWORSKY, SBN 272167
  E-Mail: ddworsky@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone: 213.620.1780
Facsimile: 213.620.1398

ERROL J. KING, JR. (*admitted pro hac vice*)
**PHELPS DUNBAR LLP**
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 376-0207
Fax: (225) 381-9197
Errol.King@phelps.com

*Attorneys for Defendant MultiPlan, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE RECOVERY CENTER, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED BEHAVIORAL HEALTH, INC., a California corporation, and MULTIPLAN, INC., a New York corporation,<br><br>Defendants. | Case No. 4:20-cv-02249-YGR<br>Related Case No. 4:20-cv-02254-YGR<br><br>**MULTIPLAN'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>[Fed. R. Civ. P. 9(b) and 12(b)(6)]<br><br>Date:     Tuesday, December 22, 2020<br>Time:     2:00 p.m.<br>Judge:    Hon. Yvonne Gonzalez-Rogers<br>Courtroom: Courtroom 1, Fourth Floor<br><br>First Amended Complaint Filed: September 25, 2020 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ........................................1

ARGUMENT ..................................................................................................................................1

I. Plaintiffs' RICO Claims Should Be Dismissed........................................................1

II. Plaintiffs Have Not Made Out an Antitrust Claim Against MultiPlan. ...................3

III. Plaintiffs' State Law Claims Are Preempted by ERISA..........................................5

IV. Plaintiffs' State Law Claims Should Be Dismissed on Other Grounds. ..................6

V. Conclusion................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*American Ad Management, Inc. v. Gen. Tel. Co.*
  190 F.3d 1051 (9th Cir. 1999) ............................................................................................... 4

*Ashcroft v. Iqbal*
  566 U.S. 662 (2009) ........................................................................................................ 2, 7

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ........................................................................................................ 2, 7

*Bias v. Wells Fargo & Co.*
  942 F. Supp. 2d 915 (N.D. Cal. 2013) ................................................................................. 8

*Brown Shoe Co. v. United States*
  370 U.S. 294 (1962) ............................................................................................................ 4

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*
  429 U.S. 477 (1977) ............................................................................................................ 4

*Leon v. Hayward Building Dep't*
  2017 WL 5900550 (N.D. Cal. November 28, 2017) ........................................................... 2

*Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*
  578 F. Supp. 2d 1242 (C.D. Cal. 2008) ............................................................................... 7

*Romero v. HP, Inc.*
  2017 WL 386237 (N.D. Cal. January 27, 2017) ................................................................. 2

*Schneider v. Cal. Dep't of Corr.*
  151 F.3d 1194 (9th Cir. 1998) ............................................................................................. 1

*Semegen v. Weidener*
  780 F.2d 727 (9th Cir. 1985) ............................................................................................... 7

*Summit Estate, Inc. v. United Healthcare Ins. Co.*
  2020 WL 5436655 (N.D. Cal. Sept. 10, 2020) ............................................................ 5, 6, 8

*Vess v. Ciba-Geigy Corp.*
  317 F.3d 1097 (9th Cir. 2003 (citation omitted)). .............................................................. 3

State Cases

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
  7 Cal. 4th 503 (1994) .......................................................................................................... 8

Federal: Statutes, Rules, Regulations, Constitutional Provisions

18 U.S.C.
§ 1962(d) .................................................................................................................................3

26 U.S.
§ 1114(a), ................................................................................................................................5

ERISA
§ 514(a) ................................................................................................................................5, 6

Federal Rules of Civil Procedure
Rule 9(b) ........................................................................................................................ *passim*
Rule 12(b)(6) ..............................................................................................................1, 2, 7, 9

Sherman Act
§ 1 ............................................................................................................................................4

Defendant, MultiPlan, Inc. ("MultiPlan") respectfully submits this Reply Memorandum of Points and Authorities in further support of its Motion to Dismiss Plaintiffs' First Amended Complaint, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (the "Motion"), as follows:

### INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Predictably, Plaintiffs open their effort to save their fatally deficient First Amended Complaint ("FAC") by stating hyperbolically that the "overarching theme of MultiPlan's motion is to obfuscate the comprehensive scheme created by United and MultiPlan and the nationwide fraud that is occurring." *See* Plaintiffs' Response in Opposition to MultiPlan, Inc.'s Motion to Dismiss, Dkt. 75 ("Pl. Opp."), at p. 1. Of course, reference to MultiPlan's Motion to Dismiss discloses nothing more than a set of compelling arguments as to why the FAC fails to meet the standards of Fed. R. Civ. P. 9(b) and 12(b)(6). Merely quoting extensively from the FAC, in the apparent hope that saying the same thing over and over makes one's argument more persuasive, Plaintiffs' Response in Opposition does not address the numerous determinations by the Court in its Order dismissing the original Complaint (Dkt. 61), and therefore is unavailing in establishing why this case should proceed any further.

This Court is presented with the following issues to resolve:

1. Whether Plaintiffs' RICO Claims should be dismissed.
2. Whether Plaintiffs' Antitrust Claims should be dismissed.
3. Whether Plaintiffs' State Law Claims are preempted by ERISA.
4. If not, whether Plaintiffs' State Law Claims should be dismissed on other grounds.

Each of these issues should be resolved in favor of MultiPlan, and the FAC dismissed in its entirety with prejudice.

### ARGUMENT

**I.   Plaintiffs' RICO Claims Should Be Dismissed.**

As they have attempted in the past, Plaintiffs seek to bolster their arguments by injecting extraneous material into their Response in Opposition that the Court may not consider[1] — this time,

---

[1] *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) (in evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a court may not look beyond the complaint to a

1  a stock market analyst's report of dubious reliability, unauthenticated, and replete with hearsay and
2  opinion, concerning MultiPlan's financial and market positions — apparently intended to portray
3  MultiPlan as a "bad actor" deserving reproach.  Setting this item aside, one sees in the remainder of
4  the Response in Opposition an attempt to denigrate that to which the Court must give credence:  the
5  "obvious alternative explanation" for conduct that Plaintiffs allege to be fraudulent and the result of
6  an "association-in-fact" enterprise created and operated by Defendants, and MultiPlan in particular,
7  with the intent to defraud Plaintiffs, but which is, in fact, a legitimate effort to address egregious
8  overbilling practices through the use of sophisticated data and analytics, with the resulting benefit
9  of lower healthcare costs for all concerned.

10  Again, Plaintiffs point to "secret" meetings and "whitepapers," quoting allegations in the
11  FAC that identify certain MultiPlan personnel, as if any of that can substitute for hard evidence of
12  fraudulent behavior carried out with the specific intent to injure Plaintiffs for the benefit of
13  MultiPlan's bottom line.  But mere supposition is not enough, either under Rule 9(b) or Rule
14  12(b)(6), and dressing such fanciful musings with the appearance of fact by "naming names" gets
15  Plaintiffs nowhere. And, as this is the second go-around with respect to Plaintiffs' claim of RICO
16  violations, either substantive or conspiracy, MultiPlan will not burden the Court by citing the same
17  controlling legal precedents with which it is familiar and which it applied in dismissing Plaintiffs'
18  RICO allegations in the original Complaint. Rather, MultiPlan will point out the following
19  inadequacies in Plaintiffs' pleading of the essential elements of a substantive RICO claim and,
20  derivatively, of a RICO conspiracy claim.

21  First and foremost, Plaintiffs have done nothing more than assert conclusory claims with
22  respect to their alleged loss of property, the existence of an interstate nexus for mail or wire fraud,
23  the existence of a RICO enterprise under the direction of MultiPlan, and causation.  Under *Bell Atl.*
24  *Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), such conclusory
25  allegations are to be disregarded.  When this is done, the FAC lacks the requisite foundation to

---

27  plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to
28  dismiss."); *Romero v. HP, Inc.*, 2017 WL 386237, *6 (N.D. Cal. January 27, 2017); *Leon v.*
*Hayward Building Dep't*, 2017 WL 5900550, *3-*4 (N.D. Cal. November 28, 2017).

1  support Plaintiffs' RICO claims, for there is no plausible theory of liability that has been shown or
2  that can be inferred. There is no fraudulent scheme; instead, there is an above-board contractual
3  relationship to manage healthcare costs.

4  Second, Plaintiffs still fail to satisfy the "particularity" requirement of Rule 9(b), despite
5  their assertion to the contrary. *See* Pl. Opp., at pp. 7–9. Plaintiffs fill their Response in Opposition
6  with bloc quotations from the FAC, but that effort alone adds nothing to their argument. Plaintiffs
7  suggest that they need not be "omniscient or provide every conceivable detail" to meet the Rule 9(b)
8  standard, and that so long as Defendants can prepare an adequate answer from their allegations, they
9  have done their job. However, what Plaintiffs have set forth in the FAC still fails to provide "'the
10 who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317
11 F.3d 1097, 1106 (9th Cir. 2003 (citation omitted)). Simply pointing to meetings or communications
12 between United and MultiPlan, or even mentioning on or more attendees by name, is insufficient,
13 without much, much more. Based on what Plaintiffs have alleged, MultiPlan is decidedly not in a
14 position to "prepare an adequate answer."

15 Finally, since Plaintiffs have not made out a substantive RICO claim, it remains the case that
16 there can be no RICO conspiracy claim. Plaintiffs recognize this by failing to point anything that
17 would independently support Count II of the FAC (Violation of 18 U.S.C. §1962(d)).

18 **II.     Plaintiffs Have Not Made Out an Antitrust Claim Against MultiPlan.**

19 Plaintiffs argue that they have properly alleged an antitrust claim against MultiPlan, either
20 making out a *per se* case or one satisfying the Rule of Reason analysis. They further state that they
21 have met the four-factor antitrust standing test of *American Ad Management, Inc. v. Gen. Tel. Co.*,
22 190 F.3d 1051 (9th Cir. 1999). They have done neither.

23 It remains the case, as MultiPlan has argued (and Plaintiffs have yet to refute), that MultiPlan
24 is not a competitor of United, so it cannot engage in an agreement to fix prices, to exclude market
25 participants, or to otherwise unreasonably trade in any alleged relevant market that in any way runs
26 afoul of the antitrust laws. Plaintiffs continually point to alleged actions of "United and its
27 Competitors," but MultiPlan is not one of those, in any way, shape, or form. Plaintiffs do suggest
28 that MultiPlan may be a co-conspirator, but it appears that these allegations are made in the broader

1  context of Plaintiffs' overarching theory of a multi-dimensional scheme, which depending upon the
2  claim, is allegedly designed to defraud Plaintiffs, or drive them out of the marketplace, or engage in
3  some other unlawful conduct for which they are the target.  The problem with such a "shotgun"
4  approach is that it fails in each instance to meet the appropriate pleading standard with respect to
5  the requisite intent, or to identify an action in furtherance of a specific type of alleged wrongdoing,
6  that would subject MultiPlan to independent liability.

7  With respect to meeting the standing requirement of *American Ad Management*, although
8  Plaintiffs call out United's actions in the Response in Opposition to *United's* Motion to Dismiss
9  (Dkt. 76 at pp. 12–13), in the Response in Opposition to *MultiPlan's* Motion, they do not mention
10 any specific conduct by MultiPlan.  *See* Pl. Opp., at pp. 9–10.  Additionally, in discussing their
11 allegation of a "*Per Se* Buyers Cartel," Plaintiffs make the statement that "MultiPlan's relationships
12 with United and its competitors was not 'parallel,'" attempting to suggest that there was a conscious
13 agreement among them to fix prices.  *See* Pl. Opp., at p. 10.  But, again, that presupposes that
14 MultiPlan is among the competitors, which it is not.  Therefore, Plaintiffs argument, insofar as
15 MultiPlan is concerned, is misplaced.[2]

16 With respect to their alternative Rule of Reason claim, Plaintiffs make the perfunctory
17 statement that there is "ample evidence of unfair competition in restraint of interstate commerce."
18 *Id.*  However, saying so does not make it so.  Beyond conclusory allegations, there is nothing
19 demonstrating that *competition* in a properly defined relevant market has been restrained.
20 *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quoting *Brown Shoe Co.*
21 *v. United States*, 370 U.S. 294, 320 (1962)).  And it is that which Plaintiffs must allege plausibly to
22 have occurred, as well as their having suffered an *antitrust* injury as a result.

23 Finally, Plaintiffs argue that their antitrust claims ⸺ in which they characterize MultiPlan
24 as the "hub" of vast antitrust conspiracy in which United and its competitors are the "rim" with the
25 goal to harm Plaintiffs by *agreeing* to underpay claims submitted to them — are more plausible than
26 the straightforward alternative posited by MultiPlan:  that healthcare costs need to be managed for

27
28 [2] This is not to suggest that MultiPlan concedes that any price-fixing has taken place or that Plaintiffs have made out a valid *per se* claim against United under Section 1 of the Sherman Act.

the benefit of patients, employers, insurers, and others. Plaintiffs would have the Court accept, without more, their representation that whatever they charged was proper and that the failure to pay such amounts was motivated solely by an intent to defraud or somehow to restrain competition. The standard of *Twombly/Iqbal* requires the Court to refrain from such an approach and to reject the speculative allegations of wrongdoing in favor of an explanation predicated on lawful conduct.

MultiPlan and United are engaged in a contractual relationship to manage healthcare costs, nothing more. Allegations of an anticompetitive cabal are simply implausible and should be given no credence. Plaintiffs' antitrust claims, however analyzed, should be dismissed.

### III.  Plaintiffs' State Law Claims Are Preempted by ERISA.

Plaintiffs' protestations to the contrary, their state law claims are subject to conflict preemption under ERISA § 514(a), 26 U.S. § 1114(a), and therefore should be dismissed. As MultiPlan had previously pointed out in its Motion to Dismiss, Plaintiffs "acknowledge that many patients do have insurance with ERISA governed plans," *see* Pl. Opp., at p. 11. However, Plaintiffs try to extricate themselves from the effect of that concession by arguing that such is "not the same as having their claims 'involved with' ERISA plans." *Id.* In fact, it is. There can be no question that the ERISA plans which govern the underlying claims submitted to United are implicated in the manner in which those claims were administered and/or paid by United, with the employment of MultiPlan repricing and negotiation services. Reference to the terms and conditions in those ERISA plans is essential to understanding the obligations of the parties to them, which in turn, dictates whether and how claims will be paid.

Plaintiffs suggest that this Court's decision in *Summit Estate, Inc. v. United Healthcare Ins. Co.*, 2020 WL 5436655, at *2 (N.D. Cal. Sept. 10, 2020), is dispositive of the issues in this case, arguing that Plaintiffs' claims "are based in tort or equitable concepts and do not necessarily depend[] on the existence or terms of an ERISA plan." However, they completely ignore the fact that *Summit Estate* was premised on a finding that "United's alleged representations regarding payment for the services at issue [were] independent of any statements that United allegedly made with respect to the insurance policies of Summit Estate's patients," and therefore, the plaintiff's state-law claims did not "depend on either the existence of the terms of an ERISA plan" and were

1 "not preempted under ERISA Section 514(a)." *Id.* Unlike *Summit Estate*, Plaintiffs' claims in this case very much depend on the "existence [and] terms of . . . ERISA plan[s]," as MultiPlan argued at pages 3 to 4 of its Motion to Dismiss (Dkt. 71), and as United pointed out in some detail at pages 16 to 18 its Motion to Dismiss (Dkt. 72).[3] The Court recognized this in its Order dismissing the original Complaint, at pages 16 to 18 (Dkt. 61), and Plaintiffs have added nothing to the mix by way of the FAC to support their argument that the Court was wrong in its assessment of Plaintiffs' state law claims.

To the contrary, Plaintiffs continue to allege that the parties' understanding as to what United meant when it represented that it would pay a percentage of the UCR was based on United's published definition of UCR on its webpage describing out-of-network *benefits*, which suggests that the UCR definition as a connection to the terms of benefit plans. *See* FAC, ¶ 529 (alleging that the "UCR rate" was "understood by both parties to be consistent with United's published definition of UCR rates"); *see also id.* ¶ 154 n. 19 (citing United webpage describing information on payment of out-of-network benefits). Plaintiffs also allege that, during the calls wherein United made the alleged representations that form the basis of Plaintiffs' state law claims, United provided information regarding patient deductibles and out-of-pocket maximums, which are governed under the terms of the patients' health benefit plans. *See, e.g.*, *id.* ¶¶ 262, 269, 276, 292, 299, 306. Accordingly, the allegations in the FAC — just like those in Plaintiffs' original Complaint — suggest that each of the state-law claims has at least some connection to and necessarily depends upon the existence and terms of an ERISA plan and is therefore preempted by ERISA Section 514(a).

**IV.     Plaintiffs' State Law Claims Should Be Dismissed on Other Grounds.**

Even if not preempted, as MultiPlan demonstrated in its Motion to Dismiss, Plaintiffs' state law claims should be dismissed.[4] Plaintiffs still have not satisfied the heightened pleading

---

[3] MultiPlan previously adopted by reference the arguments made by United with respect to those issues and claims that are common to them as co-defendants and does so with respect to any arguments made in United's Reply in Support of its Motion to Dismiss the FAC, which is also being filed this date.

[4] Although Plaintiffs only discuss the "economic loss" doctrine at pages 21 to 23 of their Response in Opposition to United's Motion to Dismiss (Dkt. 76), MultiPlan previously adopted United's

1 requirement of Rule 9(b) where it applies (Counts IV–VI). They also continue to fall short in making
2 out plausible claims, not only with respect to those previously mentioned for unfair competition,
3 fraud and/or misrepresentation, but also with respect to those alleging civil conspiracy and
4 promissory estoppel (Counts VII and IX).[5] Accordingly, those state law claims are subject to
5 dismissal pursuant to Rule 12(b)(6).

6 First, for the reasons noted in MultiPlan's Motion to Dismiss, and as set forth above in
7 connection with the discussion of Plaintiffs' RICO claim, Plaintiffs' state law allegations of fraud
8 and/or misrepresentation lack the specificity needed to allow MultiPlan to "defend against the
9 charge[s] and not just deny that [it has] done anything wrong." Pl. Opp., at p. 13 (quoting *Semegen*
10 *v. Weidener*, 780 F.2d 727, 731 (9th Cir. 1985), which MultiPlan also cited to the Court at page 4
11 of its Motion to Dismiss). The legal standard applicable is undisputed; what is disputed is Plaintiffs'
12 belief that by simply vaguely pointing to meetings or communications between the Defendants over
13 the period of a lengthy business relationship or mentioning the names and titles of Defendants'
14 personnel who were participants in those events, they can satisfy that standard. Carefully parsing
15 the FAC shows there are no real particulars — simply conjecture on the part of Plaintiffs that this
16 was said or that was agreed to, all with the additional presumption of intent to defraud, mislead, or
17 misrepresent. In their absence, Plaintiffs' allegations miss the mark and must be dismissed.[6]

18 Second, Plaintiffs' allegations fail to establish plausible state law claims against MultiPlan.
19 Is it plausible, to the exclusion of "any obvious alternative explanation" suggesting lawful rather
20 than unlawful conduct, *see Iqbal*, 566 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567), that
21 Defendants' conduct is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to

---

23 arguments on its availability to bar Plaintiffs' state law claims against both Defendants and reasserts
24 that same position here.
[5] While not as directly stated as in the original Complaint, the contents of Count VIII (Breach of
25 Oral and/or Implied Contract) in the FAC, as well as the fact that Plaintiffs do not discuss that count
in their Response in Opposition to MultiPlan's Motion to Dismiss but do so in their Response in
26 Opposition to United's Motion to Dismiss, make it clear that this claim is not directed at MultiPlan.
[6] Plaintiffs' quotation from *Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, 578
27 F. Supp. 2d 1242, 1249 (C.D. Cal. 2008), *see* Pl. Opp., at p. 15, adds nothing to their argument since
28 they failed to meet the standard set forth in that case – there is not "sufficient notice given to defend
against the misconduct that is the basis of [P]laintiffs' claim[s]."

consumers," as specified by California's UCL, when it is nothing more than an effort by United, with MultiPlan's contracted-for assistance, at managing ever-increasing healthcare costs? Moreover, can the Court at this stage deny that the benefits of such actions outweigh Plaintiffs' alleged injuries?  *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal.  2013). MultiPlan submits that the correct answer is "no".

Third, with respect to Plaintiffs' characterization of its seeking injunctive relief under the California UCL alongside other state law claims affording it monetary damages as merely alternative pleading, and its reliance on this Court's holding in the *Summit Estate* case to support that position, *see* Pl. Opp., at p. 14, given that Plaintiff has not properly alleged any facts that would support a California UCL claim, any alleged entitlement to injunctive relief falls by the wayside.

Fourth, concerning Plaintiffs' claim of a civil conspiracy, Plaintiffs do not acknowledge the fundamental flaw in their position – namely, that absent any underlying tort, there can be no conspiracy.  Plaintiffs suggest that "MultiPlan was not a dupe in this situation.  It was knowing, intentional participant. . . ."  *Id.* at 16.  But this still begs the question — if there is no properly alleged fraudulent scheme embodying tortious conduct, then there is nothing for which MultiPlan can be held responsible as a co-conspirator.

Finally, as regards Plaintiffs' promissory estoppel claim against MultiPlan, Plaintiffs point to "verification and authorization communications" and say that the claim is based on "promises made between the Defendants and Plaintiffs."  However, one searches in vain in the FAC for any such verification and authorization communications that reflect promises made by *MultiPlan*.  In their Response in Opposition, Plaintiffs never single out MultiPlan as communicating any commitment to pay a certain amount or rate.  Instead Plaintiffs state only that "[b]y representing that it [sic] would pay the UCR, a term of art in the industry, *Defendants* provided a recognized method by which the amount it [sic] would be objectively determined." Pl. Opp., at p. 18 (emphasis added). MultiPlan is at a loss, as it assumes the Court finds itself, to see how MultiPlan can be held responsible under this theory, particularly when there has been no allegation that MultiPlan tortuously conspired to breach a contract with Plaintiffs, even a quasi-contractual one.  Plaintiffs' citation to *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994), is, in this instance

unavailing, since there is no tort in sight – merely some sort of alleged breach of contract by another party.

### V.     Conclusion.

Based on the foregoing, and on the arguments presented in MultiPlan's Motion to Dismiss, as well as the arguments made by United in its Motion to Dismiss and Reply Memorandum, the allegations set forth Plaintiffs' First Amended Complaint are legally and factually deficient and should be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

DATED:  December 8, 2020

By: _____/s/ David E. Dworsky_____
Moe Keshavarzi
David E. Dworsky
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone: (213) 620-1780
Fax: (213) 620-1398

and

Errol J. King, Jr.
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 376-0207
Fax: (225) 381-9197

Attorneys for Defendant, MultiPlan, Inc.