HEATHER L. RICHARDSON, SBN 246517
 hrichardson@gibsondunn.com
LAUREN M. BLAS, SBN 296823
 lblas@gibsondunn.com
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

GEOFFREY SIGLER (*admitted pro hac vice*)
 gsigler@gibsondunn.com
JOSHUA LIPTON (*admitted pro hac vice*)
 jlipton@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.995.8500
Facsimile: 202.467.0539

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE INC. d/b/a SUMMIT ESTATE OUTPATIENT, on behalf of themselves and others similarly situated, | Case No.  4:20-cv-02249-YGR Related Case No: 4:20-cv-02254-YGR **DEFENDANT UNITED BEHAVIORAL HEALTH'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| Plaintiffs, | Date:    Tuesday, December 22, 2020 Time:    2:00 p.m. Judge:   Hon. Yvonne Gonzalez Rogers Crtrm:   Courtroom 1, Fourth Floor |
| v. | |
| UNITED BEHAVIORAL HEALTH, a California Corporation, and MULTIPLAN, INC., a New York Corporation, | Original Complaint Filed:  April 2, 2020 Amended Complaint Filed:  September 24, 2020 |
| Defendants. | |

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................. 1

II.     RESTATEMENT OF ISSUES TO BE DECIDED & RELEVANT FACTS .......................... 1

III.    ARGUMENTS .................................................................................................... 1

        A.      Plaintiffs' Antitrust Claim Fails As A Matter Of Law (Count X) ................................. 1

        B.      Plaintiffs' RICO Claims Also Fail (Counts I and II) .................................................. 5

                1.      Plaintiffs Lack RICO Standing ..................................................................... 5

                2.      Plaintiffs Have Still Failed To Allege A RICO Enterprise ............................... 7

                3.      UBH Did Not Direct A RICO Enterprise ........................................................ 7

                4.      Plaintiffs' Allegations Still Fail To Satisfy Rule 9(b) ..................................... 8

        C.      Plaintiffs' State-Law Claims Are Preempted By ERISA (Counts III–IX) .................. 9

        D.      Plaintiffs' State-Law Claims Fail For Independent Reasons .................................... 12

                1.      Plaintiffs' Misrepresentation Claims Still Lack Particularity Under Rule
                        9(b) And Are Barred By The Economic Loss Rule (Counts III–VII) ........... 12

                2.      Plaintiffs' UCL Claim Fails For Various Reasons (Count III) ..................... 12

                3.      Plaintiffs' Contract And Promissory Estoppel Claims Still Fail For
                        Lack Of Specificity (Counts VIII–IX) ......................................................... 13

IV.     CONCLUSION ................................................................................................. 14

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABC Servs. Grp. v. Health Net of Cal., Inc.*,
2020 WL 2121372 (C.D. Cal. May 4, 2020) ...................................................................14

*In re Aetna UCR Litig.*,
2015 WL 3970168 (D.N.J. June 30, 2015) .....................................................................7, 8

*In re Air Passenger Computer Reservation Sys. Antitrust Litig.*,
694 F. Supp. 1443 (C.D. Cal. 1988) ...................................................................................4

*In re Beef Indus. Antitrust Litig.*,
907 F.2d 510 (5th Cir. 1990) ..............................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................3

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) ................................................................................8

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ............................................................................................................6

*Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*,
2020 WL 2027955 (C.D. Cal. Jan. 6, 2020) .....................................................................12

*Cal. Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*,
2018 WL 6074567 (C.D. Cal. June 28, 2018) ..................................................................14

*Doctors Med. Ctr. v. The Guardian Life Ins. Co.*,
2009 WL 179681 (E.D. Cal. Jan. 26, 2009) .....................................................................10

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,
2013 WL 12114069 (C.D. Cal. Mar. 12, 2013) ..................................................................8

*In re Flat Glass Antitrust Litig.*,
385 F.3d 350 (3d Cir. 2004) ...............................................................................................4

*Gardner v. Starkist Co.*,
418 F. Supp. 3d 443 (N.D. Cal. 2019) ................................................................................7

*Gobeille v. Liberty Mut. Ins. Co.*,
136 S. Ct. 936 (2016) ........................................................................................................12

*Gomez v. Guthy-Renker, LLC*,
2015 WL 4270042 (C.D. Cal. July 13, 2015) .....................................................................7

**TABLE OF AUTHORITIES (*continued*)**

Page(s)

*Groves v. Kaiser Found. Health Plan Inc.*,
2014 WL 12644296 (N.D. Cal. July 10, 2014) ...............................................................11

*Groves v. Kaiser Found. Health Plan Inc.*,
32 F. Supp. 3d 1074 (N.D. Cal. 2014) ...........................................................................11

*Cal. ex rel. Harris v. Safeway, Inc.*,
651 F.3d 1118 (9th Cir. 2011) ..........................................................................................5

*Hoang v. Vinh Phat Supermarket, Inc.*,
2013 WL 4095042 (E.D. Cal. Aug. 13, 2013) ..................................................................9

*Howard v. Am. Online, Inc.*,
208 F.3d 741 (9th Cir. 2000) ............................................................................................5

*IV Sol'ns, Inc. v. United Healthcare Servs., Inc.*,
2012 WL 12887401 (C.D. Cal. Nov. 19, 2012) ..............................................................10

*Josef K. v. Cal. Physicians Serv.*,
2019 WL 2342245 (N.D. Cal. June 3, 2019) ..................................................................11

*In re Juul Labs, Inc. Mktg., Sales Practices & Prods. Liab. Litig.*,
2020 WL 6271173 (N.D. Cal. Oct. 23, 2020) .................................................................13

*Leegin Creative Leather Prods. Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007) ..........................................................................................................5

*Lewis v. Rodan & Fields, LLC*,
2019 WL 978768 (N.D. Cal. Feb. 28, 2019).....................................................................7

*In re MacBook Keyboard Litig.*,
2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................................................................13

*Meridian, et al., v. United Behavioral Health*,
No. 19-cv-05721-JSW, ECF No. 34 (N.D. Cal. July 20, 2020).....................................10

*N. Cal. Minimally Invasive Cardiovascular Surgery, Inc. v. Northbay Healthcare Corp*,
2016 WL 1570015 (N.D. Cal. Apr. 19, 2016) ..................................................................2

*Oltz v. St. Peter's Cmty. Hosp.*,
861 F.2d 1440 (9th Cir. 1988)...........................................................................................2

*Omnicare, Inc. v. Unitedhealth Grp.*,
524 F. Supp. 2d 1031 (N.D. Ill. 2007) ..............................................................................2

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES (*continued*)**

Page(s)

*Pacific Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
    12 Cal. App. 5th 200 (2017)............................................................................14

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
    911 F.3d 505 (8th Cir. 2018)...........................................................................3

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009)..........................................................................9

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987).........................................................................................12

*In re Pork Antitrust Litig.*,
    2019 WL 3752497 (D. Minn. Aug. 8, 2019) ...................................................3

*Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*,
    24 Cal. App. 5th 153 (2018)...........................................................................10

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990)............................................................................5

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).........................................................................................8

*Saterbak v. Nat'l Default Servicing Corp.*,
    2016 WL 4430922 (S.D. Cal. Aug. 22, 2016) ...............................................9

*Schneider v. Cal. Dept. of Corr.*,
    151 F.3d 1194 (9th Cir. 1998)..........................................................................5

*Stanislaus Food Products Co. v. USS-POSCO Indus.*,
    803 F.3d 1084 (9th Cir. 2015)..........................................................................4

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006) ............................................................................................5

*The Meadows v. Employers Health Ins.*,
    47 F.3d 1006 (9th Cir. 1995)..........................................................................10

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008)..........................................................................8

*In re WellPoint Inc. Out-of-Network "UCR" Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011)...........................................................8

*In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012)............................................................3

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES (*continued*)**

2

Page(s)

3

*Zaback v. Kellogg Sales Co.*,
    2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ...................................................................13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1  **I.      INTRODUCTION**

2          Plaintiffs' opposition confirms that they cannot cure the pleading defects this Court identified

3  in its previous order dismissing the original complaint.  Although Plaintiffs want to be paid more for

4  their services, this contention cannot support a claim under RICO or the Sherman Act, or any of the

5  state-law claims Plaintiffs try to advance.  Their antitrust claims still fail for lack of standing, and

6  because they still fail to allege any conspiracy among competitors (or any other anticompetitive

7  conduct).  Plaintiffs' RICO claims also fail for the same reasons this Court previously held: the

8  UBH/MultiPlan vendor relationship is not a RICO enterprise, Plaintiffs fail to plead wire or mail fraud

9  with particularity under Rule 9(b), and their alleged injuries are too indirect to satisfy RICO standing

10  requirements.  As for Plaintiffs' state law claims, as before, those claims relate to their patients' ERISA

11  plans and are thus preempted by ERISA.  The state-law claims also fail for other reasons too, including

12  the economic loss rule, Rule 9(b), an adequate remedy at law, and lack specificity with respect to the

13  alleged oral agreement with UBH.  In response to all of these grounds for dismissal, Plaintiffs'

14  opposition largely recycles arguments this Court already rejected.  Plaintiffs do not identify any new

15  facts or legal authorities to bring about a different outcome.  Because further leave to amend would be

16  futile, UBH respectfully requests that the Amended Complaint be dismissed in its entirety, with

17  prejudice.

18  **II.     RESTATEMENT OF ISSUES TO BE DECIDED & RELEVANT FACTS**

19          The issues and relevant factual background are provided in UBH's motion to dismiss the FAC.

20  Dkt. 72.

21  **III.    ARGUMENTS**

22          **A.      Plaintiffs' Antitrust Claim Fails As A Matter Of Law (Count X)**

23          Plaintiffs' opposition underscores their inability to cure the defects in their original complaint.

24  They point to no factual allegations supporting antitrust standing, and they come nowhere close to

25  alleging an antitrust claim under either a per se rule or the rule of reason.

26                  **1.  Plaintiffs Still Lack Antitrust Standing**

27          In the original complaint, Plaintiffs' allegations made clear that any injuries they incurred were

28  "derivative of injuries that their patients allegedly suffered."  Dkt. 61 ("Order") 6.  In the Amended

Gibson, Dunn &
Crutcher LLP

DEFENDANT UNITED BEHAVIORAL HEALTH'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
– CASE NO. 4:20-CV-02249

Complaint, Plaintiffs tried to evade the standing requirement by deleting allegations cited in this Court's order (Order 3, 6 (citing Dkt. 1, ¶¶ 55, 155, 407).)  Having been called out by UBH for doing so in its opening brief, Plaintiffs now argue that the Amended Complaint merely "seeks to elaborate and fill in the nuance of their original Sherman Act argument." Dkt. 76 ("Opp.") 11.  One is left to wonder how deleting allegations constitutes "elaborat[ing] and fill[ing] in the nuance," because Plaintiffs point to nothing in their FAC that provides any elaboration or nuance showing that their alleged injuries are anything but derivative.  Indeed, Plaintiffs' entire antitrust standing argument contains not a single citation to any factual allegation in the FAC.

Instead of citing to factual allegations in the FAC, Plaintiffs essentially argue that the Court got it wrong.  For example, Plaintiffs claim that the rates allegedly set by UBH and MultiPlan "excluded" some unidentified set of "providers from serving any patients insured under United's plans" and caused them to lose profits. Opp. 12.  As before, there is no support for these speculative assertions and, unlike *Oltz v. St. Peter's Community Hospital*, 861 F.2d 1440 (9th Cir. 1988) and *Northern California Minimally Invasive Cardiovascular Surgery, Inc. v. Northbay Healthcare Corp.*, 2016 WL 1570015, at *5 (N.D. Cal. Apr. 19, 2016), no effort to tie them back to any injury *Plaintiffs* suffered.  They could not do that in any event because they plainly *do* allege they treated UBH members and thus were not "excluded" from anything.  *E.g.*, FAC ¶¶ 259, 289, 318, 348.  Plaintiffs still cannot show that they suffered any harm that could confer antitrust standing.[1]

Plaintiffs also assert that "the viability of any healthcare business depends on providers, such as Plaintiffs, ability to receive payment from insurers." Opp. 12.  But this is just a repackaging of their claim of indirect injury.  As Plaintiffs allege in the FAC, it is only when "patients cannot shoulder the full costs of MH/SUD treatment" (*i.e.*, the patients cannot or will not pay their balance bills) that "the provider bears the full cost of treatment services. . . ." FAC ¶ 62; *see also id.* ¶ 89.  Plaintiffs' argument that "there is no overlap" with the related case brought by their patients, *LD*, also confirms their alleged injuries are indirect.  *See* Opp. 17–18 (arguing "there is no overlap" because this case is limited to

---

[1]  Plaintiffs cite *Omnicare, Inc. v. Unitedhealth Group*, 524 F. Supp. 2d 1031, 1040 (N.D. Ill. 2007), for the proposition that "in a buyer's conspiracy case, a seller sufficiently alleges antitrust injury by pleading that it has received excessively low prices from members of the buyers' cartel."  But that case is inapposite.  Here, the buyers of services are the patients, and any injury suffered by Plaintiffs is derivative of the patients' claims.

1   claims for which members did not pay Plaintiffs' balance bills).  Plaintiffs' injuries remain derivative

2   of their patients, as this Court previously held.  Order 6; *see also In re Wellpoint, Inc. Out-of-Network*

3   *"UCR" Rates Litig.*, 903 F. Supp. 2d 880, 902 (C.D. Cal. 2012).

### 2.   Plaintiffs Have Not Pled The Elements Of A Section 1 Claim

5           Plaintiffs acknowledge that their conspiracy claim relies on demonstrating an agreement at the

6   "rim"—that is, an agreement between UBH and its horizontal competitors, and not merely bilateral

7   vertical agreements between UBH (or other insurers) and MultiPlan.  *See* Opp. 15 (attempting to

8   distinguish cases rejecting purported hub-and-spoke conspiracy claims because "[h]ere, there is a

9   'rim'").  But Plaintiffs point to no factual allegations plausibly establishing any agreement between

10  UBH and any other payors, such as Aetna, Cigna, or Blue Cross entities.

11          There are no allegations that would constitute direct evidence of any horizontal agreement, so

12  Plaintiffs rely on purported "circumstantial evidence" of a conspiracy.  Opp. 15.  To plead a conspiracy

13  claim through circumstantial evidence, a plaintiff must allege facts showing "parallel conduct" *and*

14  "plus" factors—*i.e.*, other factual allegations "pointing toward a meeting of the minds" among the

15  alleged conspirators.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).  Plaintiffs fail at the

16  threshold, because they do not even allege "parallel conduct"; rather, their opposition concedes that

17  "United and its Competitors['] conduct was *not* parallel."  Opp. 15 (emphasis added).  Plaintiffs cannot

18  point to any allegations in the FAC showing parallel reimbursement rates from United and its

19  competitors.  Instead, their opposition includes a chart showing ***non***-parallel pricing between UBH and

20  its competitors.  Opp. 6.  This lack of parallelism—as well as the lack of any allegations showing "plus"

21  factors—dooms any claim of a *per se* violation.  *See, e.g.*, *In re Beef Indus. Antitrust Litig.*, 907 F.2d

22  510, 514 (5th Cir. 1990) ("When an antitrust plaintiff relies on circumstantial evidence of conscious

23  parallelism to prove a § 1 claim, he must first demonstrate that the defendants' actions were parallel");

24  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018) ("Because

25  Irmat fails to plausibly plead parallel conduct, no discussion of any 'plus factors' is necessary."); *see*

26  *also In re Pork Antitrust Litig.*, 2019 WL 3752497, at *7 (D. Minn. Aug 8, 2019) (dismissing complaint,

27

28

even in the face of "strong" plus factors, where allegations "regarding parallel conduct are sparse and conclusory").[2]

Plaintiffs also effectively concede that their allegations do not support a rule of reason claim, as they abandon the allegations of the FAC in favor of unpled (and unsupportable) arguments. First, whereas the alleged relevant market in the FAC was "the sale of all healthcare services in the United States" (FAC ¶¶ 395–97), Plaintiffs now argue (without citation to the FAC) that the relevant market is the "provision of [IOP] services to privately insured Americans." Opp. 16. But Plaintiffs have offered no allegations in support of either market definition, no allegations to indicate that UBH has market power, and no allegations that UBH's arrangement with MultiPlan could plausibly have harmed competition. Second, Plaintiffs argue that they can support a rule of reason claim even if UBH possesses a small market share, but the only case they cite in support actually contradicts their assertion. Opp. 16 (citing *In re Air Passenger Computer Reservation Sys. Antitrust Litig.*, 694 F. Supp. 1443, 1456 (C.D. Cal. 1988) (holding that "[t]here is substantial merit in a presumption that market shares below 50 or 60 percent do not constitute [market] power")). And as discussed above, Plaintiffs' opposition shows that UBH and its competitors paid different amounts for IOP services, and they sometimes used MultiPlan and sometimes did not. Opp. 6. Plaintiffs assert in conclusory fashion that "United and its subsidiaries alone approximate a dominant market share," but they have included no such factual allegations in either of their complaints, and they cannot do so consistent with their Rule 11 obligations.

Plaintiffs also argue, again without citation to the FAC, that "there is no 'replacement' for United's insureds in the market" (Opp. 16), but this unsupported argument is contradicted by Plaintiffs' fraud claims and their prior argument that if they had not been misled, they would have provided their services to other patients who were "insured by other health insurance providers or self-pay patients." Order 7 (quoting Dkt. 47 at 8). The Court is not required to take any of these unpled and contradictory

---

[2]  Plaintiffs' cases are not to the contrary. In *Stanislaus Food Products Co. v. USS-POSCO Industries*, 803 F.3d 1084 (9th Cir. 2015), the court concluded that evidence of "information exchanges" did not "tend to exclude the possibility of permissible independent behavior," particularly in the absence of any evidence of antitrust injury. *Id.* at 1092, 1093. That contrasts sharply to the other case Plaintiffs cite, *In re Flat Glass Antitrust Litigation*, 385 F.3d 350, 368–69 (3d Cir. 2004), in which the plaintiffs alleged multiple communications between competitors discussing coordinated price increases. There are no analogous allegations here.

assertions at face value.  *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990); *Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  And even if it did, the claim should still be dismissed because there are no facts showing that UBH and MultiPlan harmed competition for IOP services in the purported nationwide market.  *See* Order 7.

Finally, Plaintiffs argue that they can bypass the rule of reason in their attack on the vertical vendor-customer relationship between UBH and MultiPlan.  Opp. 17.  That is wrong as a matter of law. *See, e.g.*, *Leegin Creative Leather Prods. Inc. v. PSKS, Inc.*, 551 U.S. 877, 885–86 (2007).  Plaintiffs argue that under a "quick look" analysis, "[w]here a practice has obvious anticompetitive effects . . . there is no need to prove that the defendant possesses market power."  Opp. 17.  But it defies common sense that retaining a negotiating agent in an effort to keep costs down could be deemed to have such "obvious anticompetitive effects" that it should be condemned without a full analysis under the rule of reason, which is "the accepted standard for testing whether a practice restrains trade in violation of § 1."  *Leegin*, 551 U.S. at 885.  And Plaintiffs have cited neither legal authority nor factual allegations that could support such an outcome here.  *See, e.g.*, *Cal. ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1137 (9th Cir. 2011) (rejecting quick look analysis where "per se treatment is not correct" and where "unique features" of alleged anticompetitive arrangement with "uncertain effect" made it difficult to determine whether it had an anticompetitive effect); *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006) ("But for the same reasons that per se liability is unwarranted here, we conclude that petitioners cannot be held liable under the quick look doctrine.").

## B.    Plaintiffs' RICO Claims Also Fail (Counts I & II)

As before, Plaintiffs fail to identify any plausible basis for their RICO claims.  Plaintiffs' opposition simply repeats the same rhetoric about the MultiPlan's database and repricing services, but fails to rectify the shortcomings that previously led the Court to dismiss Plaintiffs' RICO claims.[3]

### 1.    Plaintiffs Lack RICO Standing

This Court previously ruled that the original complaint failed to satisfy RICO's standing requirement because "the proximate cause of plaintiffs' own injury appears to be the nonpayment by

---

[3]  Because Plaintiffs cannot plead a substantive claim under RICO, their RICO conspiracy claim fails as well.  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Gibson, Dunn & Crutcher LLP

their patients of any amounts that United did not reimburse"; thus, their alleged injuries were too indirect under various controlling RICO authorities. Order 10–11. Plaintiffs provide no new facts to alter this conclusion, and they do not offer any legal authorities or arguments in their opposition brief, either. Plaintiffs argue that "underpayment of money owed" constitutes a valid injury under RICO and that their "property is the object of the Defendant[s'] scheme to defraud." Opp. 3. But they entirely fail to address the Court's prior ruling that these alleged injuries are too indirect: any underpayment is the result of their patients' nonpayment, not UBH's. Plaintiffs have no basis to dispute this ruling, and their Amended Complaint should be dismissed for the same reason.[4]

Plaintiffs' proposal to address the "overlap" between this case and the related *LD* case, brought by Plaintiffs' members, confirms that Plaintiffs lack RICO standing. Opp. 17–18. According to Plaintiffs, the apparent overlap on the face of the complaints can be eliminated through a claim-by-claim analysis of providers' billing records: claims for which balance bills were paid would be in the *LD* case, and claims for which they were not paid would be in this case. But the two complaints merely allege broad date ranges, without specifying any balance bills that were paid, or by how much. *Compare LD* FAC ¶¶ 326–27 (alleging broad date range of services for BW) with *Pacific Recovery* FAC ¶¶ 353–54 (allegations by Summit Estate involving the same member (BW is named CS here) within the same date range); *see also* FAC ¶ 437 (provider class defined in reference to all claims that were "underpaid," as opposed to claims for which no balance bills were paid). That Plaintiffs still have not specified which of *their own* claims are issue in which case, despite this Court's previous ruling and Rule 9(b)'s requirements, underscores just how convoluted (and likely impossible) this claim-by-claim undertaking would be. As this Court previously recognized, RICO's standing requirement exists, in part, because the "risk of duplicative recoveries and of having to engage in fact-intensive damages calculations to prevent such duplication is high if both plaintiffs and their patients sue defendants for

---

[4] Plaintiffs are also wrong that they need not allege reliance. Opp. 8–10. Although first-party reliance is not itself a RICO requirement, proximate causation is—and "a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008). Plaintiffs have not plausibly alleged that here. Mot. 12–16 (discussing inconsistent allegations and questionable phone call chronology). In any event, with or without reliance, Plaintiffs' injuries or too indirect for the reasons stated above.

DEFENDANT UNITED BEHAVIORAL HEALTH'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
– CASE NO. 4:20-CV-02249

the same conduct." Order 11. Plaintiffs' one-paragraph argument about why there is supposedly "no overlap" with *LD* (Opp. 17) confirms their RICO claim should be dismissed.

### 2. Plaintiffs Have Still Failed To Allege A RICO Enterprise

As with Plaintiffs' original complaint, the Amended Complaint goes on for pages about Defendants' vendor relationship, through which MultiPlan provides access to its database used to calculate reimbursement rates. *E.g.*, FAC ¶¶ 116, 121–22. But Plaintiffs fail to identify any allegations showing there was any RICO enterprise. The changes Plaintiffs have made—*e.g.*, substituting MultiPlan for Viant as the named defendant and allegations about "whitepapers" used to describe MultiPlan's services—do not cure this fundamental flaw. As this Court recognized in its previous dismissal ruling, this sort of "routine contract or commercial dealing," without more, does not establish that a "common purpose" exists under RICO. *See* Order 12; *Gardner v. Starkist Co*., 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015); *Lewis v. Rodan & Fields*, *LLC*, 2019 WL 978768, at *4 (N.D. Cal. Feb. 28, 2019).

Plaintiffs' opposition largely rehashes their allegations without explaining *why* the result should be any different here. Opp. 5. It shouldn't. There is no reason to credit Plaintiffs' chart purporting to summarize Summit Estate's "claims experience," both because it was not pleaded in the Amended Complaint and because it adds nothing to their RICO theory. Plaintiffs have already alleged that UBH and MultiPlan's reimbursement rates are lower than Summit Estate's billed charges and the 80th percentile of FAIRHealth (the top 20% of charges reported by FAIRHealth) (FAC ¶¶ 151–52), but these comparisons do not show a RICO enterprise with a common purpose to defraud. *In re Aetna UCR Litig*., 2015 WL 3970168, at *30 (D.N.J. June 30, 2015) (dismissing RICO claims where plaintiffs challenged "UCR" rates as being flawed and skewed downward, because these alleged flaws did not constitute fraud or a RICO enterprise); *see also* Order 14.

### 3. UBH Did Not Direct A RICO Enterprise

Plaintiffs' opposition also fails to show that UBH "directed" the "the enterprise's affairs," as opposed to conducting its own affairs, in service of its customers, by seeking to reduce medical costs. Order 12–13 (dismissing original complaint on this basis). This Court previously concluded that Plaintiffs' allegations were "consistent only with defendants conducting their own affairs pursuant to

the contract that required Viant to negotiate reimbursements on behalf of United, which Plaintiffs do not allege was contrary to the ERISA plans that United administered." Order 13.

All of this remains true in the Amended Complaint. Plaintiffs continue to rely on verification-of-benefits calls and alleged underpayments, but all of these actions are fully consistent with UBH's role as claims administrator for health plans; they do not show management of any alleged enterprise. *Compare, e.g.*, Dkt. 1 ¶¶ 355–56 *with* FAC ¶¶ 123, 126.

Plaintiffs' allegations about various operational details of MultiPlan's services and related jargon—*e.g.*, "crosswalking," "proxies," "[w]hitepapers" (Opp. 7–8)—likewise do not address the fundamental flaw with their RICO theory. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008); *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Nowhere in Plaintiffs' Amended Complaint or their opposition do they allege anything other than what one would expect in a vendor relationship: the vendor offers a menu of available options and services, and the customer selects from among those options. Merely using, or even participating in the development of, these products and services is an unremarkable "commercial interaction" of the type courts repeatedly have held are not RICO enterprises. *See, e.g.*, *In re Aetna UCR Litig.*, 2015 WL 3970168, at *28 (dismissing RICO claim where managed care company allegedly contributed to and subscribed to flawed UCR database). What Plaintiffs' allegations show is that UBH was simply "carrying out the functions it was contractually required to perform" when it subscribed to MultiPlan's rate database and used it to calculate reimbursements. *Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2013 WL 12114069, at *13 (C.D. Cal. Mar. 12, 2013); *see also In re WellPoint Inc. Out-of-Network "UCR" Rates Litig.* ("*WellPoint I*"), 865 F. Supp. 2d 1002, 1034–35 (C.D. Cal. 2011); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 939 (N.D. Cal. 2013) (Gonzalez Rogers, J.) (holding that RICO liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs") (emphasis omitted). As before, there are no allegations "that either defendant performed actions to further a scheme rather than their own individual affairs pursuant to a contract." Order 13.

### 4.    Plaintiffs' Allegations Still Fail To Satisfy Rule 9(b)

Plaintiffs again attempt to downplay what Rule 9(b) requires, arguing that they merely need to "identify the circumstances constituting fraud so that the defendant can prepare an adequate answer

1    from the allegations," and that they should be permitted to fill in the missing details after discovery.

2    Opp. 10.  But this Court already rejected these attempts to relax Rule 9(b) and told Plaintiffs exactly

3    what they needed to do to satisfy it: "identify the time, place, and specific content of the fraudulent

4    communications at issue" and "identify the person or persons involved in such communications."

5    Order 14.

6         Plaintiffs' opposition fails to address these requirements directly, instead asserting that the

7    Amended Complaint contains "great detail."  Opp. 10.  UBH's motion already outlined, however, why

8    the scattershot details that Plaintiffs added fail to move the needle under Rule 9(b), and Plaintiffs fail

9    to address any of these shortcomings—*e.g.*, the lack of any connection between the alleged phone calls

10   and the IOP services at issue; the fact that most of these calls did not occur until after Plaintiffs provided

11   the services, so Plaintiffs could not have relied on them in deciding to treat these patients as they

12   contend; the absence of any "specific content" of any discussions about "UCR" on these phone calls as

13   required by this Court's previous rulings (Order 14); and the lack of allegations showing reliance or

14   other causal connection between these calls and any specific injury to business or property.  Dkt. 72

15   ("Mot.") 12–16.  Contrary to Plaintiffs' arguments, they cannot rely on discovery to fill in the missing

16   details.  *See* Order 12–13; *see also Hoang v. Vinh Phat Supermarket, Inc.*, 2013 WL 4095042, at *15

17   (E.D. Cal. Aug. 13, 2013) (declining to permit exceptions to Rule 9(b)'s particularity requirement based

18   on cases that preceded *Twombly* and *Iqbal*); *Saterbak v. Nat'l Default Servicing Corp.*, 2016 WL

19   4430922, at *10 (S.D. Cal. Aug. 22, 2016) (rejecting effort to use claim of fraud "as a pretext for the

20   discovery of unknown wrongs").

21         **C.    Plaintiffs' State-Law Claims Are Preempted By ERISA (Counts III–IX)**

22         Plaintiffs offer nothing new in response to this Court's previous ruling dismissing their state-

23   law claims as preempted by ERISA Section 514(a).  Plaintiffs' main argument is a rehash: they argue

24   that "claims by *health care providers* against insurers for failure to pay for health care services

25   rendered" should not be preempted.  Opp. 18 (emphasis in original).  But this Court already ruled that

26   Plaintiffs' claims, as healthcare providers, were preempted.  Under numerous controlling authorities,

27   what matters under Section 514(a) is not who the plaintiff is, but whether there is a "connection"

28   between the plaintiff's claims and an ERISA plan.  *See Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th

Cir. 2009); *see also Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*, 24 Cal. App. 5th 153, 177 (2018) (holding that provider's state-law claim was preempted because it was "fundamentally a claim for unpaid ERISA plan benefits—the precise type of claim section 514(a) of ERISA preempts"); *Meridian, et al., v. United Behavioral Health*, No. 19-cv-05721-JSW, ECF No. 34 (N.D. Cal. July 20, 2020) (dismissing providers' state-law claims as preempted under ERISA Section 514(a)).

As this Court previously ruled, Plaintiffs' claims—which are materially unchanged in the Amended Complaint—are preempted because they have the requisite "connection with" ERISA plans. Order 17–18. Plaintiffs do not dispute UBH's showing, in its opening motion (Dkt. 72 at 16–17), that the core components of Plaintiffs' claims remain the same: (1) Plaintiffs still seek the same relief—*i.e.*, reimbursement of "an accurate, appropriate, UCR rate" (FAC ¶ 529); (2) in defining "UCR," Plaintiffs still are relying on a "published definition of UCR rates" that refers to plan benefits and coverage (*id.*); and (3) the "UCR" standard comes from the underlying plan terms (*id.* ¶ 428). It is for all these reasons that this Court previously dismissed Plaintiffs' claims as preempted. Order 17–18. And all of these reasons apply equally to the Amended Complaint.

Plaintiffs likewise do not identify any new, intervening legal authorities to change this Court's decision. Plaintiffs again rely on *Doctors Medical Center v. The Guardian Life Insurance Co.*, 2009 WL 179681 (E.D. Cal. Jan. 26, 2009), which they relied on (and UBH addressed) in previous briefing. Dkt. 44 at 16; Mot. 18. *Doctors Medical* involved specific allegations of an *independent* agreement by an insurer to pay for particular treatment to a particular patient, followed by a refusal to pay. Similarly, *The Meadows v. Employers Health Insurance*, 47 F.3d 1006 (9th Cir. 1995), involved an independent agreement to pay for particular services to a particular patient, through multiple phone calls and written letters, followed by a refusal to pay for the services. Plaintiffs also rely (again) on *IV Solutions, Inc. v. United Healthcare Services, Inc.*, in which the provider alleged an independent, written contract to deliver specific products and services at an agreed-on price, executed by the plan administrator, followed by a refusal to pay. 2012 WL 12887401, *1 (C.D. Cal. Nov. 19, 2012).

All of these cases are easily distinguishable. As this Court previously ruled, Plaintiffs' claims are not based on *independent* agreements between Plaintiffs and UBH. Order 18. Like the original complaint, the Amended Complaint contains only vague allegations about phone calls between

1   Plaintiffs and UBH, but there are no allegations of specific agreements on these phone calls (or

2   otherwise) to use a particular methodology or data source to calculate "UCR"—even though this is the

3   key issue relevant to Plaintiffs' claims.  Plaintiffs' claims, therefore, cannot be resolved without

4   interpretation and application of the underlying ERISA plan terms, which—as Plaintiffs repeatedly

5   have acknowledged (including in the Amended Complaint)—control reimbursement of out-of-network

6   services under the relevant health plans.  *See* FAC ¶ 428 (allegation that "UCR" is based on plan terms);

7   Dkt. 47 at 2 (previous brief from Plaintiffs acknowledging that "UCR" is based on plan terms).[5]

8        Finally, Plaintiffs still refuse to address the relevance of the related case before this Court, *LD*

9   *v. United Behavioral Health*, No. 4:20-cv-002254, to ERISA preemption.  In *LD*, Plaintiffs' patients

10  seek the same "UCR" relief as Plaintiffs, but they do so expressly *under ERISA*—demonstrating the

11  close connection between these claims and ERISA.  Plaintiffs' purported explanation of why "there is

12  no overlap with the *LD* matter" is incomplete and inadequate for numerous reasons, already discussed

13  above.  Plaintiffs' gymnastics on this issue also show why their claims must be preempted: under

14  Plaintiffs' approach, the legal standards governing proper reimbursement would vary from claim to

15  claim, even under the same plan and *even during the same course of treatment*.  Opp. 17–18.  To take

16  one example, Summit Estate contends that reimbursement of its services to "CS" should be determined

17  based on California state law, not based on ERISA or plan terms.  But in *LD*, the same patient (who is

18  referred to as "BW" in the member case) contends that reimbursement of the same services by Summit

19  Estate should be determined based on ERISA and plan terms.  *LD* FAC ¶¶ 311–39.  Plaintiffs have not

20  specified which claims are in which case in either complaint, but based on their argument making this

21  determination—and thus figuring out which legal standards to apply—would require a claim-by-claim

22  analysis of providers' balance-billing records.  Plaintiffs' argument also means that reimbursements

23  under a single plan, like Apple's, would be subject to the laws of different states depending on where

24

25      [5] Plaintiffs repeat their mischaracterization of this Court's ruling in *Josef K.*, arguing again that that
    the state-law claims there were held to be "moot, not preempted."  (Opp. 20 n.2.)  But this Court clearly
26  held that the state-law claim "is preempted by ERISA under the conflict preemption doctrine."  *Josef*
    *K. v. Cal. Physicians Serv.*, 2019 WL 2342245, at *3 (N.D. Cal. June 3, 2019).  Plaintiffs have no
27  response to *Josef K.*, which supports preemption here as well.  This Court's rulings in *Groves*—that
    alleged misrepresentations by an administrator in the course of plan administration were preempted—
28  also support preemption here.  *See Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 3d 1074,
    1085–86 (N.D. Cal. 2014); *Groves v. Kaiser Found. Health Plan Inc.*, 2014 WL 12644296, at *2 (N.D.
    Cal. July 10, 2014).

the provider is located.  This convoluted claim-by-claim undertaking, which would be required just to figure out what legal standard applies to which claim, cannot be reconciled with ERISA Section 514(a), because the entire purpose of this statute—which courts are directed to take into account when applying it—is to ensure uniform, nationwide administration of ERISA plans.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987); *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016).  This Court's previous ERISA preemption ruling was correct, and Plaintiffs identify no new factual allegations or legal authorities to change this conclusion.

### D. Plaintiffs' State-Law Claims Fail For Independent Reasons

#### 1. Plaintiffs' Misrepresentation Claims Still Lack Particularity Under Rule 9(b) And Are Barred By The Economic Loss Rule (Counts III–VII)

Plaintiffs' state-law misrepresentation claims fail under Rule 9(b) for the same reasons as their RICO claims, and their opposition brief offers no new arguments to the contrary.  Further, Plaintiffs' alleged harms are purely pecuniary (underpayments), so they fall squarely within the economic loss rule.  FAC ¶¶ 429–35.

Plaintiffs still have no response to *Bristol SL Holdings, Inc. v. Cigna Health Life Insurance Co.*, 2020 WL 2027955 (C.D. Cal. Jan. 6, 2020), in which plaintiffs asserted only economic damages and did not "attempt to distinguish any [concrete, quantifiable] harm above and beyond those economic damages."  *Id.* at *4.  Plaintiffs attempt to distinguish *Bristol* on the ground that the misrepresentation claim supposedly was dismissed "based on the specificity of the pleading at issue."  Opp. 22.  But the decision unambiguously states, "the Court finds the economic loss rule applies."  *Bristol*, 2020 WL 2027955, at *4.  Plaintiffs' vague assertions about the "policy rationale behind the economic loss rule" (Opp. 22) do not set this case apart from *Bristol*, which involved the same considerations and dismissed the claims under a straightforward application of the economic loss rule.

#### 2. Plaintiffs' UCL Claim Fails For Various Reasons (Count III)

Plaintiffs' claim under the "fraudulent" prong of the UCL fails for the same reason as their RICO and misrepresentation claims, under Rule 9(b).  As for the UCL's other prongs, Plaintiffs summarily assert that the FAC "satisfies the other UCL prongs in that in addition to fraud/fraud causes of action, it alleges conduct which is both unfair and contrary to law."  Opp. 24.  But they are again

silent in response to UBH's arguments. Plaintiffs do not address (and therefore waive any response to) UBH's showing that the UCL claim by Bridging the Gaps fails because it is a Virginia provider and thus not entitled to bring suit under the UCL; there are no allegations that any California laws or regulations were violated to satisfy the "unlawful" prong; and Plaintiffs cannot plead a violation of the "unfair" prong because they have not—and cannot—allege that they were consumers, competitors, or otherwise treated unfairly as prohibited by the UCL.

The only argument Plaintiffs dispute is that a claim for equitable relief cannot be pleaded in the absence of an adequate remedy at law, citing *In re Juul Labs, Inc. Marketing, Sales Practices & Products Liability Litigation*, 2020 WL 6271173 (N.D. Cal. Oct. 23, 2020). Even if Plaintiffs were correct on this issue, their UCL claims still would fail for the other reasons discussed above. But they are also wrong about *Juul*: there, the court dismissed the complaint without prejudice and explained that its ruling was based in part on the fact that equitable relief was being sought only against one of several defendants against whom damages may not be recoverable, and thus, required plaintiffs to make a more fulsome showing of harm. Other courts have agreed with UBH's position. *See In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (explaining that although injunctive relief was not at issue in *Sonner*, "nothing about the Ninth Circuit's reasoning indicates that the decision is limited to claims for restitution"); *see also Zaback v. Kellogg Sales Co.*, 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020). Furthermore, Plaintiffs' "equitable" claims simply recast claims for damages, and Plaintiffs cannot explain away this ground for dismissal.

### 3.    Plaintiffs' Contract And Promissory Estoppel Claims Still Fail For Lack Of Specificity (Counts VIII–IX)

Plaintiffs' breach-of-contract claims fail because their allegations are insufficiently specific on the key issues in dispute—the amount or methodology by which "UCR" would be determined. Mot. 21–22. In response, Plaintiffs claim that "[b]y representing that it would pay a rate based on UCR, a known term in the industry, United provided a method by which the amount it would pay would be objectively determined," and such promise is supposedly recognized as valid consideration under Civil Code section 1610. Opp. 24. As discussed, however, "UCR" doesn't have a single uniform meaning or methodology for calculation. Thus, even if UBH did offer to pay "UCR" on the benefits calls—and

again, Plaintiffs provide no detail as to exactly what was said, so no such inference is possible—that statement would not be sufficiently specific to supply the necessary consideration under Civil Code section 1610. Section 1611 does not help Plaintiffs either, as it is not only the amount, but also the methodology for calculating the amount, that it in dispute. Moreover, the services in question were not rendered to UBH, but to the patients, making an unpleaded quantum meruit theory of recovery inappropriate here.

Further, Plaintiffs still lack any way to distinguish this case from *Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*, 12 Cal. App. 5th 200, 205 (2017), in which the contract claim was dismissed because the plaintiff's allegations of an agreement to pay "usual, reasonable, and customary charges," arising from preauthorization calls with the insurer, were not sufficiently specific. Plaintiffs offer no authorities to the contrary, and their attempted distinction of *Pacific Bay* as involving a distinct insurance regulation is a red herring, because the regulation played no part in the contract claim. *Id*. at 216. Plaintiffs also have no response to *ABC Services Group v. Health Net of California, Inc.*, which rejected a similar claim that the defendant made an enforceable promise by allegedly stating during a verification call that it would "pay Plaintiff at its usual and customary rates." 2020 WL 2121372, at *6 (C.D. Cal. May 4, 2020). And the one case Plaintiffs cite, *California Spine & Neurosurgery Institute v. United Healthcare Services, Inc.*, 2018 WL 6074567, at *4 (C.D. Cal. June 28, 2018), involved allegations that were far more specific than Plaintiffs' allegations here. Plaintiffs also identify no basis to save their promissory estoppel claim, and it fails for similar reasons. Mot. 21.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed in its entirety. Because Plaintiffs have already been given leave to amend, further leave to amend would be futile, and this case therefore should be dismissed with prejudice.

Dated:  December 8, 2020

                                              Respectfully submitted,

                                              GIBSON, DUNN & CRUTCHER LLP


                                              /s/ *Geoffrey Sigler*
                                                Geoffrey Sigler

                                              Attorney for Defendant
                                              UNITED BEHAVIORAL HEALTH