1   LAUREN M. BLAS, SBN 296823
        lblas@gibsondunn.com
2   Gibson, Dunn & Crutcher LLP
    333 South Grand Avenue
3   Los Angeles, CA 90071-3197
    Telephone: 213.229.7000
4   Facsimile:  213.229.7520

5   GEOFFREY SIGLER (*admitted pro hac vice*)
        gsigler@gibsondunn.com
6   Gibson, Dunn & Crutcher LLP
    1050 Connecticut Avenue, N.W.
7   Washington, DC 20036-5306
    Telephone: 202.995.8500
8   Facsimile:  202.467.0539

9   Attorneys for Defendant
    UNITED BEHAVIORAL HEALTH

10

11                      UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13                           OAKLAND DIVISION

14

15  PACIFIC RECOVERY SOLUTIONS d/b/a       Case No.  4:20-cv-02249-YGR
    WESTWIND RECOVERY, MIRIAM              Related Case No: 4:20-cv-02254-YGR
16  HAMIDEH PHD CLINICAL
    PSYCHOLOGIST INC. d/b/a PCI            **DEFENDANT UNITED BEHAVIORAL**
17  WESTLAKE CENTERS, BRIDGING THE         **HEALTH'S NOTICE OF MOTION AND**
    GAPS, INC., SUMMIT ESTATE              **MOTION TO DISMISS PLAINTIFFS'**
18  RECOVERY CENTER, INC., on behalf of    **SECOND AMENDED COMPLAINT;**
    themselves and others similarly situated,  **MEMORANDUM OF POINTS AND**
19                                         **AUTHORITIES**
                    Plaintiffs,
20                                         Date:    April 6, 2021
          v.                               Time:    2:00 p.m.
21                                         Judge:  Hon. Yvonne Gonzalez Rogers
    UNITED BEHAVIORAL HEALTH, a            Place:  Courtroom 1, Fourth Floor
22  California Corporation, and MULTIPLAN,
    INC., a New York Corporation,
23                                         Complaint Filed:  April 2, 2020
                    Defendants.
24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on Tuesday, April 6, 2021 at 2:00 p.m., or as soon thereafter as

4   the matter can be heard, in Courtroom 1, Fourth Floor, of the United States District Court for the

5   Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant United

6   Behavioral Health ("UBH") moves the Court for an Order, pursuant to Federal Rules of Civil Procedure

7   12(b)(1) and 12(b)(6), dismissing Plaintiffs' claims for (1) violation of California's Unfair Competition

8   Law (Bus. & Prof. Code § 17200), (2) intentional and negligent misrepresentation, (3) civil conspiracy,

9   and (4) breach of oral and/or implied contract, and promissory estoppel—for lack of standing and

10  failing to state a claim upon which relief may be granted.  Because further leave to amend would be

11  futile, dismissal should be with prejudice.

12          UBH's motion is based upon this Notice of Motion and Motion and the Memorandum of Points

13  and Authorities set forth below, as well as the records, pleadings, and papers on file in this action, and

14  such other matters as may be presented before or at the time of the hearing on this Motion.

15

16   Dated: February 18, 2021                    Respectfully submitted,

17                                               GIBSON, DUNN & CRUTCHER LLP

18

19                                               /s/ *Geoffrey Sigler*
                                                 Geoffrey Sigler

20                                               Attorney for Defendant
21                                               UNITED BEHAVIORAL HEALTH

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ...................................... 2

III.   BACKGROUND ...................................................................................................... 2

IV.    STANDARD OF REVIEW ...................................................................................... 4

V.     ARGUMENT ............................................................................................................ 5

       A.     Plaintiffs Fail To Identify Any Non-ERISA Claims At Issue........................ 5

       B.     Plaintiffs Also Fail To Plead Facts To Support Any Of The Claims They
              Attempt To Assert. ......................................................................................... 8

              1.     Plaintiffs' Fraud And Misrepresentation-Based Claims Fail To Satisfy
                     Rule 9(b) (Counts III-V). ...................................................................... 8

              2.     Plaintiffs' Contract-Based Claims Also Fail (Counts VI-VII)........................ 10

              3.     Plaintiffs' UCL Claims Fail For Additional Reasons (Count I). ..................... 12

VI.    CONCLUSION ........................................................................................................ 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABC Servs. Grp. v. United HealthCare Servs., Inc.*,
   2019 WL 4137624 (C.D. Cal. June 14, 2019) ...................................................11, 13, 14

*ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*,
   2020 WL 2121372 (C.D. Cal. May, 4, 2020) ............................................................12

*Aghaji v. Bank of Am., N.A.*,
   247 Cal. App. 4th 1110 (2016)...................................................................................15

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
   121 F. Supp. 3d 950 (C.D. Cal. 2015).........................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................4

*Biohealth Medical Lab., Inc. v. Conn. Gen. Life Ins. Co.*,
   2016 WL 375012 (S.D. Fla. Feb. 1, 2016)...................................................................7

*Bova v. City of Medford*,
   564 F.3d 1093 (9th Cir. 2009)....................................................................................14

*Brooks v. ComUnity Lending, Inc.*,
   2010 WL 2680265 (N.D. Cal. July 6, 2010)...............................................................13

*Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*,
   118 F. Supp. 2d 1002 (C.D. Cal. 2000)......................................................................11

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................................................14

*Del Vecchio v. Amazon.com Inc.*,
   2011 WL 6325910 (W.D. Wash. Dec. 1, 2011)............................................................7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)....................................................................................4, 6

*Ferrari v. Mercedes Benz USA, LLC*,
   2019 WL 2103438 (N.D. Cal. May 14, 2019) ..............................................................7

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   100 F. Supp. 2d 1086 (C.D. Cal. 1999).......................................................................9

*In re Google Android Consumer Privacy Litig.*,
   2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ...................................................................7

*Hyunh v. Quora, Inc.*,
   2020 WL 7495097 (N.D. Cal. Dec. 21, 2020) .................................................................14

*Johnson v. Costco Wholesale Corp.*,
   2019 WL 6327580 (W.D. Wash. Nov. 26, 2019) .............................................................10

*Jones v. Raymer Metals, Inc.*,
   2017 WL 10560488 (C.D. Cal. May 31, 2017) ..................................................................7

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)............................................................................................4

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007)...........................................................................................13

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011)............................................................................................7

*Meridian Treatment Servs. v. United Behavioral Health*,
   2020 WL 7000073 (N.D. Cal. July 20, 2020).....................................................8, 9, 10, 12

*United States ex rel. Modglin v. DJO Global Inc.*,
   114 F. Supp. 3d 993 (C.D. Cal. 2015)................................................................................9

*Moore v. Apple, Inc.*,
   73 F. Supp. 3d 1191 (N.D. Cal. 2014) ...............................................................................4

*Newbeck v. Washington Mut. Bank*,
   2010 WL 291821 (N.D. Cal. Jan. 19, 2010) ......................................................................9

*Omega Hospital, LLC v. United Healthcare Servs., Inc.*,
   2017 WL 4228756 (M.D. La. Sept. 22, 2017) ...................................................................6

*Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*,
   228 Cal. App. 4th 644 (2014)...........................................................................................11

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs.*,
   12 Cal. App. 5th 200 (2017)......................................................................................10, 12

*Palmer v. Apple, Inc.*,
   2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ...................................................................7

*Pirozzi v. Apple, Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ...............................................................................7

*Reed v. Dynamic Pet Prods.*,
   2015 WL 4742202 (S.D. Cal. July 30, 2015) ..................................................................14

Gibson, Dunn &
Crutcher LLP

iii

*Reichert v. Gen. Ins. Co.*,
    68 Cal. 2d 822 (1969) ............................................................................................................10

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015).................................................................................................7

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985)...............................................................................................10

*Sencion v. Saxon Mortg. Servs., Inc.*,
    2011 WL 311383 (N.D. Cal. Jan. 28, 2011) ......................................................................13

*United States ex. rel. Serrano v. Oaks Diagnostics, Inc.*,
    568 F. Supp. 2d 1136 (C.D. Cal. 2008)...............................................................................9

*Sonner v. Premier Nutrition Corporation*,
    971 F.3d 834 (9th Cir. 2020)...............................................................................................14

*Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*,
    2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) ......................................................................9

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)................................................................................................8

*TML Recovery, LLC v. Humana Inc.*,
    2019 WL 3208807 (C.D. Cal. Mar. 4, 2019) ...............................................................11, 12

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ..............................................................................10

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..............................................................................................8

*W.J. Schafer Assocs., Inc. v. Cordant, Inc.*,
    254 Va. 514 (1997) ..............................................................................................................12

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011)...............................................................................10

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000)...............................................................................................4

*Williams v. Apple, Inc.*,
    2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ....................................................................14

**Statutes**

Cal. Health & Safety Code § 1371 ..................................................................................................13

Gibson, Dunn &
Crutcher LLP

iv

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

**Regulations**

Cal. Code Regs. tit. 28, § 1300.71(a)(3)(B) ........................................................................13

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1).............................................................................................................4

Gibson, Dunn &
Crutcher LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs are substance abuse treatment centers whose claims against United Behavioral Health ("UBH") have already been dismissed twice by this Court.  Plaintiffs' Second Amended Complaint ("SAC" (Dkt. 84)) suffers from the same flaws, so it should be dismissed again—this time, with prejudice.

In this Court's previous rulings, it squarely rejected Plaintiffs' attempt to avoid ERISA preemption by contending that they treated non-ERISA plan members, because the complaints were "devoid of allegations showing that any of the plans at issue f[e]ll[] within any of the exceptions to ERISA coverage"—*e.g.*, church plans or governmental plans.  Second Dismissal Order (Dkt. 83) 18.  Only because it was "not clear that amendment of the complaint would be futile," did the Court give Plaintiffs narrow leave to replead, so that they could "attempt to allege (1) *facts identifying which* of the allegedly under-reimbursed claims for IOP services in the FAC were covered by a plan that falls outside of the scope of ERISA and *showing why*; and (2) *facts that raise the inference that defendants are liable* under state law based on United's alleged under-reimbursement of such claims, for violations of the UCL, intentional misrepresentation and fraudulent inducement, negligent misrepresentation, civil conspiracy, breach of contract, or promissory estoppel."  *Id.* (emphases added).

The SAC does not clear either of these thresholds.  First and foremost, Plaintiffs still do not identify *any* under-reimbursed claims involving non-ERISA plans.  Instead, Plaintiffs still rely on vague, high-level assertions that "[m]any" of their patients supposedly were enrolled in non-ERISA plans.  *See, e.g.*, SAC ¶ 245.  These assertions are indistinguishable from the allegations this Court already rejected as insufficient—*e.g.*, Plaintiffs' contentions in their previous complaint that "[a] large percentage" of the claims at issue "do not involve ERISA plans."  First Amended Complaint ("FAC") ¶ 33 (Dkt. 62).  The SAC, like the FAC that this Court already dismissed, is devoid of any "facts identifying *which* of the allegedly under-reimbursed claims" at issue "falls outside of the scope of ERISA" or any facts "showing why."  Second Dismissal Order 18.

Second, even if Plaintiffs could identify any non-ERISA claims at issue (they cannot), they still fail to allege any "facts" showing "that defendants are liable under state law" with respect to any non-

ERISA claims. *Id.* Plaintiffs have dropped all of the scattershot factual details about particular phone calls and alleged under-reimbursements from their previous complaints, because all of these details related to ERISA claims. As a result, Plaintiffs are back to square one in their attempts to state a claim, as well as their efforts to satisfy Rule 9(b)'s heightened particularity requirements. Plaintiffs make only vague, high-level assertions about what "typical" phone calls and reimbursements supposedly entail, without any specifics about any alleged fraudulent statements or any alleged injuries flowing from these statements. Plaintiffs' generalizations harken back to the state law claims and fraud theories alleged in their original complaint, which this Court dismissed because they were preempted by ERISA and did not satisfy Rule 9(b). *See* First Dismissal Order (Dkt. 61) 14.

Plaintiffs had ample opportunity to find non-ERISA claims. They could not find any. Plaintiffs were also given multiple opportunities to state a claim under their various state-law theories. They cannot do so. Accordingly, UBH respectfully requests that the SAC be dismissed in its entirety, with prejudice.

## II.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

1.    Whether Plaintiffs lack standing and fail to state a claim regarding services provided to any non-ERISA plan members, because Plaintiffs fail to identify any non-ERISA claims, plans, or members in the SAC;

2.    Whether Plaintiffs' misrepresentation and civil conspiracy claims fail to satisfy Rule 9(b), because Plaintiffs fail to plead the who, what, when, where, or how/why of any alleged fraudulent statements;

3.    Whether Plaintiffs' contract and estoppel claims lack sufficient specificity to state a claim; and

4.    Whether Plaintiffs' claims under the UCL fail because they do not allege facts to support any violations of any of the UCL's prongs or any basis to seek equitable (as opposed to legal) relief.

## III.    BACKGROUND

Plaintiffs continue to advance essentially the same theory as they have throughout this case—that they allegedly were under-reimbursed by UBH for intensive outpatient ("IOP") services that they

Gibson, Dunn &
Crutcher LLP

2
DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

provided to members of health plans administered by UBH.  The SAC also suffers from many of the same flaws this Court identified in dismissing Plaintiffs' previous complaints.

The Court dismissed Plaintiffs' original complaint without prejudice, on multiple grounds, including ERISA preemption (the state-law claims), Rule 9(b) (RICO claims), and lack of standing (Sherman Act and RICO).  *See* First Dismissal Order.  In the original complaint, each Plaintiff alleged the number of under-reimbursed claims at issue and the total unpaid amount associated with these claims, but no details about any specific claims or fraudulent phone calls.  Plaintiffs alleged various ERISA violations (purportedly as RICO predicate acts) with respect to the claims at issue, as well as other allegations showing a connection between the claims at issue and ERISA plans, so the Court held that Plaintiffs' state-law claims were preempted by ERISA.  *See* Original Complaint ¶¶ 348–59 (Dkt. 1); Second Dismissal Order 2, 15 (discussing ERISA allegations in original complaint).

In the First Amended Complaint ("FAC"), Plaintiffs sought to address some of the deficiencies identified in the First Dismissal Order by adding factual details about several phone calls, claims, and interactions that they purport to challenge.  Plaintiffs also dropped their allegations expressly acknowledging the connection between their claims and ERISA plans, which this Court cited in its First Dismissal Order as support for preemption.  In another attempt to avoid preemption, Plaintiffs added an assertion that "a large percentage" of the claims at issue "do not involve ERISA plans" (FAC ¶ 33), yet they still alleged the same number of claims and the same total unpaid amounts as the original complaint (which connected these claims to ERISA).  As UBH pointed out in its motion to dismiss the FAC, all of the factual details that Plaintiffs added to the FAC involved ERISA claims and plans—and Plaintiffs did not identify any claims involving non-ERISA plans.  This Court dismissed Plaintiffs' claims under RICO, the Sherman Act, and state law (to the extent they involved ERISA plans) ***with*** prejudice.  As noted above, the Court gave Plaintiffs narrow leave to replead to identify any non-ERISA claims at issue and, if there were any, to plead facts supporting any viable claims under state law with respect to these non-ERISA claims.  Second Dismissal Order 18.

Plaintiffs' SAC purports to be focused on non-ERISA claims only, as this Court directed.  SAC ¶¶ 5, 51, 384.  But the SAC does not identify any non-ERISA claims, plans, or members.  Nor does it identify any alleged misrepresentations or under-reimbursements related to any non-ERISA claims,

Gibson, Dunn &
Crutcher LLP

plans, or members.  Rather, Plaintiffs rely again on generalized assertions that "[m]any" of their patients supposedly were enrolled in non-ERISA plans, as they did in the FAC.  SAC ¶¶ 245, 254, 276, 285, 307, 316, 338, 347; *see also id*. ¶¶ 51–59.  Plaintiffs also stripped out all of the factual details and examples from the FAC, because they involved ERISA claims, and instead fall back on allegations about how "typical" phone calls and claims are handled.  SAC ¶ 310.  Plaintiffs also dropped their allegations (which were in both the original complaint and the FAC) regarding the number of claims at issue and total unpaid amounts—presumably because all of these claims and unpaid amounts involved ERISA plans.  Taken as a whole, therefore, the SAC is the least detailed of the three complaints Plaintiffs have put forward throughout this case.  Based on these threadbare allegations, Plaintiffs seek relief under the same state-law causes of action they have been pursuing since the beginning: the UCL, intentional and negligent misrepresentation, conspiracy, breach of contract, and promissory estoppel.

## IV.    STANDARD OF REVIEW

This Court accurately summarized the standard of review in its previous orders.  Under Rule 8, determining whether a complaint contains "sufficient 'factual enhancement' to cross 'the line'" between speculation and plausibility requires a "context-specific" determination that a court must make by "draw[ing] on its judicial experience and common sense."  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Claims grounded in fraud are subject to the heightened-pleading requirements of Rule 9(b), as this Court previously recognized as well.  *See* First Dismissal Order 14 (Rule 9(b) requires Plaintiffs to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation" (citation omitted)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

This motion also includes a facial challenge to Plaintiffs' standing under Article III, under Federal Rule of Civil Procedure 12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A motion to dismiss for lack of standing should be granted if the complaint, on its face, fails to allege facts sufficient to establish subject matter jurisdiction.  *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1197 (N.D. Cal. 2014).

Gibson, Dunn & Crutcher LLP

4

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

## V.    ARGUMENT

In dismissing the FAC, this Court gave Plaintiffs leave to amend so that they could "attempt to allege (1) facts identifying which of the allegedly under-reimbursed claims for IOP services in the FAC were covered by a plan that falls outside of the scope of ERISA and showing why; and (2) facts that raise the inference that defendants are liable under state law based on United's alleged under-reimbursement of such claims, for violations of the UCL, intentional misrepresentation and fraudulent inducement, negligent misrepresentation, civil conspiracy, breach of contract, or promissory estoppel." Second Dismissal Order 18.  Plaintiffs' "attempt" has fallen short: the SAC does not identify any non-ERISA claims or plans, let alone provide any "facts" sufficient to state a claim under any of Plaintiffs' state law theories.

### A.    Plaintiffs Fail To Identify Any Non-ERISA Claims At Issue.

The SAC fails at the threshold, because it does not contain any "facts identifying which of the allegedly under-reimbursed claims for IOP services in the FAC were covered by a plan that falls outside of the scope of ERISA and showing why." Second Dismissal Order 18.  As this Court recognized in its Second Dismissal Order, Plaintiffs' previous complaint was "devoid of allegations showing that any of the plans at issue falls within any of the exceptions to ERISA coverage." *Id*.  In granting leave to amend, the Court told Plaintiffs what to look for: patients who were enrolled in governmental or church plans. *Id*.  But in the latest complaint, Plaintiffs still fail to allege any "facts identifying which" claims involve non-ERISA plans or any facts "showing why." *Id*.  By simply re-asserting the same generic allegations and state-law causes of action, without identifying any non-ERISA claims, Plaintiffs are in essence asking this Court to reconsider its previous ruling in the First Dismissal Order without any new facts or legal authorities—and in doing so violating the Court's directive that Plaintiffs "may not reassert claims that the Court has dismissed with prejudice" or "assert theories that the Court has rejected." *Id.*

In the SAC, Plaintiffs rely entirely on unsupported and unexplained assertions that "[m]any" of their patients were enrolled in non-ERISA plans, coupled with allegations about what "typically" would happen on verification-of-benefits calls.  SAC ¶¶ 248–50, 279–81, 310–12, 341–43.  Plaintiffs apparently are playing the odds that some non-ERISA claim must be out there somewhere, and that

Gibson, Dunn &
Crutcher LLP

5

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

there must have been some phone call about such a claim that Plaintiffs can argue was fraudulent—but these speculative, unsupported assertions are not sufficient under governing case law. *Eclectic Properties E.*, 751 F.3d at 1000 (affirming dismissal when plaintiffs failed to "ma[k]e the kind[s] of factual allegations that 'nudg[e] their claims across the line from conceivable to plausible'"). If "many" of Plaintiffs' patients were enrolled in non-ERISA plans, then each Plaintiff should be able to identify *at least one*.[1]

Of course, merely identifying non-ERISA plan members whom Plaintiffs treated, without more, would not be sufficient to state a claim: Plaintiffs still would need to plead facts about any phone calls that supposedly gave rise to fraud or contracts, about the reimbursements for their services and why they were insufficient, and whether any unreimbursed amounts remain unpaid (or were paid in full by the member).[2] The complete absence of any of these facts regarding any non-ERISA claims shows that the SAC should be dismissed.

Other courts have similarly dismissed state-law claims by providers for failure to state a claim based on generic assertions of "non-ERISA" patients. In *Omega Hospital, LLC v. United Healthcare Services, Inc.*, 2017 WL 4228756, at *4 (M.D. La. Sept. 22, 2017), for example, the court was "not satisfied with general statements referring to non-ERISA plans without specific allegations identifying

---

[1] Plaintiffs make a passing allegation that, on a "typical" phone call, they "would ask if the patient's plan was an ERISA plan; however, Provider was never told whether the plan was subject to ERISA by United or MultiPlan." SAC ¶ 346. But Plaintiffs do not give any details or specifics about these supposed exchanges, and it is unclear why Plaintiffs would rely on a call center employee to tell them whether a particular plan is "subject to ERISA." Plaintiffs and their counsel were given clear, specific directions by this Court regarding the types of non-ERISA plans to look for in the claims at issue (governmental, church plans, etc.). They were given plenty of time to figure this out, and they came up with zero non-ERISA claims.

[2] Plaintiffs have alleged and represented to the Court that they seek relief only on claims for which their patients (the plan members) did not already make up the difference by paying Plaintiffs' balance bills—*i.e.*, the difference between Plaintiffs' billed charge and the "UCR" amount allowed by the plan. *See* SAC ¶ 64; Plaintiffs' Opposition to UBH's Motion to Dismiss, *LD v. United Behavioral Health*, Case No. 4:20-cv-02254 (N.D. Cal. Nov. 24, 2020) (Dkt. 69) 14 (representing that claims at issue are limited to those where plan members "could not pay" Plaintiffs' balance bills). Plaintiffs' patients, in contrast, are suing separately, in *LD v. United Behavioral Health*, Case No. 4:20-cv-02543-YGR (N.D. Cal. 2020), on the claims for which these patients allegedly paid Plaintiffs' balance bills. *See LD* Compl. (Dkt. 74) ¶¶ 7, 274, 276. Through these allegations and representations, Plaintiffs sought to eliminate any overlap in the claims at issue, and thus to eliminate any conflicts between Plaintiffs and their patients. As a result, here Plaintiffs would need to identify a claim involving a non-ERISA member that they allege was under-reimbursed *and* for which the balance bill remains unpaid by the plan member.

a particular non-ERISA plan at issue in this case," and thus dismissed the plaintiff's claims as "speculative and not grounded in fact."  Similarly, in *Biohealth Medical Laboratory, Inc. v. Connecticut General Life Insurance Co.*, the court rejected a lab's state-law claims regarding non-ERISA reimbursements, because the lab did "not identify any plan(s) that fall into this category" and "merely claiming that some of the member claims arise under non-ERISA plans is insufficient to provide fair notice" to the defendant.  2016 WL 375012, at *5–6 (S.D. Fla. Feb. 1, 2016), *aff'd in part, vacated in part on other grounds sub nom*, *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521 (11th Cir. 2017).

Without any claims involving any non-ERISA plans (or any alleged misrepresentations or underpayments related to such claims), Plaintiffs cannot even satisfy threshold requirements for Article III or statutory standing.  *See, e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (holding that, under Article III, a plaintiff may not "rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury"); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("To establish standing to bring a claim under [the UCL], plaintiffs must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution."); *Ferrari v. Mercedes Benz USA, LLC*, 2019 WL 2103438, at *4 (N.D. Cal. May 14, 2019) (Gonzalez-Rogers, J.) (finding that plaintiffs lacked standing when "[s]imply alleging misrepresentations without facts to tie those allegations to any injury").[3]  Accordingly, the SAC fails

---

[3] *See also Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950, 962 (C.D. Cal. 2015) (finding no standing for state law claims based on lack of "injury in fact"); *Del Vecchio v. Amazon.com Inc.*, 2011 WL 6325910, at *3 (W.D. Wash. Dec. 1, 2011) (finding no standing because "[w]hile it may be theoretically possible that Plaintiffs" suffered injury as a result of Defendants' allegedly misleading statements, "Plaintiffs do not plead any facts from which the Court can reasonably infer that such [injury] occurred in this case"); *Jones v. Raymer Metals, Inc.*, 2017 WL 10560488, at *10 (C.D. Cal. May 31, 2017) (finding plaintiff lacked standing where complaint contained no specific factual allegations regarding actual harm); *Pirozzi v. Apple, Inc.*, 913 F. Supp. 2d 840, 846–47 (N.D. Cal. 2012) (Gonzalez-Rogers, J.) (finding that plaintiff lacked standing to pursue her state-law claims where she failed to identify which statements she found materially misleading); *see also Palmer v. Apple, Inc.*, 2016 WL 1535087, at *3 (N.D. Cal. Apr. 15, 2016) (same); *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, at *6 (N.D. Cal. Mar. 26, 2013).

Gibson, Dunn & Crutcher LLP

7

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

in its entirety for lack of standing and failure to state a claim, because Plaintiffs do not identify any non-ERISA claims at issue—as this Court expressly directed Plaintiffs to do.

**B.      Plaintiffs Also Fail To Plead Facts To Support Any Of The Claims They Attempt To Assert.**

Even if Plaintiffs could identify any non-ERISA claims (they cannot), the SAC still should be dismissed because Plaintiffs fail to plead the necessary facts regarding "such claims"—*i.e.*, "facts that raise the inference that defendants are liable under state law based on United's alleged under-reimbursement of such claims, for violations of the UCL, intentional misrepresentation and fraudulent inducement, negligent misrepresentation, civil conspiracy, breach of contract, or promissory estoppel." Second Dismissal Order 18.  Each count in the SAC fails for additional reasons, set out below.

**1.      Plaintiffs' Fraud And Misrepresentation-Based Claims Fail To Satisfy Rule 9(b) (Counts III-V).**

Rule 9(b) applies to most of the counts in the SAC: intentional misrepresentation/fraudulent inducement, negligent misrepresentation, and civil conspiracy (which relates to Plaintiffs' fraud claims).  To satisfy Rule 9(b), Plaintiffs were required to allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Meridian Treatment Servs. v. United Behavioral Health*, 2020 WL 7000073, at *8 (N.D. Cal. July 20, 2020) (dismissing similar fraud-based claims by treatment centers for failing to plead details of verification-of-benefits calls with particularity).

Plaintiffs do not come close to satisfying Rule 9(b): they do not identify *any* of the "who, what, when, where, and how" for *any* allegedly fraudulent statement related to *any* non-ERISA claims.  This Court previously rejected the wire and mail fraud allegations in Plaintiffs' original complaint for the same reasons, namely, because they did "not identify the time, place, and specific content of the fraudulent communication at issue, or identify the person or persons involved in such communications." First Dismissal Order 14.  Plaintiffs sought to rectify this pleading failure by adding several details about the phone calls at issue to the FAC, but because all of those details concerned ERISA claims,

Gibson, Dunn & Crutcher LLP

Plaintiffs have now dropped them and are left with no allegations supporting fraud—just as in the original complaint. As described below, the level of detail (or lack thereof) in the SAC is akin to the original complaint and should be dismissed for the same reasons.

**Who?** Plaintiffs' SAC retreats to the same kind of vague and non-specific allegations that were present in the original complaint: rather than identify any specific person involved in the relevant communications, Plaintiffs simply offer generic allegations about what "a United representative" would "typically" say on a verification-of-benefits call with "the Provider." SAC ¶¶ 248–49, 280, 311. But as this Court already ruled, this is not sufficient. First Dismissal Order 14. "Where fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim." *United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015); *Meridian*, 2020 WL 7000073, at *8 (dismissing treatment center's claims against UBH because the centers did not "allege the names of any UBH representatives with whom they or their agents spoke"); *Newbeck v. Washington Mut. Bank*, 2010 WL 291821, at *6 (N.D. Cal. Jan. 19, 2010) (dismissing plaintiff's fraud claim under Federal Rule 9(b) in part because it "fail[ed] to name any of Defendants' employees who allegedly perpetrated the fraud").

**When/Where?** Plaintiffs are similarly vague when it comes to when and where the alleged fraud occurred: "[f]or more than two years" they supposedly have received fraudulent communications, but they do not plead any dates or times. SAC ¶¶ 273, 304, 335, 366. This too, is insufficient, as this Court previously ruled. First Dismissal Order 14. *See also Meridian*, 2020 WL 7000073 at *8 (dismissing treatment center's claims because it did "not allege any information about the dates and times those phone calls occurred"); *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, 2017 WL 4517111, at *5 (N.D. Cal. Oct. 10, 2017) (dismissing various fraud-based allegations by treatment center because it merely alleged fraudulent phone calls "within the past two years"); *United States ex. rel. Serrano v. Oaks Diagnostics, Inc.*, 568 F. Supp. 2d 1136, 1143 (C.D. Cal. 2008) ("The general allegations that all claims submitted during an almost four year period were fraudulently submitted is insufficient[ly] particular[] to satisfy the 9(b) pleading standard."); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) ("[A]llegations such as '[d]uring the course of discussions in

Gibson, Dunn &
Crutcher LLP

9

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1986 and 1987,' and 'in or about May through December 1987' do not make the grade under Rule 9(b).") (citation omitted).

**What?** Plaintiffs' allegations about "what" was said consist entirely of high-level assertions about a "typical" call on which "the Provider" supposedly was told it "would be paid at a certain percentage, typically 80%, of an amount rate that was referred to as UCR or [a] similar and mutually understood term." SAC ¶¶ 248–49, 279–80, 310–11, 341–42. None of these allegations contains the "specific content" of a fraudulent communication, as required by this Court's previous order. First Dismissal Order 14. *See also, e.g., In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1048 (C.D. Cal. 2011) (rejecting as conclusory allegations asserting that a health insurer failed to reimburse the appropriate amount based upon UCR rates); *Meridian*, 2020 WL 7000073 at *8 (finding treatment center's claims failed to comply with Rule 9(b) because it generally alleged that misrepresentations were made without providing specific details about the alleged misrepresentations).

**How/Why?** Plaintiffs likewise fail to allege facts showing how and why they were misled—by calls involving unspecified "United representative[s]" who "typically" referred to a "certain percentage" of "UCR or [a] similar and mutually understood term." SAC ¶¶ 249, 280, 311, 342. *See, e.g., Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580, at *12 (W.D. Wash. Nov. 26, 2019).

Because Plaintiffs' allegations are not "specific enough to give [UBH] notice of the particular misconduct which is alleged to constitute the fraud charged," they fail as a matter of law. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1187 (N.D. Cal. 2004) (finding general allegations of reliance on defendant's statements insufficient as a matter of law under Rule 9(b)). And because this is now Plaintiffs' **third** attempt to satisfy Rule 9(b), dismissal should be with prejudice.

### 2.    Plaintiffs' Contract-Based Claims Also Fail (Counts VI-VII).

Plaintiffs likewise fail to state a claim for breach of contract or promissory estoppel related to any non-ERISA plan members. To state a claim for breach of contract, Plaintiffs must allege facts showing (a) promise to pay, and (b) a meeting of the minds on what was paid. *See Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968); *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs.*, 12 Cal. App. 5th 200, 215–16 (2017). Plaintiffs fall short on both fronts. First, Plaintiffs contend that UBH made

Gibson, Dunn &
Crutcher LLP

10

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

1   promises to pay "UCR" for covered services on unspecified verification-of-benefit calls.  But they do

2   not allege any facts about what specifically was said or promised on any particular calls, who said it,

3   or—just as importantly—which **non-ERISA** members or claims the calls related to.  Plaintiffs' generic

4   allegations about "typical" phone calls—apparently derived from their experiences involving ***ERISA***

5   members described in previous complaints—are no help to them in a case limited to non-ERISA claims.

6   SAC ¶¶ 249–50, 259 (various allegations about what "typically," "usually," or "often" was said on

7   phone calls, without any specifics).

8        Even ***if*** Plaintiffs had specified non-ERISA members whose treatments or benefits were

9   discussed on these calls, the allegations would still fail because Plaintiffs do not allege any specific

10  promises to pay for any particular services on these calls.  Courts repeatedly reject reliance on such

11  calls as the basis for a breach-of-contract claim even when Plaintiffs include allegations with more

12  specificity than Plaintiffs have here.  In *TML Recovery, LLC v. Humana Inc.*, the district court dismissed

13  a healthcare provider's oral contract claims that were based on "alleged authorization and verification

14  of benefits" calls on the ground that "such transactions do not constitute promises under California

15  law."  2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019).  As the court recognized, "an insurer's

16  verification is not the same as a promise to pay."  *Id.*  Other decisions are in accord.  *See Cedars Sinai*

17  *Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) ("[A]n insurer's

18  verification is not the same as a promise to pay.").  Here, Plaintiffs' allegations similarly rest on nothing

19  more than unspecified "verification and authorization calls" (SAC ¶¶ 264, 295, 326, 357), and they do

20  not include any "facts about the specific terms of its agreement or agreements with a defendant in order

21  to make an implied contract claim."  *ABC Servs. Grp. v. United HealthCare Servs., Inc. (*"*ABC Servs.*

22  *I*"), 2019 WL 4137624, at *6 (C.D. Cal. June 14, 2019) (dismissing provider's similar contract claims);

23  *see also Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*, 228 Cal. App. 4th 644, 649

24  (2014) (finding that no oral promise where insurer authorized treatment and stated that provider "would

25  be paid" for that treatment).

26        Second, Plaintiffs fail to allege facts showing a meeting of the minds between Plaintiffs and

27  UBH on the specific terms of an oral contract.  The SAC is devoid of any allegations showing any

28  meeting of the minds on basic terms, such as (1) what "UCR" meant with respect to any particular

Gibson, Dunn &
Crutcher LLP

11

definitions, rates, or reimbursement methodologies; (2) what services and non-ERISA members any discussions related to; and (3) what facts support the existence of a common understanding—*i.e.*, a meeting of the minds—on any of these topics. The lack of specificity on these points requires dismissal. *See Meridian*, 2020 WL 7000073, at *4–5 (finding no meeting of the minds where plaintiffs failed to include factual allegations showing a common definition of "UCR").

Plaintiffs assert that "UCR" is a "commonly accepted term in the healthcare industry" that "means generally, the rate charged by similar providers of [the] same specialty, in the same geographic area." SAC ¶ 43. They further allege that "[t]he parties all understood [it] to have this meaning." *Id*. ¶ 44. But without any "specific facts" showing a meeting of the minds on this topic, these assertions fail. *Pac. Bay*, 12 Cal. App. 5th at 216; *see also TML Recovery*, 2019 WL 3208807, at *4 (dismissing provider's contract based claims where "facts regarding any specific agreement [we]re lacking"). Moreover, many of Plaintiffs' allegations—and the long-running reimbursement dispute in this case— show that they had a ***different*** understanding than Defendants of what "UCR" meant, throughout the time period at issue in this case.

Plaintiffs' promissory estoppel count fails for similar reasons. To state a claim for promissory estoppel, Plaintiffs need to plead a "clear and unambiguous" promise by Defendants, along with facts showing reasonable and foreseeable reliance by Plaintiffs to their detriment. *Pac. Bay*, 12 Cal. App. 5th at 215 n.6. None of Plaintiffs' vague allegations about "typical" phone calls shows any "clear and unambiguous" promise by UBH to pay a particular amount for particular services. *See ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.* ("*ABC Servs. II*"), 2020 WL 2121372, at *6 (C.D. Cal. May, 4, 2020) (rejecting substance abuse center's "allegations about the authorization and verification process [as] inadequate to support a promissory estoppel claim"). Finally, because Virginia does not recognize promissory estoppel as a cause of action, Plaintiff Bridging the Gap's promissory estoppel claim fails for this additional reason. *See W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 254 Va. 514, 521 (1997).

### 3.    Plaintiffs' UCL Claims Fail For Additional Reasons (Count I).

Plaintiffs' UCL count fails for multiple reasons. Plaintiffs lack statutory standing to sue under the UCL, because—for reasons explained above—they do not allege any concrete injury related to any non-ERISA claim, member, or plan. *See* pp. 5–8, *supra*. And Plaintiffs' UCL claims also fail for

Gibson, Dunn &
Crutcher LLP

12

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

additional reasons.

Plaintiffs seem to be asserting claims under the UCL's "unlawful" and "unfair" prongs.[4]  Any claim under the "unlawful" prong fails because Plaintiffs do not allege "sufficient factual content to support each element of a violation." *Brooks v. ComUnity Lending, Inc.*, 2010 WL 2680265, at *12 (N.D. Cal. July 6, 2010).  Even before Plaintiffs stripped out all patient-specific allegations in the SAC (because all of these allegations involved ERISA claims and plans), Plaintiffs could not "state with reasonable particularity the facts supporting the statutory elements of [any] violation." *Sencion v. Saxon Mortg. Servs., Inc.*, 2011 WL 311383, at *4 (N.D. Cal. Jan. 28, 2011); pp. 2–4, 8–9, *supra*.  And now, without any patient- or claim-specific allegations, these claims are even more deficient.  Plaintiffs' passing reference to a handful of California regulations (*e.g.*, SAC ¶ 396(h)), without any facts connecting these regulations to any of the claims at issue, does not pass muster.  For example, Plaintiffs cite section 1300.71(a)(3)(B) of Title 28 of California's Code of Regulations, but that section applies only to emergency services under certain types of insured California health plans, and there are no allegations that this regulation applied to any of the claims at issue here.  Plaintiffs' drive-by citation of California Health and Safety Code Section 1371, which generally requires the prompt payment of claims, fares no better in the absence of any facts showing that it applies to any of the claims at issue.  *See ABC Servs. I*, 2019 WL 4137624, at *7 (finding substance abuse center failed to plead a violation of the "unlawful" prong where it "fail[ed] to identify which of [d]efendants' alleged acts or omissions violated which particular statutory provisions" and the "allegations relating to the statutory violations [were] also largely conclusory").

Likewise, any claim under the "unfair" prong fails.  Plaintiffs do not plead any "unfair" conduct with specificity.  They also do not—and cannot—allege that Plaintiffs fall within the categories of consumers, competitors, or others who are allowed to sue under this provision.  *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (rejecting UCL claim where "the alleged victims are neither competitors nor powerless, unwary consumers"); *ABC Servs. I*, 2019 WL 4137624,

---

[4]  Plaintiffs' UCL counts rests on assertions of "[u]*nfair* and [u]*nlawful* [b]usiness [p]ractices," SAC at p. 54 (emphasis in original), so they apparently seek relief under the UCL's unfair and unlawful prongs.  In the event that Plaintiffs also seek relief under the UCL's fraudulent prong, that claim should be dismissed under Rule 9(b) due to the lack of particularity.  *See* pp. 8–10, *supra*.

Gibson, Dunn &
Crutcher LLP

1    at *8 (dismissing similar UCL claim by substance abuse center for failing to "specifically outlin[e]

2    alleged unfair behavior").

3        Plaintiffs' claims under the UCL should also be dismissed because the UCL permits only

4    equitable relief and Plaintiffs do not plead any facts to support such a claim.  As the Ninth Circuit

5    recently held in *Sonner v. Premier Nutrition Corporation*, requests for equitable relief can only be

6    brought where there is no adequate remedy at law.  971 F.3d 834, 844 (9th Cir. 2020).  Plaintiffs

7    summarily assert that a legal remedy is "inadequate" without explaining why.  SAC ¶ 402.  Plaintiffs

8    allege only past harms concerning alleged underpayments, for which they seek monetary relief.  *City

9    of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  Their conjecture that the alleged practices "are likely

10   to continue" (SAC ¶ 398), amount to "contingencies that . . . are not sufficiently tangible or definite"

11   to satisfy Article III.  *Bova v. City of Medford*, 564 F.3d 1093, 1097 (9th Cir. 2009).  Such allegations

12   impermissibly rest on "future contingent events . . . that may or may not occur," as Plaintiffs do not

13   allege they will continue to be exposed to the alleged practices—let alone that this will occur in

14   connection with non-ERISA plan members (who are nowhere to be found even among their previous

15   or current patients).  *Id*. at 1097.  Additionally, courts applying *Sonner* have routinely dismissed claims

16   seeking restitution and/or injunctions when, as here, the alleged legal claims rest on the same factual

17   basis as the claims for equitable relief.  *See, e.g.*, *Williams v. Apple, Inc.*, 2020 WL 6743911, at *10

18   (N.D. Cal. Nov. 17, 2020) (rejecting plaintiffs' argument that the "fact that an equitable claim arises

19   from the same facts as a claim of law . . . does not provide a basis for dismissal" and dismissing

20   plaintiffs' UCL claim seeking equitable relief); *Huynh v. Quora, Inc.*, 2020 WL 7495097, at *19–20

21   (N.D. Cal. Dec. 21, 2020) (dismissing plaintiff's claim for injunctive relief under the UCL because she

22   "fail[ed] to allege or demonstrate that any remedy at law [wa]s inadequate" and sought "a remedy at

23   law . . . based on the same alleged conduct as her equitable claim").

24       Finally, Virginia provider Bridging the Gaps, Inc.'s UCL claim should be dismissed because it

25   is an out-of-state provider and has alleged no facts "establish[ing] that the unlawful conduct giving rise

26   to [its] claims occurred in California."  *Reed v. Dynamic Pet Prods*., 2015 WL 4742202, at *9 (S.D.

27   Cal. July 30, 2015).  There are no factual allegations supporting an inference that any of the alleged

28   calls, representations, communications, claims processing or other conduct occurred in California.

Gibson, Dunn &
Crutcher LLP

14

DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249

Blanket assertions that a defendant resides in California, without more, cannot overcome the UCL's presumption against extraterritoriality. *See Aghaji v. Bank of Am., N.A.*, 247 Cal. App. 4th 1110, 1119–20 (2016) (out of state plaintiffs' allegations insufficient where they stated "many—not all—defendant[s] . . . have facilities and personnel in California" and where plaintiffs "d[id] not disclose what information they have that leads them to believe that the alleged violations occurred in [] California").

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' Second Amended Complaint should be dismissed in its entirety with prejudice.

Dated: February 18, 2021

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

/s/ *Geoffrey Sigler*
Geoffrey Sigler

Attorney for Defendant
UNITED BEHAVIORAL HEALTH

Gibson, Dunn & Crutcher LLP

15
DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES – CASE NO. 4:20-CV-02249