**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
MOE KESHAVARZI, SBN 223759
E-Mail: mkeshavarzi@sheppardmullin.com
DAVID DWORSKY, SBN 272167
E-Mail: ddworsky@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone: 213.620.1780
Facsimile: 213.620.1398

**PHELPS DUNBAR LLP**
ERROL J. KING, JR. (*admitted pro hac vice*)
E-Mail: Errol.King@phelps.com
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 376-0207
Facsimile: (225) 381-9197

*Attorneys for Defendant MultiPlan, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE INC. d/b/a SUMMIT ESTATE OUTPATIENT, on behalf of themselves and all others similarly situated.

Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH, a California Corporation, and MULTIPLAN, INC., a New York Corporation,

Defendants.

Case No. 4:20-cv-02249-YGR

(Hon. Yvonne Gonzalez Rogers)

**MULTIPLAN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

**[Fed. R. Civ. P. 9(b) and 12(b)(6)]**

Hearing Date: April 6, 2021
Hearing Time: 2:00 p.m.
Courtroom: 1 (4th Floor)

Second Amended Class Action Complaint Filed: January 19, 2021

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 6, 2021, at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Yvonne Gonzalez Rogers in Courtroom 1 on the Fourth Floor of the Oakland Federal District Courthouse, located at 1301 Clay Street, Oakland, California 94612, Defendant MultiPlan, Inc. ("MultiPlan") will and hereby does move the Court for an Order, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Class Action Complaint ("SAC") filed by Pacific Recovery Solutions d/b/a Westwind Recovery, et al. ("Plaintiffs"), on the following grounds:

1. Plaintiffs' second cause of action based on alleged violations of California Business & Professions Code §§ 17200 *et seq.* fails to state a claim against MultiPlan upon which relief can be granted.

2. Plaintiffs' third cause of action for intentional misrepresentation/fraudulent inducement fails to state a claim against MultiPlan upon which relief can be granted.

3. Plaintiffs' fourth cause of action for negligent misrepresentation fails to state a claim against MultiPlan upon which relief can be granted.

4. Plaintiffs' fifth cause of action for civil conspiracy fails to state a claim against MultiPlan upon which relief can be granted.

5. Plaintiffs' seventh cause of action for promissory estoppel fails to state a claim against MultiPlan upon which relief can be granted.

Pursuant to L.R. 7-2(b)(3), MultiPlan requests that the Court dismiss the SAC in its entirety with prejudice.

This Motion is based on this Notice of Motion, Motion, and the Memorandum of Points and Authorities attached, all pleadings on file with this Court, and on such oral arguments as may be presented at the hearing on this matter.

DATED: February 18, 2021

By: /s/ David E. Dworsky

Moe Keshavarzi
David Dworsky
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone: (213) 620-1780
Fax: (213) 620-1398

and

Errol J. King, Jr. (*admitted pro hac vice*)
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 376-0207
Fax: (225) 381-9197

Attorneys for Defendant, MultiPlan, Inc.

Case No. 4:20-CV-02249-YGR
SMRH:4819-9567-4589.1
MULTIPLAN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
PD.30809144.1

## TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....1
INTRODUCTION....1
STATEMENT OF ISSUES TO BE DECIDED....2
BACKGROUND....3
I. Procedural History....3
II. Plaintiffs' Allegations. ....4
III. Legal Standards For Motion To Dismiss. ....5
A. Federal Rule of Civil Procedure 12(b)(6) ....5
B. Federal Rule Of Civil Procedure 9(b) ....6
ARGUMENT ....7
I. The SAC Fails to Make Out a Plausible Claim....7
II. Plaintiffs' State Law Claims Are Insufficiently Pled....8
A. Plaintiffs Consistently Fail to Satisfy the Strictures of Fed. R. Civ. P. 9(b) with Respect to the Pleading of Their Fraud-Based Claims....8
B. The Economic Loss Rule Bars the Misrepresentation Claims (Counts II-V). ....9
C. Plaintiffs Fail to State a Claim for Statutory Unfair Competition....9
D. Plaintiffs Fail to State a Claim for Intentional Misrepresentation or Fraudulent Inducement....12
E. Plaintiffs Fail to State a Claim for Negligent Misrepresentation. ....14
F. Plaintiffs Fail to State a Claim for Civil Conspiracy. ....15
G. Plaintiffs Fail to State a Claim for Promissory Estoppel. ....16
CONCLUSION ....16

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*ABC Servs. Grp., Inc. v. United Healthcare Servs.*
2019 WL 4137624 (C.D. Cal. June 14, 2019)....................10, 11, 12

*Apollo Grp., Inc. v. Avnet, Inc.*
58 F.3d 477 (9th Cir. 1995)....................9

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................5, 13

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)....................5, 6, 13

*Bly-Magee v. California*
236 F.3d 1014 (9th Cir. 2001)....................6

*Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*
2020 WL 2027955 (C.D. Cal. Jan. 6, 2020)....................9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*
751 F.3d 990 (9th Cir. 2014)....................13

*Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*
2013 U.S. Dist. LEXIS 53401 (C.D. Cal. Apr. 10, 2013)....................16

*Godecke v. Kinetic Concepts, Inc.*
937 F.3d 1201 (9th Cir. 2019)....................7

*Gonzales v. Lloyds TSB Bank*
532 F. Supp. 2d 1200 (C.D. Cal. June 7, 2006) ....................15

*Lesnik v. Eisenmann SE*
374 F. Supp. 3d 923 (N.D. Cal. 2019) ....................6

*Mangindin v. Wash. Mut. Bank*
637 F. Supp. 2d 700 (N.D. Cal. 2009) ....................15

*Moss v. Infinity Ins. Co.*
197 F. Supp. 3d 1191 (N.D. Cal. 2016) ....................10, 11

*Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*
2017 U.S. Dist. LEXIS 162863 (E.D. Cal. Sept. 29, 2017)....................11

*Semegen v. Weidner*
780 F.2d 727 (9th Cir. 1985)....................6

*Summit Estate, Inc. v. United Healthcare of Cal., Inc.*
2017 WL 4517111; 2017 U.S. Dist. LEXIS 167462, *34–36 (N.D. Cal. Oct. 10, 2017). ....12

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007) ....6

*Tucker v. Post Consumer Brands, LLC*
2020 WL 1929368 (N.D. Cal. April 21, 2020) ....7

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*
660 F. Supp. 2d 1163 (C.D. Cal. 2009) ....9

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003) ....6

State Cases

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
7 Cal. 4th 503 (1994) ....15

*Cansino v. Bank of Am.*
224 Cal. App. 4th 1462 (2014) ....14

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*
68 Cal. App. 4th 445 (1998) ....12

*Daugherty v. American Honda Motor Co., Inc.*
144 Cal. App. 4th 824 (2006) ....10

*Diediker v. Peelle Financial Corp.*
60 Cal. App. 4th 288 (1997) ....14

*Khoury v. Maly's of Cal., Inc.*
14 Cal. App. 4th 612 (1993) ....10

*Linear Tech. Corp. v. Applied Materials, Inc.*
152 Cal. App. 4th 115 (2007) ....11

*Morgan v. AT&T Wireless Servs., Inc.*
177 Cal. App. 4th 1235 (2009) ....11

*Orcilla v. Big Sur, Inc.*
244 Cal. App. 4th 982 (2016) ....12

*Pacific Bay Recovery*
12 Cal. App. 5th at 204 ....16

*Ragland v. U.S. Bank National Assn.*
209 Cal. App. 4th 182 (2012) ....14

*Smith v. City and County of San Francisco*
225 Cal. App. 3d 38 (1990) ....... 16

Federal: Statutes, Rules, Regulations, Constitutional Provisions

29 U.S.C. § 1114(a) ....... 3

ERISA § 514(a) ....... 3

Federal Rules of Civil Procedure
Rule 8(a) ....... 7
Rule 9(b) ....... *passim*
Rule 12(b)(6) ....... *passim*

State: Statutes, Rules, Regulations, Constitutional Provisions

California Business & Professions Code
§ 17200 *et seq.* ....... 8, 9, 11
§ 17203 ....... 11

Local Rule 7-4 ....... 2

Other Authorities

Steven I. Weissman, *Remedies for an Epidemic of Medical Provider Price Gouging*, 90 Fla. Bar. J. 22 (Feb. 2016) ....... 1

Uwe E. Reinhardt, *The Pricing of U.S. Hospital Services: Chaos Behind a Veil of Secrecy* ....... 1

-iv-
Case No. 4:20-cv-02249-YGR
SMRH:4819-9567-4589.1
MULTIPLAN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
PD.30809144.1

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

Defendant MultiPlan, Inc. ("MultiPlan") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Second Amended Class Action Complaint filed by Plaintiffs, Pacific Recovery Solutions d/b/a Westwind Recovery; Miriam Hamideh PhD Clinical Psychologist Inc. d/b/a PCI Westlake Centers; Bridging the Gaps, Inc., and Summit Estate Outpatient, on behalf of themselves and similarly situated out-of-network behavioral health providers (collectively the "Plaintiffs"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (the "Motion"), as follows:[2]

## INTRODUCTION

The crux of Plaintiffs' Second Amended Class Action Complaint ("SAC") is unchanged from their prior pleadings: they claim that the Defendants, MultiPlan and United Behavioral Health, Inc. ("United"), engaged in various illegal ways to improperly price and pay Plaintiffs for Intensive Outpatient Program ("IOP") treatment they allegedly provided to patients with "health insurance plans" for which United administered claims. Plaintiffs allege that they were always entitled to be paid at a percentage of Usual, Customary and Reasonable Rates ("UCR"), and that, because their full billed charges were generally 100% of UCR, any payment less than what they billed was an underpayment not authorized by the health plans.[3] They further allege that MultiPlan, with MultiPlan's affiliate, Viant, Inc. ("Viant"), which provided pricing methodologies,[4] participated

---

[1] Unless otherwise indicated, all emphasis and alterations are added and all internal quotation marks and citations are omitted.

[2] In the event the Court does not dismiss all of Plaintiffs' claims, MultiPlan reserves all of its rights to oppose class certification.

[3] Full-billed charges, however, are arbitrarily established and inflated "sticker prices" that virtually no one ever pays. *See* Steven I. Weissman, *Remedies for an Epidemic of Medical Provider Price Gouging*, 90 Fla. Bar. J. 22 (Feb. 2016) (recognizing that "*in the healthcare industry, list prices are phony, having no relationship to either costs or value. This fact has been widely reported in national media reflecting public distrust and frustration with the system* . . . .") (emphasis added); Uwe E. Reinhardt, *The Pricing of U.S. Hospital Services: Chaos Behind a Veil of Secrecy*, 25 Health Affairs 57, 63 (2006) (recognizing that "billed charges" are phony and "insincere, in the sense that they would yield truly enormous profits if those prices were actually paid.").

[4] After the Class Action Complaint was dismissed by the Court last August, Plaintiffs retooled their claims and replaced Viant with MultiPlan as a named defendant in the FAC.

with United in an elaborate scheme to systematically underpay Plaintiffs, resulting in damages alleged to be in the millions of dollars.[5]

Plaintiffs' current pleading cannot survive this latest Motion to Dismiss, as its prior pleadings failed to survive the prior Motions to Dismiss, because the SAC still fails to state any claim against MultiPlan upon which relief can be granted. Indeed, while Plaintiffs' SAC contains more than 476 paragraphs of allegations (not including their prayers for relief), none of those allegations sets forth any specific conduct on the part of MultiPlan that meets the requirements of Fed. R. Civ. P. 9(b). Moreover, collectively, they fail to state a plausible claim under Fed. R. Civ. P. 12(b)(6). Finally, taken individually, they fail to state claims upon with relief can be granted because they lack essential elements. Accordingly, and for the reasons set forth more fully below, this Motion should be granted, and the SAC should be dismissed in its entirety and with prejudice.[6]

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to Local Rule 7-4, MultiPlan identifies the following issues that are before the Court for decision in connection with this Motion to Dismiss Plaintiffs' SAC:

1. Should Counts II through V of Plaintiffs' SAC, which are directed against MultiPlan, be dismissed with prejudice because they fail to satisfy the requirements of Fed. R. Civ. P. 9(b), requiring that claims alleging fraud be stated "with particularity"?

2. Should Counts II through V and Count VII, which are directed against MultiPlan, be dismissed with prejudice because they lack plausibility and otherwise fail to state claims for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6)?

The answer to each of these questions is a simple and straightforward "*yes*."

Despite their attempts in the SAC to augment the conclusory allegations of the Initial and First Amended Complaints, Plaintiffs still do not set forth sufficient facts to state a plausible, or

[5] Plaintiffs fail to note that this so-called "scheme" is a legitimate, well-recognized and accepted cost-containment mechanism by which healthcare expenses can be managed, to the benefit of health plans and their participants, and society as a whole.

[6] MultiPlan also refers to, and by such reference, adopts the arguments and authorities raised by co-defendant United in its separate Motion to Dismiss, filed this date.

sufficiently particularized, claim against MultiPlan under statutory or common law. Plaintiffs' failure, after multiple attempts, to remedy the numerous deficiencies identified by the Court in its prior Motion to Dismiss Orders demonstrates not only that Plaintiffs are unwilling or – more likely – unable to articulate the factual details this Court found missing from their prior pleadings (and which are necessary to state a plausible claim against MultiPlan upon which relief may be granted), but also that any further amendment would be futile. Therefore, as was the case with the initial Class Action Complaint (the "Initial Complaint") and the First Amended Class Action Complaint ("First Amended Complaint" or "FAC"), Plaintiffs' SAC should be dismissed – this time in its entirety, with prejudice and without leave to amend – pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## BACKGROUND

### I. Procedural History.

This case has been the subject of significant motion practice since it was first filed in April of 2020, which has resulted in this Court entering two Orders Granting Motions to Dismiss with Leave to Amend: the first, on August 25, 2020 ("MTD Order") [ECF Doc. 61], and the second, on December 18, 2020 ("MTD FAC Order") [ECF Doc. 83]. As a result, Plaintiffs filed their SAC on January 19, 2021. [*See* ECF Doc. 84]. That pleading, which eliminates those claims which the Court has previously dismissed with prejudice, is now limited to California state law claims which, at this point, have not been addressed except for this Court's accepting Defendants' assertion of conflict preemption under ERISA § 514(a), 29 U.S.C. § 1114(a). Pursuant to the Court's dismissal with prejudice of all state law claims that arose out of alleged under-reimbursement of claims covered by ERISA plans, all that should remain are those "state law claims that arise out of the alleged under-reimbursement of claims for IOP services covered by healthcare plans that are *not* subject to ERISA." [MTD FAC Order, at p. 17 (emphasis in original)].[7]

[7] The Court went further with respect to non-ERISA plan claims, "conclud[ing] that the FAC lacks allegations to raise the reasonable inference that the healthcare plans in question fall outside the scope of ERISA. [. . .] Accordingly, in light of the totality of plaintiffs' allegations, the Court cannot conclude at this juncture that plaintiffs' state law claims fall outside the scope of ERISA preemption on the basis that the healthcare plans upon which they depend are not subject to ERISA." [MTD FAC Order, p. 18]. The Court granted Plaintiffs leave to amend with respect to such claims. MultiPlan submits, however, that other than conclusory allegations in the SAC

**II. <u>Plaintiffs' Allegations.</u>**

In the SAC, Plaintiffs allege that they treat patients suffering from mental health and/or substance abuse disorder. [SAC, ¶ 2]. They further allege that they provided IOP services to such patients, each of whom "had United health insurance plans that are not subject to ERISA." [*Id.*, ¶ 5]. But by their own admission, Plaintiffs are "out-of-network" providers and thus do not have a contractual relationship with either of the Defendants. [*Id.*, ¶¶ 40, 79, 384].

Plaintiffs claim, without further elaboration, that "[e]very claim at issue in this litigation was required to be paid at a percentage of the usual and customary ('UCR'); the rate charged by similar providers of the same services in the same geographic location." [*Id.*, ¶ 16]. They further allege that "[e]ach of the claims at issue in this litigation was underpaid," and that "[t]he underpayment directly and proximately damaged Plaintiffs." [*Id.*, ¶¶ 17-18, 376-377].

Plaintiffs then proceed to lay out what, before their RICO claims were dismissed by the Court, the "pattern of racketeering" conducted by the United-MultiPlan "enterprise," but which has now been converted to the "fraudulent scheme" through which "MultiPlan and United have [. . .] conspired together to withhold proper payment for IOP treatment services from plaintiffs." [*Id.*, ¶ 6]. Plaintiffs spend page after page describing what they believe was the illegal scheme carried out by MultiPlan and United. They allege that "Defendants joined together to create and exploit a false and fraudulently manipulated database as an excuse for under-reimbursing Plaintiffs for services provided, to the Defendants' financial benefit." [*Id.*, ¶ 109] They present a tale of "Road Shows," clandestine meetings, "internal non-public Whitepapers," and the "creation of a methodology employed . . . to achieve United's low rates, without regard to actual usual and customary rates. [*Id.*, ¶¶ 112-113, 217-238]. In a lengthy exposition, Plaintiffs describe what they call the "Underpayment Scheme's Mechanics," pointing to various terms and processes such as "FRED," "SAF," "crosswalking," "proxies," "OPR," "target pricing," and "meet or beat price" [*Id.*,

---

stating that their claims are not subject to ERISA, Plaintiffs have failed in the task assigned them by the Court. Indeed, there remains ambiguity on this point in the SAC. [*See* SAC, ¶¶ 245-246, 276-277, 307-308, 338-339]. Accordingly, MultiPlan refers to, and by such reference, incorporates its prior discussions of this issue in the various Memoranda of Points and Authorities it and United each filed concerning the Initial and First Amended Complaints.

¶¶ 140-216], and spinning a web of allegations that they believe shows United and MultiPlan engaged in a concerted effort to defraud Plaintiffs. Nothing could be further from the truth. Instead, the reality is an above-board, legitimate business relationship designed to manage ever-increasing costs of healthcare.

Smoke and mirrors aside, Plaintiffs have failed to suggest a plausible theory explaining why what MultiPlan and United are doing to contain healthcare costs is instead an intentional scheme to defraud Plaintiffs. Equally significantly, Plaintiffs have failed to provide any specific facts regarding the who, what, when, where, or house of the alleged misrepresentations and fraudulent statements that supposedly led to their injuries—an essential element of their state law claims and an absolute requirement of Fed. R. Civ. P. 9(b). They also fail, to show how MultiPlan's and United's legitimate business dealings, which resulted in the payment of every claim submitted [*Id.*, ¶ 7], constitute violations of any law, requiring they be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III. <u>Legal Standards For Motion To Dismiss.</u>

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its own face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility when the plaintiff pleads factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the nonmoving party; however, they need not assume the truth of legal conclusions merely because they are cast in the form of factual assertions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555. Moreover, while "detailed factual allegations" generally are not required, the complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is not sufficient to defeat a motion to dismiss under Rule 12(b)(6).

*Twombly*, 550 U.S. at 555. Nor is a complaint sufficient if it tenders only "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

**B. Federal Rule Of Civil Procedure 9(b)**

Fed. R. Civ. P. 9(b) provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud." To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, a plaintiff must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). A plaintiff must also plead facts explaining why a statement was false when it was made. *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 937–38 (N.D. Cal. 2019).

In the Ninth Circuit, Rule 9(b) applies where a complaint "sounds" or is "grounded" in fraud. *Vess*, 317 F.3d at 1103. This is true where a complaint alleges fraud as an essential element of the claim for relief or where fraud is not a necessary element but the plaintiff alleges what amounts to fraudulent conduct. *Id.* at 1103–04. While the standard is somewhat difficult to apply, the rationale behind it rests on the preference for substance over form: where a complaint alleges conduct which in effect amounts to fraud, defendants are entitled for policy reasons to the enhanced reliability and notice that accompany more detailed pleadings. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). The Ninth Circuit has also recognized that, when a complaint "is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint." *Vess*, 317 F.3d at 1107. "[S]uch dismissals are appropriate," even though "there is no explicit basis in the text of the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* Thus, a motion to dismiss a complaint "under Rule 9(b) for failure to plead

with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

**ARGUMENT**

**I. The SAC Fails to Make Out a Plausible Claim.**

Cutting across all of the allegations in the SAC is one fundamental flaw – Plaintiffs have still failed to present a plausible claim as required by *Twombly/Iqbal* alleging that MultiPlan (or United) has done anything improper or illegal in engaging in above-board, contractual dealings to control excessive healthcare costs. Fed. R. Civ. P. 8(a) requires such a showing; in its absence, the SAC is subject to dismissal under Fed. R. Civ. P. 12(b)(6). *See Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory"); *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *2 (N.D. Cal. April 21, 2020) (Gonzales-Rogers, J.) (same).

Applying the teachings of *Twombly/Iqbal* to the SAC leads to the inevitable conclusion that Plaintiffs have not made out a plausible case in any of the Counts against MultiPlan. First, shorn of all of the "merely legal conclusions" – which, in reality, make up the bulk of Plaintiffs' allegations – the SAC strives mightily to cast MultiPlan and United as focused on nothing but fraud and deception aimed at depriving Plaintiffs of payments at UCR rates for services rendered in order to line their pockets with ill-gotten gains. The alleged "details" regarding pricing policies and mechanisms—discussions of "FRED," "SAF," "OPR," "cross-walking" and "target pricing" – add nothing.

However, when one considers the "obvious alternative explanation" of managed care programs designed and implemented to hold down excessive health care costs for the benefit of plan sponsors, plan participants, and society as a whole, then MultiPlan's and United's conduct appears in a whole new light – a much more plausible one than Plaintiffs' tale of intentional and negligent misrepresentations, conspiracy, racketeering, and anticompetitive conduct.

Other than conclusory and unsupported characterizations – which, again, the Court must disregard – nothing in Plaintiffs' recitation of meetings between MultiPlan and United, or the

exchange of information in whitepapers and other communications, presents a plausible case of wrongdoing. Under *Twombly/Iqbal*, claims based upon such allegations should be dismissed.

## II. Plaintiffs' State Law Claims Are Insufficiently Pled.

### A. Plaintiffs Consistently Fail to Satisfy the Strictures of Fed. R. Civ. P. 9(b) with Respect to the Pleading of Their Fraud-Based Claims.

It is indisputable that several of the causes of action that Plaintiffs assert against MultiPlan allege fraudulent conduct: Count II – Violation of California Business & Professions Code §§ 17200 *et seq.*; Count III – Intentional Misrepresentation/Fraudulent Inducement; Count IV – Negligent Misrepresentation; and Count V – Civil Conspiracy. In some, the reference to fraud is explicit, *e.g.*, Count II, SAC, ¶ 405(d); Count III, SAC ¶¶ 414-418; Count IV, SAC, ¶¶ 432-434; and Count V, SAC, ¶ 439. In prior portions of the SAC, Plaintiffs charge United and MultiPlan with fraud in myriad ways, *e.g.*, SAC, ¶¶ 4, 19, 22-24, 26, 74, 76, 85, 108, 132, 136 ("fraudulent scheme"); 93-94, 108, 114, 214, 231 ("illegal scheme" and "illegal activities"); 72, 85, 138-139, 386 (b)-(e), (l), 369-374 ("made false representations" and "fraudulently represented"); 68, 71, 106-107, 109, 111-113, 183, 185, 224 ("fabricate a fraudulent UCR rate," "create and exploit a false and fraudulently manipulated database," "offered [. . .] pricing tools [. . .] to produce fraudulently depressed payment rates," "partnered to use [. . .] methodology so that the 'UCR' rate produced could be presented as 'independent' and 'defensible'. [. . .] All of this was hyperbole to hide the fraud," as well as other variations); 139, 168, 200, 268, 299, 330, 361 ("United lied," "statement is demonstrably false," "Plaintiffs were [. . .] lied to" and "MultiPlan [. . .] was lying").

When all of these allegations are closely examined, however, one thing is apparent: they are devoid of any specific factual allegations that the meet the Rule 9(b) standard articulated by the Ninth Circuit. As was the case in in the Initial Complaint, in the FAC, and now in the SAC, not one individual on either end of a communication in which an allegedly fraudulent statement was made has been identified. Not one date when such a communication was made has been provided. Nowhere has the exact language used in such a communication been set out. Instead, Plaintiffs simply offer a series of identical "Typical Claims" that purport to demonstrate how each was defrauded. [*See* SAC ¶¶ 248-273, 279-304, 310-335, 341-366]. In each of these vignettes, there

are references to "a United Representative" or to "United's agent," but none to any individual at MultiPlan. Indeed, the only references in these allegations to MultiPlan (or its affiliate Viant) do not involve communications by its personnel with Plaintiffs, but instead simply a description in the Provider Remittance Advice ("PRA") sent by United to the use of the Viant pricing tool, along with a suggestion to the patient to contact Viant if a bill above the "eligible amount" was issued.[8]

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." (emphasis added). But where in any of Plaintiffs allegations are such specifics? Insofar as MultiPlan is concerned – nowhere. As a result, as they relate to MultiPlan, all of Plaintiffs' fraud-based claims are subject to dismissal with prejudice.

**B. The Economic Loss Rule Bars the Misrepresentation Claims (Counts II-V).**

The economic loss rule precludes a plaintiff who suffers only pecuniary injury arising from the conduct of another from recovering those losses in tort; instead, the plaintiff can only recover under the law of contract. *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995); *Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*, 2020 WL 2027955, at *4 (C.D. Cal. Jan. 6, 2020). In this case, Plaintiffs are seeking reimbursement for the alleged underpayment by United of claims submitted for IOP treatment services. Thus, the alleged harms are strictly pecuniary. They arise from healthcare plans administered by United. Plaintiffs have not alleged any harm beyond those economic damages. Plaintiffs' tort claims are therefore subject to dismissal under the economic loss rule. *Id.; see United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1184 (C.D. Cal. 2009) (claims dismissed where allegedly tortious conduct and representations all made pursuant to a purely contractual duty").

**C. Plaintiffs Fail to State a Claim for Statutory Unfair Competition.**

In Count II of the SAC, Plaintiffs assert that MultiPlan has violated the California Business & Professions Code §§ 17200 *et seq.* ("UCL"). To assert a claim for violation of the UCL, a plaintiff must allege facts to plausibly show that the defendant's business act or practice is "(1) unlawful

[8] In other portions of the SAC, some MultiPlan individuals are identified as meeting participants or involved in communications with United; however, they are not alleged to have communicated with Plaintiffs. [*See* SAC, ¶¶ 228-230, 232].

(i.e., is forbidden by law), (2) unfair (i.e., harm to victim outweighs any benefit) or (3) fraudulent (i.e., is likely to deceive members of the public)." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016). A plaintiff asserting fraudulent business practices under the third prong of the UCL must also satisfy the "heightened pleading requirement" of Fed. R. Civ. P. 9(b). *Id.*

Plaintiffs' UCL claim should be dismissed because it fails to set forth with the required specificity how MultiPlan acted unlawfully, unfairly, or fraudulently, or otherwise participated in any alleged misconduct that falls with the reach of the UCL. Absent from the SAC are any allegations identifying, with "reasonable particularity," the "facts supporting the statutory elements of the violation." *See Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993). Therefore, regardless of which prong Plaintiff is relying upon, its conclusory allegations are insufficient to state a UCL claim against Viant under any theory.

"Unlawful" is defined as "an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *ABC Servs. Grp., Inc. v. United Healthcare Servs.*, 2019 WL 4137624, at *20 (C.D. Cal. June 14, 2019). To adequately allege a UCL claim under the "unlawful" prong, a plaintiff must allege sufficient facts to establish an underlying violation of a law. *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006). The SAC fails to identify which of MultiPlan's alleged acts or omissions violated which any particular statutory provisions or to otherwise set forth facts demonstrating how MultiPlan's conduct violated such provisions. Courts have previously found that allegations very similar to those asserted by Plaintiffs in the instant case "are not sufficient to support a claim that Defendants engaged in practices forbidden by law." *ABC Servs. Grp., Inc.*, 2019 WL 4137624at *21. Without any facts to plausibly establish a statutory violation, Plaintiffs' UCL claim cannot survive under the "unlawful" prong.

As to the "unfair" prong, courts have noted that the term "unfair" is not clearly defined in the UCL, and that California courts have articulated three possible tests for determining if an alleged practice is "unfair." *Id.* at *21–22. But like the plaintiff-assignee in that case, Plaintiffs have alleged no facts that would allow this Court to perform any of one those tests. In fact, Plaintiffs do not even allege any specific unfair behavior. Thus, to the extent Plaintiffs are relying on an "unfair" theory of liability, Plaintiffs' UCL claim should be dismissed, as it fails to explain how Defendants acted

unfairly. *See Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*, 2017 U.S. Dist. LEXIS 162863, *9–10 (E.D. Cal. Sept. 29, 2017); *ABC Servs. Grp., Inc.*, 2019 WL 4137624 at *22–23. Further, any claim under the unfairness prong fails because Plaintiffs fail to allege that they were competitors, consumers, or otherwise treated unfairly as prohibited by the UCL. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (rejecting UCL claim where "the alleged victims are neither competitors nor powerless, unwary consumers"); *see also Prime Healthcare Servs.-Shasta, LLC*, 2017 U.S. Dist. LEXIS 162863, at *9–10 (E.D. Cal. Sept. 29, 2017); *ABC Servs. Grp., Inc.*, 2019 WL 4137624 at *8 (dismissing similar UCL claim by substance abuse center)."

Moreover, to the extent Plaintiffs are proceeding under the "fraudulent" prong of the UCL, MultiPlan has already shown that the SAC provides none of the details required under Rule 9(b) to assert such a claim. *See Moss*, 197 F. Supp. 3d at 1198.

Perhaps more importantly, Plaintiffs do not plead sufficient facts to demonstrate that they even have standing to assert a UCL claim under any one of the three prongs. "In addition to pleading facts sufficient to show that the defendant's acts constituted an unlawful, unfair, or fraudulent business practice" under § 17200, a plaintiff asserting a UCL cause of action must "also plead facts sufficient to establish he or she has standing to bring an action under the UCL as amended by Proposition 64," which requires a showing that the plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1253, 1257 (2009). While Plaintiffs allege, pursuant to UCL § 17203, that they are entitled to restitution based on "the UCR […] and the alleged underpayment they received for IOP services provided,"[9] and that MultiPlan should disgorge monies it received from United, this claim does nothing more than simply restate the legal elements necessary to establish standing under the UCL. [*See* SAC, ¶¶ 408-409]. The SAC is completely bereft of any facts to support these conclusory assertions or to otherwise establish Plaintiff's standing, and as such, its UCL claim fails.

[9] Plaintiffs' allegation, as stated, would provide them with a double recovery; apparently, they omitted the all-important "difference between" UCR and what they received.

Finally, because the UCL only provides for equitable relief, a plaintiff alleging a UCL cause of action must establish "that there is no adequate remedy at law available." *See Summit Estate, Inc. v. United Healthcare of Cal., Inc.*, 2017 WL 4517111; 2017 U.S. Dist. LEXIS 167462, *34–36 (N.D. Cal. Oct. 10, 2017). To satisfy this requirement, the complaint "must set forth facts to show the [alleged] breach cannot be adequately compensated for in damages; failing this, it does not state a cause of action." *Id.* at 35. Plaintiffs contend that their legal remedies are inadequate; however, given the other causes of action that clearly allege causes of action that provide legal remedies, this assertion is baseless. Accordingly, Plaintiffs' UCL claim against MultiPlan in Count II must be dismissed.

**D. Plaintiffs Fail to State a Claim for Intentional Misrepresentation or Fraudulent Inducement.**

Under California law, "[f]raud is an intentional tort," and "it is the element of fraudulent intent, or intent to deceive, that distinguishes it from actionable negligent misrepresentation and from nonactionable innocent misrepresentation. It is the element of intent which makes fraud actionable, irrespective of any contractual or fiduciary duty one party might owe to the other." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal. App. 4th 445, 482 (1998). "Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages." *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1008 (2016). Indeed, even assuming that a claimant has relied on an "actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes. If the defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent inducement, causation cannot be alleged and a fraud cause of action cannot be sustained." *Id.*

In addition to the fatal infirmities in Count III of the SAC previously pointed out in connection with MultiPlan's discussion of the Plaintiffs' failure to satisfy the strictures of Rule 9(b), Plaintiffs' claim for intentional misrepresentation/fraudulent inducement proceeds from the premise that MultiPlan and United, rather than attempting to control healthcare costs for the health benefit plans contracted with United, as well as their members, are engaged in a concerted effort to systematically underpay claims from Plaintiffs with the goal to "pocket the difference between the

fair and reasonable price of healthcare (the UCR) and the underpaid amount; [. . .] to retain funds that should have been paid to providers; to eliminate competition between contracting and non-contracting providers; to push non-contracting providers into unfavorable contracts [. . .]; and to avoid liability for the scheme. [. . .]" [*See* SAC, ¶ 142-143]. Plaintiffs further allege that "United knew that their insureds would still receive IOP treatment when they verified rates and gave payment terms, [and] MultiPlan knew that the more money it fraudulently 'saved' United, the more money it would make." [*Id.*, ¶ 419]. And, Plaintiffs allege that "[b]oth United and MultiPlan knew that they were deceiving the Plaintiffs [. . . and] also knew that they would be pushing the more expensive, out-of-network providers out of business." [*Id.*, ¶¶ 421-422]. However, other than these conclusory allegations, Plaintiffs can point to nothing that suggests that MultiPlan made any representation that it knew to be false with the necessary intent. Thus, under the very cases cited by Plaintiffs, [*id.*, ¶ 414], at least three of the five elements needed to establish claims of fraudulent inducement or intentional misrepresentation are missing. Further, under the *Iqbal/Twombly* plausibility standard, Plaintiffs' claims in Count III must fall because they fail to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (deciding whether a complaint contains "sufficient 'factual enhancement' to cross 'the line'" between speculation and plausibility requires a "context-specific" determination that the court must make by "draw[ing] on its judicial experience and common sense").

More plausible, because it is consistent with the actual facts, are the legitimate concerns and efforts undertaken by United, employing MultiPlan to use Viant's pricing methodologies, to reign in the costs associated with providers such as Plaintiffs. As noted previously, Plaintiffs allege that they are entitled to be paid the full amount they bill for every claim submitted because they claim that they never charge anything but UCR. But in reality, this is never true; the whole concept of managed care is necessary to put a check on the charges that providers submit, allowing health benefit plans and their members to receive treatment at more reasonable costs. Indeed, the mechanism that Plaintiffs deride as "beyond 'useful business practices'" is not such at all.

MultiPlan's involvement in that process, both with respect to repricing and negotiation are not intended to, and in fact, do not defraud or intentionally misrepresent anything. Instead, they are intended to implement the goal of ensuring that claims submitted are properly priced, and where such action is warranted, negotiated to ensure that payment is appropriate once United so directs.[10] That MultiPlan receives recompense for providing such services is not the result of fraud or intended to encourage fraud; it is simply part of a legitimate business arrangement. Plaintiffs' attempt to convert this arrangement into something nefarious through their conclusory allegations should not be allowed. Count III of the SAC should be dismissed with prejudice pursuant to Rules 9(b) and 12(b)(6).

**E. Plaintiffs Fail to State a Claim for Negligent Misrepresentation.**

"The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank National Assn.*, 209 Cal. App. 4th 182, 196 (2012). "Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit. If defendant's belief is both honest and reasonable, the misrepresentation is innocent and there is no tort liability." *Diediker v. Peelle Financial Corp.*, 60 Cal. App. 4th 288, 297 (1997). Moreover, "[t]he law is well established that actionable misrepresentations must pertain to past or existing material facts. Statements or predictions regarding future events are deemed to be mere opinions which are not actionable." *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014). Count IV of the SAC appears to be a "tag-along" claim limited to seven paragraphs. It covers the same ground as Count III. Plaintiffs simply assert that there were representations made; that they were not true based on the alleged intent of United and MultiPlan not to live up to them; and that it was United's and MultiPlan's intent that Plaintiffs would rely on the representations

[10] Thus, Plaintiffs received exactly the amounts to which they were entitled; no damages were sustained.

made. Again, nothing is alleged that comes close to the requirements of Rule 9(b). Moreover, Plaintiffs' assertions that United did not intend to pay UCR for IOP services, and that MultiPlan, using the Viant methodology, did not produce an amount equivalent to the "actual" UCR rate (which Plaintiffs fail to identify), are unsupported, conclusory allegations belied by the realities of what was occurring –namely, that United, with MultiPlan's assistance when called upon, was seeking to control costs for the health benefit plans with which United contracted. There is nothing alleged by Plaintiffs to suggest that it is not plausible that, for purposes of this Motion, that MultiPlan did not reasonably believe that any statements made to Plaintiffs were true. Also, the alleged statements point only to future actions, which are not actionable. Under the circumstances, Count IV of the SAC is subject to dismissal with prejudice.

**F. Plaintiffs Fail to State a Claim for Civil Conspiracy.**

Plaintiffs' attempt to hold MultiPlan liable based on the theory of civil conspiracy is equally without merit. Under California law, conspiracy is not an independent cause of action, but "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). The elements of a civil conspiracy claim include: "(1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 708 (N.D. Cal. 2009). In addition, the conspiring defendants must "have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." *Gonzales v. Lloyds TSB Bank*, 532 F. Supp. 2d 1200, 1208 (C.D. Cal. June 7, 2006). Plaintiffs' claims of civil conspiracy are nothing more than cursory, boilerplate-type allegations cast in the form of factual assertions. As the other claims that allege tortious activity are unsustainable, Plaintiffs' claim for civil conspiracy lacks an essential element: an underlying tort. Accordingly, Plaintiffs have failed to state a claim against MultiPlan for civil conspiracy, and Count V of the SAC should be dismissed.

**G. Plaintiffs Fail to State a Claim for Promissory Estoppel.**

The elements for a claim of promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*, 2013 U.S. Dist. LEXIS 53401, *12 (C.D. Cal. Apr. 10, 2013). Plaintiffs' claim fails at the outset, because it does not allege any promise whatsoever on the part of MultiPlan, much less a "clear and unambiguous" promise. Moreover, while Plaintiffs attempt to characterize routine verification and/or preauthorization communications as "a promise to pay," [*see* SAC, ¶¶ 467-468], courts have consistently rejected such arguments, holding that "representations about the terms of certain insurance policies […] do not amount to a clear and unambiguous promise by Defendants to pay for substance abuse treatment services" at the rate set forth in those policies. *See Pac. Bay Recovery*, 12 Cal. App. 5th at 204, 215 n.6.

Finally, even if Plaintiffs had alleged that MultiPlan made a clear and unambiguous promise, its claim would nevertheless fail because Plaintiffs have not pled any facts to establish justifiable reliance. A "party claiming estoppel must specifically plead all facts relied on to establish its elements," and "[o]ne essential element is detrimental reliance by the promisee." *Smith v. City and County of San Francisco*, 225 Cal. App. 3d 38, 48 (1990). Mere conclusory allegations by a plaintiff that it "reasonably and justifiably relied" on alleged promises by a defendant will not suffice. *Id.* Plaintiffs nakedly assert here that "there was a well-established course of conduct where Plaintiffs had been promised reimbursement at the UCR rate and had received payment at the UCR rate; therefore, reliance was reasonable." [SAC, ¶ 471]. But they do not set forth a single fact to support these assertions. *See Gateway Rehab*, 2013 U.S. Dist. LEXIS 53401 at *13–14. As a result, Plaintiffs fail to state a claim for promissory estoppel, and their sixth cause of action must be dismissed with prejudice.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant MultiPlan, Inc., respectfully requests that this Court grant its Motion and dismiss Plaintiff's Second Amended Class Action Complaint in its entirety.

DATED: February 18, 2021

Respectfully submitted,

By: *__/s/ David E. Dworsky__*

Moe Keshavarzi
David E. Dworsky
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone: (213) 620-1780
Fax: (213) 620-1398

and

Errol J. King, Jr. (*admitted pro hac vice*)
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 376-0207
Fax: (225) 381-9197

Attorneys for Defendant MultiPlan, Inc.