Matthew M. Lavin, Esq. (*pro hac vice*)
Aaron R. Modiano, Esq. (*pro hac vice*)
**NAPOLI SHKOLNIK PLLC**
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

David M. Lilienstein, Esq. (CA SBN 218923)
Katie J. Spielman, Esq. (CA SBN 252209)
**DL LAW GROUP**
345 Franklin Street
San Francisco, CA 94102
(415) 678-5050 / Fax (415) 358-8484

*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA - OAKLAND**

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE RECOVERY CENTER, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED BEHAVIORAL HEALTH, INC. a California corporation, and MULTIPLAN, INC., a New York corporation,<br><br>Defendants. | Case No.: 4:20-CV-02249-YGR<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO UNITED BEHAVIORAL HEALTH, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>SAC Filed: January 19, 2021<br><br>Hearing Date:  April 6, 2021<br>Hearing Time:  2:00 p.m.<br>Courtroom:     1 – Fourth Floor |

**Table of Contents**

Table of Contents ........................................................................................................................... i

Table of Authorities ..................................................................................................................... ii

I.     Introduction ....................................................................................................................... 1

II.    Statement of Issues to Be Decided .................................................................................... 1

III.   Summary of Plaintiffs' Position ........................................................................................ 2

IV.    Argument ........................................................................................................................... 2

    a.   Plaintiffs' State Law Claims Are Properly Pled And Apply Only to Non ERISA Insurance Policies ........................................................................................................ 2

    b.   Plaintiffs' Fraud Claims Satisfy Rule 9(b) .................................................................. 2

    c.   Plaintiffs' Breach of Contract and Estoppel Claims Are Properly Pled. .................... 3

    d.   Plaintiffs' UCL Claim Is Proper .................................................................................. 8

V.     Conclusion ........................................................................................................................ 11

**Table of Authorities**

**Cases**

*ABC Servs. Grp. v. United HealthCare Servs., Inc. ("ABC Servs. I")*,
  2019 WL 4137624 (C.D. Cal. June 14, 2019) ................................................................................ 6

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) ......................................................................................... 2

*Biohealth Med. Laboratory, Inc. v. Connecticut Gen. Life Ins. Co.*,
  2016 WL 375012 (S.D. Fla. Feb. 1, 2016), *aff'd in part, vacated in part sub nom. BioHealth Med.
  Laboratory, Inc. v. Cigna Health and Life Ins. Co.*, 706 Fed. Appx. 521 (11th Cir. 2017)
  (unpublished) ............................................................................................................................... 6

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ..................................................................................................... 2

*California Spine and Neurosurgery Inst. v. United Healthcare Ins. Co.*,
  2019 WL 4450842 (N.D. Cal. Sept. 17, 2019) ............................................................................ 5

*Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*,
  118 F. Supp. 2d 1002 (C.D. Cal. 2000) ....................................................................................... 6

*Dillingham-Ray Wilson v. City of L.A.*,
  182 Cal. App. 4th 1396 (2010) .................................................................................................... 7

*Emp'rs Reinsurance Co. v. Superior Court*,
  161 Cal. App. 4th 906, 920 (2008) .............................................................................................. 7

*Enloe Med. Ctr. v. Principal Life Ins. Co.*,
  2011 WL 6396517 (E.D. Cal. Dec. 20, 2011) ............................................................................. 7

*Flintco P., Inc. v. TEC Mgt. Consultants, Inc.*,
  205 Cal. Rptr. 3d 21 (Cal. App. 2d Dist. 2016) ........................................................................... 4

*Goodwest Rubber Corp. v. Munoz*,
  170 Cal. App. 3d 919 (1985) ....................................................................................................... 7

*In re GlenFed, Inc. Securities Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ....................................................................................................... 3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ........................................................................................................ 3

*McKell v. Washington Mut. Inc.*,
  (2006) 142 Cal. App. 4th 1457 ............................................................................................. 8, 10

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009) .................................................................................................. 8

*Omega Hosp., LLC v. United Healthcare Services, Inc.*,
  2017 WL 4228756 (M.D. La. Sept. 22, 2017) ............................................................................ 6

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
  2016 WL 6393503 (N.D. Cal. Oct. 28, 2016) ............................................................................. 3

*Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*,
  228 Cal. App. 4th 644 (2014) ..................................................................................................... 6

*Regents of University of California v. Principal Financial Group*,
  412 F.Supp.2d 1037 (N.D. Cal. 2006) ........................................................................................ 6

*San Mateo Union High Sch. Dist. v. County of San Mateo*,
  152 Cal. Rptr. 3d 530 (Cal. App. 1st Dist. 2013) ....................................................................... 4

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ...................................................................................................... 2

*Sonner v. Premier Nutrition Corp.*,
  917 F.3d 834 (9th Cir. 2020) .................................................................................................... 10

*Summit Estate, Inc. v. United Healthcare Ins. Co.*,
  2020 WL 5436655 (N.D. Cal. Sept. 10, 2020) ......................................................................... 11

*TML Recovery, LLC v. Humana Inc.*,
  2019 WL 3208807 (C.D. Cal. Mar. 4, 2019) .............................................................................. 6

*Vasquez v. Bank of America, N.A.*,
  2013 WL 6001924 (N.D.Cal. Nov. 12, 2013) ............................................................................ 3

*Waldo v. Eli Lilly & Co.*,
  2013 WL 5554623 (E.D. Cal. Oct. 8, 2013) ............................................................................... 4

**Statutes**

Business and Professions Code §§ 17200, *et seq.* ............................................................................ 10

Cal Civ. Code § 1550 .......................................................................................................................... 9

Cal Civ. Code § 1580 .......................................................................................................................... 9

Cal. Civ. Code § 1610 ......................................................................................................................... 6

Cal. Civ. Code § 1611 ......................................................................................................................... 6

California Health & Safety Code § 1371.8 ...................................................................................... 11

California Health & Safety Code § 1374.72 .................................................................................... 11

California Insurance Code § 10144.5 .............................................................................................. 11

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................................ 3

## I. Introduction

Plaintiffs are Providers of substance use disorder treatment. This case specially involves claims for intensive outpatient treatment. The Providers SAC asserts state law claims which arise from gross underpayments of claims for IOP treatment made only for insureds with health insurance policies which are not ERISA plans.

Plaintiffs' Second Amended Complaint ("SAC") (Dkt. 84) followed the guidance given by the Court in its order on the motions to dismiss Plaintiffs' First Amended Complaint (Dkt. 83). The SAC asserts state law causes of action that arise out of the underpayment claims for IOP treatment for patients with non-ERISA healthcare insurance plans, *e.g.*, ACA marketplace plans, student health plans4, certain small employer plans, short-term plans, government employee plans, and church plans (SAC ¶51).

## II. Statement of Issues to Be Decided

Defendant United identified four issues to be decided in its motion to dismiss. Those issues, and Plaintiff's brief responses, are as follows:

1. Whether Plaintiffs lack standing and fail to state a claim regarding services provided to any non-ERISA plan members, because Plaintiffs fail to identify any non-ERISA claims, plans, or members in the SAC- Plaintiff's Response: The SAC alleges that all of the claims at issue in this action arise out of non-ERISA insurance policies (SAC ¶51);

2. Whether Plaintiffs' misrepresentation and civil conspiracy claims fail to satisfy Rule 9(b), because Plaintiffs fail to plead the who, what, when, where, or how/why of any alleged fraudulent statements- Plaintiff's Response: The SAC pleads with requisite detail the particulars of the Defendants fraud and the factual basis for the fraud claims;

3. Whether Plaintiffs' contract and estoppel claims lack sufficient specificity to state a claim- Plaintiff's response: The breach of oral and implied contract causes of action, and the promissory estoppel cause of action, clearly allege the particulars and terms of the agreements entered into and representations made; and,

4. Whether Plaintiffs' claims under the UCL fail because they do not allege facts to support any violations of any of the UCL's prongs or any basis to seek equitable (as opposed to legal) relief-

1  Plaintiff's Response: The SAC alleges the Defendants are actively involved in a fraudulent
2  scheme which violates California law and constitutes an unfair busines practice.

**III. Summary of Plaintiffs' Position**

The SAC clearly apprises Defendants of the factual basis of the state law claims asserted against them. It identifies the Provider Plaintiffs, the relevant time frame, and the type of treatment as IOP only.

By way of example, the SAC also provides the applicable HCPCS Code- H0015 at ¶ 155 of the SAC. When the claims were submitted, the Providers used the industry standard UB-04 claim forms (SAC ¶174) which identify the insured, type of claim, dates of service, HCPCS code and Provider by National Provider Identifier (NPI). The SAC alleges all services at issue were medically necessary(SAC ¶41). These and other facts alleged in the SAC give the Defendants notice of the nature of the claims asserted against them, and the specific factual basis therefore.

**IV. Argument**

    **a. Plaintiffs' State Law Claims Are Properly Pled And Apply Only to Non ERISA Insurance Policies**

The SAC makes it clear that all of the California state law claims remaining at issue in this action arise out of non-ERISA insurance policies (SAC ¶51). As set forth below, Plaintiffs' state law claims are properly pled. Plaintiffs have pled their fraud-based claims with the particularity required under the circumstances in accord with Rule 9(b) and have pled their contract-based and estoppel claims in accord with Rule 8(a).

    **b. Plaintiffs' Fraud Claims Satisfy Rule 9(b)**

Plaintiffs' fraud-based claims satisfy the Rule 9(b) pleading requirements. . *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 935 (N.D. Cal. 2013) (allegations sufficient as "Plaintiffs describe the content of the omission as the failure to inform them that the fees were marked-up and that the majority of the fees ultimately went to Wells

Fargo, and not third-party vendors performing the services.") Rule 9(b) does not require a plaintiff to be omniscient or to provide every conceivable detail; instead, it is satisfied when the defendants have sufficient notice of the conduct in which they are alleged to have engaged. *See, for example, In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 1546 (9th Cir. 1994).

The SAC distinctly lays out the factual basis for the Plaintiffs' fraud-based claims. Further, many of the insufficiencies claimed by United are specifically as to those facts that are uniquely within the possession of United and MultiPlan. *See Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 16-CV-00253-WHO, 2016 WL 6393503, at *8 (N.D. Cal. Oct. 28, 2016) (Rule 9(b) requirements met as to facts uniquely in the possession of the opposing party); *Vasquez v. Bank of America, N.A.*, No. 13–cv–02902–JST, 2013 WL 6001924, at *16 (N.D.Cal. Nov. 12, 2013) (because "more detailed information is uniquely within Defendants' possession, more cannot be expected of Plaintiff in pleading her claim.") When matters are particularly within the opposing party's knowledge, Rule 9(b) permits plaintiffs to plead on information and belief. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015).

Plaintiffs meet this standard with the detailed scheme of Defendants alleged in the SAC. The SAC alleges United represented to the provider Plaintiffs they would be paid based on the UCR, that Multiplan would not be involved in any post-service claim processing, that these representations were false and that United used Multiplan in order to pay unreasonably low amounts not supported by any legitimate data base or methodology, the misrepresentations were made to induce Plaintiffs to provide out of network treatment to United's insureds, Plaintiffs acted in reliance on the misrepresentations by admitting and treating the United patients, and Plaintiffs have been damaged by the severe underpayments (For example, please see SAC at paragraphs 376-382).

The SAC goes into great detail in identifying the fraudulent scheme the Defendants are participating in, the role of each Defendant, and the misrepresentations made by each Defendant. It is respectfully submitted that Multiplan knows exactly the factual basis for the fraud causes of action asserted against it and that those causes of action are factually and legally supported by the allegations of the complaint.

    **c.  Plaintiffs' Breach of Contract and Estoppel Claims Are Properly Pled.**

The essential elements of a claim of breach of contract, whether express or implied, are the contract, performance, defendant's breach, and resulting damages to plaintiff. *See San Mateo Union High Sch. Dist. v. County of San Mateo*, 152 Cal. Rptr. 3d 530, 548 (Cal. App. 1st Dist. 2013). Plaintiffs breach of oral and implied contract claims allege that United promised to reimburse Plaintiffs for IOP treatment at the UCR.

"The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Flintco P., Inc. v. TEC Mgt. Consultants, Inc.*, 205 Cal. Rptr. 3d 21, 26 (Cal. App. 2d Dist. 2016) (internal quotation omitted). Plaintiffs claim for promissory estoppel alleges that Plaintiffs reasonably relied upon United's representations that they would be paid UCR for the IOP services that they provided to United's insureds.

These claims are subject to the Rule 8(a) pleading requirements, not Rule 9(b). The SAC meets this standard and alleges far more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "[t]o require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments…would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). Also, "as the court may rely on counsel's certification as to the likelihood of evidentiary support for any allegations pled on information and belief, it appears reasonable to grant such allegations the benefit of the doubt—so long as they are non-conclusory." *Waldo v. Eli Lilly & Co.*, CIV. S-13-0789 LKK, 2013 WL 5554623, at *5 (E.D. Cal. Oct. 8, 2013). Plaintiffs allegations as to non-ERISA plans satisfy this.

United is already in possession of the very information it claims is lacking in Plaintiffs' SAC. Every claim at issue in this litigation was submitted electronically using standardized UB-04 forms to United. (SAC ¶ 171). As such, every claim that Plaintiffs submitted to United included the Plaintiffs' unique National Provider Identifier ("NPI") numbers and the standardized billing codes for IOP treatment and this information was sent by United to MultiPlan (SAC ¶ 188). As the

administrator of all of the healthcare plans for all of the claims at issue and those that have been dismissed, United knows which of plans are ERISA plans and which are not. United's own records contain the specific information as to IOP treatment provided to United's insureds with non-ERISA plans. United also knows which of these claims it sent to MultiPlan for repricing and underpayment (SAC ¶¶ 262-264). As such, the exact universe of claims and Plaintiffs' damages are readily accessible to United. Moreover, despite Plaintiffs' repeated requests to United's agents during patient admission asking whether the patients' plans were ERISA plans, that information was not shared (SAC ¶ 284). United now inappropriately seeks to use its own refusal to provide this information to Plaintiffs as both a sword and a shield.

By alleging their 'typical' processes for admitting patients and submitting claims (SAC ¶¶ 248-273, 279-304, 310-335, 341-366) and that the processes were substantially the same regardless of the particular plan (SAC ¶¶ 246, 277, 308, 339), Plaintiffs have alleged the acts that formed the contracts. Similarly, the process for admitting patients properly alleges the promises made to Plaintiffs and upon which they relied.

By United representing that it would pay a rate based on UCR, a known term in the industry and understood by all parties (SAC ¶ 43), the parties agreed on a method by which the price, the amount Plaintiffs would be reimbursed, would be objectively determined. That is an appropriate consideration for a contract as recognized in Cal. Civ. Code § 1610 which states, "[w]hen a consideration is executory, it is not indispensable that the contract should specify its amount or the means of ascertaining it. It may be left to the decision of a third person, or regulated by any specified standard."

Even if the parties had not agreed to UCR, Cal. Civ. Code § 1611 would apply to determine the amount of consideration owed to Providers based on what their services were "reasonably worth." *California Spine and Neurosurgery Inst. v. United Healthcare Ins. Co.*, 19-CV-02417-LHK, 2019 WL 4450842, at *4 (N.D. Cal. Sept. 17, 2019). As Judge Koh stated in *California Spine*:

> In this way, the instant action closely mirrors *Summit Estate, Inc. v. Cigna Healthcare of California, Inc.*, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017). In *Summit*, the plaintiff's complaint alleged that the defendants "advised" plaintiff that "[d]efendants would pay for treatment at the usual, reasonable and customary rate." 2017 WL 4517111, at *3. The court determined that this was sufficient to state a claim for both

PRS, *et al*. v. UNITED *et al*. - PLAINTIFFS' OPPOSITION TO UNITED' MOTION TO DISMISS
4:20-CV-02249-YGR

breach of implied contract and breach of oral contract. Id. at *4. Other cases have reached similar conclusions.
*Id* at *4.

As such, the Article III standing arguments raised by United (Mot. pp. 6-7) simply do not apply as the amount of damages sought by Plaintiffs can easily and readily be determined by United.

United's citation to an unpublished, out-of-circuit decision from the Middle District of Louisiana, *Omega Hosp., LLC v. United Healthcare Services, Inc.*, 2017 WL 4228756 (M.D. La. Sept. 22, 2017), that is neither precedential nor binding, does not apply to the present litigation as it addresses United's process for recovering alleged overpayments and does not assert claims for breach of contract or promissory estoppel. The similarly unpublished, out-of-circuit decision from the Southern District of Florida, *Biohealth Med. Laboratory, Inc. v. Connecticut Gen. Life Ins. Co.*, 2016 WL 375012 (S.D. Fla. Feb. 1, 2016), *aff'd in part, vacated in part sub nom. BioHealth Med. Laboratory, Inc. v. Cigna Health and Life Ins. Co.*, 706 Fed. Appx. 521 (11th Cir. 2017) (unpublished) similarly does not apply as in that case the claims at issue could not be determined. Also, neither of these matters assert that the plaintiffs specifically asked the plan administrator whether the patients' plans were subject to ERISA before providing services.

United's reliance on *TML Recovery, LLC v. Humana Inc.*, 2019 WL 3208807 (C.D. Cal. Mar. 4, 2019); *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002 (C.D. Cal. 2000); *ABC Servs. Grp. v. United HealthCare Servs., Inc. ("ABC Servs. I")*, 2019 WL 4137624 (C.D. Cal. June 14, 2019); and *Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*, 228 Cal. App. 4th 644 (2014) are all readily distinguished. Plaintiffs have made more than conclusory statements as to the representations, communications, and promises that were made. Further, Plaintiffs have specifically alleged the methodology required to be used in determining payment amounts and how it was not done.

Under California law, communications like those described in the SAC may form the basis for contract-based and promissory estoppel causes of action. *See*, *e.g.*, *Regents of University of California v. Principal Financial Group* 412 F.Supp.2d 1037 (N.D. Cal. 2006) (insurer demonstrated intent to be bound to pay health care provider because insurer verified coverage and authorized treatment on multiple occasions); *Enloe Medical Center v. Principal Life Ins. Co.*, No. CIV S-10-2227 KJM) 2011

WL 6396517 (E.D. Cal., Dec. 20, 2011) (stating that "in some instances, a contract may be created on an authorization call"). The representations of coverage that Anthem made to Coastline at the verification of benefits stage and the authorization stage formed a clear agreement, mutually understood by both parties, in satisfaction of California's requirements for contract formation. Cal Civ. Code §§ 1550, 1580.

By representing to Plaintiffs that they would be paid UCR, United stated the specific amount it would pay. UCR is a certain and well-known industry term, analogous to the concept of Fair Market Value in the other industries. In *Goodwest Rubber Corp. v. Munoz* 170 Cal. App. 3d 919 (1985), 921, the court held that "Fair Market Value" was a certain enough price or method to determine consideration to support an action for specific performance. As stated in the SAC, the parties previously had a lengthy course of dealing leading with one another where Plaintiffs *were* being paid UCR, and all parties understood the contract price, UCR.

In California, course of dealing can be used to establish contract price. *See Dillingham-Ray Wilson v. City of L.A.*, 182 Cal. App. 4th 1396, 1404, 106 Cal. Rptr. 3d 691, 698 (2010)(evidence of course of dealing was admitted to establish a contract price); *Emp'rs Reinsurance Co. v. Superior Court*, 161 Cal. App. 4th 906, 920, 74 Cal. Rptr. 3d 733, 744 (2008)(same). Here, the course of dealing between Anthem and Coastline meant that both parties knew exactly what was meant by the "Usual, Customary and Reasonable Price."

Distinguishing the present case from those cited by United, United agreed to be bound and promised to pay in *both* the verification of benefits calls that Plaintiff conducted *and* the authorization process, as alleged in the SAC. United's promise to pay was unambiguous. Finally, any dispute as to the content of specific authorization and verification of benefits calls is a factual matter, not proper for disposition on the pleadings.

Further, verification communications may form the basis for promissory estoppel. *See, e.g.*, *Regents of the Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) (concluding that insurer demonstrated intent to be bound to pay health care provider because insurer verified coverage and authorized treatment on multiple occasions); *Enloe Med. Ctr. v. Principal Life Ins. Co.*, 2011 WL 6396517 at *6 (E.D. Cal. Dec. 20, 2011) As such, the allegations in Plaintiffs' Complaint are sufficient and amount to more than "routine verification and/or preauthorization

- 7 -

PRS, *et al*. v. UNITED *et al*. - PLAINTIFFS' OPPOSITION TO UNITED' MOTION TO DISMISS
4:20-CV-02249-YGR

1  communications" as in the cases cited by United.

2  Additionally, the single throw-away line that United devotes to arguing that Plaintiff Bridging
3  the Gaps claim for promissory estoppel fails based on Virginia law is insufficient as a matter of legal
4  argument. United is a California corporation subject to the laws of the State of California (SAC ¶31)
5  and United has not raised any argument as to why this Court should apply Virginia law.

6  In all of the claims, the need for the services and/or medical necessity of those services is not
7  in dispute, only the methodology that led to underpayment. Based on their prior course of dealing
8  and the assurances that were made to Plaintiffs on the VOB and authorization calls, it was reasonable
9  for Plaintiffs to rely on the representations and promises that were made to them. As such, those
10 promises should be honored and United should not be permitted to underpay Plaintiffs.

### d.  Plaintiffs' UCL Claim Is Proper

United attacks the UCL claim for violation of California's unfair competition law, set forth in Business and Professions Code §§ 17200, *et seq*. for various reasons, including that Plaintiffs' have not satisfied any of the three prongs of the UCL.

The UCL prohibits unlawful, unfair, and fraudulent business practices. A "business practice need only meet one of the three criteria to be considered unfair competition." *McKell v. Washington Mut. Inc*. (2006) 142 Cal. App. 4th 1457, 1471.

Defendant suggests that the UCL claims are inadequate because they do not show an unlawful, unfair or fraudulent business practice. However, the SAC alleges at page 55, lines 20-28, that Defendant engaged in unlawful and/or unfair conduct by violating California Health & Safety Code section 1371 and pleads Defendants violation of California Code of Regulations section 1300.71. .

The SAC clearly satisfies the fraud prong of a UCL claim in that it pleads multiple fraud causes of action showing that Defendants have engaged in a fraudulent business practice. "A fraudulent business practice is one in which members of the public are likely to be deceived." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) (citation and internal quotation marks omitted). To be actionable under the UCL, a representation may be untrue, or it "may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell*, 142 Cal. App. 4th at 1471. "A perfectly true statement couched in such a manner that it is likely to mislead or deceive

the consumer, such as by failure to disclose other relevant information, is actionable under" the UCL. *Id.* (citation omitted).

The SAC alleges that Defendants acted unfairly by deceptively by inducing the Providers to treat numerous insureds. Through the Defendants course of conduct, including its confirmation of coverage and representations of payment rates, Providers were encouraged to treat and continue to provide treatment, and misled by Defendants into believing that it would be properly reimbursed for their services. Defendants did not disclose relevant information, namely, that it would refuse to fully pay based on the UCR. These allegations are sufficient to state a claim for deceptive business practices.

Assessing the UCL claim in *Bias* this Court stated, "At this juncture, the Court need only determine whether the allegations, taken as true, state a plausible claim. Given the nature of the alleged scheme, the Court finds that Plaintiffs' allegations of Wells Fargo's conduct, as pled, satisfy the second test, namely the conduct is plausibly immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. As to the third test, the Court cannot find as a matter of law that the supposed benefits outweigh Plaintiffs' injuries." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013) (internal citations omitted).

Although it does not identify standing to make a UCL claim as an issue in its statement of issues to be decided, United claims Plaintiffs lack standing to assert a UCL claim. Plaintiffs allege sufficient standing in the SAC.

The standing requirement for a UCL claim is codified in Business and Professions Code § 17204 which states in part that a private Plaintiff must show that it: "suffered injury in fact and has lost money or property as a result of the unfair competition."

In *Day v. Alta Bates Medical Center* (2002) 98 Cal.App. 3rd 243, 248 the California Supreme Court discussed the standing requirement, sating as follows:

> "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. (See, e.g., *Hall v. Time Inc., supra,* 158 Cal.App.4th at pp. 854-855, 70 Cal.Rptr.3d 466 [cataloguing some of the various forms

of economic injury].) Neither the text of Proposition 64 nor the ballot arguments in support of it purport to define or limit the concept of " lost money or property," nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm. It suffices to say that, in sharp contrast to the state of the law before passage of Proposition 64, a private plaintiff filing suit now must establish that he or she has personally suffered such harm." [Underlining Added]

The SAC alleges Providers were treated unfairly and suffered an injury in fact. They provided services worth much more that the fractional amount paid and would not have entered into agreements to treat United's insureds had United truthfully and fairly and disclosed its true intent to pay well below UCR. The SAC satisfies the fraud prong of a UCL claim in that it pleads multiple fraud causes of action showing that United has engaged in a fraudulent business practice intended to deceive. 1471.

United cites *Sonner v. Premier Nutrition Corp*., 917 F.3d 834, 844 (9th Cir. 2020) for the proposition that Plaintiffs' have not established there is no adequate remedy at law. In *Sonner*, the plaintiff attempted, well after the close of pleadings on the eve of trial, do drop all of its viable claims in place of a UCL claim.  A similar argument to Defendant's based on *Sonner* was recently made and rejected by the court in *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig*., 2020 U.S. Dist. LEXIS 197766 at *223 (N.D. Cal. Oct. 23, 2020). The FAC clearly alleges that Plaintiffs lack an adequate legal remedy as to both Defendants at ¶¶ 473 and 482. It is also clear that Plaintiffs legal claims (which are vigorously contested by United in this motion and undoubtedly in the future) are not coextensive with the requested equitable injunctive relief which relates to future conduct by United and MultiPlan, as alleged in the SAC.

Plaintiffs are entitled to plead alternative and even inconsistent causes of action. United disputes the validity of all of Plaintiffs' claims, both those with associated legal remedies and those requesting equitable relief. The assertion that Plaintiffs cannot seek an equitable remedy as Plaintiffs' other causes of action seek legal remedies has been recently rejected by this Court where it stated, "[t]he Court concludes that allowing a plaintiff to plead a claim for injunctive relief under the UCL in the alternative to claims for legal remedies is consistent with the broad remedial purpose of the UCL, and is also consistent with Section 17205 of the UCL, which provides that UCL remedies are "cumulative" to other available remedies." *Summit Estate, Inc. v. United Healthcare Ins. Co.*, No.

4:19-CV-06724 YGR, 2020 WL 5436655, at *9 (N.D. Cal. Sept. 10, 2020). The same result is appropriate here.

It is important to keep in mind that the SAC alleges the Defendants are engaged in a continuing course of fraudulent conduct that will not stop until a court intervenes (SAC ¶19).

## V.  Conclusion

By reason of the foregoing, it is respectfully submitted that the motion to dismiss should be denied. If the court is inclined to sustain any part of the motion, Plaintiffs respectfully request leave to amend.

Dated: March 4, 2021

**NAPOLI SHKOLNIK PLLC**

/s/ *Matthew M. Lavin*
Matthew M. Lavin
Aaron R. Modiano

**DL LAW GROUP**

/s/ *David. M. Lilienstein*
David M. Lilienstein
Katie J. Spielman

*Attorneys for Plaintiffs*