Matthew M. Lavin, Esq. (*pro hac vice*)
Aaron R. Modiano (*pro hac vice*)
**NAPOLI SHKOLNIK PLLC**
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

David M. Lilienstein, Esq. (CA SBN 218923)
Katie J. Spielman, Esq. (CA SBN 252209)
**DL LAW GROUP**
345 Franklin Street
San Francisco, CA 94102
(415) 678-5050 / Fax (415) 358-8484

*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA - OAKLAND**

| | |
|---|---|
| PACIFIC RECOVERY SOLUTIONS d/b/a WESTWIND RECOVERY, MIRIAM HAMIDEH PHD CLINICAL PSYCHOLOGIST INC. d/b/a PCI WESTLAKE CENTERS, BRIDGING THE GAPS, INC., SUMMIT ESTATE RECOVERY CENTER, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>UNITED BEHAVIORAL HEALTH, INC. a California corporation, and MULTIPLAN, INC., a New York corporation,<br><br>Defendants. | Case No.: 4:20-CV-02249-YGR<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO MULTIPLAN, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>SAC Filed: January 19, 2021<br><br>Hearing Date: April 6, 2021<br>Hearing Time: 2:00 p.m.<br>Courtroom: 1 – Fourth Floor |

# Table of Contents

Table of Contents ........................................................................................................................... i

Table of Authorities ..................................................................................................................... ii

I.   Introduction ......................................................................................................................... 1

II.  Statement of Issues to Be Decided ...................................................................................... 1

III. Summary of Plaintiffs' Position .......................................................................................... 2

IV.  Argument ............................................................................................................................ 2

    A.   Plaintiffs' State Law Claims Are Properly Pled ........................................................ 2

    B.   Plaintiffs' Fraud Claims Satisfy Rule 9(b) ................................................................. 2

    C.   Plaintiffs' Fraud-Based Claims Are Sufficiently Detailed and Adequately Pled .................. 5

    D.   The Economic Loss Rule Does Not Apply to Plaintiffs' Fraud-Based Claims ..................... 6

    E.   Plaintiffs' Properly Assert UCL Claims ..................................................................... 9

    F.   Plaintiffs' Negligent Misrepresentation Claim Is Proper ........................................ 11

    G.   Plaintiffs' Properly Allege Civil Conspiracy ........................................................... 11

    H.   Plaintiffs' Promissory Estoppel Claim Is Proper .................................................... 12

V.   Conclusion ........................................................................................................................ 14

**Table of Authorities**

**Cases**

*Apollo Grp., Inc. v. Avnet, Inc.*,
  58 F.3d 477 (9th Cir. 1995) .................................................................................................. 9

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .................................................................................................. 7

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) .................................................................................. 3

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) .............................................................................................. 3

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) .............................................................................................. 5

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) .................................................................................. 7

*Enloe Med. Ctr. v. Principal Life Ins. Co.*,
  2011 WL 6396517 (E.D. Cal. Dec. 20, 2011) .................................................................... 13

*Fleet v. Bank of Am N.A.*,
  (2014) 229 Cal App 4th 1403 ........................................................................................ 12

*Goodwest Rubber Corp. v. Munoz*
  (1985) 170 Cal. App. 3d 919 .............................................................................................. 14

*Hinton v. Trans Union, LLC*,
  654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) ................... 1

*In re GlenFed, Inc. Securities Litig.*,
  42 F.3d 1541 (9th Cir. 1994) .................................................................................................. 3

*Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*,
  23 Cal. 4th 305 (2000) ........................................................................................................ 12

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ............................................................................................ 3, 6

*McKell v. Washington Mut. Inc.*
  (2006) 142 Cal. App. 4th 1457 ....................................................................................... 9, 10

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235, 1254 (2009) .................................................................................. 9

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
   2016 WL 6393503 (N.D. Cal. Oct. 28, 2016) .................................................................. 3, 6

*Pacific Bay Recovery, Inc. v. California Physicians Services, Inc.*,
   (2017) 12 Cal.App. 5th 200 ............................................................................................... 13

*Regents of the Univ. of Cal. v. Principal Fin. Grp.*,
   412 F. Supp. 2d 1037 (N.D. Cal. 2006) ............................................................................ 13

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) .......................................................................................... 3, 5

*Summit Estate, Inc. v. United Healthcare Ins. Co.*,
   2020 WL 5436655 (N.D. Cal. Sept. 10, 2020) ................................................................. 11

*Vasquez v. Bank of America, N.A.*,
   2013 WL 6001924 (N.D.Cal. Nov. 12, 2013) ................................................................. 3, 6

*Waldo v. Eli Lilly & Co.*,
   2013 WL 5554623 (E.D. Cal. Oct. 8, 2013) ..................................................................... 13

*Youngman v. Nevada Irrigation Dist.*,
   70 Cal. 2d 240 (1969) ...................................................................................................... 12

**Statutes**

Business and Professions Code §§ 17200, *et seq*. ........................................................................ 9

California Health & Safety Code § 1371.8 .................................................................................... 9

California Health & Safety Code § 1374.72 .................................................................................. 9

California Insurance Code § 10144.5 ............................................................................................. 9

**Rules**

Fed. R. Civ. P. 10(c) ....................................................................................................................... 1

Fed. R. Civ. P. 9(b) ......................................................................................................................... 3

## I. Introduction

Plaintiffs are Providers of substance use disorder treatment. This case specially involves claims for intensive outpatient treatment. The Providers SAC asserts state law claims which arise from gross underpayments of claims for IOP treatment made only for insureds with health insurance policies which are not ERISA plans.

Plaintiffs' Second Amended Complaint ("SAC") (Dkt. 84) followed the guidance given by the Court in its order on the motions to dismiss Plaintiffs' First Amended Complaint (Dkt. 83). The SAC asserts state law causes of action that arise out of the underpayment claims for IOP treatment for patients with non-ERISA healthcare insurance plans, *e.g.*, ACA marketplace plans, student health plans4, certain small employer plans, short-term plans, government employee plans, and church plans (SAC ¶51).

MultiPlan's request that this Court permit them to adopt and incorporate the arguments raised in all four of their and United's prior motions to dismiss (Mot. Pgs. 2-4, Fn 7) is without basis and should be rejected. While Fed. R. Civ. P. 10(c) permits a statement in a pleading to be incorporated by reference, there is no such provision for adopting earlier, ruled upon, motions to dismiss directed at previous Complaints. Plaintiffs' Second Amended Complaint ("SAC") [Dkt. 74] does not incorporate the prior complaints. It has been held impermissible under Rule 10(c) for an amended pleading to incorporate, wholesale, a previous pleading. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 447 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).

Further, as MultiPlan seeks to adopt the arguments of defendant United (Mot. p. 2 fn 6), Plaintiffs adopt and incorporate the positions set forth in their opposition to United's motion.

## II. Statement of Issues to Be Decided

Defendant MultiPlan identified two issues to be decided in its motion to dismiss. Those issues, and Plaintiff's brief response, are as follows:

1. Should Counts II through V of Plaintiffs' SAC, which are directed against MultiPlan, be dismissed with prejudice because they fail to satisfy the requirements of Fed. R. Civ. P. 9(b), requiring that claims alleging fraud be stated "with particularity"? - Plaintiff's Response: The SAC pleads with requisite detail the particulars of the Defendants fraud and the factual basis for the fraud claims

2. Should Counts II through V and Count VII, which are directed against MultiPlan, be dismissed with prejudice because they lack plausibility and otherwise fail to state claims for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6)? - Plaintiff's Response: The SAC alleges the Defendants are actively involved in a fraudulent scheme which violates California law and constitutes an unfair busines practice. It also clearly alleges the factual basis for conspiracy and promissory estoppel claims.

### III.    Summary of Plaintiffs' Position

The SAC clearly apprises Defendants of the factual basis of the state law claims asserted against them. It identifies the Provider Plaintiffs, the relevant time frame, and the type of treatment as IOP only.

By way of example, the SAC also provides the applicable HCPCS Code- H0015 at ¶ 155 of the SAC. When the claims were submitted, the Providers used the industry standard UB-04 claim forms (SAC ¶174) which identify the insured, type of claim, dates of service, HCPCS code and Provider by National Provider Identifier (NPI). The SAC alleges all services at issue were medically necessary(SAC ¶41). These and other facts alleged in the SAC give the Defendants notice of the nature of the claims asserted against them, and the specific factual basis therefore.

### IV.    Argument

#### A.  Plaintiffs' State Law Claims Are Properly Pled

The SAC makes it clear that all of the California state law claims remaining at issue in this action arise out of non-ERISA insurance policies (SAC ¶51). As set forth below, Plaintiffs' state law claims are properly pled. Plaintiffs have pled their fraud-based claims with the particularity required under the circumstances in accord with Rule 9(b) and have pled their contract-based and estoppel claims in accord with Rule 8(a).

#### B.  Plaintiffs' Fraud Claims Satisfy Rule 9(b)

Plaintiffs' fraud-based claims satisfy the Rule 9(b) pleading requirements. . *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen*

1  *v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 935
2  (N.D. Cal. 2013) (allegations sufficient as "Plaintiffs describe the content of the omission as the failure
3  to inform them that the fees were marked-up and that the majority of the fees ultimately went to Wells
4  Fargo, and not third-party vendors performing the services.") Rule 9(b) does not require a plaintiff to
5  be omniscient or to provide every conceivable detail; instead, it is satisfied when the defendants have
6  sufficient notice of the conduct in which they are alleged to have engaged. *See, for example, In re*
7  *GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 1546 (9th Cir. 1994).

8  　　　The SAC distinctly lays out the factual basis for the Plaintiffs' fraud-based claims. Further,
9  any insufficiencies claimed by MultiPlan are specifically as to those facts that are uniquely within the
10 possession of United and MultiPlan. *See Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 16-CV-
11 00253-WHO, 2016 WL 6393503, at *8 (N.D. Cal. Oct. 28, 2016) (Rule 9(b) requirements met as to
12 facts uniquely in the possession of the opposing party); *Vasquez v. Bank of America, N.A.*, No. 13–
13 cv–02902–JST, 2013 WL 6001924, at *16 (N.D.Cal. Nov. 12, 2013) (because "more detailed
14 information is uniquely within Defendants' possession, more cannot be expected of Plaintiff in
15 pleading her claim.") When matters are particularly within the opposing party's knowledge, Rule 9(b)
16 permits plaintiffs to plead on information and belief. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells*
17 *Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015).

18 　　　Plaintiffs meet this standard with the detailed scheme alleged in the SAC. The SAC alleges
19 United represented to the provider Plaintiffs they would be paid based on the UCR, that Multiplan
20 would not be involved in any post-service claim processing, that these representations were false and
21 that United used Multiplan in order to pay unreasonably low amounts not supported by any legitimate
22 data base or methodology, the misrepresentations were made to induce Plaintiffs to provide out of
23 network treatment to United's insureds, Plaintiffs acted in reliance on the misrepresentations by
24 admitting and treating the United patients, and Plaintiffs have been damaged by the severe
25 underpayments (SAC ¶¶ 376-382).

26 　　　MultiPlan's "obvious alternative explanation" (Mot. Pg. 7). is anything but. As alleged at
27 length in the SAC, the United and MultiPlan conspired to create a complicated healthcare claim
28 repricing mechanism to systematically and illegally underpay invoices submitted to them by the

Plaintiffs and other healthcare providers. MultiPlan claims that its activities consist of no more than 'cost-containment efforts' that are 'well-recognized and accepted' (Mot. Pg. 2). Nothing in Plaintiffs' allegations supports this conclusion. United and MultiPlan have formed an ongoing scheme to underpay out-of-network IOP providers s such as Plaintiffs. (SAC ¶¶ 21-26). United and Multiplan exploit their contractual arrangements to provide a fig leaf of legitimacy for their fraudulent activity. Multiplan implements the fraudulent Data iSight methodology and profits from the fraud by receiving a cut of the money that United illegally retains. (SAC ¶ 166).

MultiPlan's claims to 'legitmacy' are questionable, at best. MultiPlan's inherent conflicts with patients and providers have regained national attention, particularly after Multiplan was taken public in July 2020 by its consecutive fifth private equity owner. On November 11, 2020, after the filing of this Compliant, Muddy Waters Research LLC, a well-respected securities due diligence research and analysis firm based in San Francisco, released a 14-page report, "Multiplan: Private Equity Necrophilia Meets The Great 2020 Money Grab[1]" based on interviews with former MultiPlan executives, the report raised many of the same issues as this lawsuit. Of particular note are the following excerpts:

> In our view, which we believe is shared in the health insurance industry, MPLN [Multiplan] is not on "right side of healthcare". Rather, **it is a conflicted middleman that actually profits when [patients] are regularly stuck with balance bills**. (Pg. 2) (bolding added)

> **United customers [health insurers] described MPLN's fee structure as a "scam".** We learned from two former MPLN executives and a MPLN customer that **MPLN's billing model may enable it to get paid more per claim than the healthcare providers whose bills it reprices.** We understand that major insurers have forced MPLN to reduce its take rate in recent years, in some cases reportedly cutting MPLN's take rate from 12% to 6% of "savings". MPLN has not disclosed this development in its bullish presentations. (Pg. 3-4) (bolding added)

> [T]he problem with MPLN is that the company stopped giving customers the level of service that they wanted several years ago, as private equity firms were looting the business for cash. (Pg. 7).

> Though MPLN contends it is "on the right side of healthcare", our discussions with former executives and customers revealed a company whose interests' conflict with those of its clients... (Pg. 7).

---

[1] https://d.muddywatersresearch.com/content/uploads/2020/11/MW_MPLN_11112020.pdf (last accessed 11/24/2020)

Neither United nor MultiPlan are "on the right side of healthcare." United, for example, has an established record track record of fabricating illegally low reimbursement rates going back to the *Ingenix* litigation (SAC ¶¶ 94-107) which resulted in the largest health insurance settlement in history. Multiplan itself is likewise currently a defendant in dozens of actions (or more) across the country where it stands accused of illegally underpaying healthcare claims.

The SAC goes into great detail in identifying the fraudulent scheme the Defendants are participating in, the role of each Defendant, and the misrepresentations made by each Defendant. It is respectfully submitted that Multiplan knows exactly the factual basis for the fraud causes of action asserted against it and that those causes of action are factually and legally supported by the allegations of the complaint.

### C. Plaintiffs' Fraud-Based Claims Are Sufficiently Detailed and Adequately Pled

Fraud claims are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 935 (N.D. Cal. 2013) (allegations sufficient as "Plaintiffs describe the content of the omission as the failure to inform them that the fees were marked-up and that the majority of the fees ultimately went to Wells Fargo, and not third-party vendors performing the services.") Plaintiffs have gone into great detail to meet the fraud pleading standards.

The SAC distinctly lays out the factual basis for the Plaintiffs' fraud-based claims. Further, many of the insufficiencies claimed by United are specifically as to those facts that are uniquely within the possession of United and MultiPlan. *See Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 16-CV-00253-WHO, 2016 WL 6393503, at *8 (N.D. Cal. Oct. 28, 2016) (Rule 9(b) requirements met as to facts uniquely in the possession of the opposing party); *Vasquez v. Bank of America, N.A.*, No. 13–cv–02902–JST, 2013 WL 6001924, at *16 (N.D.Cal. Nov. 12, 2013) (because "more detailed information is uniquely within Defendants' possession, more cannot be expected of Plaintiff in pleading her claim.") When matters are particularly within the opposing party's knowledge, Rule 9(b)

permits plaintiffs to plead on information and belief. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015).

Plaintiffs meet this standard with the detailed scheme alleged in the SAC. The SAC alleges the provider Plaintiffs were promised that they would be paid based on the UCR, that Multiplan would not be involved in any post-service claim processing, that these representations were false and that United used Multiplan in order to pay unreasonably low amounts not supported by any legitimate data base or methodology, the misrepresentations were made to induce Plaintiffs to provide out of network treatment to United's insureds, Plaintiffs acted in reliance on the misrepresentations by admitting and treating the United patients, and Plaintiffs have been damaged by the severe underpayments (SAC ¶¶ 172, 173, 178, 197, 204, 211, 218).

The SAC goes into great detail in identifying the fraudulent scheme the Defendants are participating in, the role of each Defendant, and the misrepresentations made by each Defendant. It is respectfully submitted that Multiplan knows exactly the factual basis for the fraud causes of action asserted against it and that those causes of action are factually and legally supported by the allegations of the complaint.

**D.  The Economic Loss Rule Does Not Apply to Plaintiffs' Fraud-Based Claims**

The economic loss rule cannot apply to claims for fraudulent inducement, or to fraud claims arising out of oral contracts which are in dispute at the pleading stage of litigation.

In *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009), cited by Defendant at page 9, lines 19-21, the court recognized that a properly pled fraudulent inducement claim is not be barred by the economic loss rule. Although in that case, the fraudulent inducement claim was dismissed by the court for not meeting pleading standards, the *United Guar* court specifically held at page 1188:

> "The economic loss rule poses no barrier to a properly pled fraudulent inducement claim: it has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud. (quotations omitted).

Here, the fraudulent inducement claim alleged in the SAC is grounded on a properly alleged fraudulent inducement to enter into oral/implied contracts and supported by factual allegations. The essence of the fraud-based claims is that United and MultiPlan fraudulently induced the Providers to

treat its insureds based on the representations that it would be paid for such services and the payment rate would be the UCR. In addition to not applying to the fraudulent inducement claim, at this stage of the case, the economic loss rule is inapplicable to any of the fraud allegations or claims.

Generally, the economic loss rule applies when parties have a written contract and the existence of the contract is not in dispute. Neither is the case here. When, as here, at the pleading stage of a case, the contract at issue is oral or implied, and the existence of the contract is disputed, the rationale for the economic loss rule does not apply. The SAC pleads alternate contract (oral/implied) claims and fraud claims as is permitted by Fed. R. Civ. Pro. Rule 8(d) which authorizes alternative and inconsistent claims. Fed. R. Civ. P. 8(d)(2)–(3); *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) ("To the extent the district court concluded that the cause of action was nonsensical because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal."); *see Corcoran v. CVS Health Corp.,* 169 F. Supp. 3d 970, 989 (N.D. Cal. 2016) (rejecting defendant's argument that the plaintiff could not advance duplicative damages theories because "Rule 8 plainly entitles Plaintiffs to plead a claim in the alternative.").

In *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*, 660 F. Supp. 2d 1163 (C.D. Cal. 2009), at page 1180, the court referred to *Robinson Helicopter* in discussing the rationale for the economic loss rule, stating at page 1180:

> Though the economic loss rule is easy to state, the rule's application and exceptions are more conceptually difficult. Most of the parties' arguments address the rule. <u>Applying the rule to the present circumstances requires considering the rule's exceptions and policy rationales</u>.
>
> The rule prevents the law of contract and the law of tort from dissolving into one another. By preventing tort claims-and, thus, tort damages-<u>the rule encourages parties to reach a mutually beneficial private bargain. Limiting recovery to contract damages makes it easier for parties to "estimate in advance the financial risks of their enterprise."</u> (emphasis added, internal quotations and citations omitted)

The policy rationale for the economic loss rule may make sense in cases like *United Guar.* which involved a written commercial contract in which "…sophisticated parties reached a bargain that expressly allocates the risk of misrepresentations-including fraudulent misrepresentations." (*Id*, 1185). Thus, in the process of negotiating and creating a complex written commercial contract, those parties decided to contractually define their available fraud remedies.

Here, the fraud claims alleged in the SAC are grounded on fraudulent inducement to enter into oral/implied contracts and supported by detailed, factual allegations. The essence of the fraud-based claims is that Defendant fraudulently induced the Providers to treat its insureds based on the representations that they would be paid for such services based on the UCR. The rationale for the economic loss rule is inapplicable in cases like this one without written contracts, especially where the very existence of an oral contract is disputed and the application of the equitable remedy of an implied contract is challenged. There is no negotiating or bargaining where risks are discussed, defined, or allocated, as would happen in creating a typical commercial written agreement.

The contracts alleged in the SAC were either oral or implied based on the pre-admission VOB's, not the written insurance contracts. There was no discussion or negotiation of other terms, let alone remedies in the event of fraud. Defendant does not admit that these contracts exist; rather it argues against any implied or oral contracts in this motion to dismiss. So, there is a possibility in this case of a decision that there is no oral or implied contract, but there is fraud. In fact, that is precisely what happened in *Bristol SL Holdings v. Cigna Health Life Ins. Co.*, 2020 WL 2027955, cited by Defendant, when after the fraud claims were dismissed, the court granted summary judgment on the implied and oral contract claims, finding that neither existed. In that case, which is now on appeal, the Plaintiff was left without a contract remedy because the court ruled no contract was formed. Thus, the economic loss rule was applied prematurely and improperly, making *Bristol v. Cigna* a poster child for why the economic loss rule should not be applied at the pleading stage.

For this reason, among others, it does not make sense to apply the economic loss rule at this stage. In fact, doing so would run afoul of Plaintiff's right to plead inconsistent alternative legal causes of action. In essence, applying the rule before its time forces a Plaintiff into a premature involuntary election of remedies.

The other case cited by Defendant in its economic loss rule argument, *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477 (9th Cir. 1995), is inapplicable. That case arose out of a signed purchase order, and involved a summary judgment motion directed at a negligent misrepresentation claim (id, 479-480). There was not a fraudulent inducement claim of other intentional fraud claim at issue in that case.

- 8 -

PRS, *et al*. v. UNITED *et al*. - PLAINTIFFS' OPPOSITION TO MULTIPLAN'S MOTION TO DISMISS SAC
4:20-CV-02249-YGR

The economic loss rule has no application at this stage of the case where the fraud claims are properly, and alternately, pled along with claims of breach of oral and implied contract which are and will be vigorously disputed by Defendant.

**E.  Plaintiffs' Properly Assert UCL Claims**

Multiplan asserts that the Plaintiffs' UCL cause of action for violation of California's unfair competition law, set forth in California Business and Professions Code §§ 17200, *et seq.* is inadequate on number of inapplicable grounds, including that Plaintiffs' have failed to satisfy any one of the three prongs for a UCL claim. United attacks the Plaintiffs' UCL claim for mainly the same reasons and Plaintiffs reassert the arguments made in response to United's motion as if they were fully set forth herein without repeating them.

The UCL prohibits unlawful, unfair, and fraudulent business practices. A "business practice need only meet one of the three criteria to be considered unfair competition." *McKell v. Washington Mut. Inc*. (2006) 142 Cal. App. 4th 1457, 1471.

Defendant suggests that the UCL claims are inadequate because they do not show an unlawful, unfair or fraudulent business practice. However, the SAC alleges that Defendant engaged in unlawful and/or unfair conduct by violating California Health & Safety Code section 1371 and pleads Defendants violation of California Code of Regulations section 1300.71.

The SAC clearly satisfies the fraud prong of a UCL claim in that it pleads multiple fraud causes of action showing that Defendants have engaged in a fraudulent business practice. "A fraudulent business practice is one in which members of the public are likely to be deceived." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) (citation and internal quotation marks omitted). To be actionable under the UCL, a representation may be untrue, or it "may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell*, 142 Cal. App. 4th at 1471. "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under" the UCL. *Id.* (citation omitted).

The SAC alleges that Defendants acted unfairly by deceptively by inducing the Providers to treat numerous insureds. Through the Defendants course of conduct, including its confirmation of

coverage and representations of payment rates, Providers were encouraged to treat and continue to provide treatment, and misled by Defendants into believing that it would be properly reimbursed for their services. Defendants did not disclose relevant information, namely, that it would refuse to fully pay based on the UCR. These allegations are sufficient to state a claim for deceptive business practices.

Assessing the UCL claim in *Bias* this Court stated, "At this juncture, the Court need only determine whether the allegations, taken as true, state a plausible claim. Given the nature of the alleged scheme, the Court finds that Plaintiffs' allegations of Wells Fargo's conduct, as pled, satisfy the second test, namely the conduct is plausibly immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. As to the third test, the Court cannot find as a matter of law that the supposed benefits outweigh Plaintiffs' injuries." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013) (internal citations omitted).

MultiPlan also incorrectly suggests Plaintiffs lack standing to bring the UCL claims alleged in the SAC. The standing requirement for a UCL claim is codified in Business and Professions Code section 17204 which states in part that a private Plaintiff must show that it: "suffered injury in fact and has lost money or property as a result of the unfair competition."

In *Day v. Alta Bates Medical Center* (2002) 98 Cal.App. 3rd 243, 248 the California Supreme Court discussed the standing requirement, stating as follows:

> There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. (See, e.g., *Hall v. Time Inc., supra,* 158 Cal.App.4th at pp. 854-855, 70 Cal.Rptr.3d 466 [cataloguing some of the various forms of economic injury].) Neither the text of Proposition 64 nor the ballot arguments in support of it purport to define or limit the concept of " lost money or property," nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm. It suffices to say that, in sharp contrast to the state of the law before passage of Proposition 64, a private plaintiff filing suit now must establish that he or she has personally suffered such harm." [Underlining Added]

Plaintiffs' are entitled to plead alternative and even inconsistent causes of action. Defendants dispute the validity of all of Plaintiffs claims, both those with associated legal remedies and those requesting equitable relief.

Multiplan's assertion that Plaintiffs' cannot seek an equitable remedy as Plaintiffs' other state law causes of action seek legal remedies has been recently rejected by this Court where it stated, "[t]he Court concludes that allowing a plaintiff to plead a claim for injunctive relief under the UCL in the alternative to claims for legal remedies is consistent with the broad remedial purpose of the UCL, and is also consistent with Section 17205 of the UCL, which provides that UCL remedies are "cumulative" to other available remedies." *Summit Estate, Inc. v. United Healthcare Ins. Co.*, No. 4:19-CV-06724 YGR, 2020 WL 5436655, at *9 (N.D. Cal. Sept. 10, 2020). The same result is appropriate here.

It is important to keep in mind that the SAC alleges the Defendants are engaged in a continuing course of fraudulent conduct that will not stop until a court intervenes (SAC ¶19).

### F. Plaintiffs' Negligent Misrepresentation Claim Is Proper

The third count of the complaint alleges a misrepresentation claim based on negligence as an alternative cause of action to the intentional fraudulent inducement count. Multiplan labels this a tag along claim, although alternative claims are permitted under Federal Rules of Civil Procedure, Rule 8(a)(3).

As to the merits of the negligent misrepresentation cause of action allegations, Plaintiffs respectfully refer to the discussion in the directly preceding point above as the facts and circumstances concerning the misrepresentations in the second count are incorporated by reference in the third count.

### G. Plaintiffs' Properly Allege Civil Conspiracy

The conspiracy claim requires a showing of the formation and operation of a conspiracy, and damages resulting from wrongful acts committed in furtherance of the conspiracy. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511. The complaint pleads and establishes these elements.

The civil conspiracy claim incorporates all the general and class allegations preceding it by reference. This includes all of the detailed allegations setting forth the alliance of United and Multiplan. Based on the level of detail provided, Plaintiffs are at a loss as to how the allegations clearly laying out the nature, execution and harm of the conspiracy could be questioned.

A claim for civil conspiracy "imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). The effect of a conspiracy is to implicate all conspirators whether they actually carry it out or not. *Wyatt v. Union Mortgage Co.*, 24 Cal. 3rd 773, 784 (1979).

Multiplan was not a dupe in this situation. It was a knowing, intentional participant in the fraudulent scheme alleged in the complaint. It is responsible for all of the actions of its co-conspirator which are imputed to it.

### H.  Plaintiffs' Promissory Estoppel Claim Is Proper

Under the equitable doctrine of promissory estoppel, "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969); *accord Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000). The elements of the claim are: "(1) a promise, (2) the reasonable expectation by the promisor that the promise will induce reliance or forbearance, (3) actual reliance or forbearance, and (4) the avoidance of injustice by enforcing the promise." *Fleet v. Bank of Am N.A.*, (2014) 229 Cal App 4th 1403, 1412.

This claims is subject to the Rule 8(a) pleading requirements, not Rule 9(b). The SAC meets this standard and alleges far more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "[t]o require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments…would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). Also, "as the court may rely on counsel's certification as to the likelihood of evidentiary support for

any allegations pled on information and belief, it appears reasonable to grant such allegations the benefit of the doubt—so long as they are non-conclusory." *Waldo v. Eli Lilly & Co.*, CIV. S-13-0789 LKK, 2013 WL 5554623, at *5 (E.D. Cal. Oct. 8, 2013). Plaintiffs allegations as to non-ERISA plans satisfy this.

The verification and authorization communications that occurred in factual circumstances similar to what is alleged in the complaint constitute an appropriate predicate for promissory estoppel. *See, e.g.*, *Regents of the Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) (concluding that insurer demonstrated intent to be bound to pay health care provider because insurer verified coverage and authorized treatment on multiple occasions); *Enloe Med. Ctr. v. Principal Life Ins. Co.*, No. CIV S-10-2227 KJM-DAD, 2011 WL 6396517 at *6 (E.D. Cal. Dec. 20, 2011) (noting that courts diverge on whether treatment authorization evinces a promise to pay and stating that "in some instances, a contract may be created on an authorization call").

In this case, the only issue is the amount of payment, not the necessity of the services. In all of the claims the need for the services and/or authorization of those services is not in dispute, only the payment amount. The SAC does not base the promissory estoppel cause of action on promises made in the insurance contracts, but rather the promises made between Defendants and Plaintiffs. Defendants should be estopped from paying anything other than the promised represented UCR amount.

In arguing against this cause of action, Multiplan incorrectly relies on the inapplicable case of *Pacific Bay Recovery, Inc. v. California Physicians Services, Inc.* (2017) 12 Cal.App. 5th 200, in which the Court of Appeal rejected the substance abuse provider's argument that it was entitled to be compensated based on the UCR. However, *Pacific Bay* is completely different from this case. It was a case in which the provider questionably attempted to rely on inapplicable Knox Keene act provisions allowing emergency providers to receive the UCR, even though the services Pacific Bay provided were not emergency services.

In *Pacific Bay*, as to the allegations of what Blue Shield represented, Pacific Bay alleged only that Blue Shield would pay for the services. It did not allege that it was told it would receive a rate based on UCR, only that it "was led to believe it 'would be paid a portion or percentage of its total

billed charges, which charges correlated with usual, reasonable and customary charges'" (*Id*., at 216). In this case, the SAC specifically alleges that in a multitude of conversations Defendants represented/agreed they would pay UCR or a plan determined percentile of UCR, depending on the applicable plan.

In this case, the complaint alleges that payments would be made based on the UCR, and that the services were provided based on and in reliance upon that fact. By representing that it would pay the UCR, a term of art in the industry, Defendants provided a recognized method by which the amount it would pay would be objectively determined.

UCR is a certain and well-known term, and analogous to the concept of Fair Market Value in the real estate or other industries. In *Goodwest Rubber Corp. v. Munoz* (1985) 170 Cal. App. 3d 919, 921, the court held that "Fair Market Value" was a certain enough price or method to determine consideration to support an action for specific performance.

Multiplan argues there can be no reliance to support the promissory estoppel claim. However, under California law, a claim for civil conspiracy "imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). The effect of a conspiracy is to implicate all conspirators whether they actually carry it out or not. *Wyatt v. Union Mortgage Co.*, 24 Cal. 3rd 773, 784 (1979). Thus, by virtue of the conspiracy, reliance is established.

## V. Conclusion

By reason of the foregoing, it is respectfully submitted that the motion to dismiss should be denied in its entirety. Defendant prematurely raises issues at this stage of the litigation which are properly left for a determination once discovery is completed and all relevant evidence is available for evaluation. If the court is inclined to sustain any part of the motion, Plaintiffs respectfully request leave to amend.

[SIGNATURE PAGE FOLLOWS]

- 15 -

| | |
|---|---|
| Dated: March 4, 2021 | **NAPOLI SHKOLNIK PLLC** |
| | /s/ *Matthew M. Lavin* |
| | Matthew M. Lavin |
| | Aaron R. Modiano |
| | |
| | **DL LAW GROUP** |
| | /s/ *David M. Lilienstein* |
| | David M. Lilienstein |
| | Katie J. Spielman |
| | |
| | *Attorneys for Plaintiffs* |