1

2

3                        IN THE UNITED STATES DISTRICT COURT

4                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6    PACIFIC RECOVERY SOLUTIONS, ET AL.,          CASE NO.  4:20-cv-02249 YGR

7                        Plaintiffs,              ORDER GRANTING MOTIONS TO
                                                  DISMISS
8            v.
                                                  Re: Dkt. Nos. 85, 86
9

10   UNITED BEHAVIORAL HEALTH, ET AL.,

11                       Defendants.

12           Plaintiffs[1] bring this putative class action against defendants United Behavioral Health

13   ("United") and MultiPlan, Inc. ("MultiPlan") for claims arising out of United's alleged failure to

14   reimburse plaintiffs at "a percentage" of the Usual, Customary, and Reasonable Rates ("UCR") for

15   Intensive Outpatient Program ("IOP") services, which plaintiffs provided to patients with health

16   insurance policies administered by United.  The Court dismissed two prior iterations of the

17   complaint, with leave to amend.  Plaintiffs filed a Second Amended Complaint ("SAC"), in which

18   they assert, on their own behalf and on behalf of a proposed class of similarly-situated out-of-

19   network IOP providers, multiple claims under California law that arise out of defendants' alleged

20   under-reimbursement of claims for IOP services.

21           Now pending are United's and MultiPlan's motions to dismiss all claims in the SAC with

22   prejudice under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) plaintiffs' state-

23   law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA");

24   and (2) even if such claims are not preempted by ERISA, the claims are inadequately pleaded.

25

26

27           [1] Plaintiffs are Pacific Recovery Solutions d/b/a Westwind Recovery, Miriam Hamideh
     PhD Clinical Psychologist Inc. d/b/a PCI Westlake Centers, Bridging the Gaps, Inc., and Summit
28   Estate Recovery Center, Inc.

United States District Court
Northern District of California

United States District Court
Northern District of California

Having carefully considered the pleadings and the parties' briefs, and for the reasons set forth below, the Court **GRANTS** the motions to dismiss **WITH PREJUDICE** with respect to plaintiffs' state-law claims.[2]

## I.  BACKGROUND

### A.  Initial Complaint

In the first iteration of the complaint, plaintiffs alleged as follows.  Plaintiffs are out-of-network healthcare providers who provided IOP services to patients who had health insurance policies that United administered and that are "health care benefit programs" covered by ERISA.  Compl. ¶¶ 2, 348-59, Docket No. 1.  Before providing treatment to these patients, "each of the Plaintiffs confirmed with United that the patients had active coverage and benefits for out of network IOP treatment services" through verification-of-benefits ("VOB") calls, during which United "represented" that it would pay the patients' claims for such services at a percentage of the UCR.  *Id.* ¶¶ 3, 17, 188, 195, 202, 209.  Due to the communications in question, plaintiffs and United "understood" UCR to be "consistent with United's published definition of UCR rates" on its website describing out-of-network plan benefits.  *Id.* ¶ 324; *id.* ¶ 17 n.6 (alleging that United published a definition of UCR on its webpage describing out-of-network plan benefits).  Plaintiffs provided IOP services to the patients in reliance of United's representations.  *Id.* ¶¶ 3, 17, 188, 195, 202, 209.

United's representations that it would pay a percentage of the UCR were false, because "United did not pay UCR amounts for any of the patient claims at issue in this litigation."  *Id.* ¶ 13.  Instead, United engaged defendant Viant, a third-party "repricer," to "negotiate" reimbursements with plaintiffs "at well below the UCR rate."  *Id.* ¶¶ 13, 33.  During its negotiations with plaintiffs, Viant represented that it had authority to negotiate with providers on the patients' behalf and that "the rate it offers is based on the UCR for the provider's geographic location."  *Id.* ¶¶ 34, 48, 52.  Viant's negotiations with plaintiffs resulted in offers to reimburse

---

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.  Accordingly, the Court **VACATES** the hearing set for April 6, 2021.

them for IOP services at an amount below the UCR, and United paid the patients' claims at the "reduced Viant amount." *Id.* ¶¶ 13-14.  Neither United nor Viant disclosed to plaintiffs the methodology they used for calculating the reimbursement rates for IOP services. *Id.* ¶ 54.  United "unjustly retained" the difference between the amounts it "should have paid" to plaintiffs for the IOP services at issue and the amount that United actually did pay based on Viant's negotiated reimbursements. *Id.* ¶ 15.

Plaintiffs asserted the following claims against each defendant on their own behalf and on behalf of a proposed class of similarly-situated out-of-network IOP providers in the United States: (1) a claim for violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) intentional misrepresentation and fraudulent inducement; (3) negligent misrepresentation; (4) civil conspiracy; (5) breach of oral or implied contract; (6) promissory estoppel; (7) a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); and (8) a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1.

On August 25, 2020, the Court granted defendants' motions to dismiss all claims in the initial complaint, and it did so with leave to amend.  Docket No. 61.

**B.     First Amended Complaint**

The First Amended Complaint ("FAC") differed from the initial complaint in the following ways: (1) plaintiffs deleted most of the allegations that the Court relied upon in its order dismissing the initial complaint; (2) plaintiffs added new allegations, as discussed in more detail below; (3) plaintiffs substituted MultiPlan for Viant as a defendant; (4) plaintiffs added a claim for conspiracy in violation of RICO, 18 U.S.C. § 1962(d); and (5) plaintiffs deleted their request for injunctive relief under the Sherman Act.

In the FAC, plaintiffs continued to aver that United represented during VOB calls that it would pay for IOP services at a percentage of the UCR.  *See, e.g.*, FAC ¶¶ 269, 276, 292. Plaintiffs, however, modified their allegations with respect to the process that United allegedly used to reprice the claims for IOP services at issue.  In the initial complaint, plaintiffs alleged that United had engaged Viant to "negotiate" reimbursements with plaintiffs; that Viant's negotiations with plaintiffs resulted in offers to reimburse them for IOP services at an amount below the UCR;

3

1   and that United paid the patients' claims for IOP services at the "reduced Viant amount."  *See*

2   Compl. ¶¶ 13-14.  In FAC, by contrast, plaintiffs alleged that United entered into a contract with

3   MultiPlan, Viant's parent company, to use a database that allowed defendants to generate

4   "fraudulent UCR rates" for IOP services, which they used to under-reimburse for the cost of the

5   IOP services at issue.  FAC ¶¶ 121, 13-62.  Plaintiffs deleted all allegations as to Viant's alleged

6   negotiations with plaintiffs from the FAC.

7           On December 18, 2020, the Court granted defendants' motions to dismiss all claims in the

8   FAC.  Docket No. 83.  Specifically, the Court (1) dismissed with prejudice plaintiffs' Sherman

9   Act claim for lack of antitrust standing; (2) dismissed with prejudice plaintiffs' RICO claims for

10  lack of RICO standing; (3) dismissed with prejudice plaintiffs' state-law claims to the extent that

11  they arise out of the alleged under-reimbursement of claims for IOP services that are covered by

12  plans governed by ERISA; and (4) dismissed with leave to amend plaintiffs' state-law claims to

13  the extent that they arise out of the alleged under-reimbursement of claims for IOP services that

14  are covered by plans that are *not* governed by ERISA.  *Id.*

15          **C.       Second Amended Complaint**

16          The SAC differs from the FAC in the following ways: (1) plaintiffs deleted their claims

17  under the Sherman Act and RICO, such that the only claims that remain are those arising out of

18  state law; (2) plaintiffs deleted their allegations regarding specific claims for IOP services that

19  defendants allegedly under-reimbursed; and (3) plaintiffs added conclusory allegations that the

20  plans that cover the IOP claims at issue are plans that are not governed by ERISA.

21  **II.    LEGAL STANDARD**

22          To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

23  matter that, when accepted as true, states a claim that is plausible on its face.  *Ashcroft v. Iqbal*,

24  556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual

25  content that allows the court to draw the reasonable inference that the defendant is liable for the

26  misconduct alleged."  *Id.*  While this standard is not a probability requirement, "[w]here a

27  complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

28  line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks and

United States District Court
Northern District of California

1   citation omitted).  In determining whether a plaintiff has met this plausibility standard, the Court

2   must "accept all factual allegations in the complaint as true and construe the pleadings in the light

3   most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  "[A]

4   court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

5   opposition to a defendant's motion to dismiss."  *Schneider v. California Dep't of Corr.*, 151 F.3d

6   1194, 1197 n.1 (9th Cir. 1998).  A court should grant leave to amend unless "the pleading could

7   not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

8   *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

9   **III.    DISCUSSION**

10      As noted, plaintiffs assert the following state-law claims against defendants in the SAC:

11  (1) violation of the UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) intentional

12  misrepresentation and fraudulent inducement; (3) negligent misrepresentation; (4) civil

13  conspiracy; (5) breach of oral or implied contract; and (6) promissory estoppel.  All of these

14  claims are predicated on the theory that United represented to plaintiffs during VOB calls that it

15  would pay for IOP services at a percentage of the UCR pursuant to the terms of the patients'

16  healthcare plans.

17      Defendants move to dismiss all of these claims on the grounds that (1) the claims are

18  preempted by ERISA; and (2) even if the claims are not preempted by ERISA, they are

19  inadequately pleaded.

20      ERISA Section 514(a) expressly preempts "any and all State laws insofar as they may now

21  or hereafter relate to any employee benefit plan[.]"  29 U.S.C. § 1144(a).  "While this section

22  suggests that the phrase 'relate to' should be read broadly, the Supreme Court has recently

23  admonished that the term is to be read practically, with an eye toward the action's actual

24  relationship to the subject plan."  *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th

25  Cir. 2004) (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.*

26  *Co.*, 514 U.S. 645, 655-56 (1995)).  "Generally speaking, a common law claim 'relates to' an

27  employee benefit plan governed by ERISA 'if it has a connection with or reference to such a

28  plan.'"  *Id.* (citation omitted).  "In evaluating whether a common law claim has 'reference to' a

plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival.  If so, a sufficient 'reference' exists to support preemption."  *Id.* (citations omitted).  "In determining whether a claim has a 'connection with' an employee benefit plan, courts in this circuit use a relationship test.  Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant."  *Id.* (citations omitted).

In its order of December 18, 2020, the Court dismissed plaintiffs' state-law claims with prejudice on the ground that they are preempted by ERISA Section 514(a) to the extent that they depend on the existence and terms of a plan that is governed by ERISA.  *See* Docket No. 83 at 14-18; *see also Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1191 (9th Cir. 2010) (holding that state-law claims predicated on "theories of fraud, misrepresentation, and negligence" are preempted under Section 514(a) because they "depend on the existence of an ERISA-covered plan to demonstrate that [the plaintiff] suffered damages"); *Johnson v. Dist. 2 Marine Engineers Beneficial Ass'n-Associated Mar. Officers, Med. Plan*, 857 F.2d 514, 517 (9th Cir. 1988) (affirming dismissal with prejudice of state-law claims that are "preempted by ERISA" Section 514(a)).

In the same order, the Court recognized that plaintiffs had alleged in the FAC that some of the plans that cover the claims for IOP services at issue are *not* governed by ERISA, but it concluded that the FAC lacked factual matter to raise the reasonable inference that the plans in question fall outside of the scope of ERISA.  *See* Docket No. 83 at 17-18 (noting that, although certain types of employer-sponsored healthcare plans are exempted from ERISA, such as governmental and church plans, the FAC was "devoid of allegations showing that any of the plans at issue falls within any of the exceptions to ERISA coverage") (citing 29 U.S.C. § 1003(b)).  Accordingly, the Court granted plaintiffs leave to amend the complaint to allege, in relevant part, "facts identifying which of the allegedly under-reimbursed claims for IOP services in the FAC were covered by a plan that falls outside of the scope of ERISA and showing why[.]"  *Id.* at 18.

United States District Court
Northern District of California

1    The SAC fails to satisfy these requirements.  Rather than adding detail to their allegations

2    as the Court required, plaintiffs removed material averments from the complaint.  Specifically,

3    plaintiffs removed from the SAC the detailed factual matter they had alleged in the FAC with

4    respect to the number of IOP claims at issue, the amounts that defendants allegedly under-

5    reimbursed, and the misrepresentations that United allegedly made during VOB calls, presumably

6    because all of those facts pertained to claims for IOP services that are covered by plans that are

7    governed by ERISA.  In place of the detailed allegations they removed, plaintiffs left conclusory

8    allegations.  Their state-law claims are now supported only by bare averments that the claims for

9    IOP services at issue are covered by plans that are "not governed by ERISA."  *See, e.g.*, SAC ¶¶

10   384, 5.  Plaintiffs do not identify any non-ERISA claims, plans, or members; nor do they aver any

11   nonconclusory factual matter that would allow the Court to reasonably infer that any of the claims

12   for IOP services at issue are covered by a plan that is *not* subject to ERISA.

13   Where, as here, plaintiffs assert state-law claims that depend on the terms of certain

14   healthcare plans, but plaintiffs do not allege any factual matter giving rise to the inference that

15   such healthcare plans are *not* governed by ERISA, the state-law claims are subject to dismissal on

16   the ground that they are preempted by ERISA.  *See, e.g.*, *Omega Hospital, LLC v. United*

17   *Healthcare Services, Inc.,* No. 16-00560-JJB-EWD, 2017 WL 4228756, at *4 (M.D. La. Sept. 22,

18   2017) (dismissing state-law claims of "non-ERISA plan participants" as preempted by ERISA on

19   the ground that "the Court is not satisfied with general statements referring to non-ERISA plans

20   without specific allegations identifying a particular non-ERISA plan at issue in this case");

21   *Biohealth Med. Lab'y, Inc. v. Connecticut Gen. Life Ins. Co.*, No. 1:15-CV-23075-KMM, 2016

22   WL 375012, at *5 (S.D. Fla. Feb. 1, 2016), *aff'd in part, vacated in part on other grounds sub*

23   *nom. BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.,* 706 F. App'x 521 (11th Cir.

24   2017) (dismissing state-law claims as preempted by ERISA on the grounds that "the Complaint on

25   its face does not identify any plan(s)" that are "non-ERISA plans" and that "merely claiming that

26   some of the member claims arise under non-ERISA plans is insufficient to provide fair notice to

27   [defendant]").

28

In their opposition to the present motions, plaintiffs attempt to distinguish these authorities on grounds that are immaterial, such as the fact that the state-law claims at issue in *Omega* and *Biohealth* do not arise out of similar facts or the same legal theories as the state-law claims at issue here.  *See* Docket No. 87 at 6.  Plaintiffs' attempt to distinguish these authorities is ineffective.  As in *Omega* and *Biohealth*, the ERISA preemption analysis here turns on whether the healthcare plans upon which the claims for benefits depend are governed by ERISA.  As the plaintiffs in *Omega* and *Biohealth*, plaintiffs here have failed to aver any factual matter that would permit the Court to infer that the plans at issue are *not* governed by ERISA.  Plaintiffs' state-law claims, therefore, are subject to dismissal on the basis that they are preempted by ERISA Section 514(a).  *See Johnson*, 857 F.2d at 517.

Because the Court previously provided plaintiffs with an opportunity to amend the complaint to add factual matter to make plausible their allegations that the plans in question are not governed by ERISA, and plaintiffs failed to do so, the Court finds that providing plaintiffs with a further opportunity to amend the complaint would be futile.

Accordingly, the Court **GRANTS** defendants' motions to dismiss plaintiffs' state-law claims **WITH PREJUDICE**.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motions to dismiss plaintiffs' state-law claims **WITH PREJUDICE**.

This order terminates Docket Numbers 85 and 86.

The Clerk shall terminate this action and enter judgment.

**IT IS SO ORDERED.**

Dated: April 1, 2021

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**